# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FREDERICK F. FAGAL, JR. | : |
| *Plaintiff,* | : CIVIL ACTION |
| v. | : NO. 3:14-cv-02404-ARC |
| MARYWOOD UNIVERSITY, | : ELECTRONICALLY FILED |
| *Defendant.* | : |

## **AMENDED COMPLAINT**

Frederick F. Fagal, Jr., Plaintiff, hereby brings this Amended Complaint against Marywood University, Defendant, and avers as follows:

## **PARTIES**

**1.** Marywood University (hereinafter "Marywood" or the "University") is a university and a Pennsylvania domestic non-profit corporation located in Scranton, Pennsylvania.

**2.** Frederick F. Fagal, Jr. (hereinafter "Professor Fagal") is a natural person who has resided in New York State for more than 20 years and intends to remain there indefinitely. Professor Fagal is thus a citizen of New York State.

**3.** Professor Fagal earned a bachelor's degree in 1968 from Union College in Schenectady, New York, a Masters in Economics from Cornell

University in 1971, and a Ph.D. in Social Studies Education from Syracuse University in 1981.

4. Professor Fagal became a member of Marywood's faculty in the fall semester of 1987.

5. Professor Fagal attained tenure at Marywood in September 1994.

6. Marywood terminated Professor Fagal's tenure and employment on April 3, 2012.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over this action under 28 U.S.C. § 1332 as the matter in controversy exceeds the sum of $75,000.00 exclusive of interest and costs, and is between citizens of different states.

8. This Court has general personal jurisdiction over Marywood as the University has continuous and systematic contacts within the Commonwealth of Pennsylvania.

9. Venue is proper under 28 U.S.C. § 1391 as a substantial portion of the events giving rise to Professor Fagal's claim occurred within the Middle District of Pennsylvania.

## **FACTUAL BACKGROUND**

10. In 1992, Professor Fagal entered into an Agreement and Appointment for Full-Time Faculty with Marywood. The agreement states that "[t]he policies and practices listed in the Faculty Manual are agreed upon by the parties hereto." A partially redacted copy of that agreement is attached hereto as Exhibit A.

11. The "Faculty Manual" was also known as or later became known as the "Faculty Handbook."

12. Professor Fagal and Marywood entered into written agreements for him to serve on the University's full-time faculty for each year between 1992 and 2012.

13. Professor Fagal became a tenured faculty member of Marywood in September 1994.

14. On July 1, 2010, Marywood issued an edition of its Faculty Handbook. The first four pages of the Faculty Handbook are attached hereto as Exhibit B. The third page states, in part: "This handbook is effective with the 2010-2011 faculty letters of agreement." The fourth page states, in part: "Policy changes require the approval of the President of the University and, when required, the Board of Trustees. Changes are disseminated by the Secretary of the University. They are

effective with formal approval and placement in the Marywood University Policies and Procedures Manual."

**15.**     In May 2011, Professor Fagal entered into an agreement with Marywood stating that he would serve as a tenured Associate Professor from August 22, 2011 to May 18, 2012 and earn a specific salary. A partially redacted copy of that agreement is attached hereto as Exhibit C.

**16.**     At the time that Professor Fagal and Marywood entered into the May 2011 agreement, Marywood's "Contractual Agreements with Faculty Members" policy stated that this type of agreement is a "binding contract covering a specific period of time and as a vehicle to renew, adjust and/or alter the terms of the original contract regarding appointment, rank, tenure, salary, benefits, etc." The same policy stated: "Tenure is a term designating guaranteed continuous appointment to full-time faculty members until retirement." A copy of that policy is attached hereto as Exhibit D.

**17.**     If Professor Fagal was ever an at-will employee of Marywood, he was no longer so upon attaining tenure. His tenure and employment could only be terminated in conformance with Marywood's Policies and Procedures Manual.

## Marywood Tears Down Professor Fagal's Posters Inviting Students to a Lecture on Free Speech

18.     In November 2011, Professor Fagal invited and paid for a speaker from the Philadelphia-based Foundation for Individual Rights in Education (hereinafter "FIRE") to give a presentation to his "Introduction to Social Science" course at the end of the month. The topic of the presentation was "Know Your Rights: Free Speech and Thought Reform on Campus," which was related to Professor Fagal's teaching of the United States Constitution.

19.     Professor Fagal received approval from Marywood to hang posters (which he arranged to have printed and he paid for) announcing the FIRE presentation and inviting any and all Marywood students to attend at the University's Comerford Auditorium.

20.     On or around November 28-29, 2011, Marywood personnel tore down almost all of the FIRE posters. A Marywood official confirmed that the University was responsible. Marywood did not provide any notice to Professor Fagal before or after the FIRE posters were torn down.

