## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FREDERICK F. FAGAL, JR., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : CIVIL ACTION NO. 3:14-cv-2404-UN3 |
| | : |
| MARYWOOD UNIVERSITY, | : |
| | : |
| Defendant. | : |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
## ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Respectfully submitted,

*/s/ Stephanie Peet*
Stephanie J. Peet (PA ID: 91744)
Katharine Thomas Batista (PA ID: 312366)
**JACKSON LEWIS P.C.**
Three Parkway
1601 Cherry Street, Suite 1350
Philadelphia, PA 19102
T: (267) 319-7802
F: (215) 399-2249
stephanie.peet@jacksonlewis.com
katharine.thomas@jacksonlewis.com

*Attorneys for Defendant*

Dated: 2/20/15

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................iii

I.    PROCEDURAL HISTORY..................................................2

II.   STATEMENT OF QUESTIONS .........................................2

III.  STATEMENT OF FACTS .................................................2

    A.    Marywood's Mission and Core Values ...............................3

    B.    Fagal's Creation and Dissemination of a Video Portraying
        Marywood Officials as Members of the Nazi Regime .............4

    C.    Marywood's Progressive Discipline Policy ........................5

    D.    Suspension of Plaintiff's Employment and Recommendation
        For Termination of Plaintiff's Tenure and Employment with
        Marywood ...........................................................6

        1.    Breach of Tenure Agreement .................................8

        2.    Violation of Civil Rights Policy ...........................9

        3.    Violation of Marywood's Condition of Computer
            Use Policy ..................................................9

        4.    Violation of Academic Freedom Policy, Professional Ethics
            Policy, University's Mission and Values and Principles
            of Collegiality .............................................11

    E.    Grievance Process and Outcome .....................................12

IV.   STANDARD OF REVIEW ..................................................14

V.    PLAINTIFF HAS NOT SUFFICIENTLY PLED A BREACH OF
      CONTRACT CLAIM AGAINST MARYWOOD ..........................15

      A.    Plaintiff Has Not Sufficiently Pled that Marywood Breached the
            Contract ......................................................................16

            1.    Marywood Is Entitled to Use its Discretion in Disciplining
                  and Terminating its Faculty Members ...........................16

            2.    Marywood Followed its Policies and Procedures with
                  Respect to Suspending and Terminating Plaintiff's Tenure
                  and Employment ...................................................17

      B.    Plaintiff Materially Breached the Agreement Entitling Marywood
            to Suspend Performance ..................................................20

            1.    Plaintiff's Distribution of the Nazi Video Was a Material
                  Breach of His Agreement ..........................................21

            2.    Marywood Clearly Communicated Its Termination of
                  the Agreement .......................................................25

VI.   CONCLUSION ..........................................................28

## TABLE OF AUTHORITIES

CASES                                                                        Page(s)

*2401 Pennsylvania Avenue Corp. v. Federation of Jewish Agencies,*
    466 A.2d 132, 139 (Pa. Super. Ct. 1983) .......................................22

*Baker v. Lafayette College,*
    532 A.2d 399, 403 (Pa. 1987 ...................................................16

*Conley v. Gibson,*
    355 U.S. 41, 45-46 (1957)......................................................14

*General Motors Corp. v. New A.C. Chevrolet,*
    263 F.3d 296 (3d Cir. 2001) .................................................21,25

*Gillard v. Martin,*
    13 A.3d 482, 487 (Pa. Super 2010) .............................................25

*Gray v. Gray,*
    448 Pa. Super. 456 (Pa. Super. Ct. 1996) ....................................22

*J.W.S. Delavau, Inc. v. E. Am. Transp. & Warehousing, Inc.,*
    810 A.2d 672, 686 (Pa. Super. 2002) ..........................................26

*Mayer v. Belichick,*
    605 F.3d 223, 230 (3d Cir. 2010) 477 U.S. 242, 248 (1986) ................3,15

*Murphy v. Duquesne University of the Holy Ghost,*
    777 A.2d 418, 433 (Pa. 2001) .................................................16

*Norfolk Southern Ry. Co. v. Basell USA, Inc.,*
    2008 U.S. Dist. LEXIS 62390, *28-29 (E.D. Pa. Aug. 15, 2008) .........21,27

*Pension Benefit Guar. Corp. v. White Consol. Indus.,*
    998 F.2d 1192 (3d Cir. Pa. 1993) ...............................................3

*Phillips v. Cnty. of Allegheny,*
    515 F.3d 224, 231, 233 (3d Cir. 2008) .........................................14

*Pinker v. Roche Holdings Ltd.,*
    292 F.3d 361, 374 n.7 (3d Cir. 2002) ..........................................15

*Robertson v. Drexel Univ.,*
    991 A.2d 315, 320 (Pa. Super. 2010) ..........................................17

*Shepard v. Temple Univ.,*
    948 A.2d 852 (Pa. Super. 2008) ...............................................17

*Smith v. The Allstate Corporation,*
    2012 U.S. Dist. LEXIS 95950, *8 (July 10, 2012 E.D. Pa.) .............15,21

*Sylvester v. Southwestern Energy Prod. Co.,*
    2009 U.S. Dist. LEXIS 101788, at *5 (M.D. Pa. 2009) .....................26

