# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FREDERICK F. FAGAL, JR., | |
| Plaintiff, | **CIVIL ACTION NO.:** |
| v. | **3:14-cv-02404-ARC** |
| MARYWOOD UNIVERSITY, | |
| Defendant. | |

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

**JACKSON LEWIS P.C.**

*/s/ Stephanie Peet*
Stephanie J. Peet (PA 91744)
Asima J. Ahmad (PA 316001)
Three Parkway
1601 Cherry Street, Suite 1350
Philadelphia, PA 19102-1317
T: (267) 319-7802
F: (215) 399-2249
stephanie.peet@jacksonlewis.com
asima.ahmad@jacksonlewis.com
*ATTORNEYS FOR DEFENDANT*

Dated: December 12, 2016

## <u>Table of Contents</u>

I.   PRELIMINARY STATEMENT .......................................................................1

II.  ARGUMENT ............................................................................................2

    A.   Plaintiff Claims That He Was Entitled To Certain Procedures *Where No Such Obligation Existed.* ...........................................................................2

    B.   Plaintiff Has Not, And Cannot, Establish That He Suffered Damages *As A Result of* Marywood University's Conduct. ...........................................6

    C.   Plaintiff Cannot Mischaracterize Key Testimony Or Ignore Relevant Evidence To Establish A Breach of Contract............................................8

    D.   Plaintiff Cannot Rely Upon Purported Subsequent Remedial Measures to Somehow Demonstrate Prior Wrongdoing. ............................................12

III. CONCLUSION.............................................................................................14

## <u>Table of Contents of Exhibits</u>

Exhibit 1    Relevant Portion of Deposition Transcript of Edward Joseph O'Brien

Exhibit 2    December 2, 2011 Letter from Plaintiff Frederick Fagal, Jr. to Alan ....
Levine, Ph.D.

# Table of Authorities

**Cases**     **Page(s)**

Gen. State Auth. v. Coleman Cable & Wire Co.,
    27 Pa. Cmwlth. 385, 365 A.2d 1347 (1976)..........................................................6

Kelly v. Crown Equip. Co.,
    970 F.2d 1273 (3d Cir. 1992) ...............................................................13

Petree v. Victor Fluid Power, Inc.,
    831 F.2d 1191 (3d Cir. 1987) ...............................................................13

## **Other Authorities**

Federal Rules of Evidence 407 .................................................................12

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FREDERICK F. FAGAL, JR.,

               Plaintiff,

    v.

MARYWOOD UNIVERSITY,

               Defendant.

**CIVIL ACTION NO.:**

**3:14-cv-02404-ARC**

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT

Defendant Marywood University ("Defendant"), by and through its undersigned counsel, submits this Brief in Opposition to Plaintiff's Motion for Summary Judgment.

## I.    PRELIMINARY STATEMENT

Plaintiff's motion for summary judgment ("Plaintiff's Motion") boils down to a series of *miss-es*: (1) a *mis*understanding of the required elements of a breach of contract claim; (2) a *mis*conception of Marywood University's policies and procedures; (3) a *mis*leading description of key deposition testimony; and (4) a *mis*taken reliance on purported subsequent remedial measures. Put another way, Plaintiff argues that Marywood University failed to follow specific requirements in suspending and terminating his tenure and employment ***when there were no such requirements***, and he entirely ignores the fact that ***any damages he suffered were***

*the result of his own decisions and actions*, and not those of Marywood University.  Indeed, the absence of legal authority and inaccurate descriptions of key evidence speaks volumes for the lack of support for Plaintiff's position.

Simply put, Plaintiff does not come close to demonstrating that summary judgment as a matter of law is warranted on this issue.  On the contrary, as discussed in Marywood University's moving papers, Marywood University prevails on each element of the breach of contract claim and is entitled to judgment as a matter of law.

## II.   <u>ARGUMENT</u>

### A.   Plaintiff Claims That He Was Entitled To Certain Procedures *Where No Such Obligation Existed*.

In his Motion, Plaintiff claims that he prevails on a breach of contract against Marywood because:

- His discipline was not progressive;

- The University President, and not the Vice President of Academic Affairs, advised him of his suspension;

- His continued employment did not pose a threat of immediate harm to himself or to others;

- Marywood took no remedial actions prior to his suspension or termination; and

- No Marywood employee filed a complaint against him under the University's Civil Rights Policy.

However, the evidence of record demonstrates that Marywood was not contractually bound to provide any of these courtesies to Plaintiff. In fact, each of these issues was reviewed at length by two separate and independent committees, and all six tenured committee members concluded that although Plaintiff *wished* the University acted in a certain manner, the University was by no means obligated to comply.

