# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FREDERICK F. FAGAL, JR.,<br><br>Plaintiff,<br><br>v.<br><br>MARYWOOD UNIVERSITY,<br><br>Defendant. | **CIVIL ACTION NO.:**<br><br>**3:14-cv-02404-ARC** |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS

### I.     INTRODUCTION

Defendant Marywood University ("Defendant"), submits this response to Plaintiff Frederick Fagal's Statement of Material Facts in Support of Motion for Summary Judgment by Plaintiff.

### II.     DEFENDANT'S SPECIFIC RESPONSES

1. Defendant admits only that Plaintiff is a natural person who currently resides in New York. Defendant further admits that in Plaintiff's Amended Complaint, he alleges that he intends to remain there indefinitely.

2. Admitted to the best of Defendant's knowledge and belief.

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted, except to clarify that following Plaintiff's termination, Defendant paid Plaintiff the remainder of his 2011-12 Agreement.

7. Defendant admits that Plaintiff received a document entitled "Agreement and Appointment for Full-Time Faculty," a copy of which is attached to Plaintiff's Motion as Exhibit 4. Defendant further admits that the document includes, but is not limited to, the statement quoted by Plaintiff. The document speaks for itself, and thus, all accurate quotations are admitted and all mischaracterizations of it are denied.

8. Admitted.

9. Defendant admits that it had a written policy titled "Non-reappointment of Faculty Member", a copy of which is attached to Plaintiff's Motion as Exhibit 39. Defendant further admits that the document includes, but is not limited to, the statement quoted by Plaintiff. The document speaks for itself, and thus, all accurate quotations are admitted and all mischaracterizations of it are denied.

10. Defendant admits that it had a written policy titled "Employment At-will Relationship with Administrators and Staff", a copy of which is attached to Plaintiff's Motion as Exhibit 51. Defendant further admits that the document includes, but is not limited to, the statement quoted by Plaintiff. The document

speaks for itself, and thus, all accurate quotations are admitted and all mischaracterizations of it are denied.

11.     Defendant admits that on July 1, 2010, it issued an edition of its Faculty Handbook, a copy of which is attached to Plaintiff's Motion as Exhibits 5(a) and 5(b). The document speaks for itself, and thus, all accurate quotations are admitted and all mischaracterizations of it are denied.

12.     Defendant admits that on February 18, 2011, Marywood's President approved a revision of the University's "Contractual Agreements with Faculty Members" policy, a copy of which is attached to Plaintiff's Motion as Exhibit 7. Defendant further admits that the document includes, but is not limited to, the statement quoted by Plaintiff. Defendant notes that the policy expressly states that tenure "implies a mutual commitment on the part of the faculty member and the University and cannot be taken lightly." The document speaks for itself, and thus, all accurate quotations are admitted and all mischaracterizations of it are denied.

13.     Defendant admits that on April 29, 2011, Marywood's President approved a revision of the University's "Faculty Grievances and Appeals" policy, a copy of which is attached to Plaintiff's Motion as Exhibit 29. Defendant further admits that the document includes, but is not limited to, the statement quoted by Plaintiff. The document speaks for itself, and thus, all accurate quotations are admitted and all mischaracterizations of it are denied.

14. Defendant admits that on April 29, 2011, Marywood's President approved a revision of the University's "Violent Acts and Threats" policy, a copy of which is attached to Plaintiff's Motion as Exhibit 53. Defendant further admits that the document includes, but is not limited to, the statement quoted by Plaintiff. The document speaks for itself, and thus, all accurate quotations are admitted and all mischaracterizations of it are denied.

15. Admitted.

16. Admitted.

17. Defendant admits that Plaintiff cited a portion of Marywood's Progressive Discipline Policy, effective as of October 12, 2011. Defendant denies that the policy states that it applies to "all" faculty members with tenure or whose terms of appointment have not yet expired. The document speaks for itself, and thus, all accurate quotations are admitted and all mischaracterizations of it are denied.

18. Admitted.

19. Defendant admits only that Plaintiff scheduled a speaker from the Foundation for Individual Rights in Education ("FIRE") to speak in November 2011 at the University in connection with one of his courses.

20. Admitted.

21. Admitted.

22. Admitted, except to clarify that Student Activities printed and paid for 12 to 15 posters. See Ex. 3 to Plaintiff's Motion (ECF No. 66-1) at 61:5-63:9.

