2011 WL 818668
Only the Westlaw citation is currently available.
United States District Court,
W.D. Pennsylvania.

RADDISON DESIGN MANAGEMENT,
INC., assignee of Technomarine
International Management, Inc., Plaintiff,
v.
Bob CUMMINS, individually and d/b/a
Bob Cummins Construction Co., Defendant.

C.A. No. 07–92 Erie.
|
March 2, 2011.

**Attorneys and Law Firms**

Nicholas D. Krawec, Bernstein Law Firm, Pittsburgh, PA, for Plaintiff.

Audrey K. Kwak, Christopher R. Opalinski, Eckert, Seamans, Cherin & Mellott, Pittsburgh, PA, for Defendant.

*MEMORANDUM OPINION*

McLAUGHLIN, SEAN J., District Judge.

**\*1** This matter is before the Court upon Defendant's Motion for Summary Judgment. For the reasons which follow, this motion is denied.

### I. BACKGROUND

In September, 2005, the United States Department of Agriculture, Forest Service ("Government") awarded a contract for construction of the Wolf Run Marina Dock System in the Allegheny National Forest in Bradford, Pennsylvania ("Wolf Run Project") to Defendant, Bob Cummins Construction Company and, individually, Bob Cummins (collectively, "Cummins"). (*See* Def. Appx., Exh. F, Contract). The original contract called for total payment to Cummins of $1,318,084.00 and contemplated a completion date of May 15, 2006. (*Id.*).

Cummins, as general contractor, subcontracted with Gestion Technomarine International Inc. ("Technomarine") on December 9, 2005, for the design and construction of a floating dock system for the Wolf Run Project. (Def.Appx., Exh. G, Subcontract). Technomarine, a Canadian company, agreed to perform the subcontract for $678,325.00. (*Id.*). Pursuant to the terms of the Subcontract, the Scope of Work was as follows:

> The Supplier agrees to design, manufacture and delivery of a floating dock-system for the project known as Wolf Run Marina, PA. The scope also includes the docks assembly supervision at Bob Cummins plant and site supervision for the installation of the dock system as described in Exhibit 1 to5 [sic] at the total lump sum amount of $678,325.00.

(*Id.*) The Subcontract provided that invoice and payment for the project use the "percentage complete method on a monthly basis" and included a detailed schedule of the timing and amount of such percentage payments. (*Id.* at § III). Among these provisions, the Subcontract stated that "Payment for construction phase will not be processed until O & M manuals have been submitted and accepted." (*Id.*).

Relative to insurance coverage, Section IV of the Subcontract required Technomarine to comply with the following requirements:

> Insurance for supplies, supervision on site. The Supplier shall provide proof by certificate that it has in Force and will maintain the following insurance with the indicated coverage's and minimum limits until completion of the project and termination of this contract. Failure of the Supplier to provide such proof of insurance and to maintain at least these coverage's during the Work shall be grounds for immediate termination of this Agreement or withholding of payment until such proof is provided.

A. *Minimum Limits*

1. Worker's Compensation—Statutory

2. Employer's Liability—$500,000

3. General Liability—$1,000,000 each occurrence for Bodily Injury, Property Damage, and Personal Injury

4. Automobile Liability—$1,000,000 each occurrence, combined single limit for Bodily Injury and Property Damage.

(*Id.* at § IV). The Subcontract also contained the following warranty and guarantee provision relative to Technomarine's performance:

> ***2** Warranties & Guarantees. Supplier guarantees and warrants the Work performed hereunder, together with all materials and supplies furnished by Supplier, to be free from all defect, and such warranty shall continue for 1 year from date of final acceptance thereof by Contractor, or as required by the Owners documents. Final acceptance of work shall be made within 15 days from after floating docks are installed and anchored in accordance with the owner's approved plans and specifications

(*Id.* at §§ V, VII).

Technomarine's supervisor arrived on the project site in January, 2006. (Plaintiff Appx. Exh. 2, Cummins Depo. p. 37). Around that time, Technomarine began delivering parts to Cummins' facility for assembly. (*Id.*). Robert Cummins testified that, up until March 6, 2006, parts were arriving from Technomarine "on or close to the schedule" and that the relationship between Technomarine and Cummins "was fine." (*Id.* at 74–75). Cummins indicated that Technomarine was "performing okay" and that he was "very comfortable" with Technomarine up until that point. (*Id.*). In March, 2006, the USDA approved a payment application submitted by Cummins that included work performed by Technomarine pursuant to the subcontract. (*Id.* at 98–101; Plaintiff Appx. Exh. 3).

