# Exhibit 73

**EXHIBIT**

**73**

EXHIBIT 6-246

#22

Man leg

7/5/12                                                    Print

Subject:  Re: Any Fred Fagal ad hoc committee information?

From:     Sr. Gail Cabral IHM PhD (cabral@maryu.marywood.edu)

To:       fffagal@yahoo.com;

Date:     Monday, April 30, 2012 5:03 PM


Dear Fred,

Sr. Anne Munley and Dr. Levine asked me to respond to your question about the status of the ad hoc committee. The committee has not yet been convened but I expect that to take place this week. I am currently working to schedule the meeting.

Your suggestion to include Dr. Ed O'Brien on the committee has been accepted. The other two members of the ad hoc committee are Dr. Helen Bittel and Mr. Matt Povse. The choice of these two individuals was made in accordance with the Progressive Discipline Policy, on the basis "of their objectivity and competence and of the regard in which they are held in the academic community."

According to the Progressive Discipline Policy, when a faculty member requests that a committee be convened twice, the President determines whether the membership of the committee is similar or different. The President has received your email, and after review and consultation, Sr. Anne has determined that the membership will be the same.

I hope this is helpful.

Gail

On Thu, Apr 19, 2012 at 2:52 PM, Frederick Fagal <fffagal@yahoo.com> wrote:
> Dear Sr. Gail,
>
> Would you please give me an update regarding any progress in selecting an ad hoc
> committee and what the future "schedule of events? may be?
>
> Thanks very much.
>
> Sincerely,
>
> Fred

DEF001496

# Exhibit 74

EXHIBIT
74

**Faculty Senate Minutes, McGowan Room 1059, 3:00-4:40 PM, January 11, 2013**

***Senators and Alternates Present and Voting:*** **At Large:** Shamshad Ahmed, Phil Jenkins, Ed O'Brien, Joe Polizzi;  **CLAS:** Agnes Cardoni, M.A. Zimmer;  **HHS:** Joanne Christaldi, Lori Swanchak, Kielty Turner;  **ICPCA**: Rick Hoffenberg, Sam Olfano;  **Librarian Faculty:** Annette Fisher; **RCHED**: Frank DeMatteo, Chris Fryer, Kerri Tobin;  **School of Architecture**: Not represented.

***Excused:*** Tammy Brown, James Eckler, Linda Partridge (sabbatical leave), Alex Vari

***Others present:*** Helen Bitel, Jessica Bodzio, Gail Cabral, Lynn Hutchings, Brad Janey, Brian Monahan, Kathy Ruthkosky, Erin Sadlack, Pat Seffrin, Charles Truitt, Stephanie Wise, Shelby Yeager, Fran Zauhar

***Minutes submitted by:*** Rick Hoffenberg, Joanne Christaldi, Ed O'Brien

| Topic | Discussion | Action |
|---|---|---|
| **Welcome Back to Shamshad Ahmed** | Ed O'Brien welcomed Shamshad back to the Senate and Shamshad expressed her thanks for the support of her colleagues these past few months. | |
| **Review Minutes** | Minutes from the December 7 Faculty Senate meeting were reviewed and several minor editing changes were suggested by Phil Jenkins. Agnes Cardoni moved and Shamshad Ahmed seconded that the minutes be approved with the editing changes incorporated. | Minutes, as revised, were approved unanimously. |
| **Announcements** | (1) Rick Hoffenberg will be joining the Senate Executive Council as the ICPCA representative to replace Linda Partridge who is on sabbatical leave.  (2) Ed O'Brien noted that he has been contacted by several people with questions about the college survey (using the name of "Princeton" without having any affiliation with that institution) that identifies Marywood students as being unhappy with their college experience. Most Senators indicated that they had heard comments and concerns from colleagues and students about this survey. Ed O'Brien reported that feedback from the administration indicated that the methodology of this survey was poor and that internal analyses of our own well done student surveys did not suggest that the findings of the "Princeton" survey were valid. Members of the Senate indicated that they would like to hear more details about this issue. | Ed O'Brien will ask for someone from Institutional Research or another office to discuss this issue at a future Senate meeting to help get the word out to faculty and students to counteract whatever misperceptions may be out there in our community. |

| | | |
|---|---|---|
| **Ad Hoc Task Force on Code of Conduct Policy** | Senators from each of the Colleges, the Librarian faculty, and the School of Architecture had nominated members to be involved in the Ad Hoc Task Force on the Code of Conduct Policy. These members include: Kevin Wyllie (School of Architecture), Jay Clymer and John DePoe (CLAS), Karen Rich and Heather Walters (HHS), Barbara Blackledge and Stephanie Wise (ICCPA), Zhong Geng (Librarian Faculty), Sr. Katie Clauss and Kara Medeiros (Reap College), Ed O'Brien (ex-officio and at large Senate representative). Ed O'Brien will call a first meeting of this group and a first order of business will be for the group to elect a chair (as President of the Senate, O'Brien is not eligible to chair this task force). The Task Force will report back recommendations at the April meeting of the Faculty Senate and these recommendations could then be submitted for a final vote at our May meeting. | Ed O'Brien will contact the members nominated to join this Task Force, verify their availability, and call an organizational meeting. |
| **Ad Hoc Committee on Course Evaluation** | Kathy Ruthkoski presented the preliminary findings of the Ad Hoc Committee on Course Evaluation that was created last May. The Committee met three times over the fall semester to review options for updating our course evaluation procedures. The committee investigated commercially marketed course evaluation systems but is generally leaning toward updating and refining our current student course evaluations rather than moving to a commercially marketed system. The committee looked at the ETS course evaluation system but its length was about double the length of our current form and came with reporting restrictions that might be problematic (e.g., classes with small response rates would not be reported). Kathy presented several specific suggestions for updating the language of the current form (e.g., changing item # 6 on the back of the form to refer to 'electronic communication' rather than 'email', specifying the number of hours students report studying per week rather than the current category ratings for hours of study). The committee has also considered the possibility of moving the course evaluation system to an electronic format, something that the School of Architecture piloted a couple years ago. With the large number of students having 'smart phones' it may be possible for most students to complete course evaluations in class sessions and have those students who do not have or wish to use their phones go to nearby computer labs and complete the evaluations during class time (hopefully this will help keep the response rate at an acceptable level). Various incentives were suggested to increase student response rate; e.g., Kerri Tobin suggested that some schools do not release grades until course evaluations are completed.<br><br>Questions were raised about differences between on-line versus paper-and-pencil forms, wording of items on the current course evaluation form, how to preserve the integrity of student evaluations so that students could only submit one evaluation per class they are taking, the advantage of an electronic form in encouraging student comments as student | Senators will bring this discussion back to their constituents and solicit feedback that can come to our February Senate meeting where we can vote on the Committee recommendations. Decisions with regard to rewording items on the current survey are needed soon as this may impact on the ordering of course evaluation materials for the fall semester. Under the recommendations of this Task Force next year would involve experimenting with a new system with movement to a final revised system likely happening no sooner than the 2014-2015 academic year. |

| | | |
|---|---|---|
| | confidentiality of response would not be compromised due to faculty being able to recognize student handwriting. Rick Hoffenberg expressed the concern that students using smart phones to complete ratings might highlight social class differences with some students having this option and other students being in a 'have not' status. The committee has also been investigating colleague observation approaches to supplement student evaluations and thus provide a more balanced evaluation of instruction that is not so completely determined by student ratings.<br><br>Kathy suggested that if we were to go to an on-line system of student evaluation we might pilot this system with tenured full professors so that any glitches in the system would not affect faculty who were up for tenure or advancement in rank reviews. The committee also considered the possibility that among those full professors in the pilot project we might compare on-line versus paper-and-pencil ratings by randomly assigning faculty classes to one or the other of these formats. We could then compare the number of student comments, mean ratings of the courses, etc. Such comparisons could help answer questions about whether the evaluation format (on-line versus paper-and-pencil) alters student course evaluations. | |
| **Rank and Tenure Committee Proposal for Changes in Pre-Tenure Review Documentation** | Kathy Ruthkoski updated the faculty about a proposal from the Rank and Tenure Committee with regard to pre-tenure review. The feedback from all involved in the first year of implementation of pre-tenure review has been very positive and the Committee is proposing some minor changes that they believe will strengthen the process. The Committee does not want to make the pre-tenure process as onerous as applying for tenure and the current procedures have page limits and an expectation that there would be no appendices in the document. The Committee would like to change the procedure with regard to appendices and allow specific items to be included, ones that have already been written and would not require much additional work on the part of the applicant. The items that the Committee is proposing for inclusion would include annual self-evaluations and feedback from Chair and Dean about these self-evaluations. A copy of the proposal from the Rank and Tenure committee is attached to these minutes.<br><br>Questions were raised about the specificity with regard to pages allowed in the pre-tenure documents whereas there is no mention of whether documents should be single- or double-spaced. Such variability allows for a range of content where some documents will be twice the length as other documents. Kathy and Sr. Gail Cabral both agreed that the Committee does not seem concerned about this issue. It was suggested that it might be possible to have a word count length to the document, but Kathy and Sr. Gail pointed out that documents are submitted in printed rather than in electronic form. A question | Kathy asked that Senators discuss this issue with their constituents and the Committee will return to the February Senate meeting looking for a vote on their proposal. |

| | | |
|---|---|---|
| | was raised as to whether the outcome of the Committee review says anything about the likelihood of the applicant achieving tenure. Kathy and Sr. Gail indicated that the feedback does not involve such an overall judgment but instead provides evaluative feedback on each of the criteria involved. | |
| **Ad Hoc Task Force on Emeritus Status** | Joe Polizzi presented the revised proposal for the development of an emeritus designation for faculty who retire. The Task Force that Joe chaired looked at the policies employed at a number of our comparison schools (a specific list of these schools was presented at an earlier meeting of the Senate when this proposal was first discussed). A question was asked as to whether pro-rata faculty would be eligible for this designation as many have been involved at Marywood over long periods of time and have made important contributions to our programs. Joe indicated that the schools we reviewed only allowed full-time faculty to achieve this designation. A question was asked as to whether the criteria might need to be more specific and challenging to achieve this status. Joe indicated that the Task Force considered the issue of selectivity in considerable detail and ended up with a proposal where emeritus status would be seen by faculty as an achievable designation but one that would require several hurdles to achieve. Ed O'Brien suggested that this proposal was in the middle range compared to other schools in terms of the requirements for achieving emeritus status with some schools essentially saying that everyone who retired in good standing would be considered emeritus whereas other schools had more stringent criteria for achieving emeritus status. Ed O'Brien pointed out that the Task Force recommended a time period of application within a year of retirement in which faculty would apply for emeritus status. The Task Force also recommended that when this policy is implemented there should be flexibility if there are situations where someone has retired outside this time period but would be appropriate for this status. A minor wording correction was adopted before voting on this proposal. A copy of the final, revised proposal that was voted on by the Senate is attached to these minutes. Mary Ann Zimmer moved that the amended version of the proposal be accepted, Joe Polizzi seconded the motion. | The vote on this amended proposal was 13 in favor, 2 opposed, no abstentions. This proposal will be sent on to the administration for further consideration. |
| **Definition of Clinical Faculty Status** | The definition of Clinical Faculty Status proposal was presented by Lori Swanchak and Stephanie Wise. Ed O'Brien introduced this discussion by noting that our discussion at the December meeting had been very wide-ranging and informative with regard to many issues surrounding the role of clinical faculty at Marywood. He requested that the discussion today be focused more narrowly on the specifics of the proposal as distributed which deals only with wording changes in how clinical faculty are described in the Faculty Handbook so that we can hopefully vote on this proposal. Two specific wording changes were made and incorporated into the final document. A copy of the final, revised | The vote on this amended proposal was 15 in favor with no one opposed or abstaining. This proposal will be sent to the administration for further consideration. |

| | proposal that was voted on by the Senate is attached to these minutes. Frank DeMatteo moved to approve the proposal as amended and Sam Olfano seconded the motion. | |
|---|---|---|
| **Proposals for Changes in Faculty Grievance and Appeals Policy, and Progressive Discipline Policy** | Erin Sadlack presented proposed changes to the *Progressive Discipline Policy* and the *Grievance and Appeals Policy* (copies of these proposals had been distributed to all faculty prior to the meeting and are appended to these minutes). Erin explained that experience with these policies when they were implemented revealed that there are inconsistencies and ambiguities between these two policies that the members of the committees have attempted to address and clarify. Kathy Ruthkoski suggested that pro-rata and adjunct faculty may not be eligible to grieve actions under these policies (though the wording from the old and the revised policy suggests otherwise). Kathy suggested that part-time and pro-rata faculty might be eligible to appeal under Title IX policies, but that their routes for grievance according to her understanding of AAUP guidelines would be different than those available for tenure-track or other full-time faculty (e.g., clinical faculty). Joe Polizzi encouraged Erin and her committee to investigate this issue and Erin indicate that they would do so.<br><br>Erin described changes in the Grievance and Appeals policy having to do with tenure review and that faculty denied tenure are not eligible to grieve this decision on grounds of 'inadequate consideration' unless there are specific failures in the review having to do with process issues. The Grievance committee is not in place to provide a second opinion as to the decisions made by authorized committees such as Rank and Tenure, but rather is in place to insure that procedures in the review process were followed in a fair manner, consistent with stated policies and procedures. Erin also discussed the addition of wording to the document that would protect Grievance and Appeals committee members from reprisals based on carrying out the tasks of this committee.<br><br>Erin described the proposed changes in the Progressive Discipline policy. One change has to do with the preference being stated that a goal of this policy is for disciplinary actions to be taken in a way that promotes problem resolution while also recognizing that certain situations require immediate action without the option of progressive discipline. This was stated implicitly in the old policy and is stated more explicitly in the proposed revision. Agnes Cardoni raised a question as to how the development of a *Code of Conduct Policy* might impact on the issues addressed by Erin's committee and Erin did not know how this would be related but thought that such considerations would be important to discuss. Phil Jenkins suggested that wording related to whether the termination of a progressive discipline effort would occur based on 'no change' as | Erin and the Committees proposing these changes will review the input from the Senate and come back to a future meeting for further discussion and a vote on these proposed policy changes. |

| | | |
|---|---|---|
| | opposed to 'insufficient change' and Erin agreed that the revised wording would be incorporated into the proposal. Kathy Ruthkoski suggested some wording changes related to clarify steps in the process as moving up the 'chain of command' on page 3 of the document rather than circumventing the role of immediate supervisors (e.g., she suggested that the process would ordinarily involve a chair before the dean would become formally involved). Ed O'Brien asked what AAUP documents were consulted in reviewing these proposed changes and suggested that the committee should enumerate the relevant documents they have consulted and then contact AAUP to see if there are additional documents that would be relevant to this discussion. AAUP thinking about these issues is constantly evolving and when changes like this are being proposed Ed suggested that we should check to be sure that our procedures are consistent with current AAUP considerations. | |
| **Meeting Adjournment** | | Meeting adjourned at 4:40 p.m. |
| **Attachments** | Documents related to this meeting:  (1) Proposal from Rank and Tenure Committee on Pre-Tenure Review;  (2) Final version of Emeritus proposal voted on by the Senate;  (3) Definition of Clinical Faculty proposal voted on by the Senate;  (4) Proposal for changing the *Progressive Discipline Policy*; and (5) Proposal for changing the *Grievance and Appeals Policy*. | |

## Current Policy

Pre-tenure review materials should be no more than 35 pages (12-point font). The document should be numbered sequentially, include definitions of terms related to one's discipline, be proofread carefully and contain **no appendices.**

The pre-tenure portfolio should include:

1. a description of the pre-tenure candidate's progress to date in fulfilling each of the criteria for tenure (organized according to the tenure criteria section above);
2. the dean's detailed evaluation, or in the case of library faculty, the Director of the Library's evaluation of the pre-tenure candidate's portfolio, which must include a summative statement of the pre-tenure candidate's progress toward tenure;
3. the department chairperson's detailed evaluation of the pre-tenure candidate's portfolio, which must include a summative statement of the pre-tenure candidate's progress toward tenure;
4. tables that compile the pre-tenure candidate's teaching evaluations, including department, college, and University teaching evaluation means;
5. a self-assessment of the pre-tenure candidate's scholarly/creative work (e.g., selectivity of venues, impact of articles, citations);
6. the pre-tenure candidate's reflection on his/her teaching/librarianship;
7. the pre-tenure candidate's reflection on his/her service;
8. the pre-tenure candidate's description of his/her scholarship/creative activity agenda/plan.

Pre-tenure faculty members must structure their annual self-evaluations based on guidelines for the tenure application portfolio as described in the *Tenure* policy.

Deans and chairs must organize their responses to pre-tenure faculty members' self-evaluations and pre-tenure portfolios based on how the tenure section of handbook is organized. These responses must take into account departmental standards for scholarship/creative activity.

## Proposed Policy

Pre-tenure review materials should be no more than 35 pages (12-point font). The document should be numbered sequentially, include definitions of terms related to one's discipline, be proofread carefully and contain **one** *appendix which will include a copy of the candidate's yearly self-evaluation and a copy of the chairperson and Dean responses to the yearly self- evaluation.*

The pre-tenure portfolio should include:

1. *a description of the pre-tenure candidate's progress to date in fulfilling each of the criteria for tenure (organized according to the tenure criteria section above); this description should include the following items in appropriate sections:*

   a. *tables that compile the pre-tenure candidate's teaching evaluations, including department, college, and University teaching evaluation means;*
   b. *the pre-tenure candidate's reflection on his/her teaching/librarianship;*
   c. *the pre-tenure candidate's description of his/her scholarship/creative activity agenda/plan;*
   d. *a self-assessment of the pre-tenure candidate's scholarly/creative work (e.g., selectivity of venues, impact of articles, citations);*
   e. *the pre-tenure candidate's reflection on his/her service*

2. *the dean's detailed evaluation, or in the case of library faculty, the Director of the Library's evaluation of the pre-tenure candidate's portfolio, which must include a summative statement of the pre-tenure candidate's progress toward tenure;*
3. *the department chairperson's detailed evaluation of the pre-tenure candidate's portfolio, which must include a summative statement of the pre-tenure candidate's progress toward tenure*

Pre-tenure faculty members must structure their annual self-evaluations based on guidelines for the tenure application portfolio as described in the *Tenure* policy.

Deans and chairs must organize their responses to pre-tenure faculty members' self-evaluations and pre-tenure portfolios based on how the tenure section of handbook is organized.  These responses must take into account departmental standards for scholarship/creative activity

**Proposal for Emeritus Designation for Faculty**

| University Name | Criteria for Nomination | Privileges | Nomination Process |
|---|---|---|---|
| Marywood University-<br><br>Emeritus status is an honorary title awarded for distinguished service to the academic community. The title may be bestowed on a faculty member who is entering permanent retirement and who has served the University and academic community with distinction. The bestowal of Emeritus status is a distinctive honor, not a right. | - minimum of 10 years of service<br>- Must hold rank of Associate or Full Professor.<br>- Must be within one year of retirement date (either before or after formal retirement date).<br>- Must have achieved eminence through teaching, service, and scholarship (or creative work) in college, profession, and community. | -All University Benefits granted to faculty retirees AND:<br><br>-Listing in university catalog and directory at highest rank achieved with incorporation of Emeritus designation.<br><br>-Presentation of a certificate or resolution, appropriate for framing.<br><br>- Receive University ID/business card designating as Emeritus faculty.<br><br>- Ability to request institutional affiliation for proposals to funding agencies.<br><br>- Use of University stationary when in correspondence related to her or his professional role while a Marywood faculty member (e.g., submission of journal articles, serving as a reviewer for journals or books).<br><br>- Maintain access to campus email.<br><br>-Retain use of campus dining facilities.<br><br>-Any other privileges conferred by the University President/Board of Trustees | 1. In order for the retiring faculty member to be considered for emeritus status, the faculty member must be nominated by the appropriate School Dean, chairperson of department, or other tenured member of the University.<br><br>2. Upon nomination, the candidate must submit to the Emeritus Committee an application for such status which includes an updated CV, three  letters of recommendation (two of which must be from currently employed faculty members at Marywood) that discuss the individuals contributions in outstanding teaching, service, scholarship, or creative work throughout her/his career at Marywood University.<br><br>3.  After review of the application the Emeritus Committee submits their recommendations for such status to the Vice President for Academic Affairs who reviews the application and sends along their recommendation to the University President.<br><br>- The University President will recommend the final list of individuals to receive Emeritus/Emerita status to the Board of Trustees.<br><br>- Emeritus Status is designated and appointed by Board of Trustees. |

Respectfully prepared by the Emeritus Committee: Joseph Polizzi, Chair, Lori Swanchak, Joanne Christaldi, Matthew Mindrup, Annette Fisher, and Ed O'Brien.

*Proposal for Definition of Clinical Faculty*

| Current Faculty Handbook (2012, p. 23) | Proposed Revision to Faculty Handbook |
|---|---|
| *Clinical Faculty* | *Clinical Faculty* |
| On the recommendation of the cognizant chairperson or person acting in the capacity of chair, with the approval of the Vice President for Academic Affairs and based on a written description of the teaching and related duties, a Faculty position involving full time teaching in a clinical or professional skills program may be designated as a non-tenure track clinical position. | On the recommendation of the cognizant chairperson or person acting in the capacity of chair, and with the approval of the appropriate Dean and the Vice President for Academic Affairs and based on a written description of the teaching and related duties, a Faculty position involving full time teaching in a clinical or professional skills program may be designated as a non-tenure track clinical position. |
| ~~Titles associated with clinical positions shall be appropriately distinguishing, such as "Clinical Assistant Professors" as determined by the Vice President for Academic Affairs.~~ | The title of Clinical Faculty is a broad designation that covers professional activities both on and off campus that provide the core expertise for a particular faculty member. It is through their clinical expertise that clinical faculty are able to translate applied practice into their classroom and experiential activities. |
| The initial appointment may be for one or two years and may be renewed for successive terms under the same procedures as those applying to faculty members with appointments probationary for tenure. After six years of continuous service, subsequent reappointments may be for periods of up to five years but without tenure. | Clinical faculty are expected to engage in teaching and service to the department, college, university, discipline and community at large.  Scholarship, in its broadest sense, is of a secondary role for most clinical faculty and could be of an applied nature that focuses on and contributes to the advancement of teaching, clinical practice, ongoing professional development and contribution to the field.  The appropriateness, level and type of scholarly expectations of clinical faculty will vary significantly among disciplines and departments.  However, conducting independent research is not a requirement of clinical faculty. |
| | The annual faculty activity report and reviews for promotion will focus on teaching and service.  There does not need to be a separate section in the documents for scholarship.  Scholarship that supports teaching may be placed in the teaching section and scholarship in clinical services may be placed in the service section. However, clinical faculty who regularly engage in scholarship may request to the appropriate Dean to be evaluated among the tenure track faculty utilizing the teaching, service and scholarship evaluative tool. |
| | Clinical faculty may hold the following non-tenure track ranks:<br>• Clinical Instructor<br>• Clinical Assistant Professor<br>• Clinical Associate Professor<br>• Clinical Professor |
| | The initial appointment may be for one or two years and may be renewed for successive terms under the same procedures as those applying to faculty members with appointments probationary for tenure. After six years of continuous service, subsequent reappointments may be for periods of up to five years but without tenure. |

*Respectfully Submitted by Clinical Faculty*

**MARYWOOD UNIVERSITY**
**POLICIES AND PROCEDURES**

To:   **Executive Committee of Policy**

Re:   **Revision of Progressive Discipline Policy**

Comment:   **Faculty Grievance Committee Chair, at the behest of that committee, submits the following revisions for discussion.**

| CURRENT | PROPOSED |
|---|---|
| **Title:  Progressive Discipline Policy** | **Title:  Progressive Discipline Policy** |
| **Policy Statement:** | **Policy Statement:** |
| Marywood University endorses a progressive discipline policy designed to promote resolution in a fair and orderly manner.  This policy applies to faculty members with tenure or whose terms of appointment have not yet expired.  Its objectives support the collegial relationships at Marywood University and are directed toward continual institutional improvement.  Because the University regards disciplinary action as corrective and not punitive, the policy recognizes personal and professional problems that may be rectified by an informal educational process, as well as serious violations of professional responsibilities implicating possible recommendation for suspension or dismissal. | Marywood University endorses a progressive discipline policy designed to promote resolution in a fair and orderly manner. This policy applies to faculty members with tenure or whose terms of appointment have not yet expired. Its objectives support the collegial relationships at Marywood University and are directed toward continual institutional improvement. Because the University regards disciplinary action as corrective and not punitive, the policy recognizes personal and professional problems that may be rectified by an informal educational process, as well as serious violations of professional responsibilities implicating possible recommendation for suspension or dismissal. |
| The policy is intended to provide an effective and flexible means of identifying problem areas, resolving complaints, and preventing repetitive incidents by prompt intervention and assistance.  It is designed to accomplish these ends by a series of gradual steps involving strategies such as personal conferences, oral and written warnings, and opportunities for monitored assistance where applicable. | The policy is intended to provide an effective and flexible means of identifying problem areas, resolving complaints, and preventing repetitive incidents by prompt intervention and assistance. It is designed to accomplish these ends by a series of gradual steps involving strategies such as personal conferences, oral and written warnings, and opportunities for monitored assistance where applicable. |
| **Procedures** | Progressive discipline, however, is not guaranteed in every instance. In certain rare and extreme cases, the President has the authority to |

**Comment [EAS1]:** New paragraph. This is not a change in policy, however, only a clarification of **existing** language in the policy. For instance, the opening paragraph reads "the policy recognizes personal and professional problems that *may* be rectified by an informal educational process, *as well as* serious violations of professional responsibilities implicating possible recommendation for suspension or dismissal" (emphasis mine). These words suggest leeway in dealing with different situations.

Moreover, no one would question that there are some instances so extreme that there could be no possible remediation --a faculty member's immediate dismissal would be called for in the case of physical violence against a student, for example.

It is obviously difficult to define exactly what situation might lead to this response, but the language used is to make it clear that this is only for rare cases, and even then, according to the revisions that follow, the President is required to meet personally with the faculty member to see if there are any mitigating circumstances.

Moreover, no matter what, a tenured faculty member retains the right to appeal the President's decision to a committee of his/her peers.

***Commencement.***  Disciplinary action may be initiated by a complaint, oral or written, which alleges violation of institutional policy, practice, procedure or other functions and responsibilities of the faculty member in pursuing his or her customary teaching and institutional role.  The complaint, which may reflect an incident or incidents of misconduct or deficiency, may be communicated to the faculty member's immediate supervisor or to the appropriate dean.

***Meeting with Administrator.***  The administrator receiving the complaint shall discuss the matter with the faculty member in a confidential conference.  If additional information from the faculty member provides a satisfactory explanation, the decision may be to close the matter then.  If, however, additional light is not shed on the allegation or an explanation is not satisfactory, the administrator will specify corrective action to be taken, and the discussion will constitute an oral warning.

***Written Warning.***  If the alleged problem continues or additional complaints are received, the immediate supervisor or dean must notify the Vice President for Academic Affairs, who shall conduct a preliminary investigation concerning the merits of the complaint.   A written warning to the faculty member may follow where circumstances indicate that the problem is not resolved.  The written warning will become a part of the faculty member's personnel file, but will be expunged after three years if no other written warnings have occurred.

***Suspension***.  The faculty member may be suspended by the Vice President for Academic Affairs at any time during the proceedings involving him or her.  Suspension is justified if immediate harm to the faculty member or others is threatened by the person's continuance in the faculty position.  Unless in direct violation of the law, any such suspension should be with pay.

***Special Assistance.***  In those circumstances where it is evident that the faculty member is in need of special professional assistance, the Vice President for Academic Affairs may require in writing  any of the following remedial actions:

- counseling and/or another type of treatment program, such as

suspend or dismiss a tenured faculty member without that person first undergoing progressive discipline. However, the faculty member retains the right to appeal the President's decision through an ad hoc committee of faculty constituted as outlined below.

**DEFINITIONS**
Ad Hoc Appeals Committee: Three tenured faculty members—one selected by the faculty member, two by the Executive Council of the Faculty Senate—who will review the circumstances of a faculty member's suspension or dismissal and make a recommendation to the parties involved.

Dismissal: The discharge of a faculty member from employment at Marywood University.

Progressive discipline: a course of action tailored to each individual circumstance designed for the purpose of resolving a problem or issue with a faculty member through a series of gradual steps.

Suspension: The temporary barring of a faculty member from all work related to the University for a specified period of time. Unless in direct violation of the law, any such suspension will be with pay.

**PROCEDURES**
**Progressive Discipline**
1. *Commencement:* Disciplinary action may be initiated by a complaint, oral or written, which alleges violation of institutional policy, practice, procedure or other functions and responsibilities of the faculty member in pursuing his or her customary teaching and institutional role. The complaint, which may reflect an incident or incidents of misconduct or deficiency, may be communicated to the faculty member's immediate supervisor or to the appropriate dean.

2. *Meeting with Administrator*:  The administrator receiving the complaint shall discuss the matter with the faculty member in a confidential conference. If additional information from the faculty member provides a satisfactory explanation, the decision may be to close the matter.

**Comment [EAS2]:** Whole section added for clarity

**Comment [EAS3]:** Changed wording for sentence clarity.

Alcoholics Anonymous or Narcotics Anonymous;
- psychological counseling and/or treatment, including out-patient treatment prescribed by a duly credentialed and qualified professional;
- peer faculty monitoring to assist in resolving work-related performance problems;
- a specified number of periodic conferences with the faculty member's Dean to assist in resolving administrative or institutional problems.

Special professional assistance will be for a specific period of time.  Where the assistance necessitates in-patient treatment or time away from teaching, that temporary time-off shall be with pay.  During the period of assistance, the faculty member shall communicate weekly or at other intervals specified by the Vice President for Academic Affairs, who shall monitor the faculty member's progress to determine when and if the special assistance has achieved its objective.  Part of this monitoring function may involve the faculty member providing summary statements from treatment providers regarding compliance and prognosis. If the faculty member has refused to participate, or the remedial objective has not been reached during the specified period of time, a recommendation to terminate employment may be made to the President of the University.

*Dismissal*

If remedial actions(s) taken during the suspension does not sufficiently resolve the issues that lead to the suspension, the university may move towards dismissal of the faculty member.

*Ad Hoc Faculty Committee*

Faculty members have the right to convene an ad hoc committee in order to appeal either a decision to suspend the faculty member or a decision to dismiss the faculty member.

- Having received a written recommendation for either suspension or dismissal from the Vice President for Academic Affairs, the President of the University sends a written communication to the faculty member, stating with reasonable particularity the basis for

However, if additional light is not shed on the allegation or if the explanation proves unsatisfactory, the administrator will specify corrective action to be taken, and the discussion will constitute an oral warning.

3. *Written Warning*: If the alleged problem continues or additional complaints are received, the immediate supervisor or dean must notify the Vice President for Academic Affairs (VPAA), who shall conduct a preliminary investigation concerning the merits of the complaint. A written warning to the faculty member may follow where circumstances indicate that the problem is not resolved.  The written warning will become a part of the faculty member's personnel file but will be expunged after three years if no other written warnings have occurred.

Should further written warnings follow, the VPAA may confer with the faculty member's immediate supervisor and dean to discuss alternatives. The VPAA will determine the next course of action, which might result in recommending to the President the faculty member's suspension and/or dismissal.

