# Exhibit 71



**EXHIBIT 71**

Bittel 12 9/29/16 CAM

**Faculty Grievance Committee Meeting. June 19, 2012. 2-4p**
Present: Bittel, Povse, O'Brien

First we reviewed the minutes from our June 18 meeting with Sister Anne Munley.

Then O'Brien distributed additional AAUP documents: We will review these prior to our next meeting, though we are cognizant that the Marywood Faculty Manual is guided by but ultimately supersedes AAUP guidelines. We also discussed the AAUP's emphasis on distinguishing speech from behavior/action.

We then took our first vote. All three of us support Munley's decision to revoke Fagal's tenure. O'Brien, in giving his vote, pointed out that Fagal essentially "hanged himself." Such an action would never be permissible in any other workplace; the perpetrator would be terminated immediately. He also noted that Fagal did not try to circumvent dismissal by going straight to appeal (by refusing to sign the release). Bittel, in giving her vote, asserted that Fagal's controversial material ceased to be an exercise of academic freedom the moment he started making gratuitous personal attacks. He also had multiple opportunities to make amends, show remorse, and explain his actions. Povse expressed agreement with these but also wondered whether the administration has since had any second thoughts about their decision.

From here, we started to brainstorm the kinds of things we want to include in our statement to Fred.

**Below are some of our general ideas** that we will likely use in the introduction or conclusion:

We want to acknowledge that revocation of tenure is the most extreme thing you can do in academe. We are aware of the dangers of a slippery slope if we affirm that a speech violation can lead to revocation of tenure and maintain that this is an extreme case and should not be a precedent. We believe that this is an extreme decision justified by the extreme nature of Fagal's behavior and maintain that revocation of tenure ought to remain extremely rare. The reason for tenure is to ensure that faculty can speak their truths without reprisal, whether in the context of academic freedom or of faculty governance. This is critically important to the health of a university. However, Fagal was not operating in either of these contexts.

We want to demonstrate, in our document, that we have taken our charge seriously, thoroughly researching the events leading to Fagal's dismissal, the Faculty Manual and Policy and Procedures manual, and AAUP guidelines before beginning our deliberations.

We considered whether this is an example of offensive speech or a behavioral offense and the role of academic context in making this determination.

We need to give further thought to how we might most effectively reference AAUP guidelines, using these as an outside "touchstone" for our decision-making. AAUP is very strong on free speech, taking a purist approach. However, Fagal's actions are outside the bounds of legitimate academic purpose. Further, the AAUP documents are focused on public colleges, though they say that they might be relevant to private ones as well. A private university such as ours has a

stated set of core principles and values; this is not the same as it would be in a public university.

It would be hard to argue that Marywood faculty wouldn't know that the core values and mission are paramount.

Do we have to address Fagal's concerns about progressive discipline if these have been adjudicated elsewhere? Progressive discipline would have required him asking for assistance and accepting responsibility. Fagal did not give Munley reason to believe that progressive discipline would be a fruitful intervention

We may want to point out that the manual says (in relation to revocation of tenure) that "Grave reason MAY include..." but is not limited to those three offenses. We may want to say that Fagal's actions could be considered an abuse of academic freedom, one of the three example reasons listed.

**Below are some of our responses to the four charges that Munley** outlined in her dismissal memo (and that Fagal used to structure his own responses)

**Charge #1.** We agree that Fagal's action was a flagrant abuse of academic freedom, because it includes gratuitous personal attacks beyond what academic freedom protects. We also agree that Munley is justified is saying that his actions gravely injure our community.

**Charge #2.** We question whether all of the insults to Executive Officers qualify as Civil Rights violations. However, we do think that Fagal's portrayal of Alan Levine, a Jewish man, as a Nazi officer might be interpreted as anti-Semitic, regardless of whether this was Fagal's intention. It is, for example, analogous to portraying an African American as a Klansman in a video or document intended to insult that person. Thus it could qualify as a violation of our Civil Rights Policy, since religion and ethnicity are protected categories. While Fagal is correct is saying that he was not given a review on this point, there might have been one if he had answered Munley's questions on Jan. 23.

**Charge #3.** We don't have enough information to adjudicate this point. To determine copyright infringement is beyond our expertise.

**Charge #4.** Fagal's video was not an exercise of academic freedom because it is neither part of an academic exercise or produced/disseminated in the context of a scholarly pursuit. It reflects anger but not legitimate academic research. The video does not demonstrate personal integrity and, more importantly, it doesn't abide by standards of Fagal's discipline (or any other academic discipline). His critique of the administration could have been achieved without personalized attacks, gratuitous and malicious elements that speak to his anger but do not illuminate our understanding of the issue of free speech and constitutionality.

While the FIRE incident took place alongside and with relevance to his course (SSCI 201), this is not the case with the Jan 13 video. Fagal has the right to protest, but to fall under "academic freedom," he would need to limit his analysis to an examination of the FIRE incident rather than bringing in personal attacks on individual Executive Officers. Fagal could have pursued his

complaint through other channels and could have criticized the university's actions in appropriate ways that would be protected academic freedom.

**Action Items:**

Bittel will aim to have a first draft ready to workshop for Monday, 6/25. She will also ask Erin Sadlack for guidance as to the length of the documents and to confirm that her committee's statement already adjudicated, in their document, that Fagal is not entitled to progressive discipline.

Povse will contact Anne Munley and apprise her of our progress.

After we workshop our draft, we will send it to Will Anthony for comment. Is he an independent voice, or does he work for Munley / Marywood?