KeyCite Yellow Flag - Negative Treatment

Report and Recommendation Adopted as Modified by U.S. Energy Development Corp. v. L.E. Mallory, et al., LP, W.D.Pa., September 17, 2014

2014 WL 4659659
Only the Westlaw citation is currently available.
United States District Court,
W.D. Pennsylvania.

U.S. ENERGY DEVELOPMENT CORPORATION, Plaintiff,
v.
L.E. MALLORY, et al, Defendants.

Civil Action No. 12–235Erie.
|
Signed Aug. 13, 2014.

**Attorneys and Law Firms**

Craig A. Markham, Elderkin, Martin, Kelly & Messina, Erie, PA, Robert J. Lane, Jr., Jessica L. Copeland, Hodgson Russ LLP, Buffalo, NY, for Plaintiff.

Shannon Voll Poliziani, Marshall Dennehey Warner Coleman & Goggin, Pittsburgh, PA, Jeremy Feinstein, Reed Smith LLP, Pittsburgh, PA, for Defendants.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

SUSAN PARADISE BAXTER, United States Magistrate Judge.

### I. RECOMMENDATION

***1** It is respectfully recommended that:

— The motion for summary judgment filed by Defendants [ECF No. 37] be denied; and

— The motion for partial summary judgment filed by Plaintiff [ECF No. 41] be granted.

### II. REPORT

#### A. Relevant Procedural History
The Amended Complaint contains a single claim for breach of contract based on an alleged denial of a Right of First Refusal on certain deep horizon oil and gas rights owned by Defendants. ECF No. 4. As relief, Plaintiff seeks fifteen million dollars in damages.

Fact discovery has concluded. The parties have cross-moved for summary judgment and expert discovery has been stayed until the resolution of the pending cross-motions for summary judgment.

#### B. Standard of Review
Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Under Rule 56, the district court must enter summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323 *quoting* F.R.Civ.P. 56. However,

> if there is a chance that a reasonable factfinder would not accept a moving party's necessary propositions of fact, pre-trial judgment cannot be granted. Specious objections will not, of course, defeat a motion for summary judgment but real questions about credibility, gaps in the evidence, and doubts as to the sufficiency of the movant's proof, will not.

*El v. SE Pa. Transp. Auth. ("SEPTA"),* 479 F.3d 232, 238 (3d Cir.2007).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex,* 477 U.S. at 330. *See also Andreoli v. Gates,* 482 F.3d 641, 647 (3d Cir.2007); *UPMC Health System v. Metropolitan Life Ins. Co.,* 391 F.3d 497, 502 (3d Cir.2004). When a non-moving party would have the burden of proof at trial, the moving party has no burden to negate the opponent's claim.[1] *Celotex,* 477 U.S. at 323. The moving party need not produce any evidence showing the absence of a genuine issue of material fact. *Id.* at 325. "Instead, ... the burden on the moving party may be discharged by 'showing'-that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.*

**\*2** After the moving party has satisfied this low burden, the nonmoving party must provide facts showing that there is a genuine issue for trial to avoid summary judgment. *Id.* at 324. "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Id. See* also *Saldana v. Kmart Corp.,* 260 F.3d 228, 232 (3d Cir.2001); *Garcia v. Kimmell,* 2010 WL 2089639, at \* 1 (3d Cir.2010) *quoting Podobnik v. U.S. Postal Serv.,* 409 F.3d 584, 594 (3d Cir.2005) (the non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue."); *Berckeley Inv. Group, Ltd. v. Colkitt,* 455 F.3d 195, 201 (3d Cir.2006) ("In this respect, summary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument.").

In considering these evidentiary materials, "courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Scott v. Harris,* 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (internal quotation marks and alterations omitted). *See also Doe v. Cnty. of Centre, Pa.,* 242 F.3d 437, 446 (3d Cir.2001) (when applying this standard, the court must examine the factual record and make reasonable inferences therefrom in the light most favorable to the party opposing summary judgment).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Anderson,* 477 U.S. at 248, 255 ("only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 249.