21.     When Professor Fagal complained about the poster tear-downs shortly thereafter, Marywood's Vice President for Academic Affairs could not identify any written policy statements by the University that warranted these actions.

22.     Professor Fagal attempted to secure an apology by Marywood as well as reimbursement for the posters that were torn down, but Marywood refused these requests.

23.     On January 13, 2012, Professor Fagal sent an email from his personal email address to Marywood faculty members about the removal of his posters. In that email, Professor Fagal criticized the Marywood administration for tearing down his posters and for its weak commitment to free speech generally.

24.     The January 13th email also contained hyperlinks to two related videos criticizing Sister Anne Munley, President of Marywood, and several other administrators for ordering or participating in the poster tear-downs and again for a weak commitment to free speech. The videos were posted to YouTube.

### Marywood Suspends Professor Fagal

25.     At approximately 8:45 AM on January 23, 2012, a Marywood dean visited Professor Fagal's office as he was preparing for his 9:00 AM class and stated that President Munley was summoning him to a meeting at the same time.

26.     At the 9:00 AM meeting, President Munley asked Professor Fagal whether he posted the two-part video on YouTube. Professor Fagal acknowledged posting the video. Professor Fagal was asked to explain his actions, but when he attempted to raise the issue of the poster tear-down, that topic was not allowed.

6

Permitted no context to "explain" his actions, Professor Fagal could "explain" nothing. President Munley then told Professor Fagal that his employment was suspended effective immediately and that he should return his keys and University identification card to Marywood's Assistant Vice President for Human Resources.

27. Several hours later, Marywood's Assistant Vice President for Human Resources sent Professor Fagal an email confirming that he had been suspended and directing him to clean out his University office.

28. At the time of Professor Fagal's suspension, Marywood's "Progressive Discipline" policy (attached hereto as Exhibit E) stated:

> Marywood University endorses a progressive discipline policy designed to promote resolution in a fair and orderly manner. This policy applies to faculty members with tenure or whose terms of appointment have not yet expired.
>
> The policy is intended to provide an effective and flexible means of identifying problem areas, resolving complaints, and preventing repetitive incidents by prompt intervention and assistance. It is designed to accomplish these ends by a series of gradual steps involving strategies such as personal conferences, oral and written warnings, and opportunities for monitored assistance where applicable.
>
> ….
>
> *Suspension*. The faculty member may be suspended by the Vice President for Academic Affairs at any time during the proceedings involving him or her. Suspension

      is justified if immediate harm to the faculty member or others is threatened by the person's continuance in the faculty position.

29. Marywood's suspension of Professor Fagal was a breach of contract in several ways. First, there was nothing "progressive" about the discipline meted out to Professor Fagal. There was no oral or written warning—nor was any opportunity for monitored assistance provided.

30. Second, President Munley—not the Vice President for Academic Affairs—suspended Professor Fagal.

31. Third, at the time of the suspension, there was no immediate harm to Professor Fagal or to others threatened by Professor Fagal's continuance in his faculty position—and no Marywood official or representative has ever stated otherwise to him.

### Marywood Moves to Terminate Professor Fagal

32. On January 24, 2012, approximately 28 hours after President Munley suspended Professor Fagal, she sent him a letter stating that she was "recommending that [his] tenure and employment with Marywood be terminated immediately."

33. In the January 24th letter, President Munley provided a "Statement of Charges," which she was "prepared to send . . . to a duly appointed faculty

committee for review along with the emails and videos you forwarded to members of our community."

34.  The end of the second "charge" contained in the January 24th letter is missing, and therefore it was initially impossible for Professor Fagal to know the full extent of the "charges" against him.

35.  After Professor Fagal's attorney wrote to President Munley requesting an amended "Statement of Charges"—among other breaches that he identified—President Munley sent a second letter to Professor Fagal on February 8, 2012.

36.  In the February 8th letter, President Munley again stated that she was recommending that Professor Fagal's "tenure and employment with Marywood be terminated immediately" and offered a "Statement of Charges."

37.  In the second "charge" against Professor Fagal, President Munley accused him of violating Marywood's Civil Rights Policy.

38.  Near the end of the February 8th letter, President Munley wrote:

> As a result of this recommendation, I am prepared to send this statement of charges to a duly appointed faculty committee for review along with the emails and videos you forwarded to members of our community.  In order to do so and out of respect for your privacy, I would ask that you please sign and return to me the attached authorization granting the University permission to do so. That faculty committee may agree or disagree with my

recommendation. Once I receive the review committee's determination, I will finalize my decision. Should you choose to forego that faculty review, I will finalize my recommendation based upon my own findings and conclusions.