*Triad Retail Partners v. Diemer,*
    1989 U.S. Dist. LEXIS 2406, at *9 (E.D. Pa. 1989) .........................26

*Wallace v. Sys. & Computer Tech. Corp.,*
    1997 U.S. Dist. LEXIS 14677, *18 (E.D. Pa. 1997) .........................15

*Widmer Engineering, Inc. v. Dufalla,*
    837 A.2d 459, 467 (Pa. Super. 2003) .........................................26


**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12(b)(6) ...............................2,3,14,15

Defendant Marywood University (hereinafter referred to as "Defendant" or "Marywood"), by and through its undersigned counsel, submits the following memorandum of law in support of its Motion to Dismiss the Complaint filed by Frederick F. Fagal, Jr. ("Plaintiff"), pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

## I.   PROCEDURAL HISTORY

On or around December 17, 2014, Plaintiff filed a one-count Complaint against Defendant in the United States District Court for the Middle District of Pennsylvania.  Specifically, Count I of the Complaint asserts a common law claim for breach of contract.

## II.   STATEMENT OF QUESTIONS

Whether the Complaint should be dismissed with prejudice because it fails to state a claim as a matter of law against Defendant.

Suggested answer:  Yes, the Complaint should be dismissed with prejudice.

## III.   STATEMENT OF FACTS[1]

Defendant Marywood University is a university sponsored by the Congregation of the Sisters, Servants of the Immaculate Heart of Mary, and is located in Scranton, Pennsylvania.  (Compl. ¶ 1).  Plaintiff became a member of

---

[1] For purposes of this motion only, Defendant assumes that the allegations set forth in the Complaint are true and accurate.

Marywood's faculty in the fall semester of 1987 and attained tenure in September 1994. (Compl. ¶¶ 4, 5).

### A.   Marywood's Mission and Core Values

Marywood University "roots itself in the principle of justice." (Exhibit 1, Mission and Core Values).[2]  Among other things, its stated mission is to offer students "a welcoming and supporting environment" and to "educate students to live responsibly in a diverse and interdependent world." (Ex. 1, Mission and Core Values).  Moreover, Marywood's "core values" include "respect for the value of each human being, for diversity in the context of vibrant community, and for the earth and all creation." (Ex. 1, Mission and Core Values).

---

[2]  Plaintiff references Marywood's February 8, 2012 letter and attachments throughout his Complaint (*see, e.g*, Compl. ¶37); however, he does not attach these documents to his pleading.  Since Plaintiff's allegations are based largely on this letter and enclosures and these documents form the basis for his claim, Defendant attaches Marywood's February 8, 2012 letter with enclosures to the Declaration of Stephanie J. Peet, attached hereto as **Exhibit A,** as **Exhibit 1.**  The Court may properly consider these documents for purposes of deciding Defendant's Rule 12(b)(6) motion to dismiss.  *See Mayer v. Belichick,* 605 F.3d 223, 230 (3d Cir. 2010) (holding "[i]n deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents."); *see also Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192 (3d Cir. Pa. 1993) (holding "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

3

**B.**   **Fagal's Creation and Dissemination of a Video Portraying Marywood Officials as Members of the Nazi Regime**

On January 13, 2012, Plaintiff sent an email from his personal email address to Marywood faculty members at their Marywood email addresses "criticiz[ing] the Marywood administration" and including hyperlinks to two videos "criticizing Sister Anne Munley, President of Marywood, and several other administrators." (Compl. ¶¶ 23, 24) (1/13/12 Email from Plaintiff, Exhibit 2)[3].   Plaintiff signed this email in his capacity as an Associate Professor at Marywood. (Ex. 2.)  Notably, in his email, Plaintiff advises the faculty recipients about Marywood's Conditions of Computer Use policy, even citing a specific page of the policy, and suggests they respond to him using their personal email addresses. (Ex. 2.)  In these videos—where Plaintiff replaced English subtitles corresponding to several scenes from a well-known foreign movie—Plaintiff depicts Sister Munley as Adolf Hitler and other University officials as Nazi leaders. (Compl. ¶ 25; Ex. 1) (Stills of Plaintiff's Youtube Video, Exhibit 3)[4].   In addition to emailing to members of the Marywood community, Plaintiff also posted these videos on YouTube. (Compl. ¶ 24).

---

[3]  Defendant attaches to the Declaration of Stephanie J. Peet, Plaintiff's 1/13/12 Email to Marywood faculty and a list of those who received the email as **Exhibit 2**, as Plaintiff's allegations are also based upon and reference this email.
[4]  Defendant attaches to the Declaration of Stephanie J. Peet, select stills of Plaintiff's Youtube video depicting Sister Munley as Hitler and likening Marywood faculty to the Nazi regime as **Exhibit 3**.  Plaintiff relies upon his distribution of this video and makes reference to it in his Complaint.