First, it is clear that Marywood's policy does not require progressive discipline in cases involving egregious conduct. The policy "recognizes personal and professional problems that *may* be rectified by an informal educational process, as *well as* serious violations of professional responsibilities implicating possible recommendation for suspension or dismissal." See Ex. G to Defendant's Motion (ECF No. 69-2) at DEF000249 (emphasis supplied). Additionally, there is no dispute that two separate committees unanimously concluded that progressive discipline was not appropriate in Plaintiff's case. See Defendant's Facts (ECF No. 69) at ¶¶ 87, 89, 103, 105. Specifically, the Ad Hoc Committee's findings stated that Plaintiff "left little room for pursuing progressive discipline or a mediated solution to this situation." Id. at ¶ 103. Here, Plaintiff admittedly created and posted a deplorable satirical video that depicted the school's president as Hitler and

other administrators, including a man of Jewish faith, as members of the Nazi regime discussing false plots of rape. Accordingly, given the egregious conduct at issue, progressive discipline was not required.

Second, as Plaintiff admitted, there was no requirement that the Vice President of Academic Affairs, and *only* the Vice President of Academic Affairs, communicate the suspension decision. <u>Id.</u> at ¶ 85. On the contrary, while the policy prevented those employees lower in the chain of command than the Vice President of Academic Affairs from communicating suspension decisions (for example, an administrative assistant or dean), the policy allowed for higher ranked individuals to take such action. Sister Munley was the President of the University, the superior of the Vice President of Academic Affairs, and the ultimate "boss" and decision-maker. Clearly, she was permitted to communicate a disciplinary decision—a decision with which Dr. Levine wholeheartedly agreed, but did not communicate with Plaintiff due to the nature of the personal attacks against him and his family in the videos. <u>Id.</u> at ¶¶ 62, 63. And quite frankly, *who* advised Plaintiff of his suspension is beside the point, as the decision would have been the same regardless of who communicated it.

Third, contrary to Plaintiff's bald contention, and as admitted by Plaintiff at his deposition, the Progressive Discipline Policy does not state that a suspension may only be justified by a threat of immediate harm or that physical harm was

required for suspension.   See Defendant's Facts (ECF No. 69) at ¶¶ 25, 85. Nonetheless, the undisputed evidence of record demonstrates that Plaintiff's actions caused harm to the University's reputation, to the community generally, and to members of the Jewish faith specifically. Id. at ¶¶ 86, 101.

Fourth, Marywood's Progressive Discipline policy provided some level of flexibility, and did not require remediation prior to termination in every instance. Instead, the policy stated that *if* remedial actions were taken and did not resolve the issues that led to the suspension, the University may move towards dismissal. Id. at ¶ 25.   As all six tenured faculty committee members concluded, Plaintiff's case did not warrant remediation as he was "very familiar with the core values," was not ignorant of what he was doing, and because he "showed no remorse in his letter to the grievance committee."   Id. at ¶ 88.   In fact, more than five years later, Plaintiff still refuses to accept that his conduct was unacceptable or otherwise be contrite. Id. at ¶ 57.

Fifth, Marywood's Civil Rights Policy did not require that a complaint be filed before the University took action on discrimination or harassment that the University administration learned of or experiences first hand.   On the contrary, the policy explicitly stated that "[i]n certain serious cases the University administrator may proceed even without a formal complaint." See Defendant's Facts (ECF No. 69) at ¶ 16. Notably, while Dr. Levine ultimately decided not to file a complaint

against Plaintiff, a decision he referred to as a "mistake," he was entirely in favor of Plaintiff's suspension and termination.  Id. at ¶¶ 53, 63.

In short, although Plaintiff would very much like the policies to be interpreted rigidly and viewed in a vacuum, the policies themselves did not contemplate such limitations.  And the policies certainly did not require that Marywood provide him with the various procedural nuances for which he attempts to convince the Court he was entitled.

> **B.   Plaintiff Has Not, And Cannot, Establish That He Suffered Damages *As A Result of* Marywood University's Conduct.**

Plaintiff's sole cause of action is for breach of contract, yet he has not established that he suffered damages ***as a result of Marywood University's alleged breach***, which is a requirement for a viable breach of contract claim. See Gen. State Auth. v. Coleman Cable & Wire Co., 27 Pa. Cmwlth. 385, 365 A.2d 1347, 1349 (1976) ("A cause of action *ex contractu* must be established by pleading the existence of a contract (including its essential terms), a breach of duty imposed by the contract **and resultant damages**.") (emphasis supplied).  Nor can he, since the evidence of record demonstrates that any damages allegedly suffered by Plaintiff were the result of his actions and decisions, and not those of the University's.