23. Admitted, except to clarify that some posters were removed because they included prize announcement and "at Marywood we don't pay students to go to class." See Defendant's Facts (ECF. No. 69) at ¶ 32.

24. Admitted, except to clarify that in addition to a public written apology and reimbursement, Plaintiff's "requests" included, among other things, Defendant hosting and paying for two presentations by FIRE, providing 1,000 slices of pizza and 500 cold cans of soda at an evening presentation, and spending at least $1,000 on publicity for these events. See Plaintiff's December 2, 2010 e-mail, attached hereto as Exhibit 2.

25. Defendant admits that on December 9, 2011, Marywood approved a new version of its "Tenure" policy, a copy of which is attached to Plaintiff's Motion as Exhibit 13. Defendant further admits that the document includes, but is not limited to, the statement quoted by Plaintiff. The document speaks for itself, and thus, all accurate quotations are admitted and all mischaracterizations of it are denied.

26. Defendant admits that on January 13, 2012, Plaintiff sent an e-mail from his personal e-mail address to Marywood faculty members, a copy of which is attached to Plaintiff's Motion as Exhibit 9. Defendant notes that the e-mail was

also sent to Marywood students and that Plaintiff "criticized the Marywood administration for removing his posters and for its weak commitment to free speech generally" by depicting the University's President (a Nun) as Adolf Hitler, and various Marywood administrators, including a Jewish male, as members of the Nazi regime. The document speaks for itself, and thus, all accurate quotations are admitted and all mischaracterizations of it are denied.

27.  Admitted only that Fagal's January 13, 2012 email contained hyperlinks to two videos he created and posted on YouTube, both of which depicted the University's President (a Nun) as Adolf Hitler, and various Marywood administrators, including a Jewish male, as members of the Nazi regime.

28.  Defendant admits only that Plaintiff removed the videos from YouTube by February 28, 2012. The videos speak for themselves, and thus, all accurate quotations are admitted and all mischaracterizations of them are denied.[1]

29.  Defendant admits that Plaintiff altered several scenes from the movie "Downfall" and altered English subtitles to depict Sister Munley as Adolf Hitler and other University officials as members of the Nazi regime with swastika bands

---

[1] Although Defendant did not receive copies from Plaintiff of the DVDs provided to the Court, Defendant assumes the DVDs contain the two videos he created and posted on YouTube. These videos were previously provided to the Court by Defendant via thumb drive on or around November 21, 2016 in support of Defendant's motion for summary judgment.

on their arms. The videos speak for themselves, and thus, all accurate quotations are admitted and all mischaracterizations of them are denied.

30. Defendant admits only that Plaintiff has attached articles from BBC News Magazine, The Telegraph, The Atlantic and the New York Times regarding "Downfall" parodies.

31. Defendant admits only that Plaintiff has cited a portion of his own testimony, wherein he states that "Downfall" parodies are popular on YouTube. By way of further response, Defendant notes that none of these parodies were posted by a tenured professor ridiculing and making discriminatory comments about the University where he worked and its various administrators.

32. Admitted.

33. Admitted, except to clarify that Sister Munley testified that Plaintiff's actions caused harm to the University and to the individuals depicted in the videos. See Ex. 33 to Plaintiff's Motion (ECF No. 66-5) at 50:19-51-16.

34. Admitted.

35. Admitted, except to clarify that the "talking points" document outlined various avenues of action depending on what ultimately transpired at Sister Munley's meeting with Plaintiff. See Ex. 40 to Plaintiff's Motion (ECF No. 66-5) at 23:9-22.

36. Admitted.

37. Admitted.

38. Admitted.

39. Admitted, except to clarify that Sister Munley advised Plaintiff that she was "not here to talk about posters, this is about the videos." See Ex. 33 to Plaintiff's Motion (ECF No. 66-5) at 90:8-10.

40. Admitted, except to clarify that at the time of his meeting with Sister Munley, Plaintiff already had ten days to consider his actions and was aware of the reasoning behind his decision to create, post, and disseminate the videos.

41. Admitted.

42. Admitted, except to clarify that Alan Levine wholly agreed with President Munley's decision to suspend and terminate Plaintiff. Mr. Levine did not attend the meeting due to the "angst and anxiety" he felt as a result of being portrayed as a Nazi and because the videos involved his family members. See Ex. 43 to Plaintiff's Motion (ECF No. 66-6) at 28:9-16, 31:22-32:2, 39:19-23.