On March 6, 2006, Technomarine commenced insolvency proceedings in the provincial Court of Quebec, District of Joliette. (*See* Affidavit of Michel Lavoie, ¶ 4). On that same date, Cummins sent a letter to Technomarine inquiring as to the status of various parts for the project that had not been delivered on time and indicating Cummins' concern as to the completion schedule if the parts did not arrive shortly. (Def.Appx.Exh. H, Letter). On March 7, 2006, Cummins faxed a letter to Technomarine indicating his concern that his emails and letters concerning the project were no longer being returned. (Def.Appx.Exh. I, Letters). On March 9, 2006, Cummins again wrote to Technomarine concerning the previously unanswered letters and correspondence. (*Id.*). Cummins' March 9 letter indicated that "[e]verything was going so well" and that Technomarine's supervisor "ha[d] been excellent" but expressed serious concern as to his sudden inability to contact anyone from Technomarine. (*Id.*).

On March 15, 2006, Technomarine filed for bankruptcy and Raymond Chabot, Inc., was appointed trustee in bankruptcy. Michel Lavoie was named the responsible person. (Plaintiff Appx. Exh. 6, Lavoie Depo. p. 32). It is undisputed that, following Technomarine's bankruptcy filing, the company was no longer able to perform its obligations under the Subcontract. Lavoie contacted Cummins several times between March 17 and March 20, 2006, to discuss the possibility of Technomarine's employees continuing to perform under the Subcontract and the intended sale of Technomarine's assets in the bankruptcy proceeding. (Plaintiff Appx. Exh. 6, Lavoie Depo. pp. 32–35; Plaintiff Appx. Exh. 10, 11, 13). On March 31, 2006, the Canadian bankruptcy court approved the sale of "all assets, accounts receivable, outstanding contracts, know-how, trademarks, equipment, licenses, etc. of Technomarine International Management Inc" to Plaintiff Radisson Design Management, Inc. ("Raddison"). (Cummins Aff., Exh. 1). The sale was consummated on April 6, 2006. (Plaintiff Appx. Exh. 13). Technomarine's right to recovery under the Subcontract was included among the assets purchased by Radisson in that sale. (*Id* ).

***3** On March 28, 2006, and on March 30, 2006, Radisson's president, Robert Fortin, contacted Cummins and expressed his interest in completing performance of Technomarine's scope of work under the Subcontract. (Plaintiff Appx. Exh. 13). Cummins instead contracted with a company known as Structurmarine to complete the project. (Plaintiff Appx. Exh. 3). The project was completed on June 5, 2006, and Cummins received

full payment from the USDA. (Plaintiff Appx. Exh. 2, Cummins Depo. pp. 105–108).

On May 1, 2007, Radisson filed the instant Complaint alleging that Cummins had breached the Subcontract with Technomarine by refusing to pay for the work performed by Technomarine prior to the bankruptcy proceeding. (*See* Complaint, ¶ 12). Following discovery, Cummins filed the instant motion for summary judgment. This matter is ripe for review.

## II. STANDARD FOR REVIEW

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must —by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. *See* Fed.R.Civ.P. 56(c); *Krouse v. American Sterilizer Company,* 126 F.3d 494, 500 n. 2 (3rd Cir.1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Country Floors, Inc. v. Partnership Composed of Gepner and Ford,* 930 F.2d 1056, 1061 (3rd Cir.1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.' " *Schoch v. First Fidelity Bancorporation,* 912 F.2d 654, 657 (3rd Cir.1990) (quoting *Lujan v. National Wildlife Federation,* 497 U.S. 871, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. *Matsushita Elec. Indus. Company v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Williams v. Borough of West Chester, Pa.,* 891 F.2d 458, 460–461 (3rd Cir.1989) (the non-movant must present affirmative evidence-more than a scintilla but less than a preponderance—which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. *Celotex,* 477 U.S. at 322; *Country Floors,* 930 F.2d at 1061.

**\*4** A material fact is a fact whose resolution will affect the outcome of the case under applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegations or suspicions." *Firemen's Ins. Company of Newark, N.J. v. DuFresne,* 676 F.2d 965, 969 (3rd Cir.1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson,* 477 U.S. at 247–249.