**Special Assistance**
In those circumstances where it is evident the faculty member is in need of special professional assistance, the VPAA may require in writing any of the following remedial actions:
- counseling and/or another type of treatment program, such as Alcoholics Anonymous or Narcotics Anonymous;
- psychological counseling and/or treatment, including out-patient treatment prescribed by a duly credentialed and qualified professional;
- peer faculty monitoring to assist in resolving work-related performance problems;
- a specified number of periodic conferences with the faculty member's dean to assist in resolving administrative or institutional problems.

Special professional assistance will be for a specific period of time. Where the assistance necessitates in-patient treatment or time away from teaching, that temporary time-off shall be with pay. During the

**Comment [EAS4]:** Started new paragraph to emphasize this is an alternate course of action.

**Comment [EAS5]:** Omitted inaccurate comma

**Comment [EAS6]:** New paragraph; written to allow flexibility in dealing with various circumstances.

suspension or dismissal and offering, if requested by the faculty member within 10 days, to convene a tenured faculty ad hoc committee to consider the matter, to render confidential advice, and thereby to effect a remedy if possible.

- Should the faculty member request a review by an ad hoc committee, it shall consist of three members selected in the following order:  (a) one tenured faculty member selected by the person seeking assistance, and (2) two tenured faculty members selected by the Executive Council of the Faculty Senate.  The choice of members should be on the basis of their objectivity and competence and of the regard in which they are held in the academic community.  The President of the University or his/her delegate has the option of attending the meetings of the Committee.  Should a faculty member request that such a committee be convened twice (i.e., once for suspension and once for dismissal), the membership of the committee may be similar or different, a determination which is made by the President of the University in consultation with the faculty member and the Vice President for Academic Affairs.  Normally the committee would make its recommendation within 30 days of being convened.

- The Committee elects its own Chair, who sends the opinion of the committee in writing to the President of the University, copied to the faculty member and to the Vice President for Academic Affairs.  If the opinion of the Faculty Committee is that the matter is successfully resolved or that there is no merit to the complaint, a recommendation shall be made to discontinue proceedings.  If the problem has not been corrected and reason still exists to question the fitness of the faculty member, the recommendation shall be to either continue a suspension or initiate a formal action toward dismissal.

*Publicity.*  Public statements by the faculty member or others about possible or actual termination of employment should be avoided.

period of assistance, the faculty member shall communicate weekly or at other intervals specified by the VPAA, who shall monitor the faculty member's progress to determine when and if the special assistance has achieved its objective. Part of this monitoring function may involve the faculty member providing summary statements from treatment providers regarding compliance and prognosis. If the faculty member has refused to participate, or the remedial objective has not been reached during the specified period of time, a recommendation to terminate employment may be made to the President of the University.

**Suspension**
Should progressive discipline or special assistance result in no change in the faculty member's actions, the VPAA may opt to recommend to the President the suspension of the faculty member for a specified period of time.

Note: at any time the President or VPAA may opt to suspend the faculty member given an egregious breach of professional discipline or illegal activity, particularly if immediate harm to the faculty member, the University community, or others, is threatened by the person's continuance in the faculty position. Unless in direct violation of law, any such suspension should be with pay.

If the need for suspension is determined, the President will send a written communication to the faculty member, stating with reasonable particularity the basis for suspension and offering, if requested by the faculty member within 10 (ten) days, to convene a tenured faculty Ad Hoc Appeals Committee to consider the matter, to render confidential advice, and thereby to effect a remedy if possible.

**Dismissal**
Should progressive discipline or special assistance result in no change in the faculty member's actions, the VPAA may opt to recommend to the President the termination of the faculty member's employment.

Note: at any time, the President may opt to dismiss the faculty member given an egregious breach of professional discipline or illegal activity, particularly if immediate harm to the faculty member, the University community, or others, is threatened by the person's continuance in the

**Comment [EAS7]:** New wording in this section to accommodate multiple scenarios—the escalation of progressive discipline or the immediate suspension following egregious acts against the university community.

**Comment [EAS8]:** Changed to reflect the power of the President to act in these circumstances. Before it was only the VPAA who was named with the authority to suspend.

**Comment [EAS9]:** Spells out possible actions warranting suspension

**Comment [EAS10]:** Once part of the "ad hoc committee" directions, but this properly belongs to the suspension procedures.

**Comment [EAS11]:** Re-worded section to spell out existing procedures

faculty position. There is no obligation for the President or VPAA to suspend the faculty member before termination given severe circumstances.

Before moving to termination, the President must meet with the faculty member to see if any possible remediation might occur or to see if the faculty member can provide any mitigating circumstances that might justify a less drastic course of action.

If the need for dismissal is then determined, the President will send a written communication to the faculty member, stating with reasonable particularity the basis for dismissal and offering, if requested by the faculty member within 10 (ten) days, to convene a tenured faculty ad hoc committee to consider the matter, to render confidential advice, and thereby to effect a remedy if possible.

**Ad Hoc Appeals Committee**
Faculty members have the right to convene an Ad Hoc Appeals Committee in order to appeal either a decision of suspension or dismissal.

Should s/he elect to request a review, the committee will consist of 3 (three) tenured faculty members selected in the following order: (a), one person selected by the faculty member convening the committee and (b) 2 (two) people selected by the Executive Council of the Faculty Senate. The choice of members should be on the basis of their objectivity and competence and of the regard in which they are held in the academic community. The President of the University or his/her delegate has the option of attending the meetings of this Committee.

The Committee elects its own Chair, who will send in writing the Committee's opinion to the President of the University, copied to the faculty member and the VPAA. If the Committee's decision is that the matter is successfully resolved or that there is no merit to the complaint, a recommendation shall be made to discontinue the proceedings for suspension or dismissal. If the Committee finds that the problem has not been corrected and/or that reason still exists to question the fitness of the faculty member, they shall recommend either to continue the suspension or dismissal proceedings. Normally, the

**Comment [EAS12]:** Clarification of authority granted by current policy language. For example see "progressive discipline policy" under "Ad hoc faculty committee," the language is "having received a recommendation for either suspension or dismissal" not "suspension, then dismissal"

**Comment [EAS13]:** Logical addition, given the desire to be fair to all parties in this most extreme of circumstances.

**Comment [EAS14]:** Once part of the "ad hoc committee" directions, but this properly belongs to the dismissal procedures.

**Comment [EAS15]:** Renamed slightly to help distinguish this from the Faculty Grievance Ad Hoc Committees.

**Comment [EAS16]:** wording changed to avoid awkward repetition of "the faculty member"

**Comment [EAS17]:** Changed for clarity. Previous sentence said to initiate dismissal—that has already begun.

Committee will make its recommendation within 30 (thirty) days of being convened.

A faculty member may only request such a Committee be convened twice (i.e., once for suspension and once for dismissal) in the event that progressive discipline procedures have been instituted and failed, and that a reasonable amount of time has taken place between suspension and dismissal. In this event, the membership of the Committee may be similar or different, a determination of which is made by the President of the University in consultation with the faculty member and the VPAA.

In the rarer event of a serious breach of professional discipline and/or illegal activity, if the President moves to terminate the faculty member's employment within 48 (forty-eight) hours after meeting with him/her, then the faculty member may only convene the Ad Hoc Committee once to appeal the dismissal.

**Publicity**
Public statements by the faculty member or others about possible or actual termination of employment should be avoided.

**Comment [EAS18]:** sentence moved up to accompany committee procedures.

**Comment [EAS19]:** Moved section out of initial procedures—it's not an automatic step for everyone so there's no need to interrupt the general directions.

**Comment [EAS20]:** New idea. It makes no sense to have two groups of people review the exact same matter, with no remedial actions taken or other change in circumstances to justify a possible different outcome.

**Related Policies and Committees:**
Librarianship Responsibility
Teaching Responsibility
Academic Workload
Tenure
Faculty Status

**History:**
07/01/89 - Reaffirmed with publication of Faculty Manual
12/12/97 - Addition of informal process approved by the President of the University as recommended by the Policy Committee of the University
07/01/03 - Editorial changes made to reflect academic restructuring
10/12/11 - Revision approved by the President of the University as recommended by the Policy Committee of the University
11/2/12- Revisions suggested by the Chair of the Faculty Grievance Committee

**MARYWOOD UNIVERSITY**
**POLICIES AND PROCEDURES**

---

**To:**   **Executive Committee of Policy**

**Re:**   **Revision of Faculty Grievance Policy**

**Comment:**   **Faculty Grievance Committee Chair, at the behest of that committee, submits the following revisions for discussion.**

---

| CURRENT | PROPOSED |
|---|---|
| **Title:  Faculty Grievances and Appeals**<br><br>**Policy Statement:**<br><br>As an institution of higher education, Marywood University brings together a faculty, administration, and governing board united in a common bond of academic purpose. Essential to the fulfillment of this purpose is a mutual recognition of institutional integrity and individual human rights, along with an understanding of the respective roles of the several entities which constitute this educational organization.<br><br>Circumstances may arise at times, however, wherein a grievant--full-time, part-time, or pro-rata--may question decisions which affect his/her professional role in the institution. To assist in the resolution of these matters, a series of guidelines for grievances is herein set forth.<br><br>**Definitions**<br><br>Grievance: A grievance refers to any disagreement between two parties. A grievance identifies a complaint one party has against another party for some alleged wrongful action on the | **Title:  Faculty Grievances and Appeals**<br><br>**Policy Statement:**<br><br>As an institution of higher education, Marywood University brings together a faculty, administration, and governing board united in a common bond of academic purpose. Essential to the fulfillment of this purpose is a mutual recognition of institutional integrity, core values, professional values and standards of higher education, and individual human rights, along with an understanding of the respective roles of the several entities which constitute this educational organization.<br><br>Circumstances may arise at times, however, wherein a grievant —full-time, adjunct, or pro-rata—may question decisions which affect his/her professional role in the institution. To assist in the resolution of these matters, a series of guidelines for grievances is herein set forth.<br><br>**Definitions**<br><br>Ad Hoc Hearing Committee: A committee especially convened by the Faculty Grievance Committee should they call for additional review of a particular situation; their job is to investigate the matter thoroughly and then make a recommendation to all parties involved. Comprised of three tenured faculty members, the selection procedures are outlined below. |

**Comment [EAS1]:** I added the language about core values in the interest of transparency. Because the core values are a part of our contracts, they are relevant to causes of disciplinary actions, especially given their importance to the Marywood community.

I added the other phrase because I thought it would be helpful to establish that we also consider the standards of the profession in our decisions.

**Comment [EAS2]:** Added definition for clarity

part of the second party.

Grievant: A Grievant initiates a grievance.

**Faculty Grievance Committee**: Three tenured faculty members elected by the entire faculty body. Reviews complaints initially and determines one of outcomes outlined below. Procedures for election follow below.

> Comment [EAS3]: Added definition for clarity

Grievance: Any disagreement between two parties resulting in the initiation of either informal or formal grievance procedures. A grievance identifies a complaint one party has against another party for some alleged wrongful action on the part of the second party.

> Comment [EAS4]: Changed for clarity; a word should not be defined by itself.

> Comment [EAS5]: A disagreement by itself is not a grievance. It becomes a grievance when it escalates.

Grievant: The party who initiates a grievance.

> Comment [EAS6]: Changed for clarity; a word should not be defined by itself.

### Types of Issues That Can Be Grieved

It is understood that procedural rather than substantive factors provide appropriate areas of review, and the Faculty Grievance Committee will not attempt to substitute its judgment for that of the decision-maker(s) involved in the case.

Thus, the Faculty Grievance Committee will hear grievances   concerning:

 1) Allegations of violation of academic freedom resulting in: denial of tenure, promotion, or sabbatical leave; non-reappointment.

 2) Allegations of impermissible discrimination. Tenured and non-tenured faculty are protected against illegal or unconstitutional discrimination, or on any basis not relevant to job performance, and includes, but is not limited to, race, sex, religion, national origin, age, disability, marital status, or sexual orientation

 3) Allegations of inadequate consideration resulting in: denial of tenure, promotion, or sabbatical leave; non-reappointment; or termination of employment due to retrenchment.

 4) Allegations of violations of procedures used in rendering decisions in numbers 1 and 2 above as set forth in Chapter 2 of the *Faculty Handbook*.

### Types of Issues That Can Be Grieved

It is understood that *procedural* rather than *substantive* factors constitute appropriate areas of review, and the Faculty Grievance Committee will not attempt to substitute its judgment for that of the decision-maker(s) involved in the case.

> Comment [EAS7]: added italics for emphasis here and on word "substantive"; it is an important distinction

> Comment [EAS8]: more precise word choice than "provide" in this situation

Thus, the Faculty Grievance Committee will hear grievances concerning:

> 1) Allegations of violation of academic freedom resulting in: denial of tenure, promotion, or sabbatical leave; non-reappointment or disciplinary action.

> Comment [EAS9]: Shouldn't a faculty member be able to grieve less extreme actions too? (one might be justifiably angry/upset about actions taken even if one is tenured)

> 2) Allegations of impermissible discrimination. All faculty—full time, adjunct, or pro-rata—are protected against illegal or unconstitutional discrimination, or on any basis not relevant to job performance, and includes, but is not limited to, race, sex religion, national origin, age disability, marital status, or sexual orientation.

> Comment [a10]: Changed to make sure clinical faculty included.

> 3) Allegations of inadequate consideration resulting in: denial of tenure, promotion, or sabbatical leave, termination of employment due to retrenchment, or, for adjunct, clinical, and pro-rata faculty only, non-reappointment. Tenured faculty who are dismissed must instead follow the procedures outlined under the "Progressive Discipline Policy" as set forth in the *Faculty Handbook*. Tenure-track faculty are not eligible to grieve non-reappointment on the grounds of "inadequate consideration" (unless the decision relates to denial of tenure or promotion) because it would require the Faculty Grievance Committee to substitute its judgment for that of the decision-maker(s), who have the right not to re-appoint full-time faculty as outlined in section "Non-Reappointment of

Procedures regarding dismissal, suspension, and sanctions of faculty members are in the *Progressive Discipline* policy.

Should a grievant allege cause for grievance in any matter not identified in the above guidelines, the grievant may consult the Faculty Grievance Committee. In such circumstances, the Committee's first decision is whether the complaint is appropriate and sufficiently serious to merit consideration.

**Persons Against Whom Grievances May be Directed**

Fundamentally, a grievance may arise from an allegation of improper implementation of a procedure or process leading to a decision. The person(s) or body who perform(s) that procedure or process is (are) the subject(s) of the grievance. Thus, a grievant may direct a grievance against the person(s) or body responsible for the decision identified herein.

The decisions or actions of the Faculty Grievance Committee or Ad Hoc Hearing Committee may not themselves be grieved.

---

Faculty Member" in the Faculty Handbook.

4) Allegations of violations of *procedures* used in rendering decisions in numbers 1 and 2 above as set forth in Ch. 2 of the *Faculty Handbook*. Also, for tenure-track faculty, the Committee will hear allegations of violations of procedures of the "Non-Reappointment of Faculty Member" policy as set forth in the *Faculty Handbook*.

Should a grievant allege cause for grievance in any matter not identified in the above guidelines, the grievant may consult the Faculty Grievance Committee. In such circumstances, the Committee's first decision is whether the complaint is appropriate and sufficiently serious to merit consideration.

**For Tenured Faculty Facing Suspension or Dismissal**
If a tenured faculty member is suspended or dismissed and plans to appeal, s/he should proceed immediately with the creation of an ad hoc committee to review the matter as outlined in the "Progressive Discipline Policy," not pursue separate appeals through the Faculty Grievance Committee. All procedures regarding dismissal, suspension, and sanctions of faculty members are found in the "Progressive Discipline Policy."

**Persons Against Whom Grievances May be Directed**
Fundamentally, a grievance may arise from an allegation of improper implementation of a procedure or process leading to a decision. The person(s) or body who perform(s) that procedure or process is (are) the subject(s) of the grievance. Thus, a grievant may direct a grievance against the person(s) or body responsible for the decision identified herein.

The decisions or actions of the Faculty Grievance Committee or an Ad Hoc Hearing Committee may not themselves be grieved.

**Faculty Grievance Committee**
Consisting of three tenured faculty members and two alternates (also tenured), the Faculty Grievance Committee is specifically charged with responsibility for resolving matters of grievance and appeal. The Faculty Senate conducts the election of this committee. To forestall conflicts of interest, faculty currently serving on the Rank and Tenure Committee or the Faculty Development Committee are not eligible for election to the Faculty Grievance Committee.

---

**Comment [EAS11]:** Re tenured: this change is necessary to designed to prevent a grievant from re-submitting issues for consideration to multiple committees and to ensure clarity about the process as to which group should hear the appeal.

For non-tenured, tenure-track faculty, this is an important clarification of **existing** rules. Given the current rules of "Non-Reappointment of Faculty Member" Policy--formerly section 2.13-- and the above designation that this Committee is only to review procedural matters, a grievance for non-renewal of appointment for tenure-track faculty is impossible on these grounds (they may still appeal under numbers 1, 2, and 4). In order for tenure to have meaning, as the AAUP recognizes, the administration must have the right to dismiss faculty members who aren't yet tenured. Therefore, an appeal on these grounds would require the committee to substitute its judgment for the decision-maker(s).

**Comment [EAS12]:** Clarifies that if tenure-track faculty are not notified of non-reappointment as laid out in the policy, that that is grounds for appeal.

**Comment [EAS13]:** New section, designed to prevent a grievant from re-submitting issues for consideration to multiple committees and ensure clarity about the process as to which group should hear the appeal.

**Comment [EAS14]:** Moved this up to be its own section so that it doesn't interrupt the grievance process section.

**Comment [EAS15]:** Clarifies reasoning behind this.

**Procedures**

**Informal Procedure**

1) A member of the faculty must initially discuss a complaint with the person or body responsible for the action to which the grievant takes exception in order to determine if a resolution is possible.

2) A complaint must be presented within (10) calendar days of the occurrence or discovery of the alleged violation.

3) No grievance may be filed without the initiation of this informal complaint procedure.

4) If the grievance still exists after step one the grievant initiates a consultation with the Vice President for Academic Affairs in order to try to resolve the matter.

**Formal Procedure for Filing a Grievance**

1) The Faculty Grievance Committee is convened.

**Faculty Grievance  Committee**

The Faculty Grievance Committee consisting of three tenured faculty members and two alternates (also tenured) is specifically charged with responsibility for resolving matters of grievance and appeal. The Faculty Senate conducts the election of this committee. Faculty currently serving on the Rank and Tenure Committee or the Faculty Development Committee are not eligible for election to this committee.

The term of each member extends for three years, with one person replaced each year. An alternate will be identified at each election. Any member of the Grievance Committee who

The term of each member extends for three years, with one person replaced each year. An alternate will be identified at each election. Any member of the Faculty Grievance Committee who has had any prior involvement in a case under consideration must recuse him/herself. The Grievance Committee shall annually elect a chair-elect who will succeed the Chair.

**Procedures**

No grievance may be filed without the initiation of this informal complaint procedure first.

**Step One:** **Informal Procedures**

1) A member of the faculty must discuss a complaint with the person or body responsible for the action to which the grievant take exception in order to determine if a resolution is possible.

2) A complaint must be presented within ten (10) calendar days of the occurrence or discovery of the alleged violation.

3) If the grievance still exists after step one, the grievant initiates a consultation with the Vice President for Academic Affairs (VPAA) in order to try to resolve the matter.

**Step Two:** **Formal Procedures**

To pursue the matter beyond a meeting with the VPAA, the grievant must notify the Faculty Grievance Committee. (The grievant may consult the President of Faculty Senate for assistance in contacting the Faculty Grievance Committee Chair). The grievant shall provide the Faculty Grievance Committee Chair with a written statement setting forth in detail the nature of the grievance or appeal and identifying the person(s) or body against whom the grievance or appeal is directed. This document may also include a proposal for resolving the issue. A grievance must be filed within thirty (30) calendar days of the occurrence or discovery of the alleged violation, but not fewer than five (5) calendar days after the initiation of the informal complaint.

In considering the grievance or appeal, the Faculty Grievance Committee will take the following steps:

1) The Committee Chair notifies the decision maker(s) that a grievance has been filed and requests a written statement describing the basis for the decision being

**Comment [EAS16]:** This is an important rule, not part of the process, so moving it here helps it stand out and prevents it from interrupting the process steps.

**Comment [EAS17]:** Again, clarifying the order of required events.

**Comment [EAS18]:** Grammar correction

**Comment [EAS19]:** Again, clarifying the order of required events.

**Comment [EAS20]:** This phrasing makes it clear that it is the responsibility of the grievant to move from informal to formal proceedings.

**Comment [EAS21]:** Grammar, deleted unnecessary commas

**Comment [EAS22]:** Deleted the requirement that the grievant submit a written statement—redundant because already have this statement as part of initiating complaint.

**Comment [EAS23]:** Combined step numbers 1 and 2 because you would naturally do this in the same step, not send 2 different letters

Faculty Grievance Policy                          - 5 -                          November 2, 2012

has had any prior involvement in a case under consideration must recuse him/herself. The Grievance Committee shall annually elect a chair-elect who will succeed the Chair.

**Grievance Process**

The grievant may consult the President of Faculty Senate for assistance in contacting the Faculty Grievance Committee Chair. The Chair should be provided with a written statement setting forth, in detail, the nature of the grievance or appeal and identifying the person(s) or body against whom the grievance or appeal is directed; this document may also include a proposal for resolving the issue. A grievance must be filed within thirty (30) calendar days of the occurrence or discovery of the alleged violation but not fewer than five (5) calendar days after the initiation of the informal complaint.

In considering the grievance or appeal, the Faculty Grievance   Committee will take the following steps:

1) The Committee notifies the decision maker(s) that a grievance has been filed.

2) The Grievance Committee requests from the grievant written information regarding the issues. The Grievance Committee also requests from the decision maker(s) written statements describing the basis for the decision being appealed or grieved, as well as any attempts to settle the matter informally. This information shall be held in confidence by the Grievance Committee. At this point in the process, the information gathered is solely for review by the Committee and is not to be shared with either party involved.

3) At any point, the Grievance Committee may request additional information in writing from the grievant and from the decision-maker(s).

4) If after completing the above steps, the Committee determines that the grievance is improper or unsubstantial, or

appealed or grieved, as well as an account of any attempts made to settle the matter informally.

2) At any point, the Grievance Committee may request additional information in writing from the grievant and from the decision-maker(s). Note: all information gathered is solely for review by the Committee and is not to be shared with either party involved.

3) The Grievance Committee may consult with personnel they deem necessary to gather further relevant information, including the Office of Human Resources or the University attorneys.

4) Once all information is gathered, the Faculty Grievance Committee may take any of the following steps to resolve the issue:

A) They may communicate to the grievant and the decision maker(s) that the Committee finds against the grievant for any of the following reasons:
1) the grievance is improper or unsubstantial
2) insufficient time was allowed for its normal resolution
3) there is no evidence of improper action on the part of the decision maker(s) which would constitute a legitimate grievance.

OR

B) They may find that there was "inadequate consideration" or "violation of procedures" (see numbers 3 and 4 in the list of causes for grievance above). In this case, the Committee will return the case to the decision maker(s) for reconsideration.

OR

C) The Committee may find it necessary to appoint a Mediator from the University to resolve the issue.
Note: the Mediator does not represent either party. Any party may object to the Mediator on the grounds of actual or apparent bias or conflict of interest and submit such objections to the Chair in writing. The Chair will review the objections and may replace the Mediator if that is deemed necessary.
1) The Mediator may consult the Offices of the Vice President for Academic Affairs or Human Resources on mediation procedure or other matters involved in the grievance.
2) The Mediator shall try to resolve the grievance within thirty

**Comment [EAS24]:** Deleted phrase "at this point in the process" because that suggests there is a time when these items might be shared but no such time is ever delineated in the document. Moved this sentence to this bullet point because it then relates to all information gathered.

**Comment [EAS25]:** Added because this was an issue for us when we were fact-finding; there were contradictions in what we were told by different parties about with whom we could speak. I would like to make sure that such confusion is cleared up for the future.

**Comment [EAS26]:** Changes below are to clarify the possible actions the committee may take. As it is currently laid out, they look like a series of chronological steps to take.

**Comment [EAS27]:** Edited to eliminate passive voice. Question: should there be anyone else the mediator is allowed to consult?

that sufficient time had not yet been allowed for its normal resolution, or that there is no evidence of improper action on the part of the decision maker(s) which would constitute a legitimate grievance, the Committee will communicate this determination to the grievant and the decision maker(s).

5) If the Grievance Committee determines that there was inadequate consideration or violation of procedures (see No. 3 and 4 under Types of Issues Which Can Be Grieved above), the Committee will return the case to the decision maker for reconsideration.

6) If the grievance is deemed appropriate for mediation, the Chair will appoint a Mediator from the University. The Mediator does not represent either party. Any party may object to the Mediator on the grounds of actual or apparent bias or conflict of interest and submit such objections to the Chair in writing. The Chair will review the objections and may replace the mediator.

7) The Offices of the Vice President for Academic Affairs or Human Resources may be consulted by the Mediator on mediation procedure or other matters involved in the grievance.

8) The Mediator shall try to resolve the grievance within thirty (30) calendar days of formal submission to the chair. With the consent of both parties, the period of mediation may be extended for a short period of time. If the grievance is not resolved within the thirty (30) calendar days, the mediator will advise the chair of the committee in writing that that the issue has not been resolved. If a mutually accepted agreement is reached, this will be communicated to the chair of the committee.

9) Grievances not appropriate for mediation or grievances not resolved through mediation shall be referred to the Ad Hoc Hearing Committee. All evidence collected will be passed on

(30) calendar days from his/her appointment. With the consent of both parties, the period of mediation may be extended for a short period of time. If a mutually accepted agreement is reached, or if the grievance is not resolved within the thirty (30) calendar days, the mediator will so advise the Faculty Grievance Committee Chair in writing.

3) If the Mediator is unsuccessful in effecting a resolution, the Faculty Grievance Chair will pass all evidence on to an Ad Hoc Hearing Committee.

OR

D) The Committee may find it appropriate to refer the grievance or appeal to an Ad Hoc Hearing Committee to investigate the matter further in a full formal hearing in cases of violation of academic freedom or impermissible discrimination (note: this does not refer to the Ad Hoc Committees convened to appeal a suspension or dismissal under the Progressive Discipline Policy). Creation of the Ad Hoc Hearing Committee and its procedures are outlined below.

5) The Grievance Committee will make a summary report of its activities at the end of each academic year to the Faculty Senate. No details relevant to the privacy of the participants in any cases will be included in this report.

**Comment [EAS28]:** Original read "of formal submission to the chair" Unclear exactly what was meant. It is logical to give the mediator a month to try to bring about resolution.

**Comment [EAS29]:** Edited for clarity and concision.

**Comment [EAS30]:** For clarity; all the different committees involved are confusing.

to the Ad Hoc Hearing Committee.

10) If the Faculty Grievance Committee recommends a formal hearing, in cases of violation of academic freedom or impermissible discrimination, an Ad Hoc Hearing Committee will be created to conduct a formal investigation and to arrive at a recommendation for resolving the issue.

11) The Grievance Committee will make a summary report of its activities at the end of each academic year to the Faculty Senate. No details relevant to the privacy of the participants in any cases will be included in this report.

**Ad Hoc Hearing Committee**

The Ad Hoc Hearing Committee shall consist of three members, selected by the Faculty Senate Executive Council, from a standing committee of fifteen tenured Faculty Members elected for one-year terms by the faculty at large. The Faculty Senate conducts the election of this committee.

Each party shall have two challenges without stated cause regarding membership of the Ad Hoc Hearing Committee. No member of the Ad Hoc Hearing Committee shall have had any prior involvement in the case.

If the three-person Ad Hoc Hearing Committee cannot be chosen from the fifteen members of the standing committee, the Executive Council of the Faculty Senate is empowered to conduct a special election to obtain fifteen additional members with terms of one year.

The Ad Hoc Hearing Committee must select a chairperson.

**Ad  Hoc Hearing Procedures**

1) The Ad Hoc Hearing Committee is empowered to gather information and documents specific to the case of the Grievant, conduct interviews, hold a hearing and take actions as are

**Ad Hoc Hearing Committee**

The Ad Hoc Hearing Committee shall consist of three members, selected by the Faculty Senate Executive Council, from a standing committee of fifteen tenured Faculty Members elected for one-year terms by the faculty at large. The Faculty Senate conducts the election of this committee.

Each party shall have two challenges without stated cause regarding membership of the Ad Hoc Hearing Committee. No member of the Ad Hoc Hearing Committee shall have had any prior involvement in the case.

If the three-person Ad Hoc Hearing Committee cannot be chosen from the fifteen members of the standing committee, the Executive Council of the Faculty Senate is empowered to conduct a special election to obtain fifteen additional members with terms of one year.

The Ad Hoc Hearing Committee must select a chairperson.

**Ad  Hoc Hearing Procedures**

1) The Ad Hoc Hearing Committee is empowered to gather information and documents specific to the case of the Grievant, conduct interviews, hold a hearing and take actions as are necessary to investigate the grievance to the extent that the law and University policy permit. The Ad Hoc Hearing Committee will provide recommendations in writing forty (40) calendar days

necessary to investigate the grievance to the extent that the law and University policy permit. The Ad Hoc Hearing Committee will provide recommendations in writing forty (40) calendar days from the date of its official appointment.

2) All Hearings are closed to anyone other than the parties and their advisors, members of the Ad Hoc Hearing Committee, and any witnesses invited to testify by the Committee. The hearing may be audio or video recorded and a written record will be maintained. The hearing is not a legal proceeding. At the beginning of the hearing, all procedures will be made known to the parties, and all information will be kept confidential.

3) Each party to the grievance may have one advisor during the hearing. The advisor may not participate in the hearing.

4) Strict rules of legal evidence will not be binding upon the Ad Hoc Hearing Committee and evidence of probative value in defining issues may be admitted.

5) The hearing record will be used exclusively as the basis for findings of fact and for arriving at a decision.

6) Upon reaching a decision on the issue and a recommendation for action, the Ad Hoc Hearing Committee will provide a summary written report to the petitioner, the person(s) named in the grievance, and the appropriate administrative officer and the President.

7) After receiving the recommendation of the Ad Hoc Hearing Committee, the appropriate administrative officer will review the recommendation and notify the Ad Hoc Hearing Committee and petitioner whether the recommendation has been accepted. If the recommendation of the Ad Hoc Hearing Committee is not accepted by the appropriate administrative officer, the administrative officer will review it with the Ad Hoc Hearing Committee.

from the date of its official appointment.

2) All Hearings are closed to anyone other than the parties and their advisors, members of the Ad Hoc Hearing Committee, and any witnesses invited to testify by the Committee. The hearing may be audio or video recorded and a written record will be maintained. The hearing is not a legal proceeding. At the beginning of the hearing, all procedures will be made known to the parties, and all information will be kept confidential.

3) Each party to the grievance may have one advisor during the hearing. The advisor may not participate in the hearing.

4) Strict rules of legal evidence will not be binding upon the Ad Hoc Hearing Committee and evidence of probative value in defining issues may be admitted.

5) The hearing record will be used exclusively as the basis for findings of fact and for arriving at a decision.

6) Upon reaching a decision on the issue and a recommendation for action, the Ad Hoc Hearing Committee will provide a summary written report to the petitioner, the person(s) named in the grievance, and the appropriate administrative officer and the President.