**C. Statement of Relevant Facts**
On October 25, 2006, Plaintiff and Defendants L.E. Mallory, LP, and Henry A. Satterwhite Royalty Holdings, LLC, entered into an Oil and Gas Lease and Development Agreement (the "USE lease") related to approximately 9313.4 acres of Defendants' McKean County, Pennsylvania[2] land (referred to as "the Acreage")[3]. *See* ECF No. 39, Defendants' Concise Statement of Material Facts, ¶ ¶ 6–9; ECF No. 41–3, Plaintiff's Responses, ¶ ¶ 6–9. The stated purpose of the lease is to provide U.S. Energy with "the opportunity to explore, drill, develop and produce the oil and gas rights" on the Acreage. The USE lease granted U.S. Energy certain interests related to the oil and gas rights in the "shallow" horizons[4] of the Acreage and provides that it shall "be in force for a primary term of three (3) years from the date of execution hereof and for so long thereafter as Lessee continues to drill Earning Wells ..." ECF No. 4–1, page 4.[5]

**\*3** The USE lease also granted U.S. Energy a Right of First Refusal[6] with respect to the deeper horizons of the Acreage. The USE lease provides:

> "The Lessee shall have the right of first refusal to lease the horizons below the base of the Bradford Third Sandstone upon the terms and conditions of any bona fide written offer made for them. Said right to be exercised by notifying the Lessor by registered mail within ten (10) days

of its receiving written notice that such bona fide offer has been made."

ECF No. 4–1, page 13.

In April 2007, Defendants notified U.S. Energy, in writing, of an offer from Atlas America to lease the deep rights in U.S. Energy's Acreage. On April 26, 2007, U.S. Energy President, Douglas K. Walch, contacted Atlas's representative, Michael Hartzell, because U .S. Energy was interested in a joint venture between Atlas and U.S. Energy to develop these deep horizon rights. By letter to Defendants dated May 10, 2007, U.S. Energy declined the Right of First Refusal. *See* ECF No. 39–4, page 2. U.S. Energy declined to exercise its option to lease the deep horizon rights because it had reached a tentative agreement with Atlas to exploit the deep horizon rights in the Acreage jointly. [7]

Thereafter, on July 6, 2007, Defendants entered into a lease agreement with Atlas which granted Atlas drilling rights for the deeper horizons of the Acreage. The 2007 Atlas lease had a primary term of one year, with an option of renewal. ECF No. 39–3, page 2.

Plaintiff's breach of contract claim is based on the alleged failure of Defendants to honor the Right of First Refusal prior to entering into subsequent leases with Atlas in August of 2009 and February of 2010. [8]

Prior to entering the 2009 lease, the 2007 Atlas lease had terminated. The 2009 Atlas lease included deep horizon rights in over nineteen thousand acres, a portion of which included some of the same Acreage covered by the U.S. Energy Lease. Specifically, 560 acres in Warrant 3713, Corydon Township, McKean County, Pennsylvania and 554 acres in Warrant 4339, Foster Township, McKean County, Pennsylvania conveyed in the 2009 Atlas lease were also included in the USE lease and were subject to the Right of First Refusal. On February 8, 2010, Defendants entered into a second lease with Atlas for the deep horizon rights in the Acreage. This time, Defendants conveyed the deep rights in ***all*** of U.S. Energy's Pennsylvania acreage from the 2006 USE lease to Atlas.

On July 20, 2011, the owner of U.S. Energy, Joseph Jayson sent an email to Defendants' principals Robert Habgood and John Satterwhite advising them that Defendants were in breach of the USE lease and that U.S. Energy should have had the opportunity to lease the deep horizon rights conveyed to Atlas. [9] Thereafter, Defendants asked U.S. Energy to "try to work something out with Atlas." ECF No. 41–7, Deposition of Douglas Walch, President of U.S. Energy, pages 27–30. Walch contracted Hartzell of Atlas and was informed that Atlas would consider a "farmout" but "it would be at hundreds of dollars an acre, plus a significant override." *Id. See* also ECF No. 41–11, Deposition of Robert Habgood, principle of L.E. Mallory, LP, pages 10–11.