39. A document titled "Release of Personal Information" enclosed with President Munley's February 8th letter states, in part:

> \_\_\_ I DO NOT grant permission for Marywood University to release Sister Anne Munley's Recommendation for Termination and Statement of Charges dated 1/24/12 to a faculty review committee comprised of tenured faculty. I understand that by refusing such permission that there will be no faculty committee review of Sister Anne Munley's decision to terminate my tenure and employment with the University prior to it being finalized.
>
> OR
>
> \_\_\_ I DO grant permission for Marywood University to release Sister Anne Munley's Recommendation for Termination and Statement of Charges dated 1/24/12 to a review committee comprised of tenured faculty.

40. President Munley's recommendation to terminate Professor Fagal's employment and tenure violated the "Progressive Discipline" policy in effect at the time. That policy contained one sentence addressing dismissal: "If remedial actions(s) taken during the suspension does not sufficiently resolve the issues that lead to the suspension, the university may move towards dismissal of the faculty member."

41.     Marywood took no "remedial actions" to "resolve the issues" that led to Professor Fagal's suspension. Professor Fagal's suspension began on the morning of January 23, 2012, and the first letter recommending his termination arrived in his inbox at 1:11 PM on the next day. Nor did Marywood attempt any "remedial actions" before sending the February 8th letter.

42.     President Munley's February 8th letter also violated Marywood's "Civil Rights Complaint Procedures" policy in effect at the time. That policy required an individual allegedly aggrieved by a civil rights violation to file a complaint, among other procedures. Those procedures "must be followed any time a member of the Marywood University community believes s/he has been the victim of . . . discrimination, harassment, or assault by any member of the University community . . . ." A copy of that policy is attached hereto as Exhibit F.

43.     No Marywood employee filed a civil rights complaint against Professor Fagal after his January 13, 2012 email, and thus President Munley's attempt to "charge" him with violating the University's Civil Rights Policy was a breach of Marywood policy as well as a breach of contract.

**Marywood Refuses to Allow Professor Fagal to Appeal His Suspension**

44.     In President Munley's January 24th and February 8th letters, she asked Professor Fagal to authorize her to send the "statement of charges" against

him to a "duly appointed faculty committee for review" of her decision to terminate his employment and tenure.

45.    Nowhere in the letters or the authorizations did President Munley offer to convene a faculty committee to review her suspension of Professor Fagal.

46.    President Munley offered Professor Fagal two choices: a faculty review of her recommendation to terminate him or the "finalization" of her own decision to terminate him.

47.    The "Progressive Discipline" policy in effect at the time of President Munley's letters stated that faculty members "have the right to convene an ad hoc committee in order to appeal either a decision to suspend the faculty member or a decision to dismiss the faculty member."

48.    On February 2, 2012, Professor Fagal, through his attorney, elected in writing to convene two ad hoc faculty committees: one for President Munley's decision to suspend him and the other for her recommendation to terminate him.

49.    On February 9, 2012, Marywood, through its attorney, rejected Professor Fagal's request to convene an ad hoc committee to review his suspension. The letter stated, in part, that Professor Fagal had breached his contract with Marywood and thus the University "had no further contractual obligations to him."

50. Marywood's position—if accepted—would mean that any time that the University deemed—in its sole discretion—that a member of its community breached a contract with the University, then the University could disregard any of its own disciplinary policies. Such a position is absurd.

### Professor Fagal Files a Formal Grievance Against President Munley; she Retaliates by Terminating Him.

51. On February 22, 2012, Professor Fagal filed a formal grievance against President Munley under Marywood's "Faculty Grievances and Appeals" policy. A copy of that grievance is attached hereto as Exhibit G.

52. In the grievance, Professor Fagal alleged that President Munley violated Marywood policy by improperly suspending him, by improperly moving to terminate his employment and tenure, and by not accepting his request to convene an ad hoc committee to appeal the suspension.

53. On March 26, 2012, the Chair of Marywood's Faculty Grievance Committee sent a letter to Dr. Fagal summarizing his grievances and concluding: "I now write to inform you that in reviewing each of these grievances, we have found no evidence of improper action on President Munley's part which would constitute a legitimate grievance."

54. On April 3, 2012, President Munley sent a letter to Professor Fagal stating in part: "Since the grievance process is now complete, I have decided to finalize my recommendation. As a result, your employment with Marywood and your tenure are terminated effective today, April 3, 2012." A copy of that letter is attached hereto as Exhibit H.

55. One paragraph after declaring Professor Fagal's relationship with Marywood at an end, however, President Munley offered to convene the two ad hoc faculty committees that he had been requesting for months. President Munley claimed: "I am doing this despite the fact that on two separate occasions you refused my offer and did not choose to convene an ad hoc committee to review my decision to suspend you and my recommendation to terminate your employment and tenure before I finalized my decision." President Munley's claim that Professor Fagal did not convene an ad hoc committee to review the suspension decision is verifiably false.