Case 3:14-cv-02404-ARC   Document 14-1   Filed 02/23/15   Page 9 of 32

### C.   Marywood's Progressive Discipline Policy

Marywood has a Progressive Discipline Policy which outlines Marywood's process in cases of minor and serious infractions of University policy. The policy "recognizes personal and professional problems that may be rectified by an informal educational process, as well as serious violations of professional responsibilities implicating possible recommendation for suspension or dismissal." (Compl., Ex. E.) The policy further provides in relevant part that:

> Commencement. Disciplinary action *may* be initiated by a complaint . . . .
>
> . . .
>
> Meeting with Administrator. The administrator receiving the complaint shall discuss the matter with the faculty member in a conditional conference. . . . If, however, additional light is not shed on the allegation or an explanation is not satisfactory, the administrator will specify corrective action to be taken, and the discussion will constitute an oral warning.
>
> Written warning. If the alleged problem continues or additional complaints are received, the immediate supervisor or dean must notify the Vice President for Academic Affairs, who shall conduct a preliminary · investigation concerning the merits of the complaint. A written warning to the faculty member *may* follow where circumstances indicate that the problem is not resolved.   . . .
>
> Suspension. *The faculty member may be suspended by the Vice President for Academic Affairs at any time during the proceedings involving him or her.* Suspension is justified if immediate harm to the faculty member of others is threatened by the person's continuance in the faculty position. Unless in direct violation of the law, any such suspension should be with pay.
>
> . . .

Faculty members have the right to convene an ad hoc committee in order to
appeal either a decision to suspend the faculty member or a decision to
dismiss the faculty member.

(Compl., Ex. E.)

### D.   Suspension of Plaintiff's Employment and Recommendation for Termination of Plaintiff's Tenure and Employment with Marywood

On January 23, 2012, President Munley met with Plaintiff to discuss the

videos that Plaintiff purportedly emailed and posted on YouTube. (Compl. ¶ 26;

Exhibit A).   During this meeting, Plaintiff acknowledged that he indeed posted the

videos. (Compl. ¶¶ 26, 27).   Accordingly, Sister Munley told Plaintiff that his

employment was suspended effective immediately. (Compl. ¶ 27).

On January 24, 2012, Sister Munley sent Plaintiff a letter stating that she

was "recommending that [his] tenure and employment with Marywood be

terminated immediately." (Compl. ¶ 33.)  In this letter, Sister Munley provided

Plaintiff with a Statement of Charges and advised that she was "prepared to send . .

. to a duly appointed faculty committee for review along with the emails and

videos [he] forwarded to members of our community." (Compl. ¶ 34.)  On

February 2, 2012, Plaintiff, through his attorney, requested that the University

convene two ad hoc faculty committees—one for Sister Munley's decision to

suspend him, and one for her recommendation to terminate him. (Compl. ¶ 49).

Plaintiff claims that Marywood rejected his request to convene an ad hoc

committee to review his suspension. (Compl. ¶ 50).

6

Plaintiff also claims that he, through his attorney, notified Sister Munley that a portion of the Statement of Charges was missing. (Compl. ¶¶ 35, 36). Accordingly, by letter dated February 8, 2012, Sister Munley sent Plaintiff a revised Statement of Charges. (Compl. ¶ 36). Among other things, Sister Munley stated in this letter:

> As a result of your breach of a material term of your obligations as a tenured professor, I am recommending that your tenure and employment with Marywood be terminated immediately. The University will, however, pay you the remainder of your 2011-12 Agreement and keep you on benefits through August, 2012. This recommendation comes after much consideration of and reflection on your actions which I find to be highly offensive and directly contrary to Marywood's Mission and Values, your tenure agreement and your obligation as an employee of this University to conduct yourself in accordance with our policies and values.

(Ex. 1.) Additionally, Sister Munley stated:

> After reviewing the subtitles you authored and transposed onto a film depicting Adolf Hitler and the Nazi regime, I find that you deliberately and maliciously violated our principles and your commitment to this University by: 1) depicting Executive Officers and me in an offensive and hostile light, including making highly inappropriate comments about family members of these individuals; 2) using sexually explicit, offensive and insulting language; and 3) portraying an image of Marywood in a manner that was an affront to the University community as a whole.

Case 3:14-cv-02404-ARC   Document 14-1   Filed 02/23/15   Page 12 of 32

(Ex. 1.)  Accordingly, Sister Munley advised Plaintiff that she was "recommending that [his] tenure and employment be terminated" and provided him with the following Statement of Charges.

### 1.   Breach of Tenure Agreement

Marywood's Contractual Agreements with Faculty Members policy ("Tenure Agreement") provides in relevant part:

> [Tenure] implies a mutual commitment on the part of the faculty member and the University and cannot be taken lightly.  The commitment of a faculty member who requests tenure is as deep and binding on the faculty member as it is on the University. . . [S]ubmission to the University of an application for tenure suggests a strong acceptance by that individual of the goals and objectives of the University.  The request represents commitment to work jointly with faculty, students, administrators, and members of the staff for the growth and welfare of the University. . .
>
> Once tenure is granted, it will be discontinued only for grave reasons, which may include moral turpitude, flagrant abuse of academic freedom, or lack of professional competency as demonstrated in instruction and/or research.