Plaintiff opines that he is entitled to recover nominal damages because Marywood's alleged breach "led to the loss of his salary over the course of several years." See Plaintiff's Brief (ECF. No. 67) at 26-27.  However, Plaintiff's

argument conveniently overlooks the fact that his termination was a direct result of *his* actions and *his* decision to disseminate videos depicting Marywood leaders as Adolf Hitler and members of the Nazi regime. Moreover, there is not a stitch of evidence to even suggest that the outcome would have been any different—that is, that Plaintiff's employment would not have been terminated—if Marywood's policies had been followed in accordance with his interpretation of them.

Specifically, Plaintiff has offered no legal or factual support for his belief that President Munley's decision to suspend and ultimately terminate his employment would not have been upheld if: (1) President Munley suspended Plaintiff after providing him with an oral or written warning; (2) the Vice President of Academic Affairs communicated the suspension decision as opposed to President Munley; (3) some unknown and unidentified remedial action was taken between President Munley's decision to suspend but before the decision to terminate was finalized; or (4) the review committees convened separate panels or prepared separate reports to address his suspension apart from his termination (even though both the suspension and termination resulted from the same conduct). Plaintiff's belief that he should have been afforded various entitlements and procedures during the disciplinary process is insufficient to sustain a breach of contract claim against the University, especially considering he was admittedly aware of the potential consequences associated with his actions (that is,

termination of his tenure and employment), and proceeded anyway.   See Defendant's Facts (ECF No. 69) at ¶¶ 56, 67.

Notably, Plaintiff's damages argument focuses on his alleged entitlement to nominal, as opposed to actual, damages, since he is acutely aware that he cannot demonstrate damages as a result of Marywood's conduct.  In fact, regardless of which party caused the damage, Defendant's economic expert estimated that Plaintiff incurred an economic loss of $0.  Id. at ¶ 110.

Simply put, because Plaintiff is unable to allege either a breach of duty by Marywood *or* resultant damages, his breach of contract claim fails as a matter of law.

### C.    Plaintiff Cannot Mischaracterize Key Testimony Or Ignore Relevant Evidence To Establish A Breach of Contract.

In an effort to prevail on his claim for breach of contract, Plaintiff mischaracterizes or otherwise misrepresents key pieces of evidence and witness testimony.  However, a review of the actual testimony and evidence leads to only one conclusion—that Plaintiff, and not Marywood, is in breach of the agreement between the parties.

For example, Plaintiff argues that Marywood did "not convene an ad hoc faculty committee to review [his] suspension despite his multiple requests that Marywood to [sic] to so" and that "[m]embers of the ad hoc faculty committee have stated or suggested that their committee did not review [Plaintiff's]

suspension."  <u>See</u> Plaintiff's Brief (ECF. No. 67) at 25; Plaintiff's Statement of

Facts (ECF No. 66) at ¶ 83.  In support of his argument, Plaintiff quotes language

from the May 17, 2012 Ad Hoc Committee minutes which state that the committee

members believed they were charged with reviewing the "substance [of] the

termination and denial of tenure charges" and that the "issues of suspension and

procedure were resolved by the [Faculty Grievance Committee]."  <u>See</u> Ex. 49 to

Plaintiff's Brief (ECF No. 66-6) at DEF000323.  However, Plaintiff fails to include

any reference to the deposition testimony of each Ad Hoc Committee member

regarding this exact issue, wherein each member separately testified that the

committee reviewed *both* Plaintiff's suspension *and* termination, and concluded

that both were proper under the circumstances.  <u>See</u> Defendant's Facts (ECF No.

69) at ¶ 104.  In fact, Helen Bittel testified:

> [The May 17, 2012 minutes] reflect what we understood at the
> moment, at the moment of that meeting.  But as all of our minutes
> indicate, this is a new process that had never been, to our knowledge,
> used at Marywood before and there were some anomalies in that we
> did not have authorization to go to Ad Hoc Committee between
> suspension and termination. So the bottom line is that we were
> coming to understand the process as we – as it evolved. But this is
> what we understood that day, although later we did in our actual
> deliberations consider three things. ***We considered suspension, we***
> ***considered termination and we considered revocation of tenure.***

<u>See</u> Ex. 47 to Plaintiff's Motion (ECF No. 66-6) at 24:9-21.  Similarly, when