43. Admitted, except to clarify that two days before Plaintiff's meeting with Sister Munley, Plaintiff contacted Dr. Levine on his personal phone because he had not heard from the administration regarding his videos and wanted to see what "might be happening." See Ex. 3 to Plaintiff's Motion (ECF No. 66-1) at 270:23-271:15.

44. Admitted.

45. Admitted, except to clarify that Dr. Dunleavy testified that she believes she drafted the summary on the morning of January 23, 2012. See Ex. 40 to Plaintiff's Motion (ECF No. 66-5) at 65:9-14.

46. Admitted, except to clarify that Marywood was not required to provide such notice and that both the Faculty Grievance Committee and Ad Hoc Committee found that harm was present in Plaintiff's situation.  See Defendant's Facts (ECF No. 69) at ¶¶ 86, 101.

47. Admitted, except to clarify that Marywood was not required to provide such notice.

48. Admitted, except to clarify that Marywood was not required to provide an oral warning, written warning, or an opportunity for monitored assistance.

49. Defendant admits that on January 24, 2012, Frances D. Ferrese sent an e-mail to Plaintiff and that one of the attachments was a letter from President Munley with the same date, a copy of which is attached to Plaintiff's Motion as Exhibit 15.  The document speaks for itself, and thus, all accurate quotations are admitted and all mischaracterizations of it are denied.

50. Admitted, except to clarify that the letter explicitly states Plaintiff must sign and return an attached authorization granting the University permission

to send Sister Munley's statement of charges to a duly appointed faculty committee for review, and that Plaintiff did not return the authorization.

51. Denied as stated. Defendant admits only that a portion of the second charge against Plaintiff was inadvertently omitted in President Munley's January 24, 2012 letter. Defendant denies that it was "initially impossible for [Plaintiff] to know the full 'charges' against him."

52. Admitted, except to clarify that remedial action was not required.

53. Admitted, except to clarify that Alan Levine wholly agreed with President Munley's decision to suspend and terminate Plaintiff. See Ex. 43 to Plaintiff's Motion (ECF No. 66-6) at 28:9-16, 31:22-32:2, 39:19-23.

54. Defendant admits that on February 2, 2012, Plaintiff's attorney sent President Munley a letter, a copy of which is attached to Plaintiff's Motion as Exhibit 27. The document speaks for itself, and thus, all accurate quotations are admitted and all mischaracterizations of it are denied.

55. Admitted.

56. Admitted.

57. Defendant admits that on February 8, 2012, President Munley sent Plaintiff a letter, a copy of which is attached to Plaintiff's Motion as Exhibit 16. The document speaks for itself, and thus, all accurate quotations are admitted and all mischaracterizations of it are denied.

58. Admitted.

59. Defendant admits that it had a "Civil Rights Complaint Procedures" policy, a copy of which is attached to Plaintiff's Motion as Exhibit 5 at DEF3579-DEF3581. Defendant denies that the policy is drafted as quoted. Specifically, the policy states, in relevant part, that it "must be followed any time a member of the Marywood community believes s/he has been the victim of or witness to discrimination, harassment, or assault by any member of the University community on University property or any property controlled by the University." Defendant further notes that the policy explicitly states that "[i]n certain serious cases the University administrator may proceed even without a formal complaint." The document speaks for itself, and thus, all accurate quotations are admitted and all mischaracterizations of it are denied.

60. Defendant admits that on January 24, 2012, Frances D. Ferrese sent an e-mail to Plaintiff and that one of the attachments was a letter from President Munley with the same date, a copy of which is attached to Plaintiff's Motion as Exhibit 15; and that on February 8, 2012, President Munley sent Plaintiff a letter, a copy of which is attached to Plaintiff's Motion as Exhibit 16. These documents speak for themselves, and thus, all accurate quotations are admitted and all mischaracterizations of them are denied.

61. Admitted, except to clarify that the Civil Rights policy explicitly states "[i]n certain serious cases, the University administrator may proceed even without a formal complaint" and that Dr. Levine testified that it was a "mistake" not to file a formal complaint against Plaintiff under Marywood's Civil Rights Policy. See Ex. 5(a) to Plaintiff's Motion (ECF No. 66-2) at DEF3579; Ex. 43 to Plaintiff's Motion (ECF No. 66-6) at 29:3-16.