## III. ANALYSIS

In its Complaint, Radisson alleges that Cummins' refusal to pay for parts and drawings delivered by Technomarine prior to the commencement of the latter's bankruptcy proceedings constitutes a breach of the Subcontract. In its Motion for Summary Judgment, Cummins contends that Technomarine was in material breach of the Subcontract in various particulars at the time that it filed for bankruptcy. As a consequence, Cummins argues that it is not obligated to pay for any work performed by Technomarine.

In order to establish a breach of contract under Pennsylvania law, the following elements must be proven: (1) the existence of a contract, including its essential terms; (2) the breach of a duty imposed by the contract; and (3) damages. *See Church v. Tentarelli,* 953 A.2d 804, 808 (Pa.Super.Ct.2008), *appeal denied,* 599 Pa. 685, 960 A.2d 835 (Pa.2008). Where a breach of contract constitutes a material failure of performance, the non-breaching party is discharged from all liability under the contract. *See, e .g., Tyro Industries, Inc. v. Trevose Const. Co., Inc.,*

737 F.Supp. 856 (E.D.Pa.1990); *Slagan v. John Whitman & Assocs.,* 1997 WL 587354, *5 (E.D.Pa.1997); *Service Imaging Sys., Ltd. v. G.W.G. Diagnostic, Ltd.,* 1991 WL 86365, *4 (E.D.Pa.1991); RESTATEMENT (SECOND) CONTRACTS, § 237. In determining the materiality of an alleged failure of performance, the following factors are relevant:

(a) the extent to which the injury party will be deprived of the benefit which he reasonably expected;

(b) the extent to which the injured party can be adequately compensated for that part of that benefit of which he will be deprived;

(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(d) the likelihood that the party failing to perform or offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

(e) the extent to which the behavior of the party failing to perform or offer to perform comports with standards of good faith and fair dealing.

*Tyro Industries,* 737 F.Supp. at 865 (citing RESTATEMENT (SECOND) OF CONTRACTS, § 241). Here, Cummins maintains that Technomarine materially breached the Subcontract in several ways. Specifically, Cummins alleges that Technomarine failed to obtain and provide proof of various types of insurance coverage; failed to deliver parts and drawings in a timely manner; failed to pay suppliers and superintendents; and failed to provide required Operation & Maintenance ("O & M") manuals.

### A. Technomarine's Alleged Failure to Provide Proof of Insurance

**\*5** The Subcontract required Technomarine to maintain general liability, worker's compensation, employee liability and automobile liability insurance and indicated that failure to do so constituted "grounds for immediate termination of [the Subcontract] or withholding of payment until such proof is provided." [1] Cummins first asserts that Technomarine materially breached the Subcontract by failing to obtain and/or provide proof of each of these types of insurance. It is well-settled that "there are very serious risks associated with the performance of a construction contract which necessitate insurance coverage." *See* 3 S. STEIN, CONSTRUCTION LAW ¶ 13.16[1] at p. 13–101 (1989). It is also recognized "that the requirement that a subcontractor obtain insurance is a material term in a construction contract and that failure to obtain such insurance constitutes a material breach of contract." *Tyro Industries,* 737 F.Supp. at 865 (citing *Adams v. Fred Weber, Inc.,* 849 F.2d 1018 (7th Cir.1988); *Washington Metropolitan Area Transit Authority v. Mergentime Corp.,* 626 F.2d 959 (D.C.Cir.1980)); II CONSTRUCTION & DESIGN LAW § 30.6 at 14 (1984) (failure to provide insurance as required by the contract could constitute a material breach whereupon the promisee would be justified in terminating the contract). At deposition, Cummins testified that Technomarine never provided the requisite proof of insurance coverage despite his repeated requests:

Q: [H]ad you requested from Technomarine a certificate of insurance?

A: Yes.

Q: What did they tell you?

A: They were going to give it to me.

Q: Had you ever been provided with a copy of one?

A: No.

(Def.Appx.Exh.D, p. 109).

With respect to general liability insurance, Raddison points to a Certificate of Liability Insurance indicating that Technomarine was a named insured on a policy issued by Sundahl & Co. (Plaintiff's Appx. Exh. 3). The Certificate, dated February 2, 2006, purports to provide "Commercial General Liability" coverage and lists "Techno Marine" [sic] as the Certificate Holder and "Bob Cummins/Cummins Construction Co." as the insured. Although the Certificate states that it "confers no rights upon the certificate holder," it expressly provides that the "Certificate holder is also listed as Additional Insured as respects Generla [sic] Liability coverage." (*Id.*). On its face, the document indicates that Technomarine was covered under the referenced general liability policy between July 11, 2005 and July 11, 2006. (*Id.*). At deposition, however, Cummins disputed that this Certificate originated from Technomarine or

demonstrated that Technomarine was covered under a general liability policy:

Q: [H]ad you ever seen that document before from Technomarine?