7) After receiving the recommendation of the Ad Hoc Hearing Committee, the appropriate administrative officer will review the recommendation and notify the Ad Hoc Hearing Committee and petitioner whether the recommendation has been accepted. If the recommendation of the Ad Hoc Hearing Committee is not accepted by the appropriate administrative officer, the administrative officer will review it with the Ad Hoc Hearing Committee.

8) No details relevant to the privacy of the participants in the case will be included in the notice from the Hearing Committee. Public statements and publicity about the case by the participants will be avoided until the proceedings have been completed, including consideration by the President

**Action by the President of the University**

Following the recommendation of the Ad Hoc Hearing Committee, should the petitioner desire further consideration of the issue beyond the immediate

8) No details relevant to the privacy of the participants in the case will be included in the notice from the Hearing Committee. Public statements and publicity about the case by the participants will be avoided until the proceedings have been completed, including consideration by the President

**Action by the President of the University**

Following the recommendation of the Ad Hoc Hearing Committee, should the petitioner desire further consideration of the issue beyond the immediate administrative channels of the University, the President may be requested, within twenty calendar days, to review the case.

This review will be based on the record from the committee hearing and may provide opportunity for argument, oral or written, or both, by the principals.  Then the President will then make the final decision.

**Responsibility for Expenses Incurred in Grievance and Appeal**

Expenses incurred by the grievant are the responsibility of the individual. These include, but are not limited to, the following:

Cost of an advisor.

Travel expenses for advisor, witnesses, or others engaged by petitioner.

Cost of preparing any documents and copies thereof.

**Withdrawal of a Grievance**

The grievance can be withdrawn at any point in the process.

**Non-Retaliation**

Grievants will not be adversely affected for exercising their

administrative channels of the University, the President may be requested, within twenty calendar days, to review the case.

This review will be based on the record from the committee hearing and may provide opportunity for argument, oral or written, or both, by the principals.  Then the President will then make the final decision.

**Responsibility for Expenses Incurred in Grievance and Appeal**

Expenses incurred by the grievant are the responsibility of the individual. These include, but are not limited to, the following:

Cost of an advisor.

Travel expenses for advisor, witnesses, or others engaged by petitioner.

Cost of preparing any documents and copies thereof.

**Withdrawal of a Grievance**

The grievance can be withdrawn at any point in the process.

**Non-Retaliation**

Grievants will not be adversely affected for exercising their right to file a grievance, regardless of outcome. Similarly, neither committee members nor witnesses will suffer adverse effects as a result of their participation in the process. Anyone who violates this mandate can be subject to disciplinary action, up to and including dismissal.

**Comment [a31]:** Adds protection for committee members and eliminates redundancy in the third sentence of the original.

right to file a grievance, regardless of outcome.

Grievants will not be subject to adverse consequences for
either initiating a grievance or in presenting evidence on behalf
of a grievant.  Anyone who violates this mandate can be
subject to disciplinary action, up to and including dismissal.

**Related Policies and Committees:**
 Non-reappointment of Faculty Member
 Progressive Discipline
 Evaluation of Faculty Members
 Academic Freedom
 Retrenchment of Faculty
 Promotion of Faculty Members
 Tenure
 Sabbatical Leave for Faculty Member
 Disability Grievance Procedures
 Anti-Discrimination Policy
 Anti-Discrimination Complaint Procedures

 Faculty Grievance Committee

**History:**
10/02/92 - Proposal returned to committee of Faculty Senate
by College Committee on Policy
11/13/92 - Proposed policy dated 3/13/92, as amended,
recommended by College Committee on Policy to the
President
04/26/93 - Presidential approval affirmed with publication of
the President's Memo
03/20/98 - Revision proposed by Faculty Senate approved by
the President of the University as recommended by the Policy
Committee of the University
04/29/11 - Revision approved by the President of the
University as recommended by the Policy Committee of the
University
11/2/12 – Revisions proposed by the Chair of the Faculty
Grievance Committee

# Exhibit 75

# AN APPRAISAL OF ECONOMIC LOSS
## TO
## FREDERICK F. FAGAL, JR.

Kristin K. Kucsma, M.A.
Stephen B. Levinson, Ph.D.

SOBEL TINARI ECONOMICS GROUP
www.SobelTinariEconomics.com

293 Eisenhower Parkway
Suite 190
Livingston, NJ 07039
973 / 992-1800  phone
973 / 994-1571  fax

112 West 34th Street
18th Floor
New York, New York 10120
212 / 201-0938  phone
212 / 201-0937  fax

November 2, 2016



# TABLE OF CONTENTS

Certification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

Purpose of Appraisal . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

Opinion of Economic Losses . . . . . . . . . . . . . . . . . . . . . . .   2

Background Facts and Assumptions . . . . . . . . . . . . . . . .   3

Components of Analysis . . . . . . . . . . . . . . . . . . . . . . . . .   8

Adjusted Earnings in Past Years . . . . . . . . . . . . . . . . . .   8

Adjusted Earnings in Future Years . . . . . . . . . . . . . . . .  11

Early Retirement Benefit . . . . . . . . . . . . . . . . . . . . . . . .  13

Compensation for Excess Taxes . . . . . . . . . . . . . . . . . .  14

Summary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

Exhibit

Qualifications Profiles

Lists of Trial and Deposition Testimonies

Statement of Ethical Principles and Principles of Professional
Practice

Professional Fees



## Certification

This is to certify that we are not related to any of the parties to subject action, nor do we have any present or intended financial interest in this case beyond the fees due for professional services rendered in connection with this report and possible subsequent services. Further, we certify that our professional fees are not contingent on the outcome of this matter but are based on the time expended on the services provided to counsel in connection with subject action.

This is to further certify that all assumptions, methodologies, and calculations utilized in this appraisal report are based on current knowledge and methods applied in the determination of projected pecuniary losses.

In addition, this is to further certify that we pledge to abide by the spirit and the letter of the Statement of Ethical Principles and Principles of Professional Practice of the National Association of Forensic Economics, a copy of which is attached to this report.

Lastly, we certify that the Sobel Tinari Economics Group has received, thus far, $3,000 compensation for preparation of a report for Frederick F. Fagal, Jr. v. Marywood University. As of this date, an outstanding balance of $1,900 is due. Our services are billed according to our Professional Fees, a copy of which is attached to this report.

Kristin K. Kucsma, M.A.

Stephen B. Levinson, Ph.D.



## Purpose of Appraisal

Sobel Tinari Economics Group was retained to prepare a report evaluating the economic losses suffered by Frederick F. Fagal, Jr., resulting from an alleged breach of employment contract and wrongful termination. Background facts on this matter were provided to us in a packet of documents. Additional information was obtained subsequent to the initial communications. We have relied on these documents, facts and publicly available documents in developing this appraisal. The respective document used as a source is duly noted at each point of use in the report.

The purpose of this report, therefore, is <u>to provide a written appraisal of the economic loss sustained by Frederick Fagal in this matter</u>.

## Opinion of Economic Losses

Within a reasonable degree of economic certainty, and based on the information received and the analysis contained in this report, it is our professional opinion that the total present value of the economic loss sustained by Frederick Fagal amounts to

**SEVEN HUNDRED FIFTY-FIVE THOUSAND,
THREE HUNDRED NINETY-FIVE DOLLARS**

[      **$755,395**      ]

Our valuation does not take into account the ramifications of intangible, non-economic losses such as human suffering or emotional feelings that may have been experienced by plaintiff or plaintiff's family members.



## Background Facts and Assumptions

1) Summary information:

- ▸ Plaintiff:                 Frederick F. Fagal, Jr.; male
- ▸ Born:                      ▮▮▮▮▮, 1946
- ▸ Residence:                 Skaneateles, NY
- ▸ Education:                 Ph.D. (Social Studies Education)
- ▸ Former employer:           Marywood University (Marywood)
- ▸ Former position:           Associate Professor of Economics
- ▸ Hired:                     in or around May 1987
- ▸ Suspended:                 January 23, 2012
- ▸ Terminated:                April 3, 2012
- ▸ Last paid:                 on or about August 24, 2012 (end of 2011-2012 contract)
- ▸ Current employment:        not working
- ▸ Spouse:                    Janet Sangenito Fagal (born: November 15, 1948)

2) Life expectancy: as of August 24, 2012, males of plaintiff's age (66.55 years) live, on average, an additional 17.1 years. [SOURCE: *National Vital Statistics Reports,* Volume 64, No. 11, United States Life Tables, 2011, Table 2, September 22, 2015, http://www.cdc.gov/nchs/data/nvsr/nvsr64/nvsr64_11.pdf.] Therefore, persons in plaintiff's statistical cohort have an expected total life span averaging 83.65 years, implying a statistical date of death of September 29, 2029.

3) Expected working years and projected retirement age: worklife expectancy tables provide statistics descriptive of the actual working life experience of the civilian population by gender, age, employment status, and schooling. As of August 12, 2012, males of Professor Fagal's age/education/labor-force-activity statistical cohort have 6.5 years of remaining labor force activity. [SOURCE: Gary R. Skoog, James E. Ciecka and Kurt V. Krueger, "The Markov Process Model of Labor Force Activity: Extended Tables of Central Tendency, Shape, Percentile Points, and Bootstrap Standard Errors", *Journal of Forensic Economics*, Volume 22, No. 2, August 2011, pp. 183-190, by interpolation.] This implies a retirement date of February 23, 2019, occurring at age 73.05 years.



For the purpose of this report, we assume that plaintiff would have worked through the completion of the 2018 - 2019 academic year at Marywood. We reserve the right to amend this report, upon request, should other information be provided.

4) Occupation and employment: prior to the termination, plaintiff worked full-time as an Associate Professor of Economics at Marywood, in Scranton, PA. He reportedly began employment there in or around May 1987, and attained tenured professorship in or around September 1994. Professor Fagal reportedly worked about forty (40) hours per week in that capacity. [SOURCE: responses to Sobel Tinari Economics Group Fact-Finding Questionnaire (FFQ).]

It is alleged that plaintiff was the subject of a breach of employment contract and wrongful termination in his employment at Marywood. It is reported that, on January 23, 2012, plaintiff was suspended after a meeting with Marywood University President, Sister Anne Munley. Plaintiff was reportedly charged with violating various Marywood policies, and he filed a formal grievance against President Munley on February 22, 2012. That grievance was reportedly determined by the university to be unfounded, and Professor Fagal's employment at Marywood was subsequently terminated on April 3, 2012. [SOURCES: *ibid.*; and Amended Complaint, dated January 15, 2015.]

Subsequent to the termination, Professor Fagal continued to be paid through August 24, 2012, the time period that remained on his employment contract. Plaintiff also worked occasionally as a lifeguard and swimming instructor at the Skaneateles YMCA through 2015. [SOURCES: Complaint, *ibid.*; and Videotape Deposition of Frederick F. Fagal, Jr., dated June 7, 2016, p. 342.]

5) Earnings history: plaintiff's earnings figures for the years 2008 through 2016 are presented in the table below. [SOURCES: plaintiff's W-2 Wage and Tax Statements for the years 2008 through 2014.]



**FAGAL / Jonathan Z. Cohen, Esq.**                                              **page 5**

| Calendar Year | W-2 Earnings | |
| --- | --- | --- |
| | Marywood | YMCA |
| 2008 | $68,128 | - |
| 2009 | 71,795 | - |
| 2010 | 73,626 | - |
| 2011 | 74,323 | $530 |
| 2012* | 52,172 | 580 |
| 2013 | - | 60 |
| 2014 | - | 160 |
| 2015 | - | n/p |
| 2016 | - | n/p |

* terminated: April 3; paid through August 24
n/p: not provided

6) Pre-termination earnings base: it is reported that, prior to his separation from Marywood, plaintiff earned a salary of $76,196 per academic year, for the period of August 22, 2011, to May 18, 2012. [SOURCE: Letter of Agreement to Frederick F. Fagal, Jr. from Anne Munley, IHM, Ph.D., dated May 10, 2011.] Based on this information, we establish plaintiff's pre-termination earnings at $76,196 for the 2011 - 2012 academic year. For the purpose of this report, we begin our calculations of earnings loss at the start of the 2012-2013 academic year.

7) Post-termination earnings base: given the relatively low level of earnings plaintiff generated from part-time work at the YMCA through 2014, and given that we have not been provided with earnings information for 2015 and 2016, we do not apply post-termination earnings as a subtraction in our analysis. We reserve the right to amend this report, upon request, should plaintiff experience a meaningful change in his post-termination employment or earnings.



8) Fringe benefits: as an employee of Marywood, plaintiff participated in a 403(b) retirement savings plan, with an employer matching contribution of 10%. It is reported that, in December 2014, the employer match was reduced to 5%. [SOURCES: FFQ; and Agreement for Pre-Tax Salary Reduction Under Section 403(B), Effective April 23, 2012.] Thus, we value fringe benefits at 10% of pre-termination earnings through December 2014, and 5% of earnings thereafter.

9) Early retirement benefit: as a full-time faculty member of Marywood, plaintiff was eligible to elect an early retirement benefit provided that the sum of his age and years of service at the date of retirement totaled 80. [SOURCES: Marywood University Faculty Handbook, July 1, 2012; and Marywood University Policy and Procedure Information, Early Retirement Plan, http://www.marywood.edu/policy/detail.html?id =163782&crumbTrail=Early%20Retirement%20Plan&pageTitle=Policies%20and%20 Procedures%20Manual:%20Early%20Retirement%20Plan.] Since plaintiff had been a tenured professor since in or around 1994, we assume that he would have elected this benefit. The benefit is paid as a lump-sum award, and the formula is as follows:

*1% of current salary times years of service*

For the purpose of this report, we assume that plaintiff had accrued a vested benefit for the approximately 18 years he had spent as a tenured professor at Marywood at the time of termination. Therefore, we consider lost retirement benefits beginning at the date of termination and continuing until plaintiff's projected retirement at the end of the 2018-2019 academic year. Should Professor Fagal have not accrued any retirement benefit by the date of termination, lost retirement income would need to be recalculated. We reserve the right to amend this report, upon request, should new information be provided.

10) Lump-sum Medicare premium increase: as a result of receiving the award calculated in this analysis, plaintiff will be subject to a one-time increase in his Medicare premium. Given his current household income, we estimate plaintiff's actual Medicare premium at $121.80 for 2016. If plaintiff were to receive the award calculated in this report, we project his Medicare premium would rise by $268 per month for a 12-month period[1]. [SOURCE: Social Security Administration, Medicare Premiums: Rules for Higher-Income

---

[1] Medicare premiums are calculated based upon income shown on a participant's federal income tax return.



Beneficiaries, 2016.] Thus for the purpose of this analysis, we estimate increased Medicare premiums for 12 months following the receipt of an award, at $268 per month, or **$3,216** for a 12-month period.

11) Social Security benefits: plaintiff reportedly began receiving Social Security Retirement benefits beginning October 28, 2014. As of August 10, 2016, he receives monthly payments of $2,390. [SOURCE: My Social Security, Benefit and Payment Details, accessed September 7, 2016; and Social Security Administration, Information About Current Social Security Benefits for Frederick F. Fagal, Jr., dated November 1, 2016.] This figure is presented for informational purposes only.

12) Excess tax on lump-sum award: it is important to recognize that a lump-sum award received in this matter may be subject to a relatively high income tax bracket on the entire amount in the year in which it is awarded. As a result, it is frequently impossible to make a plaintiff whole in matters like this without including compensation for taxes (i.e., a tax gross-up) to account for the fact that, because he will receive compensation all at once in the form of the award, he will face a higher tax rate in the year he receives the award than he would have faced each year but for the incident.

Most recently, in *E.E.O.C. v. Northern Star Hospitality, Inc.*, the 7th U.S. Circuit Court agreed with previous rulings in the 3rd and 10th Circuits[2] that the resulting tax increase, which would not have occurred had [plaintiff] received the pay on a regular, scheduled basis, will then decrease the sum total [plaintiff] should have received . . . And [plaintiff] would not be made whole, a result that offends Title VII's remedial scheme. [SOURCE: *E.E.O.C. v. Northern Star Hospitality, Inc.*, 777 F.3d 898,904 (7th Cir.2015).] This enhancement, or gross-up, recognizes, and is in compliance with, the "make-whole" doctrine set forth by the 3rd U.S. Circuit Court of Appeals 1995 decision in *Starceski v. Westinghouse Electric Corporation*.[3]

---

[2] See, Eshelman v. Agere Sys., 554 F.3d 426,441 (3d Cir.2009) and Sears v. Atchison, Topeka & Santa Fe R. Co., 749 F.2d 1451,1456 (10th Cit. 1984).

[3] In *O'Neill v. Sears Roebuck & Co.*, it was ruled that a plaintiff award is entitled to a court-ordered enhancement in order to compensate for the "negative tax consequences" of receiving, in a single year, a lump-sum award for back pay and front pay. Additionally, the judge in a Washington Court of Appeals case, *Blaney v. Int'l Assoc'n Of Machinists and Aerospace Workers*, concluded that adverse federal income tax consequences "are within the scope of the term 'actual damages.'" [SOURCES: *O'Neill v. Sears Roebuck*, 108 F. Supp.2d 443 (E.D.Pa.2000); *Blaney v. Int'l Assoc'n Of Machinists and Aerospace Workers*, 114 Wn.App. 80, 55 P.3d 1208



We calculate excess taxes in this report as a separate component of the loss for the purpose of facilitating settlement discussions. However, if the court permits, we are prepared to testify about the nature and magnitude of the excess taxes at trial. Or, if the pertinent post-trial application is made, we also stand ready to project post-award excess taxes. We note that such calculations require assumptions regarding pre- and post-incident income tax rates that then must be incorporated into the excess tax formula using the procedure explained later in this report.

## Components of Analysis

The pecuniary value of loss to plaintiff is estimated by consideration of the following components:

1. adjusted earnings in past years
2. adjusted earnings in future years
3. early retirement benefit income
4. compensation for excess taxes

Each of these components is analyzed separately in the following sections of this appraisal report.

## Adjusted Earnings in Past Years

This loss consists of the additional earnings plaintiff would have most likely generated through the present time, but for the termination. We calculate a loss of earnings beginning at the start of the 2012-2013 academic year, and continuing through December 31, 2016, midway through the 2016-2017 academic year. As previously stated in the Background Facts and Assumptions section of this report, plaintiff's pre-termination earnings are established at $76,196 for the 2011-2012 academic year.

---

(2002).]



FAGAL / Jonathan Z. Cohen, Esq.                                     page 9

To obtain corresponding values in past years, we apply yearly increases consistent with recent and expected annual wage growth, as presented in the table that follows.[4] [SOURCE: U.S. Department of Labor, Bureau of Labor Statistics, Occupational Employment Statistics (OES), Median Hourly Earnings, Education, Training, and Library Occupations, http://www.bls.gov/oes, percent calculated by author.] Projected gross earnings are calculated as presented in the following table:

| Academic Year | Yearly Increase | Projected Pre-Termination Gross Earnings |
|---|---|---|
| 2011 - 2012 | - | $76,196 |
| 2012 - 2013 | 0.0% | 76,196 |
| 2013 - 2014 | 0.3% | 76,425 |
| 2014 - 2015 | 1.1% | 77,265 |
| 2015 - 2016 | 1.2% | 78,192 |
| 2016 - 2017 | 0.6% | 78,662 |

Gross earnings are adjusted to take into account several factors that help determine adjusted earnings. One such adjustment relates to fringe benefits. As previously noted, we value employer contributions to plaintiff's 403(b) plan at 10% of pre-termination earnings through December 31, 2014, and 5% thereafter.

As a result of case law, IRS rulings and legislation, economic losses awarded in wrongful termination cases are fully subject to income tax liabilities. [SOURCE: *Gray v. Commissioner,* CA 10, No. 96-9006, 1/13/97.] The Small Business Job Protection Act of 1996 states that only settlements or awards originating in physical injury or physical sickness claims are excludable from income taxes. All other damage awards are taxable, including claims filed under federal statutes such as the Age Discrimination in Employment Act. Therefore, no adjustment is made to account for this liability in the present analysis, because to do so would unduly penalize the plaintiff, as income taxes will have to be paid on any back/front pay award received in this matter.

---

4

We assume wage growth through 2017 is likely to reflect wage growth from 2011 to 2015. Accordingly, we utilize compound wage growth from 2011 through 2015 to calculate annual wage growth in 2016.



A final adjustment to gross earnings addresses job maintenance expenses that plaintiff would have continued to incur in maintaining his employment. These expenses typically include transportation expenses, clothing, meals outside the home, and other costs. We estimate that these expenses amount to approximately 5% of earnings.

The preceding adjustments are summarized algebraically as follows:

|  | Through December 2014 | Thereafter |
|---|---|---|
| Gross Earnings Base | 100.00% | 100.00% |
| x (1 + 10%, 5% fringe benefits) | 110.00% | 105.00% |
| = Fringe-Adjusted Base | 110.00% | 105.00% |
| x (1 - 5% job maintenance expenses) | 95.00% | 95.00% |
| **= Adjusted Earnings Factor (AEF)** | **105.00%** | **100.00%** |

Given the aforementioned, adjusted earnings are estimated to be 105% of plaintiff's gross earnings through December 31, 2014 and 100% of gross earnings thereafter.

Applying the aforementioned information, the total value of adjusted earnings losses, calculated through December 31, 2016, is presented in the following table:

| Academic Year | Portion of Year | Gross Earnings | Adjusted Gross Earnings [(2) x (3) x AEF*] |
|---|---|---|---|
| (1) | (2) | (3) | (4) |
| 2012 - 2013 | 100% | $76,196 | $80,006 |
| 2013 - 2014 | 100% | 76,425 | 80,246 |
| 2014 - 2015 | 50% | 77,265 | 40,564 |
| 2014 - 2015* | 50% | 77,265 | 38,633 |
| 2015 - 2016 | 100% | 78,192 | 78,192 |
| 2016 - 2017 | 50% | 78,662 | 39,331 |
|  |  | **total:** | **$356,972** |

\* AEF = 105% through December 2014; 100% thereafter



## Adjusted Earnings in Future Years

In this section, cumulative future losses to plaintiff are calculated by extending these earnings projections into the future. This method reflects our understanding that, with respect to front pay or future lost earnings, courts allow claims for a "reasonable" period of time. Thus, we present cumulative potential losses through the completion of the 2018-2019 academic year for the trier-of-fact to consider. In light of all of the evidence that will be heard, the trier-of-fact in this matter would be expected to determine a reasonable period of time over which future losses may be assumed to continue.

To project pre-termination gross earnings in the future (beginning with the 2017 - 2018 academic year), we apply a yearly increase of 3.5%, based on recent and expected wage growth economy-wide.[5] [SOURCES: U.S. Department of Labor, Bureau of Labor Statistics, Occupational Employment Statistics (OES), Median Hourly Earnings, All Occupations, http://www.bls.gov/oes, percent calculated by author; and Principal Economic Assumptions, *2016 Annual Report to the Board of Trustees of the Federal Old-age and Survivors Insurance and Disability Insurance Trust Funds*, Table V.B1,http://www.ssa.gov/oact/tr/2016/V_B_econ.html.]

Regarding future projected values, it is possible to set aside a lump-sum monetary amount at the present time such that the annual flow of interest earnings from it plus a part of the principal would generate the equivalent amount of lost financial sums projected for each successive year under consideration. In other words, money has a time value. Pecuniary losses expected to be suffered at some future point in time are worth less in today's dollars because money can earn additional monies in the form of interest. Thus, to calculate the present value lump-sum amount, it is necessary to establish a reasonable interest rate which is referred to as a discount rate.

---

[5]

The yearly increase is an overall compound growth rate that encompasses two assumptions. The first is that wage growth through 2017 is likely to reflect wage growth from 2011 to 2015. Accordingly, we assume 1.2% annual wage growth from 2016 to 2017 (based on compound wage growth from 2011 through 2015, economy-wide). Annual wage growth after 2017 is best approximated by reference to the wage rate projections found in the Board of Trustees report cited above.



**FAGAL / Jonathan Z. Cohen, Esq.**                                                   **page 12**

We note that interest earnings from any award in this case will be subject to future income taxation in each subsequent year. This poses a problem since the award will be, in effect, taxed indirectly when no provision has been made for this tax burden. Thus, it is assumed that any lump-sum award would be used to purchase investment instruments to provide a flow of <u>nontaxable</u> payments to plaintiff.

Therefore, the tax-free return on high-grade municipal bonds is considered when determining our discount rate. We also consider historical yields, as well as current financial market conditions, when determining the appropriate discount rate(s). [SOURCES: Bond Yields and Interest Rates, 1947-2015, *Economic Report of the President*, February 2016, Table B-25, http://www.gpo.gov/fdsys/pkg/ERP-2016/pdf/ERP-2016.pdf, the Board of Governors of the Federal Reserve System, http://www.federalreserve.gov/ and other publicly available data on interest rates.]

In recent years, interest rates have dropped to historically low levels. In future years, rates are expected gradually to resume historical trends. In light of historical yields and current financial market trends, we select 2.75% as the appropriate discount rate, beginning with the 2017 - 2018 academic year.

Our calculations of plaintiff's pre-termination earnings through his projected retirement date are presented in the table that follows.

| Academic Year | Portion of Year | Projected Earnings [@ 3.5%] | Projected Adjusted Earnings [(2) x (3) x 100%] | Present Value [@ 2.75%] | Cumulative Present Value of Yearly Loss |
|---|---|---|---|---|---|
| (1) | (2) | (3) | (4) | (5) | (6) |
| 2016 - 2017 | 50% | $78,662 | $39,331 | $39,331 | $39,331 |
| 2017 - 2018 | 100% | 81,415 | 81,415 | 79,236 | 118,567 |
| 2018 - 2019* | 100% | 84,264 | 84,264 | 79,814 | **198,381** |

\* plaintiff projected to complete academic year



FAGAL / Jonathan Z. Cohen, Esq.                                    page 13

## Early Retirement Benefit Income

As stated in the Background Facts and Assumptions section of this report, but for the termination, plaintiff would have been eligible for an early retirement benefit at Marywood. The benefits formula is as follows:

*1% of current salary times years of service*

For the purpose of this report, we assume that plaintiff had accrued a vested benefit for the approximately 18 years he had spent as a tenured professor at Marywood at the time of termination. Therefore, we consider lost retirement benefits beginning at the date of termination and continuing until plaintiff's projected retirement at the end of the 2018-2019 academic year. Should Professor Fagal have not accrued any retirement benefit by the date of termination, lost retirement income would need to be recalculated. We reserve the right to amend this report, upon request, should new information be provided.

Plaintiff's salary at projected retirement was established in the previous section of this report at $84,264. Application of the benefit formula results in a total lump-sum retirement benefit of $5,898 ($84,264 x 1%, times 7 years of service to retirement) at the close of the 2018-2019 academic year. We apply the previously established discount rate of 2.75% to convert that figure into a present dollar amount, yielding a total present value of lost retirement benefits of **$5,587**.



## Compensation for Excess Taxes on Lump-Sum Award

In this section, we include an analysis of excess taxation using the loss figures previously calculated in this report. This analysis is provided for settlement purposes. Plaintiff's definitive excess tax liability can only be determined once the actual pre-tax award is known.

Prior to calculating the additional tax liability, we show in the following table a summary of the components analyzed in this report, and which sum to the pre-tax award (PTA).

| Component of Analysis | Present Value |
|---|---|
| (1) | (2) |
| Adjusted Earnings in Past Years | $356,972 |
| Adjusted Earnings in Future Years | 198,381 |
| Early Retirement Benefit Income | 5,587 |
| Medicare Premium Increase | 3,216 |
| Total: | $564,156 |

The normal income tax liability on each year's annual earnings would have been less than the tax liability imposed on a single lump-sum representing the total of past and future earnings losses. As explained in the Background Facts and Assumptions section of this report, it is appropriate to include this additional or excess tax liability as an element of damages in order to ensure plaintiff is made whole.

To calculate the additional tax liability, we first estimate the current average effective tax rate that would have been in effect for the plaintiff's earnings but for the incident and then the average effective tax rate that will be in effect when the plaintiff receives the PTA, and any other current income, all at once.

Second, we estimate the plaintiff's after-tax award (ATA) by applying to it the average effective income tax rate that would have been in effect but for the incident. The ATA is intended to be a replacement for the income that he or she would have received during the normal, scheduled course of time, instead of all at once.



Third, the make-whole objective, after all is said and done, is that the plaintiff be left with this ATA after the higher tax rate is applied to the PTA, such that the additional tax markup is simply intended to be passed through in taxes that will need to be paid. In order to accomplish this, we mark up the ATA by the higher average tax rate that will be in effect upon receipt of the award, plus other current income, to obtain the final award (FA). Then, the FA less the PTA is the tax markup that needs to be included as a loss component to make the plaintiff whole.

1. Income Tax Liability Estimates: Annual Income and Lump-sum Award Income

Estimation of after-tax wages is based on the actual taxation rate evidenced by recent tax returns and anticipated changes in the plaintiff's taxation profile. As previously stated, plaintiff resides in New York and is not currently working. Therefore, for the purpose of this analysis, we analyze plaintiff's excess tax compensation assuming a potential award would be taxed in New York.

Based on a review of plaintiff's 2011 federal and NY/PA state income tax returns, federal, NY and PA personal income tax schedules, and plaintiff's projected income, we estimate plaintiff's pre-termination effective federal-state income tax liability at 21%. [SOURCES: plaintiff's 2011 federal and NY/PA state income tax returns; 2015 federal Income Tax Schedule, http://www.irs.gov/pub/irs-pdf/i1040.pdf; 2015 New York State Income Tax Rate Schedules, https://www.tax.ny.gov/pdf/current_forms/it/it201i_tax_rate_schedule.pdf; and Department of Revenue, State of Pennsylvania, http://www.revenue.pa.gov/GeneralTaxInformation/Current%20Tax%20Rates/Pages/default.aspx#.VznnmOQsBFs.]

To calculate the tax rate on the PTA, we also look at plaintiff's estimated taxable income in 2016 absent the award and estimate plaintiff's adjusted gross income at $133,076[6]. Given estimated itemized deductions and exemptions, we assume taxable income of $82,101 for 2016.

We make use of the aforementioned income tax tables. If plaintiff were to receive the PTA in 2016 in addition to his projected taxable income for 2016, we estimate that he would

---

[6] Calculated as plaintiff's 2015 adjusted gross income, $131,498, plus application of yearly increase of 1.2% for 2016.



have an average combined federal/state tax rate on the lump-sum estimated as shown in
the following tables:

| Federal | NY* | Combined Effective Tax Rate |
|:---:|:---:|:---:|
| (1) | (2) | (3) |
| 34% | 7% | 41% |

\* plaintiff's award, if any, is assumed to be taxed at the state level by New York state only

2. Calculation of ATA

Based on the tax rate presented above, the ATA is calculated as follows:

| PTA | Combined Effective Tax Rate | ATA (1) x {1 - (2)} |
|:---:|:---:|:---:|
| (1) | (2) | (3) |
| $   564,156 | 21% | $445,684 |

3. Estimation of Final Award

The final award (FA) is calculated by application of the following formula.

$$FA = (ATA) / (1 - t)$$

where ATA is the previously-calculated after-tax award and t is the average effective tax
rate on the PTA. [SOURCE: adaptation of Tyler J. Bowles, and W. Cris Lewis, "Taxation
of Damage Awards: Current Law and Implications," *Litigation Economic Digest*, Fall
1996, Volume 2, Number 1, pp. 73-77.]