**\*4** This litigation ensued on October 1, 2012.

**D. Plaintiff's motion for partial summary judgment**
Plaintiff seeks partial summary judgment on liability of its breach of contract claim. Under Pennsylvania law, there are three elements to establish a breach of contract claim: "1) the existence of a contract; 2) a breach of a duty imposed by the contract; and 3) resultant damages." *Johnson v. State Farm Life Ins. Co.,* 695 F .Supp.2d 201, 212 (W.D.Pa.2010) citing *Pennsy Supply, Inc. v. American Ash Recycling Corp.,* 895 A.2d 595, 600 (Pa.Super.2006). *See* also *Ware v. Rodale Press, Inc.,* 322 F.3d 218, 255 (3d Cir.2003). The party alleging a breach of contract claim bears the burden of proving the elements. *Bohler– Uddeholm America, Inc. v. Ellwood Group, Inc.,* 247 F.3d 79, 102 (3d Cir.2001).

Plaintiff moves for partial summary judgment on the basis of the first and second prongs of the *prima facie* case, arguing that the existence of a contract and the breach of a duty under that contract, have been admitted by Defendants. The evidentiary record reflects that the parties admit to the existence of the contract, as well as the inclusion of ¶ 27–Right of First Refusal in the contract. *See* ECF No. 39, Defendants' Concise Statement of Material Facts, ¶ ¶ 6–9; ECF No. 41–3, Plaintiff's Responses, ¶ ¶ 6–9.

Furthermore, Defendants admit that they did not provide the notice required by ¶ 27 to U.S. Energy of Atlas' offer to lease the deep horizon rights prior to entering into the 2009 Atlas Lease or the 2010 Atlas Lease. See ECF No. 46. [10]

In opposition to the Plaintiff's motion for summary judgment, Defendants argue that a genuine issue of material fact exists as to whether they breached the

contract by failing to offer Plaintiff a Right of First Refusal prior to entering into the 2009 and 2010 leases with Atlas. They claim that: "while no one factor is dispositive, separately or in combination, the following pieces of evidence would enable a reasonable jury to determine that Defendants did not breach the contract: 1) Plaintiff was offered, but declined to exercise, the Right of First Refusal in 2007; 2) Plaintiff indicated to Defendants on multiple occasions that it was not interested in the deep rights on the acreage; 3) Plaintiff never corrected those statements of lack of interest; 4) Plaintiff was in a joint venture partnership with Atlas, the entity to which the deep rights on the acreage were leased; and 5) Defendants were under no clear legal requirement to offer the Right of First Refusal again after Plaintiff had already declined to exercise it in 2007." ECF No. 48.

All of Defendants' arguments in this regard require this Court to look beyond the terms of the contract, which is unnecessary here. The general rules of contract interpretation restrict this Court's ability to look beyond the terms of the written agreement unless the Court finds that the document itself contains some ambiguity. *See Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.,* 40 F.3d 1416 (3d Cir.1994).

*Pennsylvania law on Contract Interpretation*

**\*5** Pennsylvania oil and gas leases are governed by general principles of contract interpretation. *Smith v. Steckman Ridge, LP,* 20145 WL 1278120, at \*4 (W.D.Pa. March 27, 2014) citing *T.W. Phillips Gas & Oil Co. v. Jedlicka,* 615 Pa. 199, 42 A.3d 261, 267 (Pa.2012). "The fundamental rule in contract interpretation is to ascertain the intent of the contracting parties." *Insurance Adjustment Bureau, Inc. v. Allstate Ins. Co.,* 588 Pa. 470, 905 A.2d 462, 468–69 (Pa.2006). Under Pennsylvania law, " '[i]t is firmly settled that the intent of the parties to a written contract is contained in the writing itself.' " *Samuel Rappaport Family Partnership v. Meridian Bank,* 441 Pa.Super. 194, 657 A.2d 17, 21 (Pa.Super.1995) (internal citation omitted). *See also Seven Springs Farm, Inc. v. Croker,* 748 A.2d 740, 744 (Pa.Super.2000) ( "When the language of a contract is unambiguous, we must interpret its meaning solely from the contents within its four corners, consistent with its plainly expressed intent.") (internal citation omitted). Such intent will be determined from reading the entire agreement as a whole and courts will "not assume that a contract's language was chosen carelessly, nor [will] they assume that the parties were ignorant of the meaning of the language they employed." *Murphy v. Duquesne Univ.,* 565 Pa. 571, 777 A.2d 418, 429 (Pa.2001).