56. Further, President Munley's offer to convene two ad hoc committees was effectively a dead letter because she had—in the very same writing—declared the termination of his employment and tenure to be final.

57. The "Progressive Discipline" policy in effect at the time conveyed that before a faculty member may be dismissed, an ad hoc faculty committee must

recommend a formal action toward dismissal. Therefore, President Munley's termination of Professor Fagal's employment on April 3, 2012 was premature and in contravention of Marywood policy.

58.     President Munley's premature termination also violated the "Faculty Grievances and Appeals" policy (attached hereto as Exhibit G), which stated that "[g]rievants will not be adversely affected for exercising their right to file a grievance, regardless of outcome" and that "[g]rievants will not be subject to adverse consequences for either initiating a grievance or in presenting evidence on behalf of a grievant."

59.     On July 2, 2012, a group of Marywood faculty members calling themselves the "Faculty Senate Ad Hoc Hearing Committee" ("FSAHHC") issued a document titled "Review of Sister Anne Munley's Decision to Terminate the Employment and Tenure of Dr. Frederick Fagal."

60.     The FSAHHC did not concur with all of the charges lodged against Professor Fagal. Nonetheless, the FSAHHC concurred with President Munley's decision to revoke the tenure and terminate the employment of Professor Fagal.

61.     Contrary to Marywood's "Progressive Discipline" policy and President Munley's April 3rd letter, neither the FSAHHC nor any other ad hoc faculty committee reviewed Professor Fagal's suspension.

62. At the time of the FSAHHC's decision, Marywood's "Progressive Discipline" policy stated, in part:

> Faculty members have the right to convene an ad hoc committee in order to appeal either a decision to suspend the faculty member or a decision to dismiss the faculty member . . . . Should a faculty member request that such a committee be convened twice (i.e., once for suspension and once for dismissal), the membership of the committee may be similar or different, a determination which is made by the President of the University in consultation with the faculty member and the Vice President for Academic Affairs.

63. Accordingly, the failure of any Marywood ad hoc faculty committee to review Professor Fagal's suspension was a breach of Marywood's "Progressive Discipline" policy.

64. Had an ad hoc faculty committee actually reviewed Professor Fagal's suspension, it would have likely found that suspension improper given that he posed no harm to himself or to others. Such a finding would have logically caused the ad hoc faculty committee reviewing Professor Fagal's termination to rule in his favor given that the propriety of a dismissal depends on the propriety of a suspension under the "Progressive Discipline" policy.

65. On July 13, 2012, President Munley sent Professor Fagal a letter stating, in part: "My decision to terminate your employment with Marywood University and your tenure effective April 3, 2012 stands."

**66.**     Professor Fagal received his agreed-upon salary through August 2012, at which point Marywood ceased paying him.

## Postscript

**67.**     After terminating Professor Fagal, the University amended its disciplinary policies so as to allow it to handle future "Professor Fagals" in the same way—but without breaching such policies. Accordingly, Marywood is well-aware that it breached its own policies as alleged above.

## COUNT I
### (Breach of Contract)

**68.**     Professor Fagal adopts by reference each and every allegation stated above.

**69.**     Marywood's Faculty Manual, Faculty Handbook, Policies and Procedures Manual, and the letter agreements referenced above constitute binding contracts between Professor Fagal and the University.

**70.**     Marywood repeatedly breached duties owed to Professor Fagal under the above-referenced contracts.

**71.**     Marywood's breaches of its duties to Professor Fagal caused him to suffer damages, including but not limited to the loss of continued salary and other benefits owed to tenured faculty members.

# **RELIEF REQUESTED**

**WHEREFORE**, Professor Fagal demands judgment in his favor and against Marywood for:

    **A.**    Back pay in an amount to be proved at trial;

    **B.**    Reinstatement of Professor Fagal's employment and tenure with Marywood;

    **C.**    Front pay up to the reinstatement of Professor Fagal's employment with Marywood or—if reinstatement is not awarded—through the end of Marywood's spring semester in 2018 (when Professor Fagal would be 72 years old);

    **D.**    Stock market foregone gains on 403(b) salary deductions not invested in Professor Fagal's Fidelity retirement account;

    **E.**    Pre-judgment interest;

    **F.**    Post-judgment interest;

    **G.**    Reasonable attorneys' fees and court costs; and

    **H.**    Such other and further relief to which Professor Fagal may be entitled at law or equity.

        Respectfully,

        By:    <u>s/ Jonathan Z. Cohen</u>
                Jonathan Z. Cohen (PA205941)
                175 Strafford Avenue, Suite 1
                Wayne, Pennsylvania 19087-3340
                (484) 253-1175
                (215) 839-8951 (fax)
                jzc@jzc-law.com

                *Attorney for Plaintiff Frederick F. Fagal, Jr.*

Date: January 15, 2015