(Compl., Ex. D.)  Sister Munley advised Plaintiff that his decision to author and disseminate the videos was a "breach of [his] commitment to Marywood" and was "in direct contravention and spirit of Marywood's Mission, Core Values and Objectives."  (Ex. 1.)  Specifically, Sister Munley stated:

> Depicting the University's President as Adolf Hitler, a man who is responsible for torturing and killing in excess

8

Case 3:14-cv-02404-ARC   Document 14-1   Filed 02/23/15   Page 13 of 32

of 6 million people simply because they are Jewish is an intentional, malicious and blatant violation of your tenure commitments. Portraying other University officials as Nazi leaders, using crude and vulgar language and belittling University officials also violates your agreement with Marywood. You gravely injured our community by your actions.

(Ex. 1.)

### 2.   Violation of Civil Rights Policy

Marywood has a Civil Rights Policy, which provides in pertinent part:

> Marywood University does not condone and will not tolerate discrimination, harassment, or assault by any member of the Marywood community upon another individual, regardless of whether the action is based on race, sex, color, national or ethnic origin, age, creed, ancestry, religion, disability or any other legally protected status.

(Ex. 1, Civil Rights Policy). Sister Munley advised Plaintiff that in his video, he attempts to make light of the Nazi regime, "which evokes deep personal reminders of the extreme hate of members of the Jewish faith," and further demeans and belittles Dr. Levine and his family and launches other personal attacks on executive officers. (Ex. 1.) According to Sister Munley, "[h]arassment of this type directly violates our Civil Rights Policy and will not be tolerated." (Ex. 1.)

### 3.   Violation of Marywood's Conditions of Computer Use Policy

Marywood has a Conditions of Computer Use policy ("Computer Policy"), which provides in relevant part:

9

> Users of Marywood University computing facilities and
> services are held to high ethical standards. These
> conditions of use are based on the 'spiritual, ethical and
> religious values and traditions of service' expressed in
> the Mission Statement in the University. They
> underscore responsible, ethical, legal, and secure use of
> the campus-wide information system, and they derive
> from standards of common sense and common decency
> that apply to any shared resource. Responsibility extends
> to access, use of information, and distribution of data.
>
> Marywood University administrators, faculty members,
> staff, and students may use the computers in all public
> computing facilities for research work and classroom
> assignments . . .
>
> Access to the Marywood computer system is not a right,
> but a privilege. When individuals log on to the
> University's computer system, they become responsible
> for adhering to University policy and state and federal
> laws governing individual privacy rights and
> confidentiality. The following list is not all-inclusive:
>
> . . .
>
> They respect the civil rights of others to an open and
> hospitable environment, regardless of race, sex, color,
> national or ethnic origin, age, creed, ancestry, religion,
> disability, or any other legally protected status, and with
> respect to sexual harassment including e-mailing
> inappropriate messages.
>
> . . .

(Ex. 1, Computer Policy). Sister Munley advised Plaintiff that he violated the

Conditions of Computer Use policy because he did not respect the civil rights of

others when he authored and disseminated the video at issue. (Ex. 1.) Plaintiff

was unequivocally aware of this policy when he distributed his video, as he

expressly references it in the distribution email. (Ex. 2.) In fact, he advised the

10

recipients of his email that if they wanted to email him about this issue, they should "*send it from anywhere but Marywood.*"  (Ex. 2) (emphasis in original).

### 4.   Violation of Academic Freedom Policy, Professional Ethics Policy, University's Mission and Values and Principles of Collegiality

Marywood's Academic Freedom Policy provides in pertinent part:

> [A]cademic freedom presupposes, first of all, personal integrity in dealing with students, peers and officers of the University.  Second, it presumes scholarly competence, observance of the professional standards of one's discipline, commitment to the stated mission of the University, and openness to having one's ideas and findings subjected to the judgment of one's peers.

(Ex. 1, Academic Freedom Policy).  Additionally, Marywood's Professional Ethics policy provides in relevant part:

> The American Association of University Professors recognizes that membership in the academic profession carries with it special responsibility . . . [P]rofessors devote their energies to developing and improving their scholarly competence . . . Professors do not discriminate against or harass colleagues. . . [P]rofessors show due respect for the opinions of others.

(Ex. 1, Professional Ethics Policy).  Sister Munley advised Plaintiff that his video was devoid of personal integrity, had no scholarly competence and was in "total disregard of the stated mission of the University." (Ex. 1.)  Moreover, Sister Munley advised Plaintiff that by disseminating the videos to the Marywood community and posting them on the internet, he invoked images of hatred and

11

ridiculed his colleagues. Accordingly, Sister Munley advised Plaintiff that he was in violation of the University's Academic Freedom and Professional Ethics policies, in addition to Marywood's Mission and Values "which are at the core of what this University and all for which this community stands." (Ex. 1.)

Sister Munley notified Planitiff that she was prepared to send the statement of charges to a duly appointed faculty committee for review along with the emails and videos at issue, and that the committee may agree or disagree with her recommendation. (Ex. 1.) Sister Munley also told Plaintiff that she would finalize her decision upon receipt of the committee's determination, or based on her own findings and conclusions in the event he chose to forego the faculty review. (Ex. 1.)

### E.   Grievance Process and Outcome

On February 22, 2012, Plaintiff filed a grievance against Sister Munley under Marywood's "Faculty Grievances and Appeals" policy. (Compl. ¶ 52). In the grievance, Plaintiff argued that (1) he was improperly suspended because President Munley, not Dr. Levine, informed him of the suspension and because he was not a cause of immediate harm to himself or to others; (2) President Munley improperly moved to terminate his employment and tenure without remedial measures; and (3) he had not had an opportunity to convene an ad hoc committee to appeal his suspension. (Compl. ¶ 53.) By letter dated March 26, 2012, Erin A.