Edward O'Brien was asked during his deposition if he took "issue in any way with

the accuracy of these minutes", Dr. O'Brien stated: "Well, I have a bit of a

question about termination versus suspension, exactly how that was understood at the time." <u>See</u> O'Brien Dep. Tr. at 21:23-22:3, attached hereto as Ex. 1.   Dr. O'Brien continued on to state that his recollection was that "we were paying attention to both suspension and termination, but the substance of the termination was the most important…. I don't recall how that was – how that was reflected in the meeting discussion." <u>See</u> Ex. 1 at 22:13-20.   Likewise, Matthew Povse testified that what was stated in the minutes was incorrect.  <u>See</u> Ex. 50 to Plaintiff's Motion (ECF No. 66-6) at 47:10-48:14.  Notably, the Ad Hoc Committee issued its decision on July 2, 2012, nearly *two months* after these minutes were drafted and after several more meetings and discussions were held regarding their role and responsibilities.

Similarly, Plaintiff misrepresents Dr. Bittel's testimony when stating that she "later acknowledged that she did not make any formal findings about whether [Plaintiff's] suspension was appropriate." <u>See</u> Plaintiff's Statement of Facts (ECF No. 66) at ¶ 78.  While Dr. Bittel acknowledged that the Ad Hoc Committee did not prepare a formal separate statement on Plaintiff's suspension, she (and the other Ad Hoc Committee members) testified that the committee absolutely considered and reviewed Plaintiff's suspension from a substantive perspective. <u>See</u> Defendant's Facts (ECF No. 69) at ¶¶ 90, 104.

In another attempt to paint a distorted picture of the events at issue, Plaintiff focuses on the portion of Dr. Bittel's testimony where she states that if she had known Plaintiff requested to answer President Munley's questions at the January 23, 2012 meeting in writing, it would "'problematize' her understanding that [Plaintiff] had declined multiple opportunities to make amends, to show remorse, and to explain his actions." See Plaintiff's Statement of Facts (ECF No. 66) at ¶ 79.   In reality, however, Dr. Bittel testified that it would "problematize" her statement in the committee's June 19th, 2012 minutes, not her understanding of the relevant events.  See Ex. 47 to Plaintiff's Motion (ECF No. 66-6) at 49:19-50:4.

Plaintiff notes that Dr. Bittel testified that "Munley had asked for the ad hoc faculty committee's expected date of completion because 'she didn't want it to drag out too long,'" to imply that the committee's decision was somehow rushed or forced.  See Plaintiff's Statement of Facts (ECF No. 66) at ¶ 80.   However, Plaintiff fails to cite the portion of Dr. Bittel's testimony where she testified the exact opposite—that she did not feel time pressured, or pressured at all to rule in President Munley's favor.  See Ex. 47 to Plaintiff's Motion (ECF No. 66-6) at 53:4-8.  In fact, Dr. Bittel testified that the committee apprised President Munley of their progress and timeline of drafting a decision only because "these deliberations largely occurred over the summer when we were all off contract and had various travel plans.  So it took a lot longer to get through it than we had

expected because one of us would be away and then the other would be away.  And there's three people, you know, who did not plan their summer expecting this." Id. at 51:12-21.

Simply stated, Plaintiff cannot present to the Court the select testimony he views as favorable and make pretend that the other evidence does not exist.   When reviewing all of the relevant testimony within its proper context, it is evident that the record does not support Plaintiff's version of events, and does not establish a breach of contract claim against Marywood University.

**D.     Plaintiff Cannot Rely Upon Purported Subsequent Remedial Measures to Somehow Demonstrate Prior Wrongdoing.**

Plaintiff attempts to introduce *future* changes to the University's policies as evidence of *past* wrongdoing.  As an initial matter, the Federal Rules of Evidence explicitly state that it is generally inadmissible to introduce evidence of subsequent remedial measures to prove a party's negligence or culpable conduct.  FED. R. EVID. 407.  Moreover, F.R.E. 407 "rejects the notion that 'because the world gets wiser as it gets older, therefore it was foolish before.'" See FED. R. EVID. 407 advisory committee's note (quoting Hart v. Lancashire & Yorkshire Ry. Co., 21 L.T.R. N.S. 261, 263 (1869)).

It is well recognized that courts may admit "subsequent remedial measure" evidence only in certain limited circumstances, "such as impeachment or—if disputed—proving ownership, control, or the feasibility of precautionary

measures." Id.  Rule 407 "operates on the presumption that undue prejudice is likely in certain situations . . . ." Kelly v. Crown Equip. Co., 970 F.2d 1273, 1277 (3d Cir. 1992).  Accordingly, courts "routinely exclude evidence of [subsequent remedial measures] to encourage people to take such measures *whether or not they are at fault*." Petree v. Victor Fluid Power, Inc., 831 F.2d 1191, 1198 (3d Cir. 1987) (emphasis supplied).