62. Defendant admits that on February 9, 2012, Defense counsel sent a letter to Plaintiff's counsel, a copy of which is attached to Plaintiff's Motion as Exhibit 28. The document speaks for itself, and thus, all accurate quotations are admitted and all mischaracterizations of it are denied.

63. Defendant admits that on February 17, 2012, Plaintiff's counsel sent a letter to Defense counsel, a copy of which is attached to Plaintiff's Motion as Exhibit 62. The document speaks for itself, and thus, all accurate quotations are admitted and all mischaracterizations of it are denied.

64. Admitted.

65. Admitted.

66. Admitted.

67. Admitted.

68. Admitted.

69. Defendant admits that on April 3, 2012, President Munley sent a letter to Plaintiff, a copy of which is attached to Plaintiff's Motion as Exhibit 32. The document speaks for itself, and thus, all accurate quotations are admitted and all mischaracterizations of it are denied. Defendant further notes that on two separate occasions, Sister Munley provided Plaintiff with authorization forms for his signature which would permit her to send her statement of charges to a duly appointed faculty committee for review. Plaintiff did not provide a signed authorization in either instance.

70. Admitted, except to clarify that in Sister Munley's April 3, 2012 letter, she offers to convene two faculty ad hoc committees to appeal her decisions to suspend Plaintiff and terminate his employment and tenure.

71. Defendant admits that on April 4, 2012, Plaintiff's counsel sent a letter to Defense counsel, a copy of which is attached to Plaintiff's Motion as Exhibit 66. The document speaks for itself, and thus, all accurate quotations are admitted and all mischaracterizations of it are denied.

72. Defendant admits that Plaintiff accurately cited a portion of Sister Gail Cabral's April 30, 2012 e-mail, a copy of which is attached to Plaintiff's Motion as Exhibit 58. The document speaks for itself, and thus, all accurate quotations are admitted and all mischaracterizations of it are denied.

73. Admitted.

74. Denied as stated. Defendant admits that Plaintiff cited a portion of the Ad Hoc Committee's May 17, 2012 minutes, a copy of which is attached to Plaintiff's Motion as Exhibit 49. Defendant denies that the committee members did not ultimately review Plaintiff's suspension, as each member separately testified that the committee reviewed *both* Plaintiff's suspension *and* termination, and concluded that both were proper under the circumstances. See Ex. 47 to Plaintiff's Motion (ECF No. 66-6) at 24:9-21; O'Brien Dep. Tr., attached hereto as Exhibit 1, at 21:23-22:3, 22:13-20; Ex. 50 to Plaintiff's Motion (ECF No. 66-6) at 47:10-48:14.

75. Defendant admits that on May 18, 2012, Dr. Bittel sent an e-mail to Dr. Dunleavy, a copy of which is attached to Plaintiff's Motion as Exhibit 48. Defendant denies that the e-mail was drafted as quoted. The document speaks for itself, and thus, all accurate quotations are admitted and all mischaracterizations of it are denied. Defendant further denies that the committee members did not ultimately review Plaintiff's suspension, as each member separately testified that the committee reviewed *both* Plaintiff's suspension *and* termination, and concluded that both were proper under the circumstances. See Ex. 47 to Plaintiff's Motion (ECF No. 66-6) at 24:9-21; O'Brien Dep. Tr., attached hereto as Ex. 1, at 21:23-22:3, 22:13-20; Ex. 50 to Plaintiff's Motion (ECF No. 66-6) at 47:10-48:14.

76. Admitted.

77. Admitted, except to clarify that each member of the Ad Hoc Committee testified that Plaintiff's suspension and termination were discussed and reviewed, but that they "did not prepare a statement on it because if termination is justified, why wouldn't a suspension be justified unless there were a procedural problem and the [Faculty Grievance Committee] had already adjudicated that there was not a procedural issue." See Ex. 47 to Plaintiff's Motion (ECF No. 66-6) at 31:9-14; O'Brien Dep. Tr., attached hereto as Exhibit 1, at 38:14-21, 42:21-43:11, 53:5-9; Ex. 50 to Plaintiff's Motion (ECF No. 66-6) at 32:22-33:5.