A: This Technomarine [sic] is not from Technomarine.

Q: Who's it from?

A: Sundial [sic] Insurance Company to Technomarine.

Q: And had it been provided to you at all?

*6 A: No. I provided it to Technomarine.

Q: You provided it to Technomarine?

A: Yes.

Q: And the certificate holder is Technomarine?

A: Yes.

Q: Okay. Certificate holder being the holder of the certificate of insurance?

A: Yes.

Q: And under their certificate of insurance you're the named insured?

A: That's my insurance.

Q: Oh, that's your insurance?

A: Yes.

Q: Okay. And you provided this to Technomarine?

A: Yes.

Q: They never, in turn, provided you one?

A: Yes.

(Def.Appx.Exh. D, pp. 109–110).

In light of Cummins' testimony and the facial ambiguity of the Certificate of Liability Insurance, I find that there is a disputed issue of material fact as to whether Technomarine obtained and/or provided proof of general liability insurance coverage. As previously discussed, it is not disputed that Technomarine materially breached the Subcontract by failing to procure worker's compensation insurance, employee liability insurance, or automobile insurance. These failures presented Cummins with three options: it could have terminated the agreement immediately, withheld payment until proof of insurance was provided, or waived the potential breach and continued to accept performance. (Def. Appx., Exh. G, Subcontract, at § IV). Raddison contends that, with respect to each of the alleged breaches, Cummins waived his right to terminate the Subcontract or withhold payment by continuing to accept parts and designs from Technomarine and continuing to perform pursuant to the Subcontract.

"Waiver is the 'intentional relinquishment or abandonment of a known right or privilege.'" *Evcco Leasing Corp. v. Ace Trucking Co.,* 828 F.2d 188, 195 (3rd Cir.1987) (citing *Barker v. Wingo,* 407 U.S. 514, 525, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)). In the context of a contractual breach, the right to bring a claim may be waived where the nonbreaching party continues performance despite knowledge of the breach:

> When one party commits a material breach of contract, the other party has a choice between two inconsistent rights-he or she can either elect to allege a total breach, terminate the contract and bring an action, or, instead, elect to keep the contract in force, declare the default only a partial breach, and recover those damages caused by that partial breach-*but the nonbreaching party, by electing to continue receiving benefits pursuant to the agreement, cannot then refuse to perform his or her part of the bargain ....* Finally, it should be kept in mind that although a default unquestionably may be waived by continuing to perform or accepting performance despite a breach or failure of a condition, where the nondefaulting party brings his or her complaints to the defaulting party's attention, and continues the relationship only on the assurance of better future performance, he or she will not be barred from asserting rights under the contract; in such a

case, the successive acceptances of performance do not justify the belief that performance of the character tendered was satisfactory, and a waiver of the right to the promised performance cannot be found.

***7** *Gillard v. Martin,* 2010 WL 5141685, *5–6 (Pa.Super.2010) (quoting 13 R. Lord, WILLISTON ON CONTRACTS (4th Ed.1990), § 39:32, pp. 645–46) (footnotes omitted) (emphasis added). The burden is on the party asserting waiver to establish "conduct inconsistent with claiming the waived right or any action or failure to act evincing an intent not to claim the right." *Evcco,* 828 F.2d at 195.

Raddison argues that Cummins waived any insurance-related breach by continuing to accept Technomarine's performance under the Subcontract. It is undisputed that Cummins did not elect to terminate the Subcontract based upon Technomarine's failure to provide insurance certificates. However, the parties disagree as to whether Cummins' failure to pay Technomarine was based upon the failure to provide proof of insurance. In his brief, Cummins contends that he "acted completely consistently with the enforcement of [his rights under the Subcontract] by withholding payment." (Reply Brief in Support of Motion for Summary Judgment, p. 2). However, there is evidence of record to support the proposition that Cummins withheld payment for reasons unrelated to Technomarine's failure to produce appropriate insurance documentation. For instance, in an invoice from Cummins to the USDA sent on March 7, 2006, days before Technomarine went into bankruptcy, Cummins requested payment from the government for work performed, in part, by Technomarine. (Plaintiff's Appx. Exh. 3, pp. 72–73). At deposition, Cummins acknowledged that this invoice contained a payment request for ongoing work performed by Technomarine. (Plaitniff's Appx. Exh. 2, p 100). When asked at deposition why Technomarine was never paid for their portion of the work encompassed by that invoice, Cummins indicated that the reason for nonpayment was Technomarine's bankruptcy proceeding:

Q: Was any part of [the payment from the March 7, 2006 invoice] paid to Technomarine?