Thus, using the above formula and the preceding information, we calculate the award
adjusted for the additional compensation for the tax liability imposed on the lump-sum as
follows:



| ATA | Combined Effective Tax Rate | FA $[(1) / \{(1 - (2)\}]$ |
|-----|-----------------------------|--------------------------|
| (1) | (2) | (3) |
| $445,684 | 41% | $755,396 |

After all is done, and after imposition of the higher tax rate on the FA, we calculate that Professor Fagal will receive the net amount shown above, the same amount he would have received normally but for the incident, after imposition of the normal, lower tax rate. He will thereby be made whole.

## 4. Additional/Excess Income Taxes

In order to establish the excess tax amount as a separate component of loss, we subtract the pre-tax award amount, PTA, from the final award amount, FA, as follows:

| FA | PTA | Excess Tax Gross Up $[(1) - (2)]$ |
|----|-----|-----------------------------------|
| (1) | (2) | (3) |
| $755,396 | $564,156 | **$191,239** |



## Summary

The preceding findings evaluating the magnitudes of the loss components analyzed in this appraisal report are combined in order to obtain the total present value of loss, as follows:

|  | Present Value of Loss | Component of Analysis |
|---|---|---|
| $ | 356,972 | adjusted earnings in past years |
|  | 198,381 | adjusted earnings in future years |
|  | 5,587 | early retirement benefit income |
|  | 3,216 | Medicare premium increase |
|  | 191,239 | compensation for excess taxes |
| $ | **755,395** | **present value of total loss** |

It is important to understand that each of the total loss figures represent present value amounts (in 2016 dollars), representing lump-sum payments needed at present to generate a flow of payments sufficient to compensate for the losses in each year of loss included in this appraisal. In addition, please note that pre-trial or pre-judgment interest has not been calculated. These  interest losses are typically determined at the time of trial and would be in addition to the losses calculated in this appraisal report.

We calculate pre-judgment interest on the previously calculated losses (exclusive of compensation of excess taxes) using a 6% simple interest rate. [SOURCE: Loan Interest and Protection Law Act of January 30, 1974 (P.L. 13, No. 6) as amended, h t t p : / / w w w . d o b s . p a . g o v / D o c u m e n t s / S t a t u t e s /Loan%20Interest%20and%20Protection%20Law.pdf.]  Loss  totals,  including  our calculation of interest, are shown in Exhibit 1 appended to this report. Our interest calculations may change by the time of trial.



The preceding findings are based on information provided to us as of this date. They are subject to revision should additional information be forthcoming that would change any facts or assumptions upon which this analysis rests. We also note that pecuniary losses are an approximation and are provided by the economic expert as a guide to the trier-of-fact. [SOURCE: *Jones and Laughlin Steel Corp. v. Pfeifer,* 462 U.S. 523, 545-47 (1983).]

Kristin K. Kucsma, M.A.                          Stephen B. Levinson, Ph.D.



## Exhibit 1

## Pre-Judgment Interest

|  | Loss Value | Interest* |
|---|---|---|
| adjusted earnings in past years | $356,972 | $93,302 |
| adjusted earnings in future years | 198,381 | 51,851 |
| early retirement benefit income : | 5,587 | 1,460 |
| Medicare premium increase: | 3,216 | 841 |
| **total:** | **$564,156** | **$147,453** |

\* from 8/24/2012 to 12/31/2016 @ 6% per year



*Qualifications Profile*

## Kristin Kucsma, M.A.

KKucsma@SobelTinariEconomics.com
SOBEL TINARI ECONOMICS GROUP
293 Eisenhower Parkway, Suite 190
Livingston, NJ 07039
973-992-1800

### Education

ABD in Economics, Rutgers University, New Brunswick, NJ
M.A. in Economics, Rutgers University, New Brunswick, NJ (1993)
B.A. in Economics / English Minor, Seton Hall University, South Orange, NJ, *summa cum laude* (1991)

### Fields of Specialization

Applied Microeconomic Theory, American Economic History, Monetary History of the United States, Macroeconomic Theory and Business Cycles, Banking Structure and Regulation

### Honors and Awards

Recognition Award, #1 Economic Expert, New York Law Journal, 2014 and 2015
"5.0" Teaching Commendation Award, Stillman School of Business, Seton Hall University, 2003-04.
Teaching Commendation Award, Stillman School of Business, Seton Hall University, 2002-2003, 2001-2002.
Recognition Award, Educational Opportunity Program, Seton Hall University, 2003
Professor of the Year Award, Alpha Kappa Psi, Seton Hall University, 2002-2003, 2001-2002.
President's Award for Student Services, Seton Hall University, 2001
The Faculty Pirate Pride Award, Seton Hall University, 2000-2001
Feature of Faculty Profile, Seton Hall University Magazine, 2001

### Positions Held

Principal of the Firm, Sobel & Co., January 1, 2016 - present
In addition to my responsibilities as Managing Director and Senior Economist of the Sobel Tinari Economics Group (STEG), a wholly owned subsidiary of Sobel & Co., I represent and lead STEG as a division of Sobel & Co.



**Kristin Kucsma, M.A.**

### Positions Held (cont'd)

Managing Director (since July 2014) and Senior Economist, Sobel Tinari Economics Group, January 2008 - present

> *Primary responsibilities:* oversee the day-to-day operations of the group; analyze data, prepare reports, and provide expert testimony; manage our team of economists, analysts and research assistants and collaborate on the group's more complex cases; perform independent and co-authored research, present at national and regional conferences, regularly teach CLEs and lead other seminars, and serve as an active participant in the field of forensic economics.

President, Bull and Bear Consulting, September 2006 - December 2007

> Review portfolios of equities, fixed-income securities and mutual funds for clients; manage financial assets for several high-end clients; advise clients and refer them to specialists regarding long-term care, supplemental health insurance and a variety of trusts including qualified personal residential and generation skipping trusts.

Lecturer, Department of Economics, Drew University, September 2004 – August 2006

> *Courses Taught:* Money, Banking and the Macroeconomy; Principles of Microeconomics; Principles of Macroeconomics; Intermediate Macroeconomic Analysis; and Mergers and Manias: The Business of Banking

Faculty Associate, Department of Economics, Seton Hall University, Sept. 1999 - July 2004

> *Graduate Courses Taught:* The National Economy (MBA Level Macro); HUB 1 (Blend of Economics and Corporate Finance); *Undergraduate Courses Taught:* Principles of Microeconomics; Principles of Macroeconomics; Money and Banking; Intermediate Microeconomic Theory; Government and Business; Labor Economics; Small Scale Technology; and Economics in Our Nation's Capital.

Program Coordinator for Economic History Sessions, Eastern Economic Association, 2005 - 2007.

Faculty Advisor to Omicron Delta Epsilon, the International Honor Society in Economics, Drew University and Seton Hall University, September 1999 – August 2006

Faculty Advisor for the Fed Challenge, Seton Hall University and the Federal Reserve Bank of New York, 2002-2004

Co-chair and Project Coordinator for University Retention Committee, Seton Hall University, December 2000 – July 2004

Adjunct Lecturer, Department of Economics, Seton Hall University, 1998 – 1999

Adjunct Lecturer, Department of Economics, Drew University, 1997 – 1999

Instructor, Department of Economics, Saint Peter's College, on-campus as well as at corporate satellite centers, 1995 – 1998

Instructor, Department of Economics, Rutgers University, New Brunswick NJ, 1992 – 1995

Teaching Assistant, Department of Economics, Rutgers University, New Brunswick NJ, 1991 – 1992



**Kristin Kucsma, M.A.**

### Professional Activities

National Association of Forensic Economics, Chairperson, Software Committee,
2015- present

Member, District Ethics Committee, Office of Attorney Ethics of the Supreme Court of New Jersey, 2010 - present

National Association of Forensic Economics, 2010 - present

Member, Eastern Economic Association, 1997 - present

Member, Conference Organizing Committee, Eastern Economic Association, 2006

Co-Developer of Revised Business Writing Course, Stillman School of Business, Seton Hall University, 2003 – 04.

Member, CDI-7: Writing Intensive Workshop for Business, Seton Hall University, 2003 – 04.

Designer of Various Question/Answer Duos for Sophomore Assessment, Stillman School of Business, Seton Hall University, 2001 – 2004

Topics included the "Congested Parks Dilemma", the impact on the US economy of tobacco litigation, issues of market structure with respect to TIVO, the blackout of August 2003 that affected the northeast United States and the Martha Stewart litigation

Guest Speaker, National Council of Negro Women, Seton Hall University, February 2004

### Publications

"How to Distinguish Between a Forensic Economist and an Accountant and Why it Matters When Evaluating Economic Damages", *The New Jersey Law Journal*, 2014 How-To Guide.

"How to Make Sure Your Economic Expert is Prepared for Cross-Examination", *The New Jersey Law Journal*, 2013 How-To Guide.

"Assessing Economic Damages in Personal Injury and Wrongful Death Litigation: The State of New Jersey," co-authored with Frank D. Tinari, *Journal of Forensic Economics*, 21(2), June 2010, pp. 219-234, http://www.JournalofForensicEconomics.com/doi/pdf/10.5085/jfe21.2.219.

"State's Housing Rules Ignore Needs of Immigrants," co-authored with Frank D. Tinari, *Daily Record*, Morris County, NJ, August 30, 2009. (Note: article title is what is available electronically; newsprint copy is titled: "COAH Rules Hurt Immigrants.")

White paper: Is Affordable Housing the Remedy to Perceived Discrimination Against Immigrants?, co-authored with Frank D. Tinari, prepared for the Community Forum on Immigration and Education Issues, convened by the New Jersey State Advisory Committee to the United States Commission on Civil Rights, May 2009.

"COAH Research is Full of Short-comings," co-authored with Frank D. Tinari, *Newark Star-Ledger*, April 1, 2009.

"Companionship, Advice, and Counsel Services," co-author, Section 640 of Chapter 6, The Value of Household Services, of *Determining Economic Damages,* by Gerald D. Martin, Ph.D., Costa Mesa, Ca: James Publishing, Inc., July 2008, pp. 6-7 - 6-11.



**Kristin Kucsma, M.A.**

### Publications (cont'd)

Wrote entries for *barter, cost of information, demand, the discount rate, the functions of money, price floors and ceilings and profit maximization* for <u>Encyclopedia of Capitalism</u>, Dr. Syed B. Hussain, editor, Golson Books, Ltd., published 2004


### Papers Presented

"A Comprehensive Assessment of Economic Damages in Wrongful Death Matters: Focus on On-call Services", Seminar sponsored by the Pennsylvania Association for Justice, P.A., Philadelphia PA, October 2015

"The Crisis in Economics Education and Its Impact on Political Participation and Economic Growth", The American Monetary Institute Monetary Reform Conference, Chicago IL, September 2006

"A Picture Comes into Focus: A Reexamination of the Crisis of 1877-78", Eastern Economic Association Conference, Philadelphia PA, February 2006

"The Opportunity Cost of Undervaluing Core Concepts in Macroeconomics Courses", Eastern Economic Association Conference, Philadelphia PA, February 2006

"A Framework for Teaching Money and Banking in a Liberal Arts Setting", as part of a panel discussion with Mary Lesser and Steven Cechetti, Eastern Economic Association Conference, New York NY, February 2005

"Portrait of a Panic: The Crisis of 1877", Eastern Economic Association Conference, Washington DC, February 2004

"Betrayed by the FDIC? A Preliminary Examination of the D'Oench, Duhme Doctrine and Its Impact on the Potential Efficiency of Banks in the United States", Eastern Economic Association Conference, New York NY, February 2003

"Celebrating Economics as a Social Science", 14th Annual Conference on Teaching Economics: Instruction and Classroom Based Research at Robert Morris University, Moon Township PA, February 2003

"Deciphering the Mystery of Medieval Debasement", Eastern Economic Association Conference, New York NY, February 2001


### Comments, Notes and Reviews

Review for publisher of Laurence Ball's *Money and Banking* textbook, 2003 - 2004

Referee, "A Test of the Purchasing Power Parity Concept Including the Law of One Price and Its Applicability in International Business", *Journal of Applied Management,* South Orange, New Jersey, 1999



**Kristin Kucsma, M.A.**

## Other Conference Activities

Session Organizer for Undergraduate Panel: "Tax Reform in the US: Is A Consumption Tax the Answer?" Eastern Economic Association Conference, Philadelphia PA, February 2006

Discussant for two panels: "Topics in Economic History" and "Teaching and Learning Economics: Achieving Desired Outcomes", Eastern Economic Association Conference, Philadelphia, February 2006

Discussant for two panels: "Personal Behavior: Time, Money, Risk and Trust" and "Lessons From the Past: Money, Trade and Wages", Eastern Economic Association Conference, New York NY, February 2001

Discussant for panel on "Political and Economic Transformations", Northeastern Political Science Association and International Studies Association Conference, Philadelphia PA, November 1999

"A Picture Comes Into Focus: A Reexamination of the Crisis of 1877-78", Work in Progress

"The Opportunity Cost of Undervaluing Core Concepts in Undergraduate Macroeconomics Courses", February 2006

"Regulation of the US Banking Industry in the Aftermath of the Great Depression", Work in Progress, 2004

"Increasing the Marginal Utility Derived From An Economics Course Through Experiential Education", Work in Progress, 2004

"Betrayed by the FDIC? A Preliminary Examination of the D'Oench, Duhme Doctrine and Its Impact on the Potential Efficiency of Banks in the United States", 2001

## Speaking Engagements

"A Comprehensive Assessment of Economic Damages in Wrongful Death Matters", CLE program co-presenter, sponsored by the New Jersey State Bar Association, Atlantic City, New Jersey, August 12, 2016.

"Valuing Economic Damages in Cases Involving Catastrophic Injury & Wrongful Death in NJ", CLE program presenter, sponsored by Messa & Associates, Philadelphia, PA, July 20, 2016.

"Participated in the New Jersey State Bar Association: 2016 Civil Trial Advocacy Summer Institute, sponsored by the American College of Trial Lawyers, New Brunswick, New Jersey, July 11, 2016.

"Direct and Cross Examination of Economic, Vocational and Life Care Planning Experts in the Catastrophic Injury Case: Use of Demonstrative Evidence", CLE program co-presenter, sponsored by CMCS Management, Inc., Saddle Brook, New Jersey, March 16, 2016.

"Current Developments in Testimony for the Defense: a Panel Discussion", Panelist, sponsored by the National Association of Forensic Economics at the Eastern Economic Association Conference, Washington, D.C., February 27, 2016.

"Presenting the Economist at Trial – A Live Demonstration with Expert" and "Panel Discussion on the Finer Points of Direct Examination", program co-presenter, sponsored by the New



**Kristin Kucsma, M.A.**

### Speaking Engagements (cont'd)

Jersey Association for Justice: Six Concurrent Seminars, New Brunswick, New Jersey, February 6, 2016.

"Valuing Economic Damages in Wrongful Death Cases", CLE program presenter,
 sponsored by Sobel Tinari Economics Group, Livingston, New Jersey, November 17, 2015.

"Deposing Your Economic Expert", Hudson County Inn of Court, Hudson County Community College Culinary Conference Center, Jersey City, New Jersey, November 9, 2015.

"Recent Developments in Assessing Economic Damages", CLE program co-presenter, sponsored by CMCS Management, Inc., Saddle Brook, New Jersey, October 29, 2015.

An Introduction to Economic Damages", CLE program co-presenter, sponsored by Union County Bar Association, Summit, New Jersey, October 27, 2015.

"Masters in Trial Tactics: How to Maximize Your Damages", CLE program co-presenter, sponsored by Pennsylvania Association for Justice, P.A., Philadelphia, Pennsylvania, October 22, 2015.

"Valuing Economic Damages in Cases Involving Catastrophic Injury", CLE program presenter, sponsored by Sobel Tinari Economics Group, Livingston, New Jersey,
 October 13, 2015

"Valuing Economic Damages in Medical Malpractice Cases in New York" CLE program co-presenter, sponsored by NYLJ, Union League, New York, October 9, 2015.

"Introduction to Economic Damages", CLE program presenter, sponsored by Sobel Tinari Economics Group, Livingston, New Jersey, September 16, 2015.

"Valuing Economic Damages in Wrongful Death Cases", CLE program co-presenter, sponsored by the New Jersey Association for Justice, Boardwalk Seminar, Atlantic City, New Jersey, May 1, 2015.

"Valuing Economic Damages in Employment Law Cases", CLE program co-presenter, sponsored by the Legal Intelligencer, Philadelphia, Pennsylvania, April 10, 2015.

"Telling the Damages Story: Effectively Proving Damages at Trial", CLE program presenter, sponsored by the New York State Academy of Trial Lawyers, New York, NY, April 30 and April 31, 2015.

"Building the House of Damages: Using a Vocational Expert, Life Care Planner, and Economist", CLE program presenter, sponsored by CMCS Management, Inc., Saddle Brook, New Jersey, March 26, 2015.

"How to Effectively Quantify Economic Damages in Personal Injury and Medical Malpractice Cases", CLE program presenter, sponsored by the NJAJ Pines Manor, Four Concurrent Seminars, Edison, New Jersey, February 28, 2015.

"Valuing Economic Damages in Wrongful Death Cases", CLE program co-presenter,
 sponsored by the Gloucester County Legal Education Association, Mantua Township, New Jersey, November 22, 2014.

"Valuing Economic Damages in Catastrophic Injury Cases", CLE program presenter,
 sponsored by the Gloucester County Legal Education Association, Mantua Township, New Jersey, November 22, 2014.



**Kristin Kucsma, M.A.**

### Speaking Engagements (cont'd)

"Integrating Vocational Experts and Economics in Documenting Damages in Personal Injury Cases", CLE program co-presenter, sponsored by CMCS Management, Inc., Saddle Brook, New Jersey, October 23, 2014.

"Economic Damages, Proving Loss With Life Care Planners", Vocational Experts and Economists in Personal Injury and Medical Malpractice Cases , CLE program co-presenter, sponsored by NYSTLA Management, Inc., New York, New York, May 20 and 28, 2014.

"Use of an Economist in Litigated Matters", Hudson County Inn of Court, Hudson County Community College Culinary Conference Center, Jersey City, New Jersey, April 21, 2014.

"The Use of a Vocational Expert/Life Care Planner and Economist in Assessing Damages in Child and Adult Personal Injury Cases", CLE program co-presenter, sponsored by CMCS Management, Inc., Saddle Brook, New Jersey, March 20, 2014.

"How To Effectively Quantify Economic Damages in Personal Injury and Medical Malpractice Cases", Clifford Inn of Court, Brownstone, Paterson, NJ, February 4, 2014.

"Documenting Vocational and Economic Damages in Personal Injury Cases", CLE program co-presenter, sponsored by CMCS Management, Inc., Mount Laurel, New Jersey, December 11, 2013.

"How to Effectively Quantify Economic Damages in Personal Injury and Medical Malpractice Cases", CLE program co-presenter, sponsored by Comprehensive Medical Case Management, Inc., Philadelphia, July 30, 2013.

"The Economist's Role: Lost Profits & Employment Litigation", CLE program co-presenter, sponsored by the New Jersey Law Journal, Edison, NJ, May 1, 2013.

"The Economist's Role: Lost Profits & Employment Litigation", CLE program co-presenter, sponsored by the New Jersey Law Journal, Florham Park, NJ, April 10, 2013.

"Documenting Vocational & Economic Damages in Catastrophic Personal Injury Cases", CLE program co-presenter, sponsored by CMCS Management, Inc., Saddle Brook, New Jersey, March 14, 2013. (video)

"Measuring Lost Profits", Worrall F. Mountain American Inn of Court, Morristown, NJ, October 22, 2012.

"Proving Damages to the Jury", CLE program co-presenter, sponsored by New York State Academy of Trial Lawyers, October 23, 2012.

"Using an Economist to Prove Damages in Non-Catastrophic Personal Injury Cases", CLE program co-presenter, sponsored by CMCS Management, Inc., Saddle Brook, New Jersey, October 11, 2012. (video taped)

"Some Key Issues in the Use of Economic Experts", co-presenter, *Litigation Summit*, Philadelphia, September 13, 2012. (audio/video taped)

Mock Trial, participant (economic expert for plaintiff), CLE program sponsored by New Jersey Law Center, New Brunswick, NJ, July 11, 2012.

"Valuing Economic Damages in Matters Involving Employment Litigation", Brennan/Vanderbilt



**Kristin Kucsma, M.A.**

**Speaking Engagements (cont'd)**

Inn of Court, East Hanover, NJ, June 25, 2012.

"Proof of Damages in a Wrongful Death Case" at the "Proving Damages in Personal Injury Cases: How BIG is Your Case?" seminar, sponsored by the Gann Legal Education Foundation, Renaissance Woodbridge in Iselin, New Jersey, April 22, 2011.

"How Outstanding Plaintiff Lawyers Build Their Case on Damages - and How Effective Defense Lawyers Can Destroy It", Obstetric Malpractice: Cutting-Edge Techniques for Bringing and Defending Perinatal Brain Injury Cases, national conference, continuing education seminar, Chicago, IL, November 9 - 11, 2009.

"Deposition of an Economist from the Witness' Viewpoint", Taking and Defending Effective Depositions in New York, continuing education seminar, New York, NY, March 12, 2009.

"The Role of the Economist in Assessing Damages for Defendants", with co-presenter Frank D. Tinari, Ph.D., GEICO, Huntington, NY, July 31, 2008.

"Economic and Statistical Issues in Assessing Damages", with co-presenter Frank D. Tinari, Ph.D., LUM DRASCO & POSITAN, Roseland, NJ, June 2, 2008.

"Economic Damages: Overlooked Elements in Personal Injury and Wrongful Death Cases", ATLA-NJ Women Attorney's Dinner Meeting, Mountainside, NJ, April 9, 2008.



**Kristin Kucsma, M.A.**

## Trials, Arbitrations, Mediations, and Depositions

Ms. Kucsma has testified in over 193 trials, arbitrations, and mediations in both federal and state courts. She has testified in over 233 depositions. A detailed listing of Ms. Kucsma's trial and deposition testimony is available upon request.

Ms. Kucsma has prepared numerous economic loss evaluations for use in litigation regarding economic damages, earnings, fringe benefits, household services, guidance, companionship, employment discrimination, lost profits, commercial damages, breach of contract, defamation, divorce, and punitive damages.



*Trial, Arbitration and Mediation Testimony*

### Kristin Kucsma, M.A.

Hussein M. Agiz vs. Heller Industrial Parks, Inc., Georgia Pacific Harmon Recycling, LLC, John Wiley & Sons, Inc., Lagasse Brothers Inc., United Stationariness, Inc. Taylored Services LLC, ADI Logistics, Celebrity International, NFI Distribution, A/K/A National Distribution Center, DNP International, OVED Apparel Corporation, et als.,on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Middlesex County, Docket No. MID-L-4520-13, September 20, 2016.

Carmine S. Cortese, as Executor of the Estate of Barbara Anne Cortese, vs. Kanga N. Sundaram, M.D., Allergy and Clinical Immunology Center, P.A., Aaron Chevinsky, M.D., et als., on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Morris County, Docket No. MRS-L-817-13, September 14, 2016.

Jesse Diaz vs. City of Trenton, James Hall, individually and as an agent of the City of Trenton, Leonard Carmichael, individually and as an agent of the City of Trenton, Qareeb Bashir, individually and as an agent of the City of Trenton, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Mercer County, Docket No. L-1058-14, September 7, 2016.

Daryl Whatts vs. Ronald Clark, on behalf of the plaintiff, Supreme Court of the State of New York, County of Westchester, Docket No. 2205-2014, August 3, 2016.

Bernard Belzi, individually and as Personal Representative of the Estate of Patricia Belzi, deceaseD, and as legal guardian and parent of A.B., minor vs. Plantation General Hospital Limited Partnership d/b/a Plantation General Hospital; Andrew Agbi, Docket No., et als., on behalf of the plaintiff, State of Florida, Division of Administrative Hearings, Docket No. 15-3711MA, Fort Lauderdale, Florida, July 28, 2016.

Metehan Kutbettin Erim Arbitration vs. J.P Morgan Securities LLC aka JPMorgan Chase & Co., Manuel Ruiz, Michael Ayerov, Craig Alan Pruett, et als., Law Office of Jason LeBoeuf, Livingston, New Jersey, July 26, 2016.

Evelyn Rodriguez, vs. Raritan Bay Medical Center, Michael Sears, DPM, John Kramer, DPM, et al., on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Middlesex County, Docket No. MID-L-2809-11, July 15, 2016.

Przemyslaw Ksepka, vs. The City of New York et al., on behalf of the plaintiff, Supreme Court of the State of New York, County of New York, Index No. 111542-10, July 12, 2016.

Zulfiqar Ali vs. Belcrest Apartments LLC, on behalf of the plaintiff, Supreme Court of the State of New York, County of Kings, Index No. 11394-13, June 13, 2016.

Joan Pykosh, individually and as Executrix of the Estate of Michael Pykosh vs. James Najarian, M.D., and John Doe 1-100, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Morris County, Docket No. MRS-L-757-13, May 18, 2016.

September 27, 2016



*Trial, Arbitration and Mediation Testimony*

**Kristin Kucsma, M.A.**

Juana Fernandez, as Administrator Ad Prosequendum of Miguel A. Marte vs. Al & John, Inc. T/a Glen Rock Ham, John Does 1-10, ABC Corp 1-5 (name being fictitious), on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Essex County, Docket No. ESX-L-8931-12, May 12, 2016.

Timothy Habersham, vs. Jimmy Seenath & Rye Ambulette Transport, Inc., on behalf of the plaintiff, Supreme Court of the State of New York, County of Bronx, Docket No. 305541/10, May 11, 2016.

Rene H. Manlapig, et al. vs. Jeremy Horace Jupiter, et al., on behalf of the plaintiff, United States District Court, Southern District of New York, Docket No. 14 CV-235-LGS, May 9, 2016.

Janet Nunez vs. Wells Fargo Bank, United Counties, Thomas Reuters, John Doe ( name being fictitious) and ABC Corp. (name being fictitious), on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Union County, Docket No. UNN-L-2972-13, April, 28, 2016.

Peter Liquari and Rebecca Liquari vs. Jennifer Combs, Procura Management Inc., et al., on behalf of the plaintiff,  Superior Court of New Jersey, Law Division: Monmouth County, Docket No. MON-L-327-13, April 21, 2016.

Richard Evans vs. Yonkers Contracting Company, Inc., Gotham Construction Company, LLC, River Place III, LLC, and Silverstein Properties, Inc., on behalf of the plaintiff, Supreme Court of New York, County of New York, Docket No. 107866/09, April 18 and 19, 2016.

John Amico, as Administrator of the Estate of Jennifer Amico, and John Amico, Individually, vs. Sanjaya JHA, M.D., and Michael Yen, M.D., and Hudson Valley Cardiovascular Associates, P.C., on behalf of the plaintiff, Supreme Court of the State of New York, County of Dutchess, Docket No. 2013/771, April 15, 2016.

Anthony J. Lucca and Toni Lucca vs. Mary A. Sorenson, on behalf of the plaintiff, United States District Court, District of New Jersey, Docket No. 1:12-cv-05890-JHR-KMW, March 24, 2016.

José Gonzalez vs. County of Hudson, Hudson County Sheriff's Department, Sheriff Frank X. Schillari, indivudually and in his official capacity, Chief Andrew Conti, Captain William Joy, Captain Thomas Cerwinski et al., on behalf of the plaintiff, Superior Court of New Jersey Law Division: Hudson County, Docket No. HUD-L-2353-13, March 23, 2016.

Vanessa Russy and Lee Russy vs. Hackensack University Medical Center and Jeffrey Barrata, D.O., on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Bergen County, Docket No. BER-L-L3606-12, March 21, 2016.

September 27, 2016



*Trial, Arbitration and Mediation Testimony*

### Kristin Kucsma, M.A.

Thomas Phillips vs. Powercraft Corporation, Von Rohr Equipment Corp. & KMCP, LLC, on behalf of the plaintiff,  Supreme Court of The State of New York, County of Bronx, Docket No. 300459/10, March 17, 2016.

Sally Walker Kelly, Administratrix Ad Prosequendum of the Estate of John Becker Kelly, and Sally Walker Kelly, Individually vs. Atlantic Health System, Inc., Morristown Medical Center, Emergency Medical Associates of New Jersey, PA., Steven P. Gohsler, M.D., Alfredo Tapia, M.D., et al., on behalf of the plaintiff, Superior Court of New Jersey, Law, Divison: Morris County, Docket No. L-2862-11, March 15, 2016.

Mary Jean Alsina vs. Millburn Township Schools/Board of Education and John Does 1-10, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Essex County, Docket No. L-3020-13, March 7, 2016.

Mary Jean Alsina vs. Millburn Township Schools/Board of Education and John Does 1-10, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Essex County, Docket No. L-3020-13, March 1, 2016.

Michael J. Pulaski, Individually and as Administrator of the Estate of Sarah E. Pulaski, deceased and Rene Paradis vs. Children's Hospital of Philadelphia, Children's Hospital of Philadelphia Practice Association and Children's Health Care Associates, Inc., on behalf of the plaintiff, Court of Common Pleas Philadelphia, County Civil Division- Law, Docket No. 13080250, February 10, 2016.

Paul Darcy vs. SL Green Realty Corp., 673 First Avenue Associates L.P., 673 First Associates, L.P., Yates Restoration Group LTD and Barr & Barr, Inc., on behalf of the plaintiff, Supreme Court of The State of New York, County of the Bronx: Docket No. 304063/2012, January 27, 2016.

Eugene Stolowski vs. 234 East 178th Street, LLC, and the City of New York, on behalf of the plaintiff, Supreme Court of The State of New York, County of the Bronx: Part IA-2 , Docket No. 8850/05, January 13, 2016.

Estate of Joseph G. DiBernardo vs. 234 East 178th Street, LLC, and the City of New York, on behalf of the plaintiff, Supreme Court of The State of New York, County of the Bronx: Part IA-2, Docket No. 8850/05, January 13, 2016.

Joseph G. Cool, Sr. vs. 234 East 178th Street, LLC, and the City of New York, on behalf of the plaintiff, Supreme Court of The State of New York, County of the Bronx: Part IA-2 , Docket No. 8850/05, January 13, 2016.

September 27, 2016



*Trial, Arbitration and Mediation Testimony*

### Kristin Kucsma, M.A.

Eileen Bellew, as Administratrix of the Estate of John G. Bellew vs. 234 East 178th Street, LLC, and the City of New York, on behalf of the plaintiff, Supreme Court of The State of New York, County of the Bronx: Part IA-2 , Docket No. 8850/05, January 13, 2016.

Tiffany D. Cianci vs. FSB Operating Company, LLC, d/b/a Four Seasons Hotel Baltimore, on behalf of the plaintiff, de bene esse deposition, Livingston, New Jersey, In the Circuit Court for Baltimore City, Docket No. 24-C-14-004979, January 6, 2016.

Michael Newland and Vernisea Newland vs. David Ward, Allied Surgical Group, P.A., Somerset Medical Center, Richard Wittenborn, John/Jane Doe Physicians 1-10, and John/Jane Doe Healthcare Providers 1-10, on behalf of the plaintiff, Superior Court of New Jersey Law, Division: Middlesex County, Docket No. MID-L-8303-11, January 4, 2016.

Mushander Brown vs. Metropolitan Transit Authority, New York City Transit Authority, The City of New York, Ronnie Hamlin and Betty J. Foster, on behalf of the plaintiff, Supreme Court of the State of New York, County of New York, Docket No. 115539/2008, December 15, 2015.