Only where the writing is ambiguous may the factfinder examine all the relevant extrinsic evidence to determine the parties' mutual intent.[11] *Allegheny Int'l.,* 40 F.3d at 1424. A contract is ambiguous only if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. *Kripp v. Kripp,* 578 Pa. 82, 849 A.2d 1159, 1163 (Pa.2004). While unambiguous contracts are interpreted by the court as a matter of law, ambiguous writings are interpreted by the finder of fact. *Id.*

*Interpretation of ¶ 27*

So then, as a preliminary matter, before this Court may examine any of Defendants' arguments in opposition to Plaintiff's motion for partial summary judgment, this Court must decide whether the contract terms at issue in this dispute are ambiguous or unambiguous. *Laufen Int'l Inc. v. Larry J. Lint Floor & Wall Covering, Co., Inc.,* 2012 WL 1458209, at \*4–5 (W.D.Pa.2012) (J. McVerry). Here, the contract provision at issue is ¶ 27, which reads, in its entirety:

> *"Right of First Refusal:* The Lessee shall have the right to first refusal to lease the horizons below the base of the Bradford Third Sandstone upon the terms and conditions of any bona fide written offer made for them. Said right to be exercised by notifying the Lessor by registered mail within ten (10) days of its receiving written notice that such bona fide offer has been made."

ECF No. 4–1, page 13.

Defendants argue that because the Right of First Refusal clause itself is "silent" as to whether it is "a one-time right or is continuing in nature," the provision is ambiguous. However, "when a contract fails to provide for a specific contingency, it is silent, not ambiguous." *Banks Engineering Co., Inc. v. Polons,* 697 A.2d 1020, 1022 (Pa.Super.1997).

**\*6** Here, the plain meaning of the Right of First Refusal provision is clear on its face, so no ambiguity exists. "A contract is not ambiguous if the court can determine its meaning without any guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends; and a contract is not rendered ambiguous by the mere fact that the parties do not agree on the proper construction." *Laufen,* at \*4–5 (internal quotations omitted). The Right of First Refusal (bargained for by these parties) is not limited by any other terms; instead, it clearly states U.S. Energy will be notified of "**any bona fide written offer.**" The word "any," as well as the other words chosen by these parties, are plain in their meaning and are not subject to more than one interpretation in this context. *See Allegheny Design Management, Inc. v. Travelers Indem. Co. of America,* ––– Fed.App'x ––––, –––– 2014 WL 3377683, at \*1 (3d Cir. July 11, 2014) citing *Meyer v. CUNA Mut. Ins. Soc'y,* 648 F.3d 154, 163 (3d Cir.2011) ("Under Pennsylvania law, a contract is interpreted according to its plain language ..."). *See also Laufen,* 2012 WL 1458209, at \*5 (describing non-ambiguous term as "such a term is clear, is neither obscure or insensible language, and does not require any additional knowledge to determine its meaning.").

Accordingly, since all of Defendants' opposition arguments attempt to introduce evidence outside the four corners of the writing itself, they are irrelevant here to defend against Plaintiff's well-supported motion for partial summary judgment.

Here, Plaintiff has met its burden of establishing evidence to demonstrate that Defendants did not provide the notice required under ¶ 27 of the USE lease. *See* supra footnote 10. Under the substantive law of Pennsylvania, "when performance of a duty under a contract is due, any nonperformance is a breach." *D.T. Davis Enterprises, Ltd. v. Arjo, Inc.,* 2013 WL 5476603, at \*13 (E.D.Pa. Sept.30, 2013) *quoting Williams Engineering, Inc. v. Dufalla,* 837 A.2d 459, 467 (Pa.Super.2003). *See also McCausland v. Wagner,* 78 A.3d 1093, 1101 (Pa.Super.2013); *Restatement (Second) of Contracts § 235(2) (1981).*

Accordingly, the motion for partial summary judgment should be granted.

### E. Defendants' motion for summary judgment

In their motion for summary judgment, Defendants argue that Plaintiff cannot establish the "resultant damages" portion of the *prima facie* case and accordingly, judgment should be granted in their favor.