Sadlack, Ph.D., Chair of the Faculty Grievance Committee, advised Plaintiff that the committee reviewed his grievance and found no evidence of improper action on President Munley's part which would constitute a legitimate grievance. (Compl. ¶ 54.)

On April 3, 2012, Sister Munley sent Plaintiff a correspondence regarding the grievance process and her final decision with respect to his employment. (Compl., Ex. H.) Specifically, Sister Munley advised Plaintiff that since he "chose not to file a grievance under Marywood University Faculty Grievance and Appeals Policy and chose not to convene an ad hoc committee to review [her] recommendation as [she] had offered to [him] on two occasions," the grievance process is now complete and she decided to finalize her recommendation. (Compl., Ex. H.) Accordingly, Sister Munley notified Plaintiff that his tenure and employment with Marywood were terminated. (Compl., Ex. H.) With that said, Sister Munley also advised Plaintiff that she will convene two faculty ad hoc committees to appeal her decision to suspend him as well as her decision to terminate his employment and tenure, "despite the fact that on two separate occasions [he] refused [her] offer and did not choose to convene an ad hoc committee to review [his] decision to suspend [him] and [her] recommendation to terminate [his] employment and tenure before [she] finalized [her] decision."

Case 3:14-cv-02404-ARC   Document 14-1   Filed 02/23/15   Page 18 of 32

(Compl., Ex. H.)  Sister Munley instructed Plaintiff to select a tenured faculty member for the ad hoc committee.  (Compl., Ex. H.)

On July 2, 2012, a group of Marywood faculty known as the Faculty Senate Ad Hoc Hearing Committee ("FSAHHC") issued a document titled, "Review of Sister Anne Munley's Decision to Terminate the Employment and Tenure of Dr. Frederick Fagal." (Compl. ¶ 60).  Ultimately, the FSAHHC concurred with President Munley's decision to revoke the tenure and terminate Plaintiff's employment.  (Compl. ¶ 61).  By letter dated July 13, 2012, Sister Munley advised Plaintiff that her "decision to terminate [his] employment with Marywood University and [his] tenure effective April 3, 2012 stands."  (Compl. ¶ 65.) Marywood University continued to pay Plaintiff his agreed-upon salary through August 2012.  (Compl. ¶ 66).

## IV.   STANDARD OF REVIEW

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that, in response to a pleading, a defense of "failure to state a claim upon which relief can be granted" may be raised by motion.  A motion to dismiss tests the legal sufficiency of the claims asserted in a plaintiff's complaint. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the Court "accept[s] all factual allegations as true, [and] construe[s] the complaint in the light most favorable to the plaintiff . . . ." *Phillips v. Cnty. of Allegheny*, 515

F.3d 224, 231, 233 (3d Cir. 2008) (*quoting Pinker v. Roche Holdings Ltd.,* 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

Rule 12(b)(6) provides for dismissal of claims that lack a cognizable legal theory. *Wallace v. Sys. & Computer Tech. Corp.,* 1997 U.S. Dist. LEXIS 14677, *18 (E.D. Pa. 1997). "[The Court] may consider authentic documents that form the basis for the [plaintiff's] claims." *Smith v. The Allstate Corporation,* 2012 U.S. Dist. LEXIS 95950, *8 (July 10, 2012 E.D. Pa.) (citing *Mayer v. Belichick,* 605 F.3d 223, 230 (3d Cir. 2010) ("[A] court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as indisputably authentic documents if the complainant's claims are based upon these documents.").

## V.   PLAINTIFF HAS NOT SUFFICIENTLY PLED A BREACH OF CONTRACT CLAIM AGAINST MARYWOOD.

Plaintiff's sole contention is that Marywood University breached its agreement with him when it suspended and then terminated his employment following notice that Plaintiff posted and disseminated videos depicting numerous Marywood leaders as members of the Nazi regime. However, Plaintiff's Complaint fails to state a claim upon which relief can be granted as a matter of law. Even assuming all of Plaintiff's allegations are true, Plaintiff fails to adequately plead that Marywood breached its agreement with him. Moreover, even if Plaintiff sufficiently pleads that Marywood somehow deviated from its

agreement with him—which it did not— Marywood was entitled to suspend performance of its contract with Plaintiff because he materially breached his agreement with the University.

### A. Plaintiff Has Not Sufficiently Pled that Marywood Breached the Contract.

Plaintiff's allegations do not set forth a viable claim for breach of contract against Marywood. As an initial matter, Marywood is entitled to exercise discretion in terminating its faculty and aligning such decisions with the mission and goals of the University. Further, even accepting all of Plaintiff's allegations as true, it is clear that Marywood adhered to its policies and procedures, even after informing Plaintiff of his material breach. Therefore, Plaintiff's breach of contract claim must fail.