In his Motion, Plaintiff notes that following his termination, Marywood amended its Progressive Discipline Policy to state that the University's President has the authority to initiate suspension and dismissal proceedings against a tenured faculty member without the employee first undergoing progressive discipline, and that the President and Vice President of Academic Affairs can act immediately following an egregious breach or in severe circumstances.  See Plaintiff's Brief (ECF. No. 67) at 20; Plaintiff's Statement of Facts (ECF No. 66) at ¶¶ 86, 88. Plaintiff's sole purpose of including this information is to insinuate that the Progressive Discipline Policy in place during his employment was unclear or otherwise improper.  However, in reality, Dr. Dunleavy, then the Assistant Vice President for Human Resources, testified that the policy was revised following Plaintiff's termination because "the two committees … seemed to have several procedural questions and it seemed that maybe some of that could be clarified and

13

tightened up in policy language." <u>See</u> Ex. 40 to Plaintiff's Motion (ECF No. 66-5) at 117:15-21.

These changes are the precise type of subsequent remedial measures that courts regularly exclude from being considered or introduced into evidence, and that the Federal Rules of Evidence foreclose from admission.  But not only are these changes barred from consideration, they do nothing to further Plaintiff's claims or otherwise show that because Marywood "gets wiser as it gets older, therefore it was foolish before."

## III.   <u>CONCLUSION</u>

In light of these compelling arguments, Defendant respectfully requests that the Court deny Plaintiff's motion for summary judgment.  As described herein and in Defendant's moving brief, the evidence of record clearly demonstrates that Plaintiff, and not Marywood, breached the agreement; that six tenured faculty members agreed with the President's decision to suspend and terminate Plaintiff's employment; and that two separate committees ultimately found Plaintiff's conduct to be in direct violation of his contract with the University as well as the University's Mission and Core Values.  Accordingly, Plaintiff cannot establish entitlement to judgment as a matter of law.

[SIGNATURE ON NEXT PAGE]

14

Respectfully submitted,

/s/ - *Stephanie J. Peet*
Stephanie J. Peet (PA 91744)
Asima J. Ahmad (PA 316001)
**JACKSON LEWIS P.C.**
Three Parkway
1601 Cherry Street, Suite 1350
Philadelphia, PA 19102
T:  (267) 319-7802
F:  (215) 399-2249
stephanie.peet@jacksonlewis.com
asima.ahmad@jacksonlewis.com

*ATTORNEYS FOR DEFENDANT*

Dated:  December 12, 2016

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FREDERICK F. FAGAL, JR.,

          Plaintiff,

   v.

MARYWOOD UNIVERSITY,

          Defendant.

**CIVIL ACTION NO.:**

**3:14-cv-02404-ARC**

## CERTIFICATION OF ASIMA J. AHMAD

Pursuant to Local Rule 7.8(b), I certify that *Defendant's Opposition to Plaintiff's Motion for Summary Judgment* does not exceed 5,000 words.

Respectfully submitted,

*/s/ Asima J. Ahmad*
Stephanie J. Peet (PA 91744)
Asima J. Ahmad (PA 316001)
**Jackson Lewis P.C.**
Three Parkway
1601 Cherry Street, Suite 1350
Philadelphia, PA 19102
T: (267) 319-7802
F: (215) 399-2249
stephanie.peet@jacksonlewis.com
asima.ahmad@jacksonlewis.com

*ATTORNEYS FOR DEFENDANT*

Dated: <u>December 12, 2016</u>

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of ***Defendant's Opposition to Plaintiff's Motion for Summary Judgment*** was served through the Court's ECF system, will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Jonathan Z. Cohen, Esquire
JONATHAN Z. COHEN LTD.
175 Strafford Avenue
Suite 1 PMB 212
Wayne, PA 19087-3340

**JACKSON LEWIS P.C.**

*/s/ - Stephanie J. Peet*
Stephanie J. Peet (PA 91744)
Asima J. Ahmad (PA 316001)
Three Parkway
1601 Cherry Street, Suite 1350
Philadelphia, PA 19102
T:  (267) 319-7802
F:  (215) 399-2249
stephanie.peet@jacksonlewis.com
asima.ahmad@jacksonlewis.com

*ATTORNEYS FOR DEFENDANT*

Dated:  <u>December 12, 2016</u>

4828-7060-4349, v. 3

17