78. Denied as stated. Defendant admits only that Plaintiff has correctly cited a portion of Dr. Bittel's testimony. Defendant denies that Dr. Bittel "acknowledged that she did not make any formal findings about whether Fagal's suspension was appropriate."

79. Denied as stated. Defendant admits only that Plaintiff has correctly cited a portion of Dr. Bittel's testimony. Defendant denies that Dr. Bittel's testimony accurately portrays the purpose for which it has been cited, as she testified that it would "problematize" her statement in the committee's June 19th, 2012 minutes, not her understanding of the relevant events. See Ex. 47 to Plaintiff's Motion (ECF No. 66-6) at 49:19-50:4.

80. Denied as stated. Defendant admits that Plaintiff has correctly cited a portion of Dr. Bittel's testimony. Defendant denies that Dr. Bittel testified that she

felt time pressured, or pressured at all to rule in President Munley's favor.  See Ex. 47 to Plaintiff's Motion (ECF No. 66-6) at 53:4-8.

81. Admitted, except to clarify that the Ad Hoc Committee previously reviewed Plaintiff's suspension.

82. Defendant admits that on July 10, 2012, Dr. Bittel sent an e-mail to Dr. Dunleavy, a copy of which is attached to Plaintiff's Motion as Exhibit 69.  The document speaks for itself, and thus, all accurate quotations are admitted and all mischaracterizations of it are denied.

83. Denied.  Each member of the Ad Hoc Committee testified that Plaintiff's suspension and termination were discussed and reviewed, but that they "did not prepare a statement on it because if termination is justified, why wouldn't a suspension be justified unless there were a procedural problem and the [Faculty Grievance Committee] had already adjudicated that there was not a procedural issue." See Ex. 47 to Plaintiff's Motion (ECF No. 66-6) at 31:9-14; O'Brien Dep. Tr., attached hereto as Exhibit 1, at 38:14-21, 42:21-43:11, 53:5-9; Ex. 50 to Plaintiff's Motion (ECF No. 66-6) at 32:22-33:5.

84. Admitted.

85. Admitted, except to clarify that remedial action was not required.

86. Admitted.

87. Admitted

88. Defendant admits that on May 7, 2014, Marywood approved a new version of its "Progressive Discipline" policy, a copy of which is attached to Plaintiff's Motion as Exhibit 26. The document speaks for itself, and thus, all accurate quotations are admitted and all mischaracterizations of it are denied.

89. Denied as stated. Defendant admits that Plaintiff served an economic report on Defense counsel on November 2, 2016, a copy of which is attached to Plaintiff's Motion as Exhibit 70. Defendant denies that the report was drafted as quoted. The document speaks for itself, and thus, all accurate quotations are admitted and all mischaracterizations of it are denied. Defendant denies that Plaintiff sustained any economic loss as a result of his suspension and termination due to Marywood's actions.

Respectfully submitted,

/s/ - *Stephanie J. Peet*
Stephanie J. Peet (PA 91744)
Asima J. Ahmad (PA 316001)
**JACKSON LEWIS P.C.**
Three Parkway
1601 Cherry Street, Suite 1350
Philadelphia, PA 19102
T: (267) 319-7802
F: (215) 399-2249
stephanie.peet@jacksonlewis.com
asima.ahmad@jacksonlewis.com

*ATTORNEYS FOR DEFENDANT*

Dated: December 12, 2016

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of *Defendant's Response to Plaintiff's Statement of Material Facts* was served through the Court's ECF system, will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

>
> Jonathan Z. Cohen, Esquire
> JONATHAN Z. COHEN LTD.
> 175 Strafford Avenue
> Suite 1 PMB 212
> Wayne, PA 19087-3340

>
> **JACKSON LEWIS P.C.**
>
> /s/ - *Stephanie J. Peet*
> Stephanie J. Peet (PA 91744)
> Asima J. Ahmad (PA 316001)
> Three Parkway
> 1601 Cherry Street, Suite 1350
> Philadelphia, PA 19102
> T:  (267) 319-7802
> F:  (215) 399-2249
> stephanie.peet@jacksonlewis.com
> asima.ahmad@jacksonlewis.com
>
> *ATTORNEYS FOR DEFENDANT*

Dated:  December 12, 2016

4836-0467-6157, v. 2