A: No.

Q: And the reason it was not paid to Technomarine was what?

A: Technomarine was not there.

Q: By the time this was approved?

A: By the time I got paid, they were gone.

(Cummins Depo., Plaintiff's Appx. Exh. 2, p. 101). In addition, as previously discussed, Cummins testified that the working relationship with Technomarine "was fine" and that he was "very comfortable" with Technomarine prior to the initiation of bankruptcy proceedings. (*Id.* at 74–75). Raddison, in opposing Cummins' Motion for Summary Judgment, argues:

> Whether or not Cummins *intended* to waive enforcement of the Subcontract provision, is itself an issue of fact which precludes summary judgment, *see Coolspring Stone Supply v. American States Life Ins. Co.,* 10 F.3d 144, 148 (3rd Cir.1993), citing *Riehl v. Travelers Ins. Co.,* 772 F.2d 19, 24 (3rd Cir.1985) (issues of intent are particularly inappropriate for resolution by summary judgment, since such issues must often be resolved on the basis of inferences drawn from the conduct of the parties. Accordingly, based upon the issue of fact surrounding Cummins' waiver of the alleged breach of contract by Technomarine's alleged failure to provide proof of insurance, Defendant's Motion for Summary Judgment should be denied.

***8** (Brief in Opposition to Motion for Summary Judgment, p. 10) (emphasis in original). Based upon my review of the record, I agree with Raddison that Cummins' intent relative to the issue of waiver presents a material issue of fact most appropriately resolved by a jury. [2]

**B. Technomarine's Alleged Additional Breaches**

Cummins next contends that Technomarine's failure to deliver parts and drawings in a satisfactory manner, to pay suppliers and superintendents, and to provide required Operation & Maintenance ("O & M") manuals cumulatively represent a material failure of performance so as to "justify immediate termination of the Subcontract and the discharge of Cummins' liabilities thereunder." (Brief in Support of Motion for Summary Judgment, p. 12).

Whether or not Cummins would have been justified in terminating the Subcontract based on those alleged breaches, it is undisputed on this record that he did not do so prior to Technomarine's commencement of bankruptcy proceedings. Consequently, given Cummins' continued performance, it is clear that the doctrine of waiver precludes Cummins from asserting that his own performance under the Subcontract was thereby excused.

Raddison concedes that Technomarine failed to pay certain subcontractors and site supervisors and that Cummins elected to effect cover by paying those entities itself after Technomarine entered into bankruptcy. (Plaintiff's Brief in Response, pp. 13–15). However, as with the case of the alleged deficiencies in the drawings and parts, Cummins' attempt to effect cover for these expenses is more appropriately considered as an element of damage in connection with his counterclaim.

## IV. CONCLUSION

For the reasons stated above, Cummins' Motion for Summary Judgment is DENIED.

## *ORDER*

AND NOW, this 2nd day of March, 2011, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Cummins' Motion for Summary Judgment is DENIED.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 818668

Footnotes

1   Raddison concedes that there is no evidence in the record to indicate that Technomarine ever procured worker's compensation insurance, employee liability insurance, or automobile insurance. (Transcript, Oral Hearing, 7/23/10, p. 16). The Court is of the view that Technomarine's collective failure to have obtained these insurances represents a material breach, in and of itself.

2   Because "[w]aiver is mainly, or essentially, a matter of intention," 28 Am.Jur.2d, Estoppel and Waiver, § 206, determining "[w]hether there has been a waiver is usually a question of fact." *Priester v. Milleman,* 161 Pa.Super. 507, 55 A.2d 540, 547 (Pa.Super.1947) (citing *Batchelder v. Standard Plunger Elevator Co.,* 227 Pa. 201, 75 A. 1090 (1910).

**End of Document**                                                      © 2016 Thomson Reuters. No claim to original U.S. Government Works.