Ana Espinal vs. New York City Health & Hospitals Corporation, on behalf of the plaintiff, Supreme Court of The State of New York, County of Queens: Part 15, Docket No. 11336-08, November 18, 2015.

Claudia Burzichelli and Robert Burzichelli vs. Carole Lytle, M.D., Bridgewater Medical Group, Bernard Terry, M.D., Associated Radiologists, P.A., et al., on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Middlesex County, Docket No. L-5438-12, November 13, 2015.

Chaya Morrison and Raymond Morrison vs. Alan Miller, M.D., John Lloyd, M.D., Daniel Wambold, M.D., Bergen Orthopaedic Surgery and Sports Medicine, P.A., The Valley Hospital, Valley Health System, John Does 1 through 100 et al., on behalf of the plaintiff, Superior Court Of New Jersey, Law Division: Ocean County, Docket No. OCN-L-403-12, October 26, 2015.

Bienvenido Velasquez vs. United States Postal Services, United States of America, and Jane Doe, on behalf of the plaintiff, United States District Court, Eastern District of New York, Docket No. 14-CV-1397, October 14, 2015.

Francine Comforto, As Administratrix of the Estate of Paul G. Comforto, Deceased and Francine Comforto, Individually vs. Rosetta Grella, M.D. and Joshi Abraham John, M.D., North Shore Syosset Hospital and Eugenio Tassy, on behalf of the plaintiff, Supreme Court of The State of New York, County of Nassau, Docket No.48758-11, Re-trial September 22, 2015.

Bahadur Singh and Harbinder Singh, H/W; Sukhwant and Jagdev Kaur, H/W; and Ajaib Singh and Mandee Singh, H/W vs. Thomas Alfano, Julia Alfano, Gurmeet Singh, John Doe (1-10) and John Doe Entities (1-10), individually, jointly, severally and/or in the alternative, on behalf of

September 27, 2016



*Trial, Arbitration and Mediation Testimony*

### Kristin Kucsma, M.A.

the plaintiff, Superior Court of New Jersey, Law Division: Mercer County, Docket No. MER-L-666-11, September 9, 2015.

William Adams vs. Randy W. Edwards, Enterprise Rent-A-Car Company, Inc., Elrac, Inc., Cambridge Integrated Services Group, Inc., Brandon Edwards, Estate of Marvin J. Gustafuson, Foremost Insurance Company, and John Doe, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Warren County, Docket No. WRN-L-7-10, August 6, 2015.

Dennis Lipinski Administrator of the Estate of Erica Leibowitz-Lipinski, deceased vs. Edward T. Krupp, M.D.; Crescent Internal Medicine Group, LLC, et al., on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Essex County, Docket No. ESX-L-5645-12, July 21, 2015.

Michael Parker Administrator and Administrator Ad Prosequendum for the Estate of Mildred Parker; and Michael Parker, individually vs. Basel Bat-aresh, M.D., et al., on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Passaic County, Docket No. L-2082-11, July 16, and 21, 2015.

Christopher Marconi vs. First Quality Properties I, LLC, First Quality Enterprise Inc., Haleh Damaghi and Kambiz Damaghi, on behalf of the plaintiff, United States District Court, Eastern District of New York, Docket No. 13CV5367, June 29 and 30, 2015.

Kia Song Tang vs. Glocap Search LLC, and Adam Zoia, on behalf of the plaintiff, United States District Court, Southern District of New York, Docket No. 14CV1108, June 23, 2015.

Sylvia Davis vs. CPS 1Realty Group LLC, and Tishman Construction Corp., on behalf of the plaintiff, Supreme Court of the State of New York, County of New York, Index No. 100485/08, June 19, 2015.

Dewon Wilson vs. Joseph Giacomo, Carmel Giacomo, Renaissance at Raritan Valley-Franklin Township, New Jersey, ABC Corporation 1-10; and John Doe, 1-10 (owners, tenants, or other entity or person responsible for maintenance and/or snow/ice removal at 24 Esplanade Drive, Somerset, New Jersey), on behalf of the plaintiff, Superior Court of New Jersey, Law-Division: Middlesex County, Docket No. MID-L-7351-12, June 16, 2015.

Celso Roberto Planta vs. Edwards S. Martin 3rd and John Doe, first and last names are being fictitious and unknown to plaintiff, on behalf of the plaintiff, Supreme Court of The State of New York, County of Queens, Index No. 24272/12, June 16, 2015.

Albert Wolf vs. Fujitsu America, Inc., John Does 1-10, said names being fictitious individuals; Jane Does 1-10, said names being fictitious individuals; ABC Corps. 1-10, said names being fictitious corporations or business organizations; and ABC Entities 1-10, said names being fictitious entities or business organizations, on behalf of the plaintiff, Superior Court of New Jersey Law, Division: Bergen County, Docket No. L-340-13, June 8, 2015.

September 27, 2016



*Trial, Arbitration and Mediation Testimony*

### Kristin Kucsma, M.A.

Robert Bump and Mary Rose Bump vs. Michael Yen, M.D., Lee Marcus, M.D., The Heart Center and Vassar Brothers Medical Center, on behalf of the plaintiff, Supreme Court of The State of New York, County of Duchess, June 2, 2015.

Carol Ann Evangelou vs. New Jersey Manufacturers Insurance Company, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Bergen County, Docket No. BER-L1412-13, May 28, 2015.

Robert Ronceray vs. Township of Millburn & Township of Millburn Police Department, on behalf of the plaintiff, Superior court of New Jersey, Law Division: Essex County, Docket No. ESX-L-5495-12, May 26, 2015.

Mary Beth Daras, Individually, and as Executrix of the Estate of Chris J. Daras vs. Thomas R. Murray, M.D., Anesthesia Associates of Morristown, P.A.; Atlantic Cardiology Group LLP; AHS Hospital Corporation et al., on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Morris County, Docket No. MRS-L-1390-11, May 14, 2015.

Anthony Matsur vs. Chase Investment Services Corp., Alberto Chavez, John Cholankeril, Heidi Emmert Respondent, FINRA Dispute Resolution Arbitration No. 11-04242, on behalf of the plaintiff, Berkan Garth De Santiago-Keene Law Office, Newark, New Jersey May 11, 2015.

Jeffrey S. Downs, Esq. vs. Anapol Schwartz, PC, Sol Weiss, Esq., Joel Feldman, Esq., Michael Monheit, Esq., Mark J. LeWinter, and Raynes McCarty, PC, Stephen R. Haynes, Esq., Martin K. Brigham, Esq., Harold I Goodman, Esq.,on behalf of the plaintiff, United States District Court, District of Pennsylvania, Docket No. 2:14-cv-00630, May 7, 2015.

Juan Vargas vs. Peter Scalamandre & Sons, Inc., Ferrara Bros. Building Materials Corp., RAD & D'Aprile Construction Corp., Total Safety Consulting, LLC, and Ab Green Gansevoort, LLC, personal injury, on behalf of the plaintiff, Supreme Court of the State of New York, County of Bronx, Docket No. 302608/08, May 6, 2015.

Ronald Denig and Jennifer Denig vs. Mohammed Ishaq, John Doe 1-5 and XYZ Corporation 1-10, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Middlesex County, Docket No. MID-L-2406-12, April 28, 2015.

Sara Machicado a/a/o the Estate of Jose Machicado, deceased, Sara Machicado, Individually, David Machicado, an infant by his mother Sara Machicado, and Sheila Machicado vs. Donna Paradise, Town of North Hempstead, John Doe & Doe d/b/a Doe Landscaping Co., on behalf of the plaintiff, Supreme Court of The State of New York, County of Nassau, Docket No. 5767/09, April 24, 2015.

Chaya Applegrad, a Minor by Her Mother and Guardian ad Litem, Esther Applegrad, Individually and Gedalia Applegrad individually, vs. Eric Bentolila, M.D ,an individual, Valley

September 27, 2016



*Trial, Arbitration and Mediation Testimony*

### Kristin Kucsma, M.A.

Hospital, an entity, Kourtney Kaczmarski, R.N.M an individual, Mary Brow, an individual, Yie Hsien Chu, M.D., an individual, John Does 1-10 and Jane Does 3-10, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Passaic County, Docket No. PAS-L-908-08, April 13 and April 14, 2015.

Darlene Briscoe and Daniel Flynn vs. Elrac, Inc., Enterprise Rent-A-Car Company and Michael Agricola, on behalf of the plaintiff, Supreme Court of The State of New York, County of Nassau, Docket No. 005864/09, March 23 and March 24, 2015.

Anthony Bianco, an infant by his Mother and Natural Guardian, Maura Bianco vs. Steven R. Sherwin, Jennifer H. Johnson, Seth Plancher and Winthrop University Hospital, on behalf of the plaintiff, Supreme Court of The State of New York, County of Nassau, Docket No. 601321/09, March 23, 2015.

Alexandra Rodriguez vs. Joselito Rivera and or John Doe #1-6, Bryan C. Distefano, Jennifer M. Mikula, jointly, severally and or in the alternative, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Gloucester County, Docket No. L-811-12, March 4, 2015.

Raymond Kurz and Susanna Kurz vs. St. Francis Hospital, Roslyn, New York, Cardiothoracic Surgery, P.C., Harold A. Fernandez, M.D., The Interventional Heart Group PLLC, Antonio P. Madrid, Joseph Minadeo, M.D., Manhasset Opthalmology, P.C., Robert Broderick, M.D., and Laura Schoenberg, M.D., on behalf of the plaintiff, Supreme Court of the State of New York, County of Nassau, Docket No. 10-11604, February 24, 2015.

Albert Leip, Jr. vs. Princeton University, Sordoni Skanska Construction Company, Inc., Central Metals, Inc., John Does and Jane Does (fictitious designations, ABC Partnerships (fictitious designations), ABC Company (fictitious designations), and Defendant Company (fictitious designations), on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Mercer County, Docket No. MER-L-002564-07, February 5, 2015.

Richard Chisholm and A. Katherine Chisholm, his spouse, vs. R.T. Vanderbilt Company, Inc., Individually and as successor interest to Gouverneur Tale Company, Inc., on behalf of the plaintiff, Supreme Court of the State of New York, County of Schenectady, Docket No. 2012-1056, January 28, 2015.

Estate of Perlet Abuaf, by her Administratrix, Niso Abuaf and Niso Abuaf, Individually, vs. Saint Barnabas Medical Center, Saint Barnabas Health Care System, Elizabeth Junker, M.D., Mark Goldberg, M.D; Consultants in Cardiology, Ruchika Singla, M.D., Amit Malhotra, and Elizabeth Bella, N.P, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Essex County Docket No. ESX-L-9278-11, January 15, 2015.

Francine Comforto, As Administratrix of the Estate of Paul G. Comforto, Deceased and Francine Comforto, Individually vs. Rosetta Grella, M.D. and Joshi Abraham John, M.D., North Shore

September 27, 2016



*Trial, Arbitration and Mediation Testimony*

### Kristin Kucsma, M.A.

Syosset Hospital and Eugenio Tassy, on behalf of the plaintiff, Supreme Court of The State of New York, County of Nassau, Docket No.48758-11, January 9, 2015.

Martino Caretto, as General Administrator; and Administrator ad Prosequendum of the Estate of Richard Caretto vs. Richard M. Sostowski, M.D., John Doe, M.D.'s 1-5 and ABC Psychiatry Groups (unknown persons/entities and fictitious names), on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Essex County, Docket No. ESX-L-8574-10, January 7, 2015.

Matthew Keefe vs. Xavier Fernandez, Christina A. Impelletiere, Borough of Ridgefield, Ridgefield Fire Department, Trustees of Ridgefield Ladder Company No. 1, Gary Chartoff, Andrew Chartoff, Federico Faria, Jimmy D's Blues Saloon, Ana Mayers, State of New Jersey, New Jersey Department of Transportation, County of Bergen, Borough of Teterboro, Borough of Moonachie, Township of South Hackensack, New Jersey Meadowlands Commission, Melissa Chartoff, Tais Hernandez, Amy Chartoff, John Doe 1-5, Jane Doe 1-5, ABC Corp 1-10, Bob Boe1-10, Rob Roe 1-10, DEF Corp 1-10, Mary Moe 4-10, and GEF Corp 1-10 ( the last eight being fictitious designations), on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Bergen County, Docket No. BER-L-2250-11, January, 6, 2015.

Olugbenga Adesokan, Administrator of the Estate of Oluwatosin A. Adesokan deceased, as Administrator ad Prosequendum for the heirs at law of Oluwatosin A. Adesokan deceased and individually, vs. Natalie Johnson, M.D., et al. on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Essex County, Docket No. ESX-L1088-11, December 8, 2014.

Estate of Anthony Oscar Franco, by the Administratrix Ad Prosequendum, Flor Franco and General Administratrix Flor Franco, Flor Franco, Individually, vs. Labib Edison Riachi, M.D., Milagros De La Cruz, M.D., Trinitas Regional Medical, Center, John Does 1-5, fictitious names whose present identities are unknown; and ABC Corporations 1-5, fictitious name whose present identities are unknown, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Union County, Docket No. UNN-L-1933-10, December 4, 2014.

Sarah Connors and John Connors, vs. Target Corporation, All Jersey Janitorial Services, Inc., et al., on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Essex County, Docket No. ESX-L-4447-12, December 4, 2014.

Cielo Maria Cunha, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Union County, November 17, 2014.

Jessica Blechar vs. Robert Dorian, M.D. and John Does, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Essex County, Docket No. ESX-L1728-12, November 12, 2014.

September 27, 2016



*Trial, Arbitration and Mediation Testimony*

### Kristin Kucsma, M.A.

Froilan Sosa, vs. Clayton Block Co., Inc, Ralph Clayton & Sons LLC, J.M. Pereira & Sons, Inc., Jocama Construction, Inc. John Doe 1 thru 5, and ABC Corp 1 thru 5 (Fictitious names for unknown parties), on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Essex County, Docket No. ESX-L-3921-10, November 3, 2014.

April E. Brinson-Carrano and Guido Carrano, her husband, vs. Lihua Xie, Jian Cai, et al., on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Somerset County, Docket No. SOM-L-1627-10, October 22, 2014.

Carmine Rocco vs. Barr & Barr Inc., Maimonides Medical Center, Pro Safety Services, LLC, ABC Corporations (1-20), and John Does (1-20), on behalf of the plaintiff, Supreme Court of The State of New York, County of Kings, Index No. 13284/10, October 21, 2014.

Susan Ribarro, Executrix of the Estate of Vito Ribarro and Susan Ribarro, Individually vs. Raj R. Kaushik, M.D., Cardiovascular Surgical Associates, John Doe, M.D. 1-10 ( said names of physician being fictitious and unknown), Jane Doe 1-10 (said names of technicians, nurses and medical staff being fictitious and unknown), and ABC Hospital Corporations or Institutions organized for the purpose of providing hospital care and services, being fictitious and unknown), on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Passaic County, Docket No. PAS-L-4358-11, October 15 and October 16, 2014.

Janet Velez vs. NYCTA 50B Hearing, on behalf of the plaintiff, Supreme Court of the State of New York, County of New York, Index No. 400280/04, October 9, 2014.

Ketan Thakkar, Executor of the Estate of Nehal K. Master, vs. Tarheel Enterprises Incorporated and Donald Gomes, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Middlesex County Docket No. L-007071-11, October 2, 2014.

Carlo Ceglie vs. Newport Centre (NOC III), James G. Kennedy Construction, et als., and James G. Kennedy & Co., Inc., defendant/third party vs. Atlas Electric Service Corp. of NJ, third party defendant, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Hudson County, Docket No. HUD-L-1377-11, October 1, 2014.

Denise Tobe, individually and as Executrix of the Estate of David Tobe vs. Alexandru David, M.D., Vipin Garg, M.D., Trinitas Hospital and John Does 1-10, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Union County, Docket No. UNN-L-0553-11, September 29, 2014.

Junior Grant, appellant-respondent vs. City of New York, defendant third-party plaintiff-respondent-appellant; A&S Electric, Inc., third-party respondent-appellant, on behalf of the plaintiff, Supreme Court, Appellate Division, Second Department, New York Index No. 12515/09, September 23, 2014.

September 27, 2016



*Trial, Arbitration and Mediation Testimony*

### Kristin Kucsma, M.A.

Andres Carranza and Gloria Carranza, vs. Constellation Energy Group, Inc., Constellation Mystic Power, LLC, Groome Industrial Service Group, Inc and Safeway Services, LLC, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Hudson County, Docket No. HUD-L-139-12, September 23, 2014.

Michelle Masi vs. Melissa Kapustin, on behalf of the plaintiff, Superior Court of New Jersey, Law Division - Essex County, Docket No. ESX -L-9074-11, September 17, 2014.

Eliezer Abrahamson and Sandy Abrahamson vs. Harris Bram, M..D., Spine & Pain Centers of New Jersey & New York, Pain Management Associates, known as Spine and Pain Medicine, John Does 1-100 (fictitious names, true identities unknown), Jane Does 1-100 (fictitious names, true identities unknown), ABC Hospital 1-100 (fictitious names, true identities unknown), ABC Corporation 1-100 (fictitious names, true identities unknown), on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Middlesex County Docket No. MID-L-4319-10, September 16, 2014.

Noemie Chirinos-Hernandez vs. Bogi Apartments, LLC, A.B.C. Companies (1-100) Fictitious entities and John Doe 1-100 (fictitious entities), on behalf of the plaintiff, Superior Court of New Jersey Law Division- Middlesex County, Docket No. MID-L-8484-11, September 16, 2014.

Katherine L. Sisco, vs. Pedro Cruz, Bairrada Construction, Palma Sisco, John Doe, ( a fictitious name for an unknown and unquantified group of individuals) ABC Corp., (a fictitious name for an unknown and unquantified group of partnerships, corporations and/or other entities), on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Union County, Docket No. UNN-L-2947-11, September 11, 2014.

Lorraine Sheridan, Individually and as Administratrix of the Estate of James Sheridan and Administratrix ad Prosequendum of Estate of James Sheridan, vs. Dr. Frederic Lehman, Community Medical Center, John Does 1-10 (fictitious names) and ABC Corporation 1-10 (fictions names), on behalf of the plaintiffs, Superior Court of New Jersey, Law Division: Ocean County, Docket No. OCN-L-1913-11, August 1, 2014.

Sherry Huff-Berry vs. Shoprite, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Essex County, Docket No. ESX-L-4618-11, July 31, 2014.

Maria Sabatino and Deonna Newton, a minor by and through her parents and natural guardian, Maria Sabatino and Robert Newton vs. Lydia Ferber and Pamela Ferber and Jacques Ferber, Inc., on behalf of the defendant, Philadelphia Court of Common Pleas, Docket No. 1663, July, 22, 2014.

Glenn Hedden vs. Kean University, and Philip Connelly, on behalf of the plaintiff, Superior Court of New Jersey Law Division - Union County, Docket No. UNN-L-2278-11, June 13, 2014.

September 27, 2016

**Sobel ◆ Tinari**
**Economics**
**Group**

*Trial, Arbitration and Mediation Testimony*

### Kristin Kucsma, M.A.

Guillermo R. Chipoco vs. The Borough of East Newark, The Borough of East Newark Police Department and Michael J. O'Donnell, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Hudson County, Docket No. HUD-L-5906-09, May 27, 2014.

Nancy Polow Katz, Individually and in her capacity as Administratrix of the Estate of Norman Katz vs. Christel Bauer, M.D., Paul Lewinter, M.D., I-V (These names being fictitious as their true identities are presently unknown) Jane and John Doe, R.N., I-V (These names being fictitious as their true identities are presently unknown) and XYZ Corporation I-V (These Corporate names are fictitious as their true identities are presently unknown), on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Union County, Docket No. L-108-11, May 22, 2014.

Fehren Shaikh, an Infant, by his Mother and Natural Guardian, Rianna Shaikh, and Rianna Shaikh, Individually, vs. Barbara Ann Charles, C.N.M., Long Island & Queens Midwifery Service, P.C., Huntington Hospital, Elisa Felsen-Singer, D.O. and Huntington Medical Group, P.C., on behalf of the plaintiff, Supreme Court of the State of New York, County of Suffolk, Index No. 32929/0, May 14, 2014.

Estate of Fredgerene Dunn by her Administrator Robert Dunn, and Robert Dunn, individually vs. St. Michael's Medical Center, Theresa Madrid, M.D., Marc R. Adelman, M.D., Fayez Shamoon, M.D., Nirmala Kania, M.D., et als., on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Essex County, Docket No. ESX -L-8099-08, May 5, 2014.

Daniel F. Pickett vs. 675 Logan Corp., on behalf of the plaintiff, Supreme Court of the State of New York County, of Queens, Index No. 31291/09, May 2, 2014.

Mario Montero vs. Pro-Safety Services LLC, All-Safe LLC, All Safe Height Contracting Corp., All Safe Height Contractors, BFC Construction Corp., and BFC Partnership, L.P., on behalf of the plaintiff, Supreme Court of the State of New York, County of Kings, Index No. 500653/11, April 17, 2014.

Marilyn Velez vs. Rocktenn Company, Raymond Perry, John and Jane Doe 1-5, (fictitious Unidentified individuals); et al., on behalf of the plaintiff, Superior Court of New Jersey Law Division: Essex County, Docket No. ESX-L-1228-12, April 7, 2014 and April 8, 2014.

Terrance Allen and Susan Allen vs. Takeda Pharmaceuticals International Inc., et al., on behalf of the plaintiff, In the United States District Court, For The Western District of Louisiana, Civil Action No. 6:12-cv-00064-RFD-PJH, MDL No. 6:11-md-2299, Lafayette, Louisiana, March 17, 2014.

Rocco Leone, Jr., vs. Joseph S. Lombardi, M.D., Peter Poe, M.D., James P. Patti, M.D., Sammy Soe, M.D., Richard Roe, M.D., Edison-Metuchen Orthopaedic Group, and Richard Roes, on



*Trial, Arbitration and Mediation Testimony*

### Kristin Kucsma, M.A.

behalf of the plaintiff, Superior Court of New Jersey, Law Division: Middlesex County, Docket No. BER-L-2525-06, March 11, 2014.

Campmor, Inc., vs. Brulant, LLC, Civil Action No. 09-cv-5465 (WHW), on behalf of the plaintiff, Lum Drasco & Positan, LLC, Roseland, NJ, February 17, 2014.

Estate of Debra Leyh by her husband, Swapan Chattopadhyay vs. Centrastate Healthcare System and Judy Cash, Director Health Information Management, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Monmouth County, Docket No. L-5751-07, February 19, 2014.

Raul Diaz and Estefania Flores vs. 219 West 81st LLC and AM&G Waterproofing, LLC, Index No. 34768/08, on behalf of the plaintiff, Supreme Court of the State of New York, County of Kings, February 7, 2014.

Harold Hansen vs. Rite Aid Corp., Eckerd Corporation, Craig Muriello, Michelle Caga, Lisa Ford, John Doe (1-10), Jane Doe (1-10) and XYZ Corp (1-10), Docket No. MON-L-4790-08, on behalf of the plaintiff, regarding punitive damages, Superior Court of New Jersey, Law Division: Monmouth County, December 16, 2013.

Akira Nakasato -against- 331 W 51st Corp. And Eleben Yau-Mei Wong, Index No. 103045/09 Stipulation, on behalf of the plaintiff, Supreme Court of the State of New York, County of New York, Civil Term, December 11, 2013.

Blanca Mercado and Hector Mercado, vs. Delsea Drive Supermarket LLC d/b/a Shop-Rite of Delsea/Vineland and/or Bottino's Supermarket, Inc, d/b/a Shop-Rite of Delsea/Vineland and/or James Bottino trading as Shop-Rite of Delsea/Vineland and/or ABC Inc., Docket No. CUM-L-1126-09, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Cumberland County, December 10, 2013.

Sheila Miranda and Michael R. Miranda vs. Kfir Fisher, Raya Benhaim, John Doe (1-10) and ABC Corps.(1-10), Docket No. MID-L-933-12, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Middlesex County, December 9, 2013.

Estate of Carmen Sarmiento, by Executrix, Amalia Sarmiento, and Amalia Sarmiento, Individually vs. Richard Chessler, M.D., Scherl, Chessler, Zingler, Spinnell and Meininger, M.D., P.A. and John Doe, M.D., Jane Doe and Doe Physician Group, PA or Doe Physician Group, PC or Doe Managed Care Company, Civil Action Docket No. L 4562-11, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Bergen County, December 9, 2013.

Stacey Galette vs. Paul Byrne, M.D., Michelle Quinones, M.D., Frederic Moon, D.O., Craig Zebuda, M.D. Cynthia A. Fretwell, M.D., David Halpern, M.D., Paul R. Byrne, M.D., P.C.,



*Trial, Arbitration and Mediation Testimony*

### Kristin Kucsma, M.A.

Women's Contemporary Care Associates, P.C., Nassau Surgical Associates, P.C., and Winthrop University Hospital, Index No. 28327/10, on behalf of the plaintiff, Supreme Court of the State of New York, County of Kings, November 22, 2013.

Andrew Abeyta vs. The City of New York, Nanhai Chen and Allan Taeza, Amended Complaint 12-CV-05623, on behalf of the plaintiff, United States District Court, Southern District of New York, November 20, 2013.

Carlos Capacete, Claimant vs. UBS Financial Sevices, Inc., Respondent, FINRA Dispute Resolution Arbitration No. 11-04211, on behalf of the plaintiff, Berkan Mendez Law Office, San Juan, Puerto Rico, November 13, 2013.

Rhonda B. Shepard vs. Eduardo R. Andrade and Baylor Trucking, Inc. Docket No. MID-L-7444-11, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Middlesex County, November 5, 2013.

Judith Feliciano-Batista and Franklin Batista vs. Calvin Roy Waterton, Dish Network Service, L.L.C., Dish Network L.L.C., Echostar Satellite, L.L.C., and Echostar Satellite Corporation, Index No. 307360/09 on behalf of the plaintiff, Supreme Court of the State of New York, County of Bronx, October 30 and November 1, 2013.

Bergette Noel, as the Administratrix of the Estate of Eric Noel, deceased, vs. Sharon Libato, Chaitanya Kadiyala, Rohit Sood, Kiran Bhat, Manhattan Medical Practice, P.C., Greenhouse Medical, P.C., Health Styles Medical Care, and Greene House Surgicare, et al., Index No. 15426/10, on behalf of the plaintiff, Kings County, Brooklyn, New York, October 21, 2013.

Frank R. Aronica vs. Seventeen Development, L.L.C., Index No. 12696/09, on behalf of the plaintiff, Supreme Court of the State of New York, County of Kings, September 16, 2013.

Huma Hasan, as Administratrix of the Estate of Shahid Hasan, deceased and Huma Hasan, Individually, vs. Michael A. Ietta, M.D., et al., Docket No. BER-L-1674-11, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Bergen County, July 22, 2013.

Deborah D'Elia, individually as surviving spouse and as Administratrix of the Estate of Gary D'Elia, deceased vs. David Clark, Executor of the Estate of William Clark, deceased, Civil Action No. 11CIV7462, on behalf of the plaintiff, United States District Court, Southern District of New York: White Plains, New York, June 21, 2013.

Brian Gatesy vs. Schubert Perrotte, M.D., et al., Docket No. PAS-L-3947-09, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Passaic County, June 10, 2013.



*Trial, Arbitration and Mediation Testimony*

### Kristin Kucsma, M.A.

Penny Crone vs. 225 East 57th Street Owners and New York City, Index No. 102141/10, on behalf of the plaintiff, Supreme Court of the State of New York, County of New York, May 13, 2013.

Suzanne Belluardo and John Belluardo vs. Richard W. Tai, et al., Docket No. UNN-L-2818-09, on behalf of the plaintiff, Superior Court of New Jersey Law Division: Union County, May 9, 2013.

Lori Mambelli vs. The Passaic County Sheriff's Department, Passaic County, et al., Docket No. BER-L-1068-10, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Bergen County, April 25, 2013.

Sean Palomo vs. 175th Street Realty Corp., Steven Padernacht and Michael Padernacht, Index No. 305987/09, on behalf of the plaintiff, Supreme Court of the State of New York, County of Bronx, April 24, 2013.

Shirley McArthur vs. Freddy Herman Lopez and S&D Express Corp., Index No. 35547-06, on behalf of the plaintiff, Supreme Court of the State of New York, County of Kings, April 12, 2013.

Neelu Pal, M.D. vs. University of Medicine and Dentistry, Robert Wood Johnson Medical School, et al., Docket No. MID-L-001297-10, on behalf of the defendant, Superior Court of New Jersey Law Division: Middlesex County, April 4, 2013.

Kenyata Parsons vs. Preakness Hills Country Club, et al., Docket No. PAS-L-831-11, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Passaic County, March 21, 2013.

Niurka Andino vs. Ronald Mills and NYC Transit Authority, Docket No. 26798-04, on behalf of the plaintiff, Supreme Court of the State New York, County of Bronx, March 14, 2013.

Larry D. Clanton vs. Nissan North America, Inc., et al., Docket No. ESX-L-10082-07, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Essex County, March 4, 2013.

Maria Marin-Perez and Rudolph Perez vs. Pugliese Wholesale, et al., Docket No. PAS-L-208-11, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Passaic County, March 6, 2013.

Marie Castelli vs. Knights of Columbus, St. Joseph the Worker Council #4215, et al., Docket No. 0811128-29-2,  on behalf of the plaintiff, Court of Common Pleas of Bucks County, Pennsylvania, March 6, 2013.

Stephen Kempisty vs. 246 Spring Street LLC, et al., Index No. 107465/07, on behalf of the plaintiff, Supreme Court of the State of New York, County of New York, February 26, 2013.

September 27, 2016



*Trial, Arbitration and Mediation Testimony*

### Kristin Kucsma, M.A.

Linda J. Lonergan, as Administratrix of the Goods, Chattels, and Credits which were of the Estate of Katelyn Francis Lonergan, Deceased vs. VW Credit Inc., et al., Index No. 11899/10, on behalf of the defendant, Supreme Court of the State of New York, County of Westchester, February 19-20, 2013.

William Reavis vs. School Bus by Superior, Inc., Frank LaFortune, Index No. 306125/09, on behalf of the plaintiff, Supreme Court of the State of New York, County of Bronx, February 15, 2013.

Margaret C. Barnes, Individually and as Executrix of the Estate of Charles J. Barnes vs. Allied Building Supply, et al., Docket No. L-5018-08, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Middlesex County, February 1, 2013.

Corina Gomez, as Administrator Ad Prosequendum of the Estate of Mario Gomez vs. Tec-Cast, Inc., its agents servants and employee, et al., Docket No. BER-L-7061-09, on behalf of the plaintiff, Superior Court of New Jersey, Law Division: Bergen County, February 1, 2013.

Jose H. Guerrero-Portillo and Blanca E. Portillo, husband and wife vs. Plain Enterprises, L.L.C. et al., Docket No. UNN-L-2163-10, on behalf of the plaintiff,  Superior Court of New Jersey, Law Division: Union County, January 15, 2013.

William A. Bogage and Jill Bogage vs. Display Group 21, LLC, a Delaware Limited Liability Company, et al., Docket No. MID-L-1075-10, on behalf of plaintiff, Superior Court of New Jersey Law Division: Middlesex County, December 6, 2012.

Matthew Prince vs. County of Nassau, et al., Index No. CV 08-1829, on behalf of plaintiff, United States District Court, Eastern District of New York: East Islip, New York, September 27 2012.