Defendants' argument is inapposite to the case at hand. Judge McVerry's recent opinion on this precise issue defeats the sole basis of Defendants' motion for summary judgment:

> "Under Pennsylvania law, if a party is able to prove breach of contract but can show no damages flowing from the breach, the party is entitled to recover nominal damages." *Haywood v. Univ. of Pittsburgh,* 976 F.Supp.2d 606, 645 ((W.D.Pa.2013) (citations omitted). "A grant of summary judgment on the sole basis of absence of provable damages, therefore, is generally improper." *Thorsen v. Iron and Glass Bank,* 328 Pa.Super. 135, 476 A.2d 928, 931 (Pa.Super.Ct.1984). *See, e.g., Zeno v. Ford Motor Co., Inc.,* 480 F.Supp.2d 825, 834 (W.D.Pa.2007) (" 'In light of the law of Pennsylvania allowing nominal damages for a breach of contract, summary judgment cannot be granted for failure to show damages.' "); *Albert Rolland, S.A. v. Smithkline Beckman Corp.,* CIV. A. 85–3217, 1990 WL 90492, at \*1 (E.D.Pa. June 27, 1990) (awarding nominal damages of one-dollar, although the plaintiff "never requested nominal relief during the course of the trial or in its proposed findings of fact and conclusions of law"); *Nemitz v. Reuben H. Donnelley Corp.,* 225 Pa.Super. 202, 310 A.2d 376, 379 (Pa.Super.Ct.1973) (en banc) ("While appellant did not ask for nominal damages, we believe that appellant did more than just prove a breach of contract.").

**\*7** *Norfolk Southern Ry. Co. v. Pittsburgh & West Virginia R.R. & Power REIT,* 2014 WL 2808907, at \* 19–20 (W.D.Pa. June 19, 2014) (Judge McVerry).

The Amended Complaint seeks fifteen million dollars in unspecified damages and is silent as to nominal damages. Again, Judge McVerry's *Norfolk Southern* opinion is instructional:

> The Court recognizes that some decisions have foreclosed a plaintiff's ability to recover nominal damages when the relief was not requested in the Complaint. *See, e.g., Cohen v. Resolution Trust,* 107 F.App'x 287, 289–90 (3d Cir.2004) ("[P]laintiffs requested only compensatory and punitive damages in their amended complaint, and *nothing in the record suggests that they asked to amend their complaint to*

*include nominal damages."* ) (emphasis added); *c.f. Alexander v. Riga,* 208 F.3d 419, 429 (3d Cir.2000) ("This entitlement [to nominal damages for a violation of a constitutional right] is not automatic, however, 'but rather, it is incumbent upon the plaintiff to make a timely request for nominal damages.' ") (quoting *Campos–Orrego v. Rivera,* 175 F.3d 89, 98 (1st Cir.1999)). But, unlike those cases, Plaintiffs timely seek leave to amend their prayer for relief to include nominal damages. Thus, at a minimum, nominal damages are proper should Plaintiffs prevail as to liability.FN18

*Id.*

Accordingly, Defendants' motion for summary judgment should be denied and Plaintiff should be permitted to add a request for nominal damages to the Amended Complaint.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that:

— The motion for summary judgment filed by Defendants [ECF No. 37] be denied; and

— The motion for partial summary judgment filed by Plaintiff [ECF No. 41] be granted.

In accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, the parties must seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto. *See* Fed.R.Civ.P. 72(b)(2). Failure to file timely objections may constitute a waiver of appellate rights. *See Brightwell v. Lehman,* 637 F.3d 187, 193 n. 7 (3d Cir.2011); *Nara v. Frank,* 488 F.3d 187 (3d Cir.2007).

\* \* \*

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 4659659

Footnotes

18 Federal Rule of Civil Procedure 54 embodies this concept. As the rule states, "[e]very other final judgment [i.e., not a default judgment] should grant the relief to which each party is entitled, *even if the party has not* demanded that relief in its pleadings." Fed.R.Civ.P. 54(c) (emphasis added). *See Kirby v. U .S. Gov't, Dep't of Hous. & Urban Dev.,* 745 F.2d 204, 207 (3d Cir.1984) ("The rule requires that a court ascertain whether the plaintiffs are entitled to any remedy, not whether they have asked for the proper remedy.").