### 1. Marywood Is Entitled to Use its Discretion in Disciplining and Terminating its Faculty Members.

It is well recognized that a university is entitled to use its discretion in hiring and terminating faculty and interpreting its own policies and procedures, and that a tenured professor has no breach of contract claim against a university for allegedly making a wrong decision when it terminated his employment. *See Murphy v. Duquesne University of the Holy Ghost,* 777 A.2d 418, 433 (Pa. 2001) ("while [a professor] is free to assert in a court of law that the process of forfeiture that was afforded him did not comply with the contract terms, he is not free to demand that a jury re-consider and re-decide the merits of his termination"); *Baker v. Lafayette*

*College*, 532 A.2d 399, 403 (Pa. 1987) ("This Court has no jurisdiction to review the factual determinations of a college's governing body unless it can be clearly demonstrated that that body violated its own procedures."); *Robertson v. Drexel Univ.*, 991 A.2d 315, 320 (Pa. Super. 2010) (private parties, including religious and educational institutions, may draft employment contracts which restrict review of professional employees' qualifications to an internal process that, if conducted in good faith, is final within the institution and precludes or prohibits review in a court of law); *Shepard v. Temple Univ.*, 948 A.2d 852 (Pa. Super. 2008) (where assistant professor claimed that the denial of her application for tenure constituted a breach of her employment contract with the university, the court concluded that the decision regarding the assistant professor's tenure was not a proper judicial function since the evaluation of her suitability to the university's educational needs, goals, and philosophies necessarily involved many subjective, non-quantifiable factors, which were best performed by the university and not judges). Accordingly, Marywood is afforded deference in its internal decisions and adherence to procedures.

2. **Marywood Followed its Policies and Procedures with Respect to Suspending and Terminating Plaintiff's Tenure and Employment.**

Plaintiff alleges in his Complaint that Marywood did not follow its Progressive Discipline Policy, Faculty Grievances and Appeals Policy and Civil Rights Complaint Procedures when it suspended and then terminated his tenure

17

and employment. However, even accepting all of Plaintiff's allegations as true—including the documents upon which Plaintiff relies to support his claim but fails to attach to his pleading—it is clear that Plaintiff fails to sufficiently plead any breach by Marywood.

With respect to the Progressive Discipline Policy, Plaintiff's alleges that Marywood breached its Progressive Discipline Policy because his discipline was not progressive, President Munley advised of Plaintiff's suspension, there was no immediate harm to others by Plaintiff continuing in his position to support his suspension and Plaintiff was not offered an ad hoc panel to review his suspension. Plaintiff's own allegations do not support a breach by Marywood. The policy expressly states that a faculty member may be suspended at any time during their discipline proceeding and does not require that it be issued in a progressive fashion in all instances. (Compl., Ex. E.) It is immaterial that President Munley, as opposed to the Vice President for Academic Affairs, delivered the news of Plaintiff's suspension to him. Further, the policy does not provide that a suspension may only be justified by a threat of immediate harm, but rather it leaves to the University other actions that might justify suspension. In any event, "harm" includes the type of emotional distress felt by the faculty members who received Plaintiff's video. Finally, Marywood was not obligated to offer two review panels, one to review his suspension and one to review his termination, since both decisions were premised on the same behavior and would have been redundant.

18

Notwithstanding, Marywood did expressly afford Plaintiff the opportunity to have an ad hoc committee to review his suspension.  (Compl., Ex. H.)  His blanket statement that he was denied the opportunity to have his suspension reviewed is contradicted by the very documents upon which he relies to support his claim against Marywood.

Plaintiff baldly claims that Marywood's decision to terminate his tenure and employment was related to his filing a grievance in violation of its Faculty Grievances and Appeals Policy, which protects faculty from retaliation for filing grievances.  However, the allegations in the Complaint demonstrate that Plaintiff's suspension and subsequent termination were initiated several weeks ***before*** Plaintiff filed a grievance, and were based on Plaintiff's distribution of the abhorrent and highly offensive Nazi videos.  Accordingly, Plaintiff's argument regarding the Faculty Grievances and Appeals Policy fails as a matter of law.

Plaintiff's conclusory statement that Marywood violated its Civil Rights Complaint Procedure is similarly without merit.  Marywood's Civil Rights Policy expressly states that the University "will not tolerate discrimination, harassment, or assault by any member of the Marywood community upon another individual."  (Ex. 1, Civil Rights Policy.)  Marywood's Civil Rights Complaint Procedures applies to individuals in the Marywood community and advises individuals on how to file a complaint.  Marywood's Civil Rights Complaint Procedures does not require that a complaint be filed before the University is permitted to take any

action on discrimination or harassment the University administration learns of or experiences first hand, and the University is free to ameliorate intolerant conduct— including the dissemination of hateful, vulgar and offensive videos to members of the Marywood community—at its discretion. Even accepting all of Plaintiff's allegations as true, Plaintiff's Complaint does not sufficiently plead that Marywood violated its Civil Rights Complaint Procedure.[5]

Simply put, Plaintiff's breach of contract claim is premised on conclusory statements of procedural deviance, unsupported by the very documents upon which he bases his claim. Accordingly, Plaintiff cannot state a claim for relief and his Complaint should be dismissed as a matter of law.