Kathryn E. Coon, as Executrix of the Estate of Thomas Coon vs. NK Company. Ltd, et al., Docket No. UNN-L-1809-10, on behalf of plaintiff, Superior Court of New Jersey Law Division: Union County, September 21, 2012.

Denise Richter vs. Dean Transportation, et al., Docket No. SOM-L-2002-09, on behalf of plaintiff, Superior Court of New Jersey Law Division: Somerset County, July 16, 2012.

Esther Benoit, as Administratrix of the Estate of Jean Anthony Benoit, deceased vs. Interfaith Medical Center, et al., Index No. 6432/08, on behalf of plaintiff, Supreme Court of the State of New York, County of Kings, July 13, 2012.

September 27, 2016



*Trial, Arbitration and Mediation Testimony*

### Kristin Kucsma, M.A.

Deborah Marks Kahn, as Administratrix of the Estate of Seth Kahn, Deceased , and Deborah Marks Kahn, Individually vs. New York City Transit Authority and Jeremy Philhower, Index No. 103770/10, on behalf of plaintiff, Supreme Court of New York, County of New York, July 12, 2012.

Jennifer Robinson, General Administratrix and Administratrix ad Prosequendum of the Estate of John Robinson and Patrice Coleman vs. South Jersey Transportation Authority, State of New Jersey, Division of State Police, et al.,  Docket No. ATL-L-002297-09, on behalf of plaintiff, Supreme Court of New Jersey Law Division: Atlantic County, June 27, 2012.

Edith Pavlovich vs. Wyckoff Heights Medical Center, NYU HospitalCenter A/K/A Tisch Hospital/Rusk Institute of Rehabilitation Medicine, et al., Index No. 19933/08, on behalf of plaintiff, Supreme Court of the State of New York, County of Queens, June 26, 2012.

Crescencio Pantoja vs. The City of New York, New York City School Construction Authority, Metropolitan Enterprises, Inc. and Swing Staging, Inc., Index No. 17403/07, on behalf of plaintiff, Supreme Court of the State of New York, County of Bronx, June 22, 2012.

Sarah Lapidoth vs. Telcordia Technologies, Inc., Docket No. MID-L-2617-07, on behalf of plaintiff, Superior Court of New Jersey Law Division: Middlesex County, June 7, 2012.

Estate of Ottavio Novembrino, by Nancy Novembrino, Administratrix Ad Prosequendum and as General Administrator of the Estate of Ottavio Novembrino vs. Hackensack University Medical Center, et al., Docket No. HUD-L-773-10, on behalf of plaintiff, Superior Court of New Jersey Law Division: Hudson County, New Jersey, May 24, 2012.

Lenora Crandell vs. New York City Transit Authority, et al., Index No. 0017421/2005, on behalf of plaintiff, Supreme Court of the State of New York, County of Bronx, May 11, 2012.

Theresa Ottaviano vs. Shop Rite of Carteret, Inc. ,John Doe (1-10) and XYZ Corporations (1-10) fictitiously named individuals and business entities, Docket No. MID-L-699-10, on behalf of plaintiff, Superior Court of New Jersey Law Division: Middlesex County, New Jersey, March 1, 2012.

Edward W. Klumpp and Nancy M. Klumpp vs. Borough of Avalon, Docket No. CPM-L-651-04, on behalf of plaintiffs, Superior Court of New Jersey Law Division: Cape May County, February 10, 2012.

April Allridge vs. UMDNJ, Docket No. MID-L-6554-08, on behalf of plaintiff, Superior Court of New Jersey Law Division: Middlesex County, January 26, 2012.

September 27, 2016



*Trial, Arbitration and Mediation Testimony*

### Kristin Kucsma, M.A.

Sakina Abdul-Haqq, a minor. vs. Temple University's Medical Center, Temple University Health System, Temple University Hospital Division Corporation, St. Christopher's Hospital for Children, LLC, et al., Case No. 04647, on behalf of plaintiff, the Court of Common Pleas, Philadelphia County, Pennsylvania, January 24, 2012.

Joseph Costabile vs. Damon G. Douglas, NY Botanical Garden, City of New York, Department of Parks and Recreation, Index No. 259-BTS-2002, on behalf of plaintiff, Supreme Court of New York, County of Bronx, January 12, 2012.

Claus Hertel vs. Mendoza, Index No. F-03440-11, Queens Family Court, New York, New York, January 5, 2012.

—



*Deposition Testimony*

**Kristin Kucsma, M.A.**

Maurice R. Grassia, Jr., Executor of the Estate of Elisabeth K. Garssia, on behalf of All Wrongful Death and Survival Action Claimants, vs. Underwood Memorial Hospital, Inspira Medical Center Woodbury, Inc., Inspira Health Network, Inc. et als., Docket No. CAM-L-002024-14, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding companionship services to sons, and advice and counsel services to sons, September 26, 2016.

Alexander Son, vs. Derrick Senior, New Jersey Transit Corporation, State of New Jersey, John Does 1-20, Docket No. ESX-L1380-15, Roseland, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding cost of lifetime care, September 23, 2016.

Estate of Richard L. Henry, Jr., by Donna Henry, Administratrix of the Estate of Richard L. Henry, Jr., and Donna Henry, his wife individually, vs. Robert Brautigan M.D., Jaxon Fernandes, M.D., Katherine Hanify, D.O. Christopher Boni, D.O., et als., Docket No. ESX-L-4174-14, Chatham, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, cost of health insurance, companionship services to spouse and children, advice and counsel to spouse and children, and household services, September 23, 2016.

Jeffrey Boslet, vs. Randy Klein, M.D., The Doctor Is In and John Does 1-100, Docket No. HNT-L-127-14, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, cost of healthcare insurance, pension income and cost of lifetime care, September 20, 2016.

Louis Cesaro, Jr., and Ritta Cesaro, his wife vs. Anthony Garcia and LLC Air Cheff Holdings et als., Docket No. PAS-L-835-15, Elmwood Park, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, and cost of health insurance, September 19, 2016.

Donna Jamieson vs. Saad Chuadrhary, M.D., North Jersey Orthopaedic Institute, UMDNJ-New Jersey Medical School/Rutgers-New Jersey Medical School, et als., Docket No. ESX-L-5291-14, Chatham, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, and cost of lifetime care, September 6, 2016.

Angel Alvarado, Administrator Ad Prosequendum of the Estate of Judith Alvarado, and Angel Alvarado, individually vs. Joseph Popovich, M.D., Christ Hospital et als., Docket No. L-003655-14, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse and sons, and advice and counsel services to spouse and sons, September 2, 2016.

Kyle Generale vs. Julie Ashton, M.D., Howard Cory, M.D., John Does, et als., Docket No. MRS-L-316-14, Chatham, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding cost of lifetime care, August 22, 2016.



*Deposition Testimony*

### Kristin Kucsma, M.A.

Ann Marie De Candia vs. Douglas J. Spiel, M.D., James Scott Schoeb, M.D., NJ Spine Center, Middlesex Surgical Center, et als., Docket No. MID-L-0001-14, Chatham, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted pre- and post-incident earnings in future years, and household services, August 17, 2016.

Deoborah J. Stazak and Shawn M. Stazak, her husband vs. Bayonne Medical Center, John Does 1-10 et als., Docket No. MID-L-4453-12, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, pension income, and cost of lifetime care and household services, August 16, 2016.

Stephanie O'Neill Lingenfesler by and through Robert O'Neill and Theresa O'Neill, her parents and legal Guardians of her person and Estate vs. United States Parcel Services, Inc., and Adel A. Elsalam and Champps of Marlton, Inc. d/b/a Champps et als., Docket No. CAM-L-3:03CV1223, Philadelphia, Pennsylvania, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, and cost of lifetime care, August 15, 2016.

Susan Boleck and Alex Kardos, vs. Diane Foreman, R.N., APN, Carolina Biala, R.N.,University Medical Center At Princeton, et als., Docket No. SOM-L-1490-11, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings and cost of lifetime care, August 8, 2016.

Bernard Belzi, individually and as Personal Representative of the Estate of Patricia Belzi, deceased, and as legal guardian and parent of Abigail Belzi, minor vs. Plantation General Hospital Limited Partnership, d/b/a/ Plantation General Hospital, et als., Docket No. 15-3711MA, Fort Lauderdale, Florida, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse and daughter, and advice and counsel services to spouse and daughter, July 18, 2016.

Ethan Slater, a minor by and through his Guardians ad Litem, Danielle Karol and George Slater, Individually vs. Joseph C Canterino, M.D., Rutgers, The State University of New Jersey et als., Docket No. 1-4687-13, Livingston, New Jersey, on behalf of the defendant, personal injury proceeding, opinion regarding commentary of expert report, July 1, 2016.

Andrea Rachelle Clinton vs. Mentor Worldwide, LLC, Docket No. 4-12cv-245 (CDL), Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, and household services, July 1, 2016.

John D. Brown, as General Administrator and Administrator Ad Prosequendum of the Estate of Jonathan A. Brown, and John D. Brown, individually; Bobbie Brown, David Brown; and Jashan Brown a minor, by his Guardian Ad Litem, Jasmine Page, vs. Lorenzio Miller-Santos, AVIS Car Rental Company et al., Docket No. L-1443-12, Livingston, New Jersey, on behalf of the



*Deposition Testimony*

### Kristin Kucsma, M.A.

plaintiff, wrongful death proceeding, opinion regarding adjusted income to son, companionship services to son, and advice and counsel services to son, June 28, 2016.

Karen Del Rey and Paul Schmalz, vs. New Jersey Turnpike Authority, Hohn Knuth, et al., Docket No. MON-L-2190-14, Livingston, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past and future years, and cost of health insurance and household services, June 28, 2016.

Robert Morris Milloul vs. Knight Capital Group, Inc., Knight Capital Americas LLC, KCG Holdings, Inc., and Brendan Joseph McCarthy, Docket No. HUD-L-2913-13, Livingston, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past and future years, cost of health insurance coverage, and compensation for excess taxes, June 27, 2016.

Ana Pereira vs. Michael P. Esposito, M.D., et al., Docket No. MON-L-1397-12, Roseland, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding lifetime adjusted earnings and cost of lifetime care, June 24, 2016.

Christina Brigliadoro vs. Shaun Joypoop Chun, M.D., Valley Hospital, John Does 1-10, Jane Does 1-10 et al., Docket No. BER-L-009615-13, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, cost of health insurance, household services, companionship services to spouse and children, and advice and counsel services to spouse and children, June 23, 2016.

Yaseene Demir by G/S/L Aisha Asani and Aisha Asani and Ferdi Demir, individually vs. Sonia Gof, ST. Joseph's Regional Medical Center, et al., Docket No. PAS-L-3103-14, Chatham, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding pre-injury earnings in future years, post-injury earnings in future years, and cost of lifetime care, June 20, 2016.

Jeffrey Gorsak vs. Navistar, Inc. (f/k/a) international Harvester Company, et al., Docket No. HNT-L558-12, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, and household services, June 15, 2016.

Alison Caravaggio vs. Christine Ganitsch, M.D., Kerry Graebe, M.D., Malua Tambi Iya, M.D., Nina Reynolds, M.D., Ellen Williams, R.N., et al., Docket No. MRS-L-3150-13, Chatham, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, and cost of lifetime care, June 15, 2016.

Risa Rosenberg, individually and as Executrix of the Estate of Gerald Lazar vs. Englewood Hospital and Medical Center, Inc., Mitchell Spinnell, M.D., Russell Gura, M.D., et al., Docket No. BER-L-1818-14, Mercerville, NJ, on behalf of the plaintiff, wrongful death proceeding,



*Deposition Testimony*

### Kristin Kucsma, M.A.

opinion regarding household services, companionship services to spouse and children, and advice and counsel services to spouse and children, June 6, 2016.

The Estate of Martin Yudko, Bryan Yudko as Administrator of the Estate of Martin Yudko and Ana Yudko, Bryan Yudko individually and Jennifer Zisa vs. Community Medical Center and Barnabas Health, Sal Security, et als., Docket No. L-8042-13, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding household services, personal assistance for Ana, companionship services to children, and advice and counsel services to spouse and children, June 3, 2016.

Rebecca Zinnah, individually and as Administratrix Ad Prosequendum on behalf of the Estate of John Zinna vs. Michael Omoh, M.D., Lukose Vadakara, M.D., Leon O'Neill, IV, D.O. Vadakara International Medicine Associates et al., Docket No. MER-L-687-14, Princeton, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse, and advice and counsel services to spouse, June 2, 2016.

Dmitriy Markov as Administrator Ad Prosequendum of the Estate of Galina Volodina vs. Kanta Davessar, MD., Micheale C. McGinnis, M.D., Miracle Life Sciences, Inc. (F/K/A Plus Diagnostics), Docket No. UNN-L-3807-14, Roseland, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse and sons, and advice and counsel services to spouse and sons, June 1, 2016.

Michael Maccarrone, an infant by his Parents and Guardians ad Litem, Karla S. Maccarrone and Giuseppe Maccarrone vs. Kimball Medical Center, Inc., Eric Lehnes, M.D., Adam N. Repole, M.D., Ocean Gynecological Associates, P.A. et al., Docket No. ESX-L-170-13, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted lifetime earnings and cost of lifetime care, May 23, 2016.

Mikael M. Safarian vs. American DG Energy Inc., John Does 1-20, being fictitious names vs. Multi Service Power Inc., Docket No. 3:10-VC-06082-GEB-TJB, Livingston, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding unpaid compensation, adjusted earnings in past and future years, cost of health insurance, and compensation for excess taxes, May 12, 2016.

Jann Benzillo and Cara Cangelosi Administrices CTA of the Estate of Frank Cangelosi vs. Dr. Jules Geltzeiler, Dr. Felix Fianko, Dr. Felix Garcia-Perez, Dr. Stephen Windsor, Dr. Susan Greenberg, Loretta Christensen, Jersey Shore University Medical Center, and John Does 1-10, Docket No. MON-L-4823-11, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse and children, and advice and counsel services to spouse and children, May 2, 2016.



*Deposition Testimony*

### Kristin Kucsma, M.A.

Arthur Ruff, Individually and as Administrator Ad Prosequendum of the Estate of Jimeta Yashone Moseley-Ruff vs. Newark Beth Israel Medical Center, Yvonne Wright-Cadet, M.D., Monroe Karetzky, M.D., Martin Larry Gimovsky, M.D., and David Nunez, M.D., Docket No. ESX-L-6561-08, Roseland, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse and children, and advice and counsel services to spouse and children, April, 28, 2016.

Todd Lopez, As Personal Representative of the Estate of Fernando Flores; and Catalina Flores Rico vs. Devon Energy Production Company, LP, McVay Drilling Co., Armando Arenivas, Plaster & Wald Consulting, Corp., Bruce Holman, Sierra Engineering, LLC, and Allen Whiteplume, Docket No. D-10-CV-2013-01720, East Elmhurst, New York, on behalf of the plaintiff, wrongful death proceeding, opinion regarding punitive damages, April 13, 2016.

Stanley Witczak, III vs. Township of Morris, Morris Township Police Department, Deputy Mayor Bruce D. Sisler, H. Scott Rosenbush and John and Jane Does 1-10, Docket No. MRS-L-1962-13, Little Falls, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past and future years, pension income, and compensation for excess taxes, April 11, 2016.

Elisabeth Walter vs. Ramapo Indian Hills Regional School District, RIH Board of Education As Supervisors of Plaintiff and John Does 1-5, fictitius names of agents, employees and/or supervisory employees of the Ramapo Indian Hills Regional School District, Responsible for causing harm to Plaintiff, Docket No. BER-L-000629-14, Livingston, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past and future years, pension income and compensation for excess taxes, April 11, 2016.

Judith Kroll vs. Lin Chou, M.D., Internal Medicine Associates of Somerset, John Does (fictitious names), and ABC Groups (fictitious names), Docket No. MER-L-1446-14, Chatham, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding cost of lifetime care, March 28, 2016.

Karen Rochester, as Administratrix of the Estate of Collin T. Rochester, deceased vs. County of Nassau, Mario Mastropierro, Christopher M. McCarthy et al., Docket No. 10-CV-6017, Islandia, New York, on behalf of the plaintiff, wrongful death proceeding, opinion regarding financial support to mother, special care services to mother, and advice and counsel services to mother, March 22, 2016.

Antonio Parracho and Dina Parracho, his wife vs. Compact Power Services, J& D Manufacturing, Interlake Mecalux, Electric and John Doe(s) 1-7 as fictitious names true names being unknown, Docket No. MID-L-4412-13, East Brunswick, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, and cost of health insurance, March 11, 2016.



*Deposition Testimony*

### Kristin Kucsma, M.A.

Charles Perrine, Adminstrator and Administrator Ad Prosequendum of the Estate of Charles Picciotto Perrine and Charles Perrine, individually, vs. Anthony Giovine, D.O., Joanne Change, M.D., A Woman's Place, et al., Docket No. MON-L-2912-13, Chatham, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse, and advice and counsel services to spouse, March 3, 2016.

Patricia T. Conn, as the Executrix Ad Prosequendum of the Estate of David W. Conn, deceased and Patricia T. Conn, individually, and per quod. vs. Babylin Rebustillo, an individual, and Newton Memorial Hospital, a business entity a/k/a Newton Medical Center et al., Docket No. SSX-L-452-14, Edison, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted pension and disability income, social security income, household services, companionship services to spouse, and advice and counsel services to spouse, March 2, 2016.

Terry Polt vs. Andrew C. Loesberg, M.D., Hunterdon Radiology Associates, David F. Kroon, M.D., and Stephen M. Schwartz, M.D., et al., Docket No. SOM-L-427-12, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, February 29, 2016.

Estate of Linda Pizzano by her Executor and Proposed Administrator Ad Prosequendum Thomas P. Pizzanno, and Thomas P. Pizzanno, individually, Docket No. L-3443-13, Livingston, New Jersey, wrongful death proceeding, on behalf of the plaintiff, wrongful death proceeding, opinion regarding social security income, household services, companionship services to spouse and children, and advice and counsel to spouse and children, February 26, 2016.

Jesse Diaz vs. City of Trenton, James Hall, Leonard Carmichael and Qareeb Bashir, Docket No. L1058-14, Merceville, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earning in the past and future years, adjusted pension benefits and compensation for excess taxes, February 25, 2016.

Lorraine Notorfrancesco vs. Surgical Monitoring Associates, Inc., and Specialty Care, Inc. et al., Docket No. 2;09-CV-01703, Cherry Hill, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past and future years, and compensation for excess taxes, February 24, 2016.

Dennis Lamond and Theresa Lamond husband and wife Plaintiffs vs. Tishman Construction Corp., Weatherby Construction and Renovation Corp., Network Construction Company, Inc. et al., Docket No. ATL-L-002413-12, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, and cost of health insurance and household services, February 16, 2016.



*Deposition Testimony*

### Kristin Kucsma, M.A.

Luis Henriques, vs. Luis Juarbe-Grajales, Hollywood Memorial Park Company, Docket No. MID-L-5308-15, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, and cost of health insurance and household services, January 15, 2016.

Holly Callan, Executrix of the Estate of James Andrew Callan and Holly Callan, individually vs. Syed Siddiq, M.D., George Poisni, M.D., Somerset Pulmonary, Somerset Medical Center, John Doe Physicians, M.D., 1-10 (names being fictitious) and Jane Roes, RNS 1-10 (names being fictitious), Docket No. SOM-L-379-14, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse and son, and advice and counsel services to spouse and son, January 12, 2016.

Stephen Buckley and Patricia Buckley vs. Edgardo Ong, M.D., Mazrn Itani, M.D., Michael Resnikoff, M.D., Hackettstown Regional Medical Center, et al., Docket No. MRS-L-1813-12, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, cost of health insurance and cost of lifetime care, December 28, 2015.

Laura Schneider vs. The Depository Trust & Clearing Corporation and Anthony Alizzi, Docket No. HUD-L-5096-13, Florham Park, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past and future years, cost of healthcare insurance, and compensation for excess taxes, December 9, 2015.

Antoinette Heather Cooper vs. Walmart Stores, Inc., Susan Demiraslan and David Dorsey, Docket No. BUR-L-2018-13, Cherry Hill, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings and compensation for excess taxes, December 8, 2015.

Elizabeth Way and Stuart M. Way vs. George T. Besong, M.D., George T. Besong, M.D. OBGYN, LLC d/b/a/ Women's Health Resource Center; and Southwest Volusia Healthcare Corporation d/b/a Florida Hospital Fish Memorial, and C.R.. Bard Inc., Docket No. 2011-10945-CIDL, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, and cost of health insurance and lifetime care, December 4, 2015.

Glenn R. Jones vs. Rutgers, The State University of New Jersey, Lester Aron, William F. Owen, Jr., and Kevin M. Barry, Docket No. L-7138-11, Newark, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past and future years, pension income, and compensation for excess taxes, November 24, 2015.

Katrina Sandy and Norman Sandy vs. The Brickman Group, LLC, ABC Corporation 1-20 (one or more fictitious corporations), DEF Company 1-20, (one or more fictitious companies), their



*Deposition Testimony*

### Kristin Kucsma, M.A.

agents, serventas, and/or employees, John and/or Jane Doe 1-20 ( names being fictitious), Docket No. MER-L-411-13, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earning in past and future years, and household services, November 10, 2015.

Cecilia Samson vs. Almallah et al., Docket No. Not provided, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding cost of lifetime care, November 2, 2015.

Estate of Gregory Polvere, by his Administratrix Angela Polvere, and Angela Polvere individually vs. The Valley Hospital, The Valley Health System, The Valley Heart & Vascular Institute, Jason Sperling, M.D., Anatoly Volkov, M.D., et al., Docket No. L-4576-13, Chatham, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse and children, and advice and counsel services to spouse and children, October 20, 2015.

Estate of Angel Rodriguez, by Melony Rodriguez, Administratrix ad Prosequendum and Melony Rodriguez individually vs. Yvan D. Ducheine, M.D., Robert Roe 1-100 ( A fictitious name) , Newark Beth Israel Medical Center, St. Barnabas Health Care System and et al., Docket No. ESX-L-10375-11, Chatham, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding lifetime income, household services, companionship services to spouse and children, and advice and counsel to spouse and children, October 19, 2015.

Michelle Komlodi vs. Patel, M.D., et al., Docket No. MID-L-02512-13, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding cost of lifetime care, October 19, 2015.

Estate of Michael Blotsky by his Administrator Minerva Blotsky, and Minerva Blotsky , individually vs. Saint Barnabas Medical Center, Kalyani Theivanayagam, M.D., Manickam Ganesh, M.D., Lawrence Rosenthal, M.D., Matthew Askin, M.D., Courtney Quinn, M.D., Mei Kwang, M.D., Samuel Bride, M.D., Ronald Chamberlain, M.D., Debra Arrantino, M.D., Mark Gilder, M.D., Alan Garten, M.D., Barry Julius, M.D., Mark Laible, M.D., et al., Docket No. ESX-L-6069-12, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse, and advice and counsel services to spouse, October 15, 2015.

Lorraine Dasilva, Administratrix of the Estate of John Dasilva, deceased vs. Philip J. Olivieri, M.D., Atlantic Cardiology Group, LLP, Steve Xydas, M.D., Mid-Atlantic Surgical Associates, Michael H. Leonardo, M.D., Igor F. Agaronin, M.D., Morristown Medical Center, Paul Derenzi, M.D., Lakeland Cardiology Center et al., Docket No. SOM-L-536-13, Woodland Park, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted Social Security Income, net pension benefits, household services, companionship services to spouse and children, and advice and counsel to spouse and children, October 5, 2015.



### *Deposition Testimony*

### Kristin Kucsma, M.A.

C. Charles Zanna and Barbara Zanna, his wife v Advanced Orthopedics & Neurosurgery, LLC, Jeffrey Oppenheimer, M.D., John Does, M.D.( A fictitious name), Docket No. L5433-13, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding cost of lifetime care, September 28, 2015.

Joseph Fleischman vs. Direct Energy Services, LLC, and Gateway Energy Services Corporation, Docket No.  L-2638-13, Livingston, New Jersey, on behalf of the plaintiff,  wrongful termination proceeding, opinion regarding adjusted commission in past and future years, September 11, 2015.

Robert Lipman and Maryanne Lipman, his wife vs. Michael Kozaczek, M.D., Aditi Dhakar Modi, M.D., Morristown Memorial Hospital , ABC Groups (the fictitious name of any group, practice, entity, organization, association of any kind, whose correct name is not known, of which any defendant is an agent, servant or employee), et al., Docket No. MRS-L-493-13, Chatham, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, health insurance, pension income, household services, companionship services to spouse and children, and advice and counsel services to spouse and children, August 31, 2015.

Monica Smolyar, infant by her Mother and Natural Guardian, Suzanne Smolyar, Monica Smolyar, individually vs. Yvette A Bridges, M.D., Charles H. Bowers, M.D., Mark Einstein, M.D., Matthew D. Horn, M.D., Kristina A. Bakery, R.N., Chunping Zheng, R.N., Linda Paschik, R.N., Sedat Surmeli, M.D., St. Barnabas Medical Center and Suburban OB/GYN Speciality Group, Docket No.  ESX-L-5833-12, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding opinion regarding adjusted earnings and cost of lifetime care, August 21, 2015.

Estate of Ainsworth Mallett et al., vs.  Schmidt Baking Co., Inc. et al., Docket No. 1:14-CV-02438-JEI-KMW, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding companionship services to daughter and sister, advice and counsel services to daughter and sister, and on call services to daughter and sister, August 21, 2015.

Arlene Simpson, vs. Magnolia Development, LLC; Medical Facilities Condo Association; AC Restoration, LLC; Interstate Power Washing, LLC et al., Docket No. MID-L-8227-13, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, August 7, 2015.

Paul Reichenberg, Individually and as Executor of the Estate of Ellen Reichenberg vs. Barbara McCormack, M.D., Violet Merle Mcintosh, M.D., Johen Doe 1-10 (a fictitious name), Jane Doe, R.N. (1-10) (a fictitious name), and Women 's Physician OB/GYN, Docket No. BER-L-7321-12, Chatham, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse and son, and advice and counsel services to spouse and son, July 30, 2015.



*Deposition Testimony*

**Kristin Kucsma, M.A.**

Solande Destin vs. Lara Paul, et al., Docket No. ESX-L-1496-14, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in future years, pension income and household services, July 30, 2015.

John Garvey vs. John Clemente, M.D., Sanjay Misar, M.D., Jersey Shore Medical Center, John Does 1-10 ( a fictitious name representing a class of fictitious medical providers involved in the medical care of John Garvey), Docket No. MON-L-5740-10, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, and household services, July 23, 2015.

Regina Fucile vs. Dr. Robert Pampin, Newton Medical Center, Dr. Stephen Golombek, Morristown Medical Center, Dr. Christopher O. Okechukwu ( formerly pleaded as John Doe A), Dr. Ellen Benson ( formerly pleaded as John Doe A), John Does B-Z, (said names being fictitious as their identities are presently unknown), and Jane Does B-Z, (said names being fictitious as their identities are presently unknown), Docket No. MRS-L-2260-12, Livingston New Jersey, on behalf of the plaintiff,  personal injury proceeding, opinion regarding adjusted earnings in past and future years, cost of health insurance and cost of lifetime care, July 17, 2015.

Joan Pykosh, individually and as Executrix of the Estate of Michael Pykosh vs. James Najarian, M.D., and John Doe 1-100, Docket No. MRS-L-757-13, Parsippany, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding household services to spouse, companionship services to spouse and advice, guidance and counsel services to spouse, July 1, 2015.

Mark Vamos vs. New Jersey-American Water Company, Inc., American Water Works Service Company, Inc., Pasquale Lombardi Trustee and/or Pasquale Lombardi Revocable Living Trust Dated June 29, 2009, ABC Co (1-5), John Doe (1-5), (said names being fictitious and unknown, hereby used to connote ether singular or plural individuals and/or companies, corporations or entities, who may have controlled, owned, operated, maintained, constructed, inspected, supervised, managed, repaired, the subject premises), Docket No. UNN-L-3793-13, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, pension benefits and household services, June 12, 2015.

Edward Kohler vs. TE Wire & Cable LLC, Docket No. ESX-L-1447-14, Livingston, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past and future years, cost of health insurance and compensation for excess taxes, June 5, 2015.

Patricia Spahr, Individually and as Administratrix and Administratrix ad Prosequendum of the Estate of Richard Spahr vs. Eddie Santiago, M.D., Stephen Windsor, M.D., Susan Greenberg, M.D., West Park Medical Center LLC, St. Barnabas Health Care System, Monmouth Medical Center, Adult Medical Oncology Hematology Group, LLC et al., Docket No. MON-L-487-13,



*Deposition Testimony*

### Kristin Kucsma, M.A.

Chatham, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse, son and granddaughter, and advice and counsel services to spouse, son and granddaughter, June 4, 2015.

Ivanka and Andrew Jovic vs. Rakesh K. Sahni, M.D., et al., Docket No. UNN-L-998-12, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, cost of health insurance, medical costs and household services, May 29, 2015.

Kenneth C. Reed III and Ruth E. Reed vs. 3M Co. (F/k/a Minnesota Mining & Manufacturing Co.), et al., Docket No. ASB-DBD-VC-12-6011052-S, West Orange, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, cost of health insurance in past and future years, and household services, May 27, 2017.

Marlowe Botti vs. Borough of West Long Branch, Borough of West Long Branch Police Department and Chief of Police Arthur N. Cosentino, individually and in his official capacity, Docket No. MON-L-3327-12, Livingston, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past and future years, adjusted pension income and compensation for excess taxes, May 21, 2015.

Vanessa Russy and Lee Russy vs. Hackensack University Medical Center and Jerry Barrata, D.O., Docket No. BER-L-3606-12, Fort Lee, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, cost of health insurance, pension income and household services, May 15, 2015.

Thomas McDaniel, Jr., Administrator and Administrator Ad Prosequendum of the Estate of Tashema Fisher McDaniel and Thomas McDaniel, Jr. Individually vs. William Dalsey, DO., Kimball Medical Center, Saint Barnabas Emergency Physicians Group, Emergency Medical Associates, P.A., Emergency Medical Associates of New Jersey, PA, ABC Groups 1-10 (Fictitious names), John Does 1-10 (Fictitious names), Docket No. OCN-L-181-13, Chatham, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse and children, and advice and counsel services to spouse and children, May 12, 2015.

Carmine S. Cortese, as Executor of the Estate of Barbara Anne Cortese, deceased, and on behalf of the heirs-at-law of Barbara Anne Cortese, decease and individually vs. Kanga N. Sundarm, M.D., Allergy and Clinical Immunology Center, P.A., Aaron Chevinsky, M.D., John Does 1-10 ( a fictitious name), and Allied Surgical Group, P.A., Docket No. MRS-L-817-13, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse and children, and advice and counsel to spouse and children, May 12, 2015.



*Deposition Testimony*

### Kristin Kucsma, M.A.

Soraya Rodriguez vs. Melissa A. Casale, Yu Li, Mary Ann T. Ruglio Santor, Maryann Ruglio Santorella, Allstate Insurance Company, ABC Corporations 1-100 (names being fictitious) and John Does 1-100 ( Names being fictitious), Docket No. L3803-13, Livingston, New Jersey, on behalf of the plaintiff,  personal injury proceeding, opinion regarding adjusted earnings in past and future years, cost of health insurance and household services, April 29, 2015.