1 However, for claims or defenses where the movant bears the burden of proof at trial, a movant "must show that it has produced enough evidence to support the findings of fact necessary to win." *El v. SEPTA,* 479 F.3d at 237.

2 The USE lease also included parcels of land situated in New York state but which are not the subject of this legal proceeding.

3 The Acreage is made up of multiple separate parcels of land as identified in the lease agreement. *See* ECF No. 41–1, pages 17–19.

4 Shallow was defined in the lease as "the crude oil and natural gas bearing formations from the surface of the earth to a depth of one hundred feet (100') below the base of the Bradford Third Sandstone."

5 On April 4, 2008, the USE lease was amended to swap out certain acreage in McKean County, deleting approximately 1225 acres and adding more than 1100 acres. *See* ECF No 4–2.

6 Williston on Contracts explains "[a] right of first refusal, or first right to buy, is not a true option but is a valuable prerogative. It limits the right of the owner to dispose freely of its property by compelling the owner to offer it first to the party who has the first right to buy. Nor may the owner accept an offer made by a third party." *Williston on Contracts § 67:85 (4thed.). See also Crivelli v. General Motors Corp.,* 215 F.3d 386, 389 (3d Cir.2000) ("A right of first refusal grants the holder ... the option to purchase the grantor's ... property on the terms and conditions of sale contained in a bona fide offer by a third party to purchase such property.") citing *Black's Law Dictionary* 1325 (6th ed.1990).

7 Michael Hartzell of Atlas testified at his deposition that Atlas attempted to negotiate a joint venture agreement with U.S. Energy in April 2007 to "resolve the issue with the Right of First Refusal." ECF No. 41–9, page 8. However, no agreement

7   was ever finalized between Atlas and U.S. Energy in 2007. *See* ECF No. 41–7, Deposition of U.S. Energy President Douglas Walch, page 14.

8   In addition to the 2009 Atlas Lease and the 2010 Atlas Lease, other leases existed between Defendants and Atlas, but those leases are unrelated to the claims in this lawsuit.

9   As to breach, the contract itself provides at ¶ 19:
> Lessor shall provide Lessee with written notice of breach or default of any terms and conditions of this Agreement. Lessee shall have sixty (60) days after the date of receipt of written notice of Breach or Default from Lessor within which to remedy or contest said Breach or Default. Failure to remedy or contest said Breach or Default shall cause this Agreement to terminate except as to Earning Wells already drilled.

   ECF No. 4–1, page 11.

10  In response to Plaintiff's request for admissions, Defendants admit:
> It is admitted that Defendants entered into two leases with Atlas, one in August 2009 and one in February 2010, and that written notice of Defendants' intent to enter into those two leases was not provided to U.S. Energy.
> It is admitted that written notice of Defendants' intent to enter into those two leases [with Atlas in August 2009 and February 2010] was not provided to U.S. Energy.

   *See* ECF No. 46, Defendants' Responsive Concise Statement of Facts in Opposition to Plaintiff's Motion for Summary Judgment, ¶ ¶ 16, 21. *See also* ¶ ¶ 17, 18.

   In his deposition testimony, Douglas Walch of U.S. Energy explained that at the July 2010 annual meeting, Defendants "recognized they [ ... ] hadn't presented the lease properly to us as they were required to do so" and that Bert Habgood "even indicated they made a mistake." ECF No. 41–7, page 27. *See also* ECF No. 42–6, Walch Notes, page 6; ECF No. 45–4, Letter from Attorney McManus, pages 1–5.

11  When the language of the contract has been held to be ambiguous by the court, the fact-finder may look to extrinsic evidence to determine the parties' intent, such as the parties' course of conduct throughout the life of the contract as "evidence of a prior course of dealing can establish a party's awareness of and consent to intended contractual terms." *See Roman v. Unigroup Worldwide, Inc.,* 2014 WL 2504586, at *9 (W.D.Pa. May 28, 2014) *citing Step–Saver Data Sys., Inc. v. Wyse Tech.,* 939 F.2d 91, 103 n. 40 (3d Cir.1991) and *New Moon Shipping Co., Ltd. v. Man B & W Diesel AG,* 121 F.3d 24, 31 (2d Cir.1997).

---

**End of Document**     © 2017 Thomson Reuters. No claim to original U.S. Government Works.