## B. **Plaintiff Materially Breached the Agreement Entitling Marywood to Suspend Performance.**

Even if Marywood breached its agreement with Plaintiff—which it denies—Marywood was entitled to suspend performance because Plaintiff materially breached his obligations to the University when he distributed an egregiously offensive video to Marywood faculty members depicting other Marywood personnel as Adolph Hitler and members of the Nazi regime. "A material breach by one party entitles the non-breaching party to suspend performance of the contract. . . . Consequently, a party who has committed a material breach may not

---

[5] Interestingly, Plaintiff's Complaint does sufficiently allege that ***Plaintiff*** violated Marywood's Civil Rights Complaint Procedure.

insist upon performance of the contract. . . ." *Smith*, 2012 U.S. Dist. LEXIS 95950, *19-20 (citations omitted).

### 1. Plaintiff's Distribution of the Nazi Video Was a Material Breach of His Agreement.

Plaintiff's distribution of his video depicting University leaders as members of the Nazi regime constitutes a material breach as a matter of law. "A breach is material when it goes to the 'essence of the contract' and 'will deprive the injured party of the benefit that is justifiably expected' under the contract." *General Motors Corp. v. New A.C. Chevrolet*, 263 F.3d 296 (3d Cir. 2001) (quoting 2 E. Allan Farnsworth, Farnsworth on Contracts § 8.16, at 497 (2d ed. 1998)). Although the question of whether a breach is material is generally an issue of fact, this issue is one for judicial determination when it "admits only one reasonable answer." *Smith*, 2012 U.S. Dist. LEXIS 95950, *19-20 (citations omitted.); *see also Norfolk S. Ry. Co. v. Basell USA Inc.*, 512 F.3d 86 (3d Cir. Pa. 2008) ("[I]f the materiality question in a given case admits of only one reasonable answer (because the evidence on the point is either undisputed or sufficiently lopsided), then the court must intervene and address what is ordinarily a factual question as a question of law."). "Whether a breach is so substantial as to justify an injured party's regarding the whole transaction as at an end 'is a question of degree; and it must be answered by weighing the consequences in the actual custom of men in the performance of contracts similar to the one that is involved in the specific case.'"

*2401 Pennsylvania Avenue Corp. v. Federation of Jewish Agencies*, 466 A.2d 132, 139 (Pa. Super. Ct. 1983) (quoting 4 Corbin, Contracts, § 946 (1951)); *see also Gray v. Gray*, 448 Pa. Super. 456 (Pa. Super. Ct. 1996) (same). Therefore, the Court should consider the consequences of Plaintiff's actions within the context of similar contractual relationships between religious institutions and professors.

Here, the question of whether Plaintiff materially breached his agreement with Maywood can have "only one reasonable answer." That is, when Plaintiff disseminated a message and video to Marywood's faith-based community using vulgar language and depicting Marywood's personnel as members of the Nazi regime, he materially breached Marywood's tenure policy, civil rights policy, conditions of computer use policy, academic freedom policy, professional ethics policy and Marywood's Mission and Values.

When Plaintiff accepted his tenure position with Marywood, he agreed to abide by Marywood's Tenure Policy, which specifically states that "submission to the University of an application for tenure suggest a strong acceptance by that individual of the mission, goals and objectives of the University." (Compl., Ex. D.) Marywood's Mission and Core Values include "a welcoming and supporting environment" and to "educate students to live responsibly in a diverse and interdependent world." Moreover, Marywood's "core values" include "respect for the value of each human being, for diversity in the context of vibrant community, and for the earth and all creation." The Tenure Policy also states that the tenured

22

professor will be committed to "work jointly with faculty, students, administrators and staff for the growth and welfare of the University." (Compl., Ex. D.) Disseminating a message and video to the Marywood Community which uses vulgar language and belittles its leaders through personal insults does not create a "supportive environment" or foster diversity. On the contrary, this conduct directly contradicts the goal of working with other faculty for the welfare of Marywood.

In addition, Plaintiff breached his obligations under Marywood's Civil Rights Policy, which declares Marywood's intolerance for discrimination, harassment, or assault based on religion, among other protected characteristics. In Plaintiff's video, he not only makes light of the Nazi regime and evokes deeply painful reminders of the hate demonstrated for members of the Jewish faith, but he also demeans executive officers and their families. Plaintiff's conduct is the antithesis of the spirit of Marywood's Civil Rights Policy which seeks to create an accepting and discrimination-free environment.

Plaintiff also violated Marywood's Academic Freedom Policy and Professional Ethics Policy. Marywood's policy provides that academic freedom "presupposed, first of all, personal integrity in dealing with students, peers and officers of the University. Second, it presumes scholarly competence, observance of the professional standards of one's discipline, commitment to the stated mission of the University." (Ex. 1, Academic Freedom Policy.) Plaintiff does not assert,

23

nor could he, that his video was in pursuit of any scholarly objective. Moreover, Plaintiff's dissemination of his video was devoid of personal integrity and in complete disregard of professional standards.

Finally, Plaintiff's actions breached Marywood's Computer Policy. Marywood's Computer Policy sets forth that users should exhibit responsible and ethical use of the University's computing system and should use common sense and common decency in distributing data. (Ex. 1, Computer Policy.) The Computer Policy also states that when using Marywood's computer system, individuals should respect the civil rights of others and should not email inappropriate messages. (Ex. 1. Computer Policy.) Plaintiff admits that he used Marywood's system by emailing members of the University community at their Marywood email accounts. Plaintiff's offensive video was devoid of common sense and decency and in no way respected the recipients' civil rights.