Elif Kose, a minor by and through her Parent and Natural Guardian, Ali Kose vs. Springs Industries, Inc, Springs Window Fashions, LLC, Springs Window Fashions Manufacturing Co. USA, Inc., Beautiful Window Enterprise Co., LTD., Home Depot USA, Inc., Bill Tetkoski Irene Caputo, John Doe, Inc., (1-20) ABC, Inc. (1-20) Fictitious names representing a class of as yet unknown individuals, corporations or partnership who sold, marketed, maintained, manufactured, designed and/or supplied the Product or component of the Product Docket No. L-2166-12, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding lifetime earnings and cost of lifetime care, April 9, 2015.

Maria Zarzabal, individually and as Administratrix of the Estate of Francisco Gonzalez vs. Atlantic Emergency Associates, P.A., Nacy Hayes, RN, Candace Leonard, RN, Darlene Chornomaz, APN, Henry L. Souto, DO, Mark A. Schmidheiser, MD, Sheryel D. Martin, MD, Catherine Dudick, MD, Jeffrey D. Anderson, MD, and Atlantic Regional Medical Center, Inc. Docket No. L-09829-11, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse and children, and advice and counsel to spouse and children, April 17, 2015.

Lucia Lawrence vs. East Coast Tile d/b/a Best Tile, Angelo Paladino, Stanley Araino, John Doe 1-5 and ABC Corp 1-5 ( names being fictitious as true identities are unknown at this time), Docket No. MID-L-4003-13, Livingston, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past and future years, cost of health insurance, and compensation for excess taxes, April 1, 2015.

John Kearney vs. Glenda E. Roasa, R.N., Holy Name Medical Center, John Doe and Jane Doe (1-100) and ABC Corp (1-100) (fictitious names/entities unknown), Docket No. BER-L-6312-13, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, cost of health insurance and pension income, March 25, 2015.

Estate of Malissa Eisenhauer and Justin L. Eisenhauer vs. Southern Ocean County Hospital, John Armstrong, D.O, Rosallia C. Riguerra, M.D., Kimberly Jones, M.D., Laurie Sawyer, R.N. L Charanjit Vedi, M.D., Theresa Otte, R.N., Denise Wachter, R.N., Raymond P. Mantovani, M.D. and or John Does 1-10, individually, jointly & severally, Docket No. OCN-L-564-11, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse and children, and advice and counsel services to spouse and children, March 13, 2015.



*Deposition Testimony*

### Kristin Kucsma, M.A.

Estate of Alice Lee by the Administrators of the Estate, Judianna Lau and Peter Lau, individually, Wai Lee and Yau Lan Lee vs. Harinder S. Uppal, Garden Leasing Inc., Lee Transport Systems, LLC, Lee Transport Inc., L. Jays Leasing, Sunoco Logistics, John Doe 1-5, John Doe Inc. 1-5, Richard Roe 1-5, Richard Roe Inc. 1-5, Docket No. L-6176-16, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding lost income to estate, companionship services to parents, and advice and counsel services to parents, March 13, 2015.

Estate of John Kelly, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, life insurance premium differential, household services, companionship services to spouse and children, and advice and counsel to spouse and children, March 11, 2015.

Maria Ortiz, Executrix and Individually of the Estate of Pascual Ortiz vs. Glen Mogan M.D., Advanced Gastroenterology, Neil Lyman, M.D., Nephrological Associates; Alan Dembner, M.D., Imaging Consultants of Essex, et al., Docket No. ESX-L-9422-11, Chatham, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse and children, and advice and counsel services to spouse and children, March 10, 2015.

Debra Warren, Executrix of the Estate of Robert Warren and Debra Warren, individually vs. Christopher Muenzen, MD., Charles Carey, PA-C; John Doe, MD; Mary Roe, Rn and XYZ Corp. (Fictitious names), Docket No. MRS-L-207-13, Roseland, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, championship services to spouse and children, and advice and counsel services to spouse and children, March 3, 2015.

Debra Weyhknecht Administratrix and Administratrix Ad Prosequendum of the Estate of Leon Weyhknecht, Jr. and Debra Weyhkencht, individually vs. Douglas Ross, M.D., John Does (fictitious names) and Internal Medicine Associates of Monmouth, P.C. and ABC Groups (fictitious names), Docket No. MON-L-3729-13, Chatham, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse and children, and advice and counsel services to spouse and children, March 2, 2015.

Anthony J. Lucca and Toni Lucca vs. Mary A. Sorenson, Docket No. 1:12-cv-05890-JHR-KMW, Cherry Hill, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, and household services, February 11, 2015.

Ana V. Sagastume and Byron Sagastume her husband vs. Roger E. Kelly, R.F. Chamberland, Inc., and/or XYZ Companies 1-5 (names being fictitious) and ABC Companies (1-10) (names being fictitious), Docket No. 12-cv-05536-SRC-CLW, Livingston, New Jersey, on behalf of the



*Deposition Testimony*

### Kristin Kucsma, M.A.

plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past and future years, and household services, February 10, 2015.

Joan and Coffey Wilson vs. Holy Name Medical Center, et al., Docket No. PIC-1995-STH, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding cost of lifetime care, February 4, 2015.

Peggy Lucas, Executrix of the Estate of Arthur Lucas, decease and Peggy Lucas in her own right vs. Greogry Noto, M.D., Ashish B. Patel, M.D., Monmouth Cardiology Associates, John Does, D.P.M. 1-10, John Does, M.D. 1-10, Jane Does, R.N. 1-10 ABC Corporations 1-10, Docket No. MON-L-4461-12, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding household services, companionship services to spouse, and advice and counsel services to spouse, January 30, 2015.

Jacquelyn Mangini, Administratrix Ad Prosequendum of the Estate of John Mangini and Administratrix of the Estate of John Mangini vs. Nathan Martinez, Elio Martinez, Joseph Alvarez, Fette Ford, Ford Motor Company, Rockport Commercial Vehicles, A Division of Forest River, Inc., John Does 1-3 (fictitious defendants) ABC Corporation 2-3 (fictitious defendants), Docket, No. L-515-13, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse and daughters, and advice and counsel services to spouse and daughters, January 29, 2015.

Lee Ann Horton, Administratrix and Administratrix Ad Prosequendum of the Estate of Shaina Horton vs. Linda Stanley, M.D., Louis Wesley, M.D., Adebola Nnewihe, M.D., John Does (fictitious names of healthcare providers who cared for the decedent during relevant time period, whose true identities and/or culpability is not presently known); Reliance Medical Group, Northfield OB/GYN, Galloway OB/GYN and ABC Medical Group (fictitious entities whose true designation is not presently known), Docket No. ATL-L-7365-12, Chatham, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income to daughter, household services, companionship services to daughter, and advice and counsel services to daughter, January 29, 2015.

Chaya Applegrad, A minor by her mother and guardian ad Litem, Esther Applegrad, Esther Applegrad, Individually, and Gedalia Applegrad, Individually vs. Eric Bentolla, M.D., An Individual, Valley Hospital, An Entity, Kourtney Kacsmarski, R.M., An Individual, Mary Brown, An Individual, Yie-Hsien Chu, M.D., An Individual, John Does 1-10 and Jane Does 5-10, Docket No. PAS-L-908–08, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding lifetime earnings and cost of lifetime care, January 22, 2015.

Christian Worthy, A minor by his Guardian Litem Yadira Worthy; Yadira Worthy, Individually and Clarence Worthy, Individually vs. David H. Moskowitz M.D., J. Lindquist, R.N.; Jersey



*Deposition Testimony*

### Kristin Kucsma, M.A.

Shore University Medical Center and Pat Post 3-25 ( fictitious persons/entities), Docket No. MON-L-1592-12, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding lifetime adjusted earnings and cost of lifetime care, January 21, 2015.

Linda Y. Kennedy, Individually and as the Executor of the Estate of Willis A. Kennedy, Deceased vs. Hunterdon Urological Associates, P.A. and Allen J. Kern, M.D., Docket No. L-113-13, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, Social Security income, household services, companionship services to spouse and children, and advice and counsel services to spouse and children, January 8, 2015.

William Sample vs. Marketstar Corp., et al., Docket No. 12-5538 (SDW), Livingston, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, and compensation for excess taxes, January 8, 2015.

Augusto Encisco vs. Naom S. Eshkar, M.D., Edison Radiology Associates, JFK Medical Center and John Does 1-10 (fictitious named defendants), Docket No. MID-L-5716-12, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, cost of health insurance, and cost of lifetime care, December 30, 2014.

LaChon Bailey, Individually and as Administrator of the Estate of Laverne Brown and Administrator ad Prosequendum of the Estate of Laverne Brown, vs. Dr. Lookman Odejobi and Atlantic Shore Medical Docket No. L-2452-12, Toms River, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding companionship services, and past and future earnings, December 19, 2014.

Dorothy Kerr, Chrystal McArthur, Richard L. White, Ph.D., and Mark Kerr vs. Rutgers, The State University of New Jersey, Gregory S. Jackson, Ph.D., Janet Doe, and John and Jane Does 1-20, Docket No. MID-L-438-13, Livingston, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, and compensation for excess taxes, December 12, 2014.

Mario LaPaix vs. The City of New York, John Castellaneta, Martha K. Hirst, Ilene Lees and Anthony Crowell, Docket No. 13-cv-7306 (LGS), New York, New York, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings, pension income and compensation for excess taxes, December 10, 2014.

Ginger Dokie, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, November 10, 2014.

Froilan Sosa, vs. Clayton Block Co., Inc., Ralph Clayton & Sons LLC, J.M. Pereira & Sons, Inc., Jocama Construction, Inc., John Doe 1 thru 5, and ABC Corp 1 thru 5 (fictitious names for



*Deposition Testimony*

### Kristin Kucsma, M.A.

unknown parties), Docket No. ESX-L-3921-10, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, and adjusted earnings in future years, October 24, 2014.

Tiara Hester, as Administratrix ad Prosequendum of the Estate of T'Synii Howard, deceased, and Tiara Hester, individually vs. Chavar Smalls; Vitel Communications, LLC; Comcast of New Jersey, LLC; Jeffrey G. Jones; Monica Jones; and John and Jane Does 1-5 ( Fictitious Names), XYZ Corporations 1-5 ( Fictitious Names), Docket No. L-3244-12, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding financial support to mother, companionship services to mother, and advice and counsel services to mother, October 14, 2014.

Clary E. Carpio, Administratrix of the Estate, Victor F. Carpio, deceased, vs. Ford Motor Company, et al., Docket No. MRS-L-2399-10, Woodland Park, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to daughter and spouse, and advice and counsel services to daughter and spouse, October 1, 2014.

Claudia Burzichelli vs. Carole Lytle, M.D., Bridgewater Medical Group, Bernard Terry, M.D., Associated Radiologists, P.A., et al, Docket No. L-5438-12, East Brunswick, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, cost of health insurance, pension income, household services, companionship services to spouse and daughters, and advice and counsel services to spouse and daughters, September 25, 2014.

Dianne Bellew vs. Ethicon, Inc., Pelvic Repair System Products Liability Litigation, Case No. 2:12-cv-22473, Roseland, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding cost of lifetime care, September 12, 2014.

Froilan Sosa, vs. Clayton Block Co., Inc., Ralph Clayton & Sons LLC, J.M. Pereira & Sons, Inc., Jocama Construction, Inc., John Doe 1 thru 5, and ABC Corp 1 thru 5 (fictitious names for unknown parties), Docket No. ESX-L-3921-10, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years and adjusted earnings in future years, September 11, 2014.

Raheel Malik vs. Cooper Tire & Rubber Company and ABC Corporations 1-10 (said names presently unknown and fictitious), Docket No. 2:10-cv-06371-WHW-CCC, Roseland, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings and cost of lifetime care, September 8, 2014.

Thomas Harbeck and Virginia Harbeck, His Wife, Conor Harbeck a Minor, by His Parents and Natural Guardians, Thomas Harbeck and Virginia Harbeck, and Cole Harbeck vs. Englewood Hospital and Medical Center, et als, Docket No. BER-L-2885-12, Chatham, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past



*Deposition Testimony*

### Kristin Kucsma, M.A.

years, adjusted earnings in future years, household services and cost of lifetime care, September 4, 2014.

Estate of Perlet Abuaf, by her Administratrix, Niso Abuaf and Niso Abuaf Individually, vs. Saint Barnabas Medical Center, Saint Barnabas Healthcare System, Elizabeth Junker, M.D., Emergency Medical Associates, Mark Goldberg M.D., Consultant in Cardiology, Ruchika Singla, M.D., Amit Malhotra, and Elizabeth Bella, N.P., and John Does, M.D., 1-5( a class of fictitiously named defendants), Jane Doe, R.N., 1-5 (a class of fictitiously named defendants) and Doe Physician Group, PA or Doe Managed Care Company, ( a fictitious designation representing the class of as yet unknown corporate entities affiliated or connected in any manner with the individual defendants in this matter or with plaintiff's care and vicariously, directly or administratively responsible for the other medical providers actions or failures or plaintiff's injury), Docket No. ESX-9278-11, Chatham, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse, companionship services to children, advice and counsel services to spouse, and advice and counsel services to children, September 3, 2014.

Kiara Little, Individually and as Parent and Legal Gaurdian of Ta'Kahya Little, an infant vs. University of Medicine and Dentistry of New Jersey, University Hospital, Jose Antillon, M.D., Hanan A. Tandos, M.D., et al., Docket No. ESX-L-7513-10, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding lifetime earnings and cost of lifetime care, August 27, 2014.

Paulette Lauvanis and Joseph Lauvanis vs. The Port of Authority of New York and New Jersey, United Parcel Service (for discovery purpose only) Moe Doe, Curly Doe, Larry Doe and or Three Stooges Corporation (fictitious names for the persons, partnerships and or corporations intended), Docket No. ESX-L-8706-12, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings and cost of lifetime care, August 26, 2014.

Amy Smolinski and Jason Smolinski vs. Richard Dickes and Marilyn Gaesser, Docket No. ESX-L-6614-12, Morristown, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years and household services, August 25, 2014.

Jacqueline McCaskill vs. Dennis Bordan, M.D., Karen Szymanski, M.D., Saint Joseph's Regional Medical Center, John Does 1-10, and ABC Corporation, Docket No. PAS-L-1054-12, Woodland Park, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding cost of lifetime care, August 15, 2014.

Eric Klein vs. Simon Salerno, M.D.; Meridan Surgical Associates P.C.; John Does (fictitious names of healthcare providers whose identities and / or culpability are not presently known); JFK Medical Center; Jersey Shore University Medical Center; ABC Groups (fictitious names of



*Deposition Testimony*

### Kristin Kucsma, M.A.

any entity of which any individual defendant is an agent, apparent agent, servant or employee), Docket No. OCN-L-1257-12, Chatham, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding cost of lifetime care, August 14, 2014.

Albert Leip, Jr. vs. Princeton University, Sordoni Skanska Construction Company, Inc., Central Metals, Inc., John Does and Jane Does (fictitious designations), ABC Partnerships (fictitious designations), ABC Company (Fictitious designations), and Defendant Company (fictitious designations), Docket No. MER-L-002564-07, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, health insurance, and cost of lifetime care, August 12, 2014.

Earl Dinulos vs. Atlantic Health Systems, et al., Docket No. SSX-L-634-12, Newton, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, cost of health insurance in future years, and compensation for excess taxes, on August 11, 2014.

Michael Newland and Vernisea Newland vs. David Ward, M.D., Allied Surgical Group, P.A., Somerset Medical Center, John/Jane Doe, Doe Health Care Providers #1-10, Docket No. MID-L-8303-11, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, pension benefit, and household services in past years, on July 21, 2014.

Louis Cimaglia, By his G/A/L Maureen Cimaglia, and Maurenn Cimaglia, individually vs. Royal Pontiac Buick GMC Inc., et al., Docket No. MER-L-2890-10, Chatham, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding lifetime adjusted earnings and cost of lifetime care, on July 14, 2014.

Froilan Sosa vs. Clayton Block Co., Inc., Ralph Clayton & Sons Inc., J.M. Pereira & Sons, Inc., Jocama Construction, Inc., John Doe 1-5, and ABC Corp 1-5 (Fictitious names fro unknown parties), Docket No. ESX-L-3921-10, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding cost of lifetime care, on July 11, 2014.

Robert G. Gossweiler vs. Charles M. Kurtzer, D.P.M., The Foot Group, John Does 1-10 and ABC Entities, 1-10 Docket No. ESX-L-5384-12, Roseland, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, health insurance, pension income, and household services, on July 10, 2014.

Sarah Connors and John Connors vs. Target Corporation, All Jersey Janitorial Services, Inc., et al. Docket No. ESX-L-4447-12, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted income in past years, adjusted income in future years, and household services, testimony taken in deposition, on July 7, 2014.



*Deposition Testimony*

### Kristin Kucsma, M.A.

Dennis Lipinski, Administrator of the Estate of Erica Leibowitz-Lipinski, vs. Edward T. Krupp, M.D., Crescent Internal Medicine Group, LLC., Margaret T. Snyder, Ph.D., John Does 1-10 (fictitious names representing unknown individuals) and ABC Corporations 1-10 (fictitious names representing unknown entities) Docket No. ESX-L-5645-12, Woodland Park, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income in past years, adjusted income in future years, household services, companionship services to spouse, and advice and counsel services to spouse, testimony taken in deposition, on June 26, 2014.

Angelica Lenge, proposed Administratrix ad Prosequendum on behalf of the Estate of Stephen Lenge, and Angelica Lenge, Individually vs. Gotham Dream Cars, LLC, and/ or Dream Cars National, LLC, Metlife Stadium Company, LLC and or New Meadowlands Stadium Company, LLC, and or Joseph Meyer, Joseph Ferretti, "ABC Corp. 1-10 and/ or XYZ Corp. 1-10, John Doe 1-10, Bon Boe 1-10 and or Rob Roe 1-10 and or Def Corp. 1-10 (the last five being fictitious designations) Docket Number BER-L-4345-12, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income in past years, adjusted income in future years, household services, companionship services to spouse, companionship services to daughter, advice and counsel services to spouse, and advice and counsel services to daughter, testimony taken in deposition, on June 20, 2014.

Karl Kieninger vs. Kongsberg Underwater Technology, Inc., Tom Healy, Christopher Hancock, John Doe 1-10, jointly, severally and/or in the alternative, Docket No. HUD-L-5971-11, Springfield, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings, and compensation for excess taxes, testimony taken in deposition, on May 30, 2014.

Gerardo Alvarado, Individually and as Administrator ad Prosequendum of the Estate of Celia Beatriz Alvardo, vs. Peter J. Belcastro, MD; Summit Anesthesia Associates; Michael Rosen, MD; Overlook Hospital et als, Docket Number UNN-L-4779-11, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income in past years, adjusted income in future years, household services, companionship services to spouse, companionship services to daughter, companionship services to son, home health aide services to son, advice and counsel services to spouse, advice and counsel services to daughter, and advice and counsel services to son, testimony taken in deposition, on May 29, 2014.

Larysa Kutko, vs. Joseph Mendino, No. 12 L 808, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, and cost of lifetime care, testimony taken in deposition, on May 20, 2014.

Susan Ribarro, Executrix of the Estate of Vito Ribarro and Susan Ribarro, Individually vs. Raj. R. Kaushik, M.D., et al., Docket No. PAS-L-4358-1, Roseland, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, pension income,



*Deposition Testimony*

### Kristin Kucsma, M.A.

household services, companionship services to spouse, and advice and counsel services to spouse, testimony taken in deposition, on May 12, 2014.

Gregory Stewart, Administrator and Administrator Ad Prosequendum of the Estate of Audrey Stewart vs. Terry Freedman, Nurse Practitioner, Andrea-Anderson a/k/a Andrea DiBlasio-Frake, Nurse Practitioner, Women's Health Associates and Regional Women's Health Group, LLC, et al, Docket No. L-25-12, Chatham, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income in past years, adjusted income in future years, health insurance benefits, household services, companionship services to spouse, companionship services to children, advice and counsel services to spouse, and advice and counsel services to children, testimony taken in deposition, on May 7, 2014.

Antonio Apigo and Gail Apigo, Per Quod vs. Nikita Bharatia, M.D., Iqbal Siddiqui, D.O., Saint Michael's Medical Center, John Doe 1-10 (fictitiously named defendants), Docket No. Esx-L-480-12, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse, companionship services to children, advice and counsel services to spouse, and advice and counsel services to children, testimony taken in deposition, on April 24, 2014.

Robert Ams and Susanne Ams, his wife vs. David Goldfarb, D.O., Princeton Ear Nose and Throat, Donald F. Denny M.D., Princeton Radiology Associates, P.A., Doctor Doe 1-10, Doe Physician Group, PA and/or Doe Physician Group, PC and/or Doe Managed Care Company, University Medical Center at Princeton, Princeton Health Care System and ABC Corp. 1-10 et al., Docket No. MER-L-1243-10, Chatham, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding cost of lifetime care, testimony taken in deposition, on April 23, 2014.

Chaya Morrison and Raymond Morrison vs. Alan Miller, MD; John Lloyd, MD; Bergen Orthopaedic Surgery and Sports Medicine; The Valley Hospital; Valley Health System, et als., Docket No. OCN-L-0403-12, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding cost of lifetime care, testimony taken in deposition, on April 23, 2014.

Michael J. Cundiff and Dana Cundiff, his wife vs. Mary E. Russomano, James W. Dudasko, John Doe, 1-10, vs. Anthony C. Migliaccio and County of Mercer, vs. Marcy L. Seymour and Francis L. Harnett vs. Marcy L. Seymour, vs. Anthony C. Migliaccio, County of Mercer, James W. Dudasko, Mary E. Russomano, Michael J. Cundiff and Boundary Fence, Docket No. MER-L-427-12, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, and household services, testimony taken in deposition, on April 21, 2014.

Frederic Halper, Executor of the Estate of Louise A. Halper and Frederic Halper, Individually, vs. St. Barnabas Hospital, Robert Taylor, M.D., John M. Ciccone, M.D., Nicholas Tullo, M.D.,



*Deposition Testimony*

### Kristin Kucsma, M.A.

"John Doe" Kumar, M.D. (first name being fictitious and unknown, House Physician who attended plaintiff's decedent on June 21, 2008), Sharon Romer, R.N. and Jane Doe and/or Richard Doe (said names being fictitious and unknown, Administrators and/or Nursing Staffing Supervisor of St. Barnabas Hospital for the period of plaintiff's decedent's admission June 16, 2008 through June 21, 2008), Docket No. L-5387-10, Roseland, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income in past years, adjusted income in future years, companionship services to spouse, companionship services to children, advice and counsel services to spouse, and advice and counsel services to children, testimony taken in deposition, on April 16, 2014.

Rosario Craig Musumeci vs. Wyndham Worldwide, Inc., Wyndham Vacation Resorts, Inc., Travis Bary Bryantt Evans, Eric Sellers, John Doe 1-20 (Fictitious persons or entities whose identities currently unknown), John Smith 1-20 (Fictitious Corporations or business entities whose identities are currently unknown), Docket No., ATL-L-503-11, Livingston, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, and compensation for excess taxes, testimony taken in deposition, on April 16, 2014.

Terri Badger vs. Cooper University Hospital, et al., Docket No. CAM-L-4949-11, Livingston, New Jersey,  on behalf of the plaintiff, personal injury proceeding, opinion regarding cost of lifetime care, testimony taken in deposition, on April 15, 2014.

Lorraine Best vs. Bank of America a/k/a Bank of American, N.A., Joseph Evans, John Doe 1-10 (fictitious names for real persons); and ABC Corporations 1-10 (fictitious names for real business entities), Morristown, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, and compensation for excess taxes, testimony taken in deposition, on April 8, 2014.

Margaret Howe vs. Magellan Health Services, Inc., et al., Civil Action No. 2:11-cv-2006 (SRC) (MAS), Livingston, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, and compensation for excess taxes, testimony taken in deposition, on April 4, 2014.

Janet Strunk vs. PNC Bank; Srividya Rajan, Regional Manager and Individually; Carl Lissman, Central New Jersey Market Manager and Individually, Docket No. UNN L 1802 12, Livingston, NJ, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past years, and adjusted earnings in future years, testimony taken in deposition, on April 2, 2014.

Evelia Priego vs. Burt, M.D., Docket No. PASL 145512, Livingston, NJ, on behalf of the plaintiff, personal injury proceeding, opinion regarding cost of lifetime care, testimony taken in deposition, on March 31, 2014.



*Deposition Testimony*

**Kristin Kucsma, M.A.**

Elizabeth Zea vs. James A. Saidi, M.D., Montclair Urology Group of New Jersey, et al., Docket No. ESX-L-6281-11, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years and cost of lifetime care, testimony taken in deposition, on March 12, 2014.

Veronica Pond and Charles Pond vs. Mountainside Hospital, Marjory Langer, M.D., et al., and Overlook Hospital, Brian Beyrl, M.D., et al., Docket No. L-4928-10, Roseland, New Jersey, on behalf of the plaintiff,  personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years and cost of lifetime care, testimony taken in deposition, on March 5, 2014.

Sondra Casser vs. Hackensack University Medical Center and Ronald L. Fernandez, M.D., et al., Docket No. L 2238-12, Livingston, New jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years and household services, testimony taken in deposition, on March 4, 2014.

Lawrence E. Fischer and Trudy Fischer vs. Sanford Fineman, M.D., Docket No. MID-L-9484-10 Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years and loss of household services, testimony taken in deposition, on February 20, 2014.

Arthur G. Whelan vs. A.O. Smith Corporation, et al., Docket No. MID L-7161-12 AS, on behalf of plaintiff, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding retirement benefits and household services, testimony taken in deposition, on February 17, 2014.

Loida Hernandez vs. Hoboken University Medical Center, Margaret Mayer, M.D., et al., Docket No. ESX-L-2297-11, West Caldwell, New Jersey,  on behalf of the plaintiff, medical malpractice proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years and cost of lifetime care, taken in deposition, December 23, 2013.

Vincent Paino and Dorothy Paino, per quod vs. Bayshore Shopping Plaza Associates aka Garden Homes Management, Highland Traders LLC doing business as Pet Supplies Plus), E.P. Homiek Sheet Metal Inc., ABC Corporations 1-10, Docket No. OCN-L, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in future years, household services in past years and household services in future years, taken in deposition, December 19, 2013.

Elizabeth M. Musso vs. County of Bergen, Kathleen A. Donovan, Edward Trawinski, and John Does 1-4, Docket No.: 10493-11, Newark, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, pension benefits and compensation for excess taxes, testimony taken in deposition, November 25, 2013.



*Deposition Testimony*

### Kristin Kucsma, M.A.

Adrienne Lemons-Marck, Individually and as Administrator of the Estate of Edward J. Marck, Jr., vs. Southern Ocean Medical Center, Renee N. Georges, M.D., et al. Docket No. OCN -L-004008-11, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, pinion regarding economic losses, household services to spouse and children, and advice and counsel services to spouse and children, testimony taken in deposition, November 4, 2013.

Timothy Anderson vs. Newark Housing Authority, Keith Kinard, Emanuel Foster, Lynnee Peeples and Andrew Nwidake, Docket No. L-4655-11, Livingston, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding, adjusted earnings in past and future years, net pension benefits, and compensation for excess taxes on lump-sum award, testimony taken in deposition, October 22, 2013.

Terrance Allen and Susan Allen, vs. Takeda Pharmaceuticals International Inc., et al., MDL No. 6:11-md-2299, New York City, New York, on behalf of the plaintiff, personal injury proceeding, opinion regarding lifetime care costs and punitive damages, testimony taken in deposition, October 3, 2013.

Michael Musselman, Individually and as Administrator of the Estate of Lisa Musselman, deceased Plaintiff, vs. Amphenol Corporation (as successor-in-interest to American Phenolic Corporation), et al., Civil Action No. 09C-03-135 ASB, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding household services, companionship services to spouse and children, advice and counsel to spouse and children, testimony taken in deposition, September 17, 2013.

Mercedes Hidalgo, et al., Adminisratrix Ad Prosequendum of the Estate of Cesar Hidalgo, deceased et al., vs. Gamil Lamey Bekheet Makar, M.D., et al., Docket No. L-4762-11, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse and children, and advice and counsel services to children, testimony taken in deposition, September 10, 2013.

Ellen M. Casey vs. Rutgers, The State University of New Jersey, et al., Docket No. L-3657-07, Livingston, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past and future years, net pension income, and compensation for excess taxes on lump-sum award, testimony taken in deposition, September 5, 2013.

Elizabeth Santiago vs. Bank of America et al., Docket No. ESX-L-9526-10, West Orange, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, and cost of lifetime care, testimony taken in deposition, August 27, 2013.

Sonja Simmons, Executor of the Estate of Everetta Taylor vs. Labcorp et al., Docket No. ESX-L-7539-10, Roseland, New Jersey, on behalf of the defendant, wrongful death proceeding, opinion



*Deposition Testimony*

### Kristin Kucsma, M.A.

regarding companionship services, guidance, advice, and counsel, and household services, testimony taken in deposition, August 6, 2013.

Francis Giambrone and Doreen M. Giambrone vs. Luis J. Renitez et al., Docket No. WRN-L-448-11, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding additional expenses in future years and cost of lifetime care, testimony taken in deposition, July 18, 2013.

Raymond Reilly vs. Public Service Electronic and Gas: Dominic DiBari, Director, Power Generation Texas, Safety and Training and individually, Docket No. L-10589-10, Livingston, New Jersey, on behalf of the plaintiff, wrongful termination proceeding, opinion regarding adjusted earnings in past years, adjusted earnings in future years, and pension income, testimony taken in deposition, July 16, 2013.

Estate of Carmen Sarmiento, by Executrix, Amalia Sarmiento, and Amalia Sarmiento, Individually, vs. Richard Chessler et al., Docket No. L-4562-11, Chatham, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to children, and advice and counsel services to children, testimony taken in deposition, June 19, 2013.

Nancy Polow Katz, Individually and in her capacity as Administratrix of the Estate of Norman Katz vs. Christel Bauer, M.D., et al., Docket No. L-108-11, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse and children, advice and counsel services to spouse and children, testimony taken in disposition on June 5, 2013.

Horizon Blue Cross Blue Shield of New Jersey vs. Transitions Recovery Program, et al., Case No. 10-03197, Livingston, New Jersey, on behalf of the defendant, statistical analysis proceeding, opinion regarding loss figures contained in plaintiff's expert's report, testimony taken in deposition, May 23, 2013.

Na'Keeta Jenkins, as Administratrix ad Prosequendum and General Administratrix of the Estate of Paula Jenkins, vs. Manpreet Sahota, et al., Docket No. ESX-L-1099-10, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding companionship services to children and advice and counsel services to children, testimony taken in deposition, May 20, 2013.

Richard Quinde, as Executor of the Estate of Emmy Quinde, a minor, deceased, Richard Quinde Individually, and Laura Quinde Individually, vs. Clara Maass Medical Center, et al., Docket No. ESX-L-6760-09, Woodland Park, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding financial support to parents, companionship services to parents, and advice and counsel services to parents, testimony taken in deposition, May 8, 2013.



Sobel ◆ Tinari
Economics
Group

*Deposition Testimony*

### Kristin Kucsma, M.A.

Peter Vicinio vs. Carluccio, Leone, Dimon, et al., Docket No. UNN-L-4292-10, Livingston, New Jersey, on behalf of the plaintiff, business loss proceeding, opinion regarding value of services and cost of mileage, testimony taken in deposition, April 20, 2013.