Simply put, when Plaintiff accepted his tenure position with Marywood, he agreed to uphold Marywood's mission to foster diversity and acceptance and to cultivate an environment conducive to growth and learning. However, Plaintiff materially breached Marywood's policies and principles as well as his commitment to the University when he depicted Marywood leaders as members of the Nazi regime, used sexually explicit, offensive and insulting language and portrayed an image of Marywood in a manner that is an affront to the University community as a whole.

24

## 2. **Marywood Clearly Communicated Its Termination of the Agreement.**

Even accepting as true all of Plaintiff's allegations in the Complaint, there is no question that:

- Marywood expressly communicated to Plaintiff its belief that Plaintiff had breached material terms of his obligations as a tenured professor;

- Marywood took immediate measures to address Plaintiff's material breach; and

- Marywood suspended Plaintiff's employment and did not accept any further performance from him under his agreement.

Simply stated, Marywood believed that Plaintiff materially breached his agreement, and it properly communicated its belief to Plaintiff that he materially breached his agreement. Accordingly, Marywood did not waive Plaintiff's breach.

As described above, Plaintiff breached material terms of his obligations as a tenured professor. "When one party commits a material breach of contract, the other party has a choice between two inconsistent rights -- he or she can either elect to allege a total breach, terminate the contract and bring an action, or, instead, elect to keep the contract in force, declare the default only a partial breach, and recover those damages caused by that partial breach. . . ." *Gillard v. Martin*, 13 A.3d 482, 487 (Pa. Super 2010); *see also Gen. Motors Corp.*, 263 F.3d at 315 n.5 (3d Cir. 2001) ("[T]he Third Circuit has recognized that 'when one party to a

25

contract commits a material breach, the non-breacher has the option of . . .

terminating the agreement in its entirety.'"). Marywood elected to notify Plaintiff

of his total breach and terminate the contract. Consequently, Marywood had no

further contractual obligations to him. *See, e.g., Sylvester v. Southwestern Energy

Prod. Co.*, 2009 U.S. Dist. LEXIS 101788, at \*5 (M.D. Pa. 2009) (a material

breach of contract by one party discharges the other party's duties); *Triad Retail

Partners v. Diemer*, 1989 U.S. Dist. LEXIS 2406, at \*9 (E.D. Pa. 1989) (the first

material breach discharges the other party's remaining obligations under the

contract).

Marywood's actions put Plaintiff on notice that it considered Plaintiff's

conduct a material breach of his agreement. That is, upon learning about

Plaintiff's actions, Marywood advised Plaintiff that "[a]s a result of your breach of

a material term of your obligations as a tenured professor," it recommended that

his tenure and employment with the University be terminated immediately.   [Ex.

1]  At that point, Marywood was entitled to suspend performance of the contract.

*Widmer Engineering, Inc. v. Dufalla*, 837 A.2d 459, 467 (Pa. Super. 2003) (noting

"settled principle of contract law: a material breach by one party to a contract

entitles the non-breaching party to suspend performance"); *J.W.S. Delavau, Inc. v.

E. Am. Transp. & Warehousing, Inc.*, 810 A.2d 672, 686 (Pa. Super. 2002)

(holding "[u]nder Pennsylvania law, [a] party that materially breaches a contract

cannot be awarded compensation for damages resulting from the other party's

26

subsequent refusal to perform its obligations under the contract."). However, Plaintiff insisted that he be afforded committee review of his suspension and termination according to the agreement. "[T]he general rule that one party's uncured, material failure of performance will suspend or discharge the other party's duty to perform does not apply where the latter party, with knowledge of the facts . . . insists that the defaulting party continue to render future performance." *Norfolk Southern Ry. Co. v. Basell USA, Inc.*, 2008 U.S. Dist. LEXIS 62390, *28-29 (E.D. Pa. Aug. 15, 2008). Though Marywood's actions signaled clearly and consistently that it sought to end Plaintiff's contract due to his material breach, Marywood permitted faculty committees to review Plaintiff's suspension and proposed termination out of an abundance of caution. *See id.*, 2008 U.S. Dist. LEXIS 62390, at *29 (a non-breaching party need not suspend performance of its duties after a breach of contract and risk exposure to liability should the breach be found to be immaterial). Therefore, any further performance under the contract by Marywood may not be considered waiver of its ability to assert material breach as a defense.

27

## VI.   <u>CONCLUSION</u>

Based on the foregoing, Defendant respectfully requests that this Court grant Defendant's Motion and dismiss Plaintiff's Complaint in its entirety, with prejudice.

Respectfully submitted,

*/s/ Stephanie Peet*
Stephanie J. Peet (PA ID: 91744)
Katharine Thomas Batista (PA ID: 312366)
**JACKSON LEWIS P.C.**
Three Parkway
1601 Cherry Street, Suite 1350
Philadelphia, PA 19102
T: (267) 319-7802
F: (215) 399-2249
stephanie.peet@jacksonlewis.com
katharine.thomas@jacksonlewis.com

*Attorneys for Defendant*

Dated: 2/20/15