Stephanie Fahey, As Administratrix ad Prosequendum of the Estate of Knickyann Snyder vs. Princeton House Behavioral Health, et al., Docket No. L1706.10, Cherry Hill, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding financial support to parents, companionship services to parents, and advice and counsel services to parents, testimony taken in deposition, March 28, 2013.

Jonathan J. Crincoli vs. Joaquin R. Barrios, et al., Docket No. MID-L-2738-11, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings and adjusted pension income, testimony taken in deposition, March 26, 2013.

Victor Amir Murphy, by his Guardian ad Litem, LaTanya Murphy, and LaTanya Murphy, Individually vs. Jersey Shore University Medical Center, Formerly Known as Jersey Shore Medical Center, et al., Docket No. MON-L-1489-09, Livingston, New Jersey, on behalf of the plaintiff, personal injury proceeding, opinion regarding adjusted earnings and cost of lifetime care, testimony taken in deposition, March 5, 2013.

Huma Hasan, as Administratrix of the Estate of Shahid Hasan, Deceased and Huma Hasan, Individually vs. Michael A. Ietta, M.D., et al., Docket No. Ber-L-1674-11, Livingston, New Jersey, On behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, pension income, household services, companionship services to spouse, companionship services to children, advice and counsel services to spouse, and advice and counsel services to children, testimony taken in deposition, February 25, 2013.

Neelu Pal, M.D. vs. University of Medicine and Dentistry, Robert Wood Johnson Medical School, et al., Docket No. MID-L-001297-10, Morristown, New Jersey, on behalf of the defendant, wrongful termination proceeding, opinion regarding loss figures contained in plaintiff's expert's report, testimony taken in deposition, February 21, 2013.

Nicholas Scavina, Executor of the Estate of Shirley Scavina and Nicholas Scavina, Alexa Scavina, Connor Scavina, and Danielle Scavina, Individually vs. Enzo Clinical Labs. Inc., et al., Docket No. BER-L-1397-10, Livingston, New Jersey, on behalf of the plaintiff, wrongful death proceeding, opinion regarding adjusted income, household services, companionship services to spouse, companionship services to children, advice and counsel services to spouse, and advice and counsel services to children, testimony taken in deposition, January 30, 2013.

Maureen Donnelley vs. Chrysler, et al., Docket No. L-3234-08, wrongful death proceeding, on behalf of plaintiff, Short Hills, New Jersey, opinion regarding household services, companionship services to spouse and children, and advice and counsel services to spouse and children, testimony taken in deposition, December 27, 2012.



*Deposition Testimony*

### Kristin Kucsma, M.A.

John R. Bukowiec, Administrator Ad Prosequendum for the Estate of Johnny Robert Bukowiec, Jr. vs. Phillip D. Adama, Laura A. Minaldi, et al., Docket No. MON-L-6202-10, wrongful death proceeding, Livingston, New Jersey, on behalf of plaintiff, opinion regarding financial support to parents and companionship services to parents, testimony taken in deposition, December 19, 2012.

The Estate of Tejan Iyer by his Administrator Ad Prosequendum, Gayartri T. Iyer and Gayatri Iyer, Individually vs. Tamir Ben-Menachem, et al., Docket No. MID-L-3977-10, wrongful death proceeding, on behalf of defendant, Florham Park, New Jersey, opinion regarding loss figures contained in plaintiff's expert's report, testimony taken in deposition, December 13, 2012.

Thomas Powell, et al. vs. Felicia Giglio, New Jersey Turnpike Authority, et al., Docket No. MID-L-6938-09, personal injury proceeding, on behalf of defendant, Woodland Park, New Jersey, opinion regarding loss figures contained in plaintiff's expert's report, testimony taken in deposition, November 26, 2012.

Martino Caretto, as General Administrator; and Administrator ad Prosequendum of the Estate if Richard Caretto vs. Richard M. Sostowski, M.D., et al., Docket No. ESX-L-8574-10, wrongful death proceeding, on behalf of plaintiff, Livingston, New Jersey, opinion regarding financial support to parents, companionship services to parents, and advice and counsel services to parents, testimony taken in deposition, November 12, 2012.

Anthony Grasso, individually and as Administrator ad Prosequendum for the heirs-at-law of Yvette Grasso, deceased, and as General Administrator of the Estate of Yvette Grasso, deceased vs. Patrick Khoo, M.D., et al., Docket No. BER-L-0805-10, wrongful death proceeding, on behalf of plaintiff, Livingston, New Jersey, opinion regarding adjusted income, household services, companionship services to spouse, companionship services to daughters, advice and counsel services to spouse, and advice and counsel services to daughters, testimony taken in deposition, November 6, 2012.

Jennifer Taylor vs. Republic Services, Inc., et al., CA No. 1:12cv523, wrongful termination proceeding, on behalf of defendant, Roseland, New Jersey, opinion regarding loss figures contained in plaintiff's expert's report, testimony taken in deposition, October 18, 2012.

Fred Gettis vs. Erik Chu, M.D., et al. Docket No. ESX-L-2482-10, personal injury proceeding, on behalf of plaintiff, Livingston, New Jersey, opinion regarding adjusted earnings in past years, adjusted earnings in future years, and cost of lifetime care, testimony taken in deposition, September 20, 2012.

Stephen Nagyhazi vs. Vasilos Sakootis, Progressive Insurance Company, Docket No. ESX-L-8711-10, personal injury proceeding, on behalf of plaintiff, Livingston, New Jersey, opinion regarding adjusted earnings in past years, adjusted earnings in future years, household services, testimony taken in deposition, September 18, 2012.



*Deposition Testimony*

### Kristin Kucsma, M.A

Maria Marin-Perez vs. Pugliese, et al., Docket No. PAS-L-208-11, personal injury proceeding, on behalf of plaintiff, Livingston, New Jersey, opinion regarding future cost of lifetime care, testimony taken in deposition, September 10, 2012.

Brian Gatesy vs. Schubert Perrotte, M.D., et al., Docket No. PAS-L-3947-09, personal injury proceeding, on behalf of plaintiff, Livingston, New Jersey, opinion regarding adjusted earnings in past years, adjusted earnings in future years, Social Security Disability Income, costs of lifetime care, testimony taken in deposition, September 6, 2012.

All-tech, Inc., et al. vs. Quality Construction, et al., Docket No. MID-L-4911-09, commercial damages proceeding, on behalf of plaintiff, Livingston, New Jersey, opinion regarding lost revenue, and adjustments to revenue, testimony taken in deposition, August 23, 2012.

Elaine Vander Meulen and Richard Vander Meulen vs. Deborah Borny and Robert Borny, Docket No. MRS-L-3391-10, personal injury proceeding, on behalf of plaintiffs, Livingston, New Jersey, opinion regarding adjusted earnings in past years, adjusted earnings in future years, pension income, Mr. Vander Meulen's adjusted earnings, and household services, testimony taken in deposition, August 22, 2012.

Estate of Sunday Stankowitz vs. David Negron, M.D., Luis F. Varela, M.D., Jeffrey Weisberger, P.A., Donnat T. McNamara, M.D., Hackensack Medical Center, Docket No. BER-L-9270-10, medical malpractice/wrongful death, on behalf of plaintiff, Livingston, New Jersey, opinion regarding household services, companionship services to spouse, companionship services to children, advice and counsel services to spouse, and advice and counsel services to children, testimony taken in deposition, August 16, 2012.

Tanyapon Kerdmungmee vs. Joseph Sharkey, Michael Sharkey, Docket No. MRS-L-247-11, personal injury proceeding, on behalf of plaintiffs, Livingston, New Jersey, opinion regarding adjusted earnings in past years, adjusted earnings in future years, and pension income, testimony taken in deposition, August 14, 2012.

Ruben Rodriguez v. Eric D. Nesmith, Stevens Institute of Technology and Stephen R. Sitkowski, Docket No. HUD-L-2172-11, personal injury proceeding, on behalf of plaintiffs, Livingston, New Jersey, opinion regarding additional expenses in past years and additional expenses in future years, testimony taken in deposition, July 30, 2012.

Estate of Ruble, by Administratrix and Administratrix Ad Prosequendum, Sharon Hunt-Ruble and Sharon Hunt- Ruble, Individually vs. Virtua Family Medicine Mt. Holly, et al., Docket No. BUR-L-2017-10, wrongful death proceeding, on behalf of plaintiff, Chatham, New Jersey, opinion regarding household services, companionship services to spouse, companionship services to children, advice and counsel services to spouse and advice and counsel services to children, testimony taken in deposition, July 10, 2012.



### *Deposition Testimony*

### Kristin Kucsma, M.A

Ortenzia LoBosco vs. Steven Festa, M.D., Point View Radiology Associates, P.C., et al., Docket No. PAS-L-2689-10, medical malpractice proceeding, on behalf of defendant, Livingston, New Jersey, opinion regarding loss figures contained in plaintiff's expert's report, testimony taken in deposition, June 20, 2012.

Patricia Jacoby, individually and as Administratrix of the Estate of Melvin Jacoby vs. Dr. Joseph Fretta, et al., Docket No. ESX-716-10, wrongful death proceeding, on behalf of plaintiffs, Livingston, New Jersey, opinion regarding pension income, household services, companionship services to spouse, companionship services to children, advice and counsel services to spouse, and advice and counsel services to children, testimony taken in deposition, June 13, 2012.

Vilma Conde Guardian Ad Litem of Harry Idrovo, Vilma Conde, individually and Gustavo Idrovo, individually vs. University of Medicine and Dentistry of New Jersey, Beatriz Arpayoglou, et al., Docket No. ESX-L-7321-08, personal injury proceeding, on behalf of plaintiffs, Livingston, New Jersey, opinion regarding lifetime adjusted earnings and cost of lifetime care, testimony taken in deposition, June 4, 2012.

Maureen McQueen, Executrix of the Estate of Michael McQueen, and Maureen McQueen, Individually, Ryan McQueen, Individually, and Corey McQueen, Individually vs. Carrier Clinic, et al., Docket No. ESX-L-6154-09, wrongful death proceeding, on behalf of plaintiff, Livingston, New Jersey,  opinion regarding adjusted income in past years, adjusted income in future years, household services, companionship services to spouse, companionship services to children, advice and counsel services to spouse, and advice and counsel services to children, testimony taken in deposition, May 17, 2012.

Suzanne Belluardo and John Belluardo vs. Richard W. Tai, et al., Docket No. UNN-L-2818-09, personal injury proceeding, on behalf of plaintiffs, Livingston, New Jersey, opinion regarding adjusted earnings in past years, adjusted earnings in future years, and costs of lifetime care, testimony taken in deposition, May 8, 2012.

Harold Hansen vs. Rite Aid Corp., et al., Docket No. MON-L-4790-08, wrongful termination proceeding, on behalf of plaintiff, Livingston, New Jersey, opinion regarding net earnings in past years, net earnings in future years, compensation for excess taxes on lump-sum award, testimony taken in deposition, April 19, 2012.

Dennis Repousis, as the Administrator of the Estate of Virginia Repousis, deceased, and individually vs. Vincent Salerno, MD., et al., Docket No. UNN-L-4789-09, wrongful death proceeding, on behalf of plaintiff, Livingston, New Jersey, opinion regarding adjusted income, household services, companionship services to spouse, and advice and counsel services to spouse, testimony taken in deposition, April 18, 2012.



*Deposition Testimony*

### Kristin Kucsma, M.A.

Mariano Alvarez vs. Bank of America, et al., Docket No. HUD-L-2275-10, personal injury proceeding, on behalf of plaintiff, Paterson, New Jersey, opinion regarding lifetime care costs, testimony taken in deposition, April 17, 2012.

Rose Brue, Robert Brue, Krystal Brue, and Patricia Marinco vs. Jacqueline Brunetti, M.D., Pease Health Partners, P.C., Holy Name Hospital, et al., Docket No. BER-L-1527-10, personal injury proceeding, on behalf of plaintiff, Roseland, New Jersey, opinion regarding lifetime care costs, testimony taken in deposition, April 5, 2012.

Olugbenga Adesokan, as the Administrator of the Estate of Oluwatosin A. Adesokan, deceased, as Administrator ad Prosequendum for the heirs-at-law of Oluwatosin A. Adesokan, deceased, and individually vs. Jaime M. Soriano, M.D., Natalie Johnson, M.D., Docket No. ESX-L-2392-10, wrongful death proceeding, on behalf of plaintiff, Livingston, New Jersey, opinion regarding adjusted income, household services, companionship services to spouse, companionship services to children, advice and counsel services to spouse, and advice and counsel services to children, testimony taken in deposition, March 27, 2012.

Nancy Rodland and Ole Rodland vs. Judlau Contracting, Inc. et al., Case 10 CV 5888 (LTS), ECF Case, personal injury proceeding, on behalf of plaintiffs, Livingston, New Jersey, opinion regarding adjusted earnings in past years, adjusted earnings in future years, and future medical costs, testimony taken in deposition, March 19, 2012.

Estate of Dunn vs. St. Michael's Medical Center, et al., Docket No. ESX-L-8099-08, wrongful death proceeding, on behalf of plaintiff, Livingston, New Jersey, opinion regarding net earnings, in past years, net earnings in future years, household services, companionship services to spouse, companionship services to daughter, advice and counsel services to spouse, and advice and counsel services to daughter, testimony taken in deposition, March 16, 2012.

Estate of Boatwright vs. Scott Mankowitz, M.D., et al., Docket No. HUD-004802-09, wrongful death proceeding, on behalf of plaintiff, O'Connor Parsons & Lane, Livingston, New Jersey, opinion regarding net income in future years, household services, companionship services to children, and advice and counsel services to children, testimony taken in deposition, March 14, 2012.

John Volpe and Mary Jane Esparadinez vs. Atlantic Healthsystems/Atlantic Health, et al., Docket No. ESX-L-4134-09 (Volpe), ESX-L-5176-09 (Esparadinez), wrongful termination proceeding, on behalf of plaintiffs, Livingston, New Jersey, opinion regarding adjusted earnings in past years, adjusted earnings in future years, AHS Cash Balance Retirement Plan, and compensation for excess taxes, testimony taken in deposition, March 8, 2012.

Francisco Schiffino, et al. vs. Michelle Sweetwood, et al., Docket No. BER-L-1659-10, personal injury proceeding, on behalf of plaintiffs, Livingston, New Jersey, opinion regarding adjusted earnings in past years, adjusted earnings in future years and household services, testimony taken in deposition, February 27, 2012.



*Deposition Testimony*

### Kristin Kucsma, M.A.

All-Tech, Inc., et al. vs. Quality Construction Management, et al., Docket No. MID-L-4911-09, business loss proceeding, on behalf of plaintiffs, Livingston, New Jersey, opinion regarding economic losses, testimony taken in deposition, February 23, 2013.

Julianne Brown and Christopher Brown vs. Susan Roth Pitman, M.D., et al., Docket No. ESX-L-1019-09, personal injury proceeding, on behalf of plaintiffs, Morristown, New Jersey, opinion regarding adjusting earnings in past years, adjusted earnings in future years, and household services, testimony taken in deposition, February 15, 2012.

Travelers Property Casualty Company of America, as subrogee of Goya Foods, Inc. vs. Hallam Engineering & Construction Corporation, et al., Case No. 2:08-CV-00444, business loss proceeding, on behalf of defendant, Livingston, New Jersey, opinion regarding economic losses, testimony taken in deposition, February 14, 2012.

Estate of Ottavio Novembrino vs. Hackensack University Medical Center, et al., Docket No. HUD-L-773-10, wrongful death proceeding, on behalf of plaintiff, Livingston, New Jersey, opinion regarding adjusted income in past years, adjusted income in future years, Social Security Survivors' benefits, household services, companionship services to spouse, companionship services to children, advice and counsel services to spouse, and advice and counsel services to children, testimony taken in deposition, February 7, 2012.

Mark Bekier vs. John Kubasta, Jr. , et al., Docket No. PAS-L-2195-09, personal injury proceeding, on behalf of plaintiff, Livingston, New Jersey, opinion regarding adjusted earnings in past years, adjusted earnings in future years, and adjusted pension income, testimony taken in deposition, January 9, 2012.



# Stephen B. Levinson, Ph.D.

## *Qualifications Profile*

**Stephen B. Levinson, Ph.D.**
SLevinson@tinarieconomics.com
Sobel Tinari Economics Group
293 Eisenhower Parkway, Suite 190
Livingston, NJ 07039
973-992-1800
Fax: 973-994-1571

## Education

Ph.D. in Economics, Rutgers University, New Brunswick, NJ (1976)
M.A. in Economics, Rutgers University, New Brunswick, NJ (1973)
B.A. in Economics, Rutgers University, Newark, NJ (1968)

## Fields of Specialization

Forensic Economics, Microeconomics, Economics of Regulation, and Finance.

## Positions Held

**Economist, Sobel Tinari Economics Group, February 2009 – present**
   **Primary responsibilities:** analyze data, prepare reports, and provide expert testimony, and serve as an active participant in the field of forensic economics.

**Associate of Economist M. Marcus, Ph.D., 2005 –2008**
   Prepared reports appraising economic loss in personal injury, wrongful death and employment cases.

**Consulting Economist, 2002-2006**
   Prepared reports and testimony on economic loss, cost of capital, market size, competition policy and pricing and cost-of-service methods for small and large telephone companies.

**Senior Economist, AT&T, Law and Government Affairs Department, 1991-2002**
   Developed and implemented incremental costing method appropriate for telecom regulation, culminating in U.S. Supreme Court approval in *Verizon v FCC*, May 2002.

   Coordinated cost-based rates and competition policies nationally for regional analysts, advocates and attorneys.



## Stephen B. Levinson, Ph.D.

### Earlier Positions

Adjunct Professor, Graduate School of Management Science, Rutgers University, Newark, New Jersey, 1976-1980.
Economist and Advocate, AT&T, Federal Regulatory Division, 1984-1991.
Economist, AT&T, Tariffs and Costs Department, 1975-1984.
Economic Analyst, Mathematica, Inc., Princeton Junction, New Jersey, 1974-75.
Instructor, Rutgers College, Rutgers University, New Brunswick, New Jersey, 1973-74.
Teaching Assistant, Rutgers University, New Brunswick, New Jersey, 1972-73.

### Professional Activities

Member, American Economic Association, 1973 – present
Member, National Association of Forensic Economics, 2004 – present
Referee, *Journal of Forensic Economics*, 2007 to present.
Referee, *Journal of Regulatory Economics*, 1997 to 2005.
Referee, *Econometrica*, 1982.
Presenter, Discussant and Session Chair, Eastern Region Conferences, National Association of Forensic Economists, since 2007.
Session Chairman and Discussant, Annual Western Conferences, Center for Research in Regulated Industries, Rutgers University, 1989 to 2005.

### Speaking Engagements

"Proving Damages at Trial," CLE Program for the New York State Academy of Trial Lawyers, Buffalo, NY, September 24, 2012.

"Proving Damages at Trial," CLE Program for the New York State Academy of Trial Lawyers, Rochester, NY, September 24, 2012.

"Unraveling Plaintiff Damages Reports," CLE seminar "Defending Premises Liability Claims, Mt. Laurel, New Jersey, May 20, 2014.

### Publications and Papers

"A Preliminary and Simplified Method for Establishing the Personal Consumption Deduction from Decedent-Only Earnings," with Frank D. Tinari, Ph.D., presented at the Eastern Economic Association Annual Conference, National Association of Forensic Economics session, New York City, February 26, 2011.

"Anonymous Equity and Subsidy-Free Prices," with Gerald R. Faulhaber, *American Economic Review*, December 1981, Vol. 71, No.5, pp. 1083-1091.

July 1, 2016                                page 2



**Stephen B. Levinson, Ph.D.**

**Trials and Mediations**

Tameisha Archer vs. Wilber Bowne, MD, et al.,  Supreme Court of the State of New York, County of Kings, Index No.: 18228/2010, June 10, 2016. [plaintiff - female medical malpractice injury]

Kareem Alleyne vs. Pirrone, Riehl and Pitts, Philadelphia County (PA), Court of Common Pleas, Case ID: 140701068, April 15, 2016. [plaintiff - wrongful arrest and trial]

Tania Taylor and Rodney Taylor vs. University of Medicine and Dentistry of New Jersey, The University Hospital of New Jersey and Peter Carmel, M.D., Superior Court of New Jersey, Law Division: Essex County, Docket No. ESX-L-4376-09, February 21, 2014. [plaintiff - female medical malpractice injury]

Yapak vs. Clifton Center Development Corp., et al., Superior Court of New Jersey, Ocean County, Docket No. OCN-L-1017-11, mediation, December 20, 2013. [defense-loss of profits]

Dixon vs. North Shore University Hospital, et al., Supreme Court of the State of New York, County of Queens, Index No.: 19779/05, December 5, 2013. [plaintiff - female medical malpractice wrongful death]

Kason Smartt, et al., vs. Roy Emerson, et al., Superior Court of New Jersey, Law Division: Essex County, Docket No. ESX-L-9621-08, January 16, 2013. [defense-male personal injury]

Jemmy Bello vs. Spring Creek Rehabilitation Center, United States District Court for the Middle District of Pennsylvania, Civil No. 11-cv-1268, December 11, 2012. [plaintiff-wrongful termination]

Anwar Patterson vs. Irvington Board of Education, Superior Court of New Jersey, Law Division: Essex County, Docket No. ESX-L-001093-09, October 5, 2012. [plaintiff-personal injury]

Nikola Vrcelj vs. New York City School Construction Authority, Supreme Court of the State of New York, County of Kings, Index No.: 26125/09, June 29, 2012 and July 2, 2012. [defense-male personal injury]

Rameena Khan vs. Rite Aid Corporation, Rite Aid of New Jersey, Inc., Superior Court of New Jersey, Hudson County, Docket No. HUD L-5701-09, Civil Action, March 19, 2012. [plaintiff-wrongful termination]

July 1, 2016



## Stephen B. Levinson, Ph.D.

### Depositions

The Katiroll Company Inc. vs. Kati Junction Inc., *et al.*, United States District Court, Southern District of New York, 14 Civ. 1750 (SAS)(HP), opinion for plaintiff as to economic damages in trademark infringement, November 13, 2015.

Shirley Polanco, individually and on behalf of all others similarly situated, vs. Star Career Academy, Superior Court of New Jersey, Law Division: Camden County, Docket No. CAM-L-415-13, opinion for plaintiff regarding consumer fraud, August 6, 2015.

Lynda Earley vs. Steven Taschetti, Superior Court of New Jersey, Law Division: Middlesex County, Docket No. MID-L-4275-10, opinion regarding loss of earnings for plaintiff due to motor vehicle accident, March 26, 2013.

Tania Taylor and Rodney Taylor vs. University of Medicine and Dentistry of New Jersey, The University Hospital of New Jersey and Peter Carmel, M.D., Superior Court of New Jersey, Law Division: Essex County, Docket No. ESX-L-4376-09, opinion for plaintiff regarding loss of earnings and future medical care for plaintiff due to medical malpractice, December 19, 2012.

Maria Rosario Paulo vs. Anthony P. Malanga, Esq, *et al.*, Superior Court of New Jersey, Law Division: Union County, Docket No. UNN-L-199-11, opinion for plaintiff regarding loss of earnings and services due to wrongful death, November 28, 2012.

Prime Moving & Storage Inc., *et al.* vs. United States Fabrics Service, *et al.*, Superior Court of New Jersey, Law Division: Essex County, Docket No. ESX-L-2201-10, opinion for defense regarding loss figures contained in report of plaintiff's expert, November 16, 2012.

Jennifer Vellanti, *et al.*, vs. Game On Atlantic City, Schindler Elevator Corporation, *et al.*, Superior Court of New Jersey, Law Division - Atlantic County, Docket No. L-4987, opinion for plaintiff as to loss of earnings and services due to wrongful death, July 12, 2012.

Anwar Patterson vs. Irvington Board of Education, Superior Court of New Jersey, Essex County, Docket No. ESX-L-001093-09, opinion for plaintiff as to loss of earnings and cost of future medical care due to personal injury, June 5, 2012.

Maria Tuwana Lyle vs. Anna Shoshilos, D.O., *et als.*, Superior Court of New Jersey, Essex County, Docket No. L-8419-07, infant death, opinion for defense regarding loss figures contained in report of plaintiff's expert, January 30, 2012.

July 1, 2016



# NAFE

**National Association of Forensic Economics**

P.O. Box 394
Mount Union, PA 17066

Phone: (866) 370-6233
Fax: (814) 542-3253

nancy@nafe.net
http://www.nafe.net

## Statement of Ethical Principles and Principles of Professional Practice
## National Association of Forensic Economics (NAFE)
### (Effective July 1, 2014)

Forensic economics is the scientific discipline that applies economic theories and methods to matters within a legal framework. Forensic economics covers, but is not limited to:

- The calculation of pecuniary damages in personal and commercial litigation.
- The analysis of liability, such as the statistical analysis of discrimination, the analysis of market power in antitrust disputes, and fraud detection.
- Other matters subject to legal review, such as public policy analysis, and business, property, and asset valuation.

When providing expert opinion for use as evidence by the trier of fact, a NAFE member pledges, as a condition of membership, adherence to the following:

**1. Engagement**
Practitioners of forensic economics should decline involvement in any litigation when they are asked to assume invalid representations of fact or alter their methodologies without foundation or compelling analytical reason.

**2. Compensation**
Practitioners of forensic economics should not accept contingency fee arrangements, or fee amounts associated with the size of a court award or out-of-court settlement.

**3. Diligence**
Practitioners of forensic economics should employ generally accepted and/or theoretically sound economic methodologies based on reliable economic data. Practitioners of forensic economics should attempt to provide accurate, fair and reasonable expert opinions, recognizing that it is not the responsibility of the practitioner to verify the accuracy or completeness of the case-specific information that has been provided.

**4. Disclosure**
Practitioners of forensic economics should stand ready to provide sufficient detail to allow replication of all numerical calculations, with reasonable effort, by other competent forensic economics experts, and be prepared to provide sufficient disclosure of sources of information and assumptions underpinning their opinions to make them understandable to others.

**5. Consistency**
While it is recognized that practitioners of forensic economics may be given a different assignment when engaged on behalf of the plaintiff than when engaged on behalf of the defense, for any given assignment, the basic assumptions, sources, and methods should not change regardless of the party who engages the expert to perform the assignment. There should be no change in methodology for purposes of favoring any party's claim. This requirement of consistency is not meant to preclude methodological changes as new knowledge evolves, nor is it meant to preclude performing requested calculations based upon a hypothetical--as long as its hypothetical nature is clearly disclosed in the expert's report and testimony.

**6. Knowledge**
Practitioners of forensic economics should strive to maintain a current knowledge base of their discipline.

**7. Discourse**
Open, uninhibited discussion is a desired educational feature of academic and professional forensic economic conferences. Therefore, to preserve and protect the educational environment, practitioners of forensic economics will refrain from the citation of oral remarks made in an educational environment, without permission from the speaker.

**8. Responsibility**
Practitioners of forensic economics are encouraged to make known the existence of, and their adherence to, these principles to those retaining them to perform economic analyses and to other participants in litigation. In addition, it is appropriate for practitioners of forensic economics to offer criticisms of breaches of these principles.



Sobel•Tinari
Economics
Group

# SOBEL TINARI ECONOMICS GROUP LLC
## Professional Fees
### (effective March 15, 2016)

page 1 of 2

**NOTICE: In litigated matters we are retained by counsel, not individual plaintiffs or defendants, and all of our correspondence and communications are with retaining counsel.**

## Payment Requirements

To maintain scientific and ethical standards of objectivity, fees for services are not contingent on the outcome of litigated matters. The retaining attorney and law firm are responsible for payment of all fees. Payment in full for all services is due upon completion of work. A signed final report will be issued only when payment of the outstanding balance due has been received. Payment for deposition and/or trial testimony is due at least three (3) days prior to the day of testimony.

## Retainer Deposit

In order to contract for services, and/or name us as an expert, and before work can begin, a non-refundable retainer deposit is required.

The retainer deposit in standard tort cases is typically between $3,000.00 and $5,000.00, depending on the nature of the assignment.

If substantial travel expense is required, an additional retainer may be requested.

All work is charged against the retainer deposit.

For extended assignments, additional retainer deposits will be requested.

**Be advised that the retention of our services is contingent on the receipt of the non-refundable retainer payment.**

## Written Reports (Research and preparation)

The total cost of a written report in standard tort cases is typically between $4,000.00 and $5,000.00. If work is needed on an expedited basis, or a more complex analysis is required, an additional fee may apply.

Supplements and revisions to previously issued reports are billed according to the Professional Fees that are in effect at the time of the request.

## Trial, Arbitration Mediation or *De bene esse* Video Testimony (Fee includes reasonable travel time.)

All unpaid balances must be paid in full before testimony.

| Senior and Emeritus Economist | All Other Economists | | |
|---|---|---|---|
| $ 600.00 | $ 600.00 | • | Non-refundable fee for trial preparation (including preparation of demonstrative aids, administrative services, etc.) Payment is due upon receipt of invoice. An additional charge for updates or revisions may apply. |
| $3,500.00 | $2,900.00 | • | Half-day appearance. Payment is due at least three (3) business days before the day of testimony. |
| $3,000.00 | $2,500.00 | • | Additional half-day continuation on same or next day. |

If a case settles or a decision is made not to call our expert to testify, a refund will be issued for payment received less the non-refundable portion.



## SOBEL TINARI  ECONOMICS GROUP LLC
### Professional Fees (continued)

page 2 of 2

**Deposition Testimony**

$470.00 per hour (Minimum 3-hour charge in the amount of $1,410.)

The <u>minimum 3-hour charge</u> encompasses both testimony time and travel time, if any.
Payment is due at least three (3) business days before the day of testimony.  Additional hours, if
any, are invoiced subsequent to the deposition.  Payment is to be made by our retaining attorney.
If adversary firm is responsible for paying, our retaining attorney is expected to recoup payment
advanced to us.  Cancellation less than 24 hours before a scheduled appearance is invoiced at
$300.00.

**In-Person Consultation**  (invoiced portal-to-portal plus reasonable travel expenses)

| | |
|---|---|
| Senior and | |
| Emeritus Economist | $470.00 per hour |
| All Other Economists | $370.00 per hour |

**NOTICE:**    Under no circumstances is our firm name or the name of any of our testifying experts to
be used or listed for litigation purposes without prior notification and approval by the Sobel
Tinari Economics Group. **[Unauthorized use of our name is subject to a fee of
$5,000.00.]**

**Late Payment Finance Charge**

Amounts outstanding are subject to a 1.3% monthly late payment charge after 30-day grace period.

We reserve the right to stop work or withdraw from an assignment if invoices are not paid on a
timely basis.

In the event the account becomes delinquent and is turned over to an attorney/collection agency
for collection, reasonable attorney's fees plus all court and attendant collection costs will be the
responsibility of the retaining attorney/law firm. These fees will also include the cost of travel (air
fares, car rentals), lodging, meals, etc. to collect or file any court motions required in the collection
process.

All fees listed herein apply until such time as they are changed by the Sobel Tinari Economics Group.

All payments should be made to:        Sobel Tinari Economics Group, LLC
293 Eisenhower Parkway, Suite 190
Livingston, New Jersey 07039
www.SobelTinariEconomics.com
973-992-1800 (phone)   973-994-1571 (fax)

*** Credit Card payments may be made by telephone. ***

