## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FREDERICK F. FAGAL, JR., | |
| Plaintiff, | **CIVIL ACTION NO.:** |
| v. | **3:14-cv-02404-ARC** |
| MARYWOOD UNIVERSITY, | |
| Defendant. | |

## <u>DEFENDANT'S PRETRIAL MEMORANDUM</u>

Pursuant to Local Rule 16.1 and the Court's February 1, 2018 Order, Defendant Marywood University ("Marywood"), by its undersigned counsel, submits the following Pretrial Memorandum:

**1.** <u>**Date The Rule 16.3 Conference Was Held by Counsel**</u>:  March 23, 2018.[1]

**2.** <u>**Federal Court Jurisdiction**</u>:  This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 because there is complete diversity and the matter in controversy exceeds $75,000.

---

[1] The Parties initially scheduled a conference for March 21, 2018 in accordance with the Court's February 1, 2018 Order, but due to a snow storm on that date in Philadelphia, counsel mutually agreed to reschedule the meeting to March 23.

3.    **Summary of Facts and Contentions as to Liability**:

For approximately 20 years, Plaintiff was a tenured professor of Marywood. In 2012, his employment and tenure were terminated by the University for his flagrant violations of the University's Civil Rights policy, Tenure Policy, Academic Freedom policy, Professional Ethics policy, and the Mission and Core Values of Marywood.

Marywood determined that Plaintiff violated these policies when he created and publically posted two videos on YouTube that portrayed members of Marywood's administration as members of the Nazi regime and Marywood's president, Sister Anne Munley ("Sr. Munley"), as Hitler.  Of note, one of the administrators portrayed as a Nazi soldier was Dr. Alan Levine, the Vice President of Academic Affairs ("Dr. Levine"), who is Jewish, and who Plaintiff knew to be Jewish.  The videos mocked and harassed all of the administrators involved, but were particularly harassing of Dr. Levine.  In addition to portraying him as a member of group that killed millions of individuals in his faith, Plaintiff included personal insults about Dr. Levine's wife and children.  In January 2012, Plaintiff distributed the videos, via email, to Marywood faculty and students, as well as others in the Marywood community.

Sr. Munley held a meeting with Plaintiff shortly after the University learned of the posted videos to discuss his actions.  During this meeting, Plaintiff admitted

to creating and posting the videos, but showed no remorse, was unapologetic, and refused to discuss the videos other than to say he did it for "justice".  Sr. Munley suspended Plaintiff on January 23, 2012, then recommended the termination of his tenure and employment on January 24, 2012.

Plaintiff contends that Marywood breached the Tenure Agreement by not technically following its own policies and procedures required to properly suspend him and recommend his termination of employment and tenure. Specifically, he alleges that:

- He must have been informed of his suspension by Dr. Levine, the Vice President of Academic Affairs, and not Sr. Munley, per the Progressive Discipline policy;

- He was improperly suspended because he did not pose a threat of immediate harm to himself or others, per the Progressive Discipline policy;

- He could not have been recommended for termination before any remedial measures were taken to correct his actions, per the Progressive Discipline policy; and

- He did not have the opportunity to convene an Ad Hoc Committee to appeal his suspension, per the Progressive Discipline policy.

Contrary to Plaintiff's contentions, however, the Progressive Discipline policy requires none of these things:

- With regard to suspension, the Progressive Discipline policy states that a "faculty member *may* be suspended by the Vice President for Academic Affairs" and does not prohibit the President, who is the Vice President of Academic Affairs' supervisor, from suspending a faculty member.  Moreover, Dr. Levine was a personal victim of the videos and the University determined it was not appropriate for him to be involved in Plaintiff's resulting discipline.

- With regard to his suspension, the policy does not state that suspension is *only* justified by a threat of immediate harm, and even if it did (which it does not), there is no requirement that a faculty member pose a *physical* threat to be suspended.  Indeed, the University determined that if Plaintiff was allowed to remain on campus after having harassed colleagues in violation of its policies, particularly the Civil Rights policy, there would be an immediate threat to the targeted faculty members.

- The Progressive Discipline policy does not mandate that remedial, corrective measures be taken prior to termination of a faculty member, as the policy states that remedial measures "*may* be required" and that

the purpose of progressive discipline is only applicable when "corrective" disciplinary action is appropriate. Here, the University determined that due to Plaintiff's lack of remorse for his actions and the seriousness of his conduct, no remedial action was necessary or, quite frankly, even possible.

- Plaintiff did have the opportunity to convene a committee to review his suspension and termination. In fact, both his suspension and termination were reviewed by two committees—the Faculty Grievance Committee as well as the Ad Hoc Committee. The Progressive Discipline policy allows the membership of an Ad Hoc Committee convened to review a suspension and a termination to be the same, which it was here.

Accordingly, Marywood adhered to its policies and procedures and did not breach the Tenure Agreement.

But, even if the Court were to find that Marywood did not follow its policies "to the letter," Marywood will prove at trial that it is still not liable for a breach of the Tenure Agreement for two reasons. First, Plaintiff's public posting of the harassing videos was a material breach of the Tenure Agreement, relieving Marywood of its obligation to further perform under the terms of the Agreement. Second, even if Plaintiff's breach is found not to be a material breach, Plaintiff

cannot establish that the end result would have been any different even if had he received the procedures to which he claims he was entitled.  For example, if Plaintiff would have been informed of his suspension by Dr. Levine, he still would have been suspended.  If the Ad Hoc Committee met separately to discuss his suspension – as they did on July 13, 2012 – his suspension and, more importantly, his termination would have still been upheld.

Finally, Marywood will prove at trial that Plaintiff has in no way satisfied his obligation to mitigate his damages.  Over the course of the previous six years, he has applied to only two positions.  In the cover letter and resume submitted to one potential employer, Plaintiff included a detailed, flippant description of his termination and dispute with Marywood.

**4.**   **Comprehensive Statement of Undisputed Facts**:   Please see Plaintiff's Pretrial Memorandum.

**5.**   **Brief Description of Damages**:   Please see Plaintiff's Pretrial Memorandum.   Defendant specifically denies that Plaintiff has suffered any damages, or will be able to prove any damages at the time of trial.  Defendant is not asserting a claim for damages, absent a claim for attorneys' fees and costs, if applicable.

**6.**   **Witnesses**:  Defendant may call any of the following individuals as witnesses at the time of trial:

- Sr. Anne Munley, IHM, PhD
  2002 Elm Crest
  San Antonio, TX 78230

- Dr. Patricia E. Dunleavy
  815 Richter Drive
  Scranton, PA 18510

- Dr. Alan M. Levine
  214 Marcaby Lane
  Clarks Summit, PA 18411

- Dr. Helen M. Bittel
  1036 Fairfield Street
  Scranton, PA 18509

- Dr. Edward J. O'Brien
  214 Lathrop Street
  Kingston, PA 18704

- Dr. Erin A. Sadlack
  101 Snyder Street
  S. Abington Twp., PA 18411

Defendant also reserves the right to call any witnesses identified by Plaintiff as potential witnesses, and to supplement this list prior to the time of trial.

**7.** **Expert Witnesses**:   Defendant may call expert witness Chad L. Staller, JD, MBA, MAC, CVA, of The Center for Forensic Economic Studies at 1608 Walnut Street, Suite 801, Philadelphia PA 19103, who will testify that Plaintiff's job search effort was not reasonably exhaustive or diligent and that had it been, he should have been able to secure alternate employment by the beginning of the 2012-2013 school year.

**8.**    <u>**Special Comment about Pleadings and Discovery**</u>:  None.

**9.**    <u>**Summary of Legal Issues Involved and Legal Authorities**</u>:  There are four primary legal questions before the Court for this trial.

First, the Court must determine whether Plaintiff materially breached the Tenure Agreement, relieving Marywood of its obligations to further perform under the Agreement.  If the Court agrees that Plaintiff's breach was material, the Court must determine whether Marywood waived this breach.

Second, as explained in the Summary of Facts and Contentions as to Liability and the Stipulated Facts, and as will be proven at trial, Marywood followed its own policies and procedures for suspending and terminating Plaintiff even if the Court determines that Plaintiff somehow did not materially breach the Tenure Agreement or that Marywood waived that material breach.  Simply put, the Court must determine whether Marywood breached the Tenure Agreement.

Third, if the Court finds the Plaintiff did not materially breach the Agreement, that Marywood waived a material breach or that Marywood breached the Tenure Agreement, the third issue before the Court is whether Marywood's breach was material.

Finally, if Marywood is found liable for a breach of the Agreement, the Court must consider whether Plaintiff satisfied his duty to mitigate his damages.

a. <u>Whether Plaintiff Materially Breached The Tenure Agreement.</u>

Plaintiff materially breached the Tenure Agreement by violating the University's policies and Core Values when he created and posted a harassing and offensive video depicting administrators at Marywood as members of the Nazi regime.  "A material breach by one party entitles the non-breaching party to suspend performance of the contract. . . .   Consequently, a party who has committed a material breach may not insist upon performance of the contract. . . ." <u>Smith v. Allstate Corp.</u>, 2012 U.S. Dist. LEXIS 95950, *19-20 (E.D. Pa. July 11, 2012)(citations omitted).

A breach is material when it goes to the "essence of the contract" and if it "'will deprive the injured party of the benefit that is justifiably expected' under the contract."  <u>General Motors Corp. v. New A.C. Chevrolet</u>, 263 F.3d 296 (3d Cir. 2001) (quoting 2 E. Allan Farnsworth, Farnsworth on Contracts § 8.16, at 497 (2d ed. 1998)).  The question of whether a breach is material is generally an issue of fact unless the question "admits only one reasonable answer."  <u>Smith</u>, 2012 U.S. Dist. LEXIS 95950, *19-20 (citations omitted.); <u>see</u> <u>also</u> <u>Norfolk S. Ry. Co. v. Basell USA Inc.</u>, 512 F.3d 86 (3d Cir. Pa. 2008) ("[I]f the materiality question in a given case admits of only one reasonable answer (because the evidence on the point is either undisputed or sufficiently lopsided), then the court must intervene and address what is ordinarily a factual question as a question of law.").  "Whether

a breach is so substantial as to justify an injured party's regarding the whole transaction as at an end 'is a question of degree; and it must be answered by weighing the consequences in the actual custom of men in the performance of contracts similar to the one that is involved in the specific case.'" 2401 Pa. Ave. Corp. v. Fed'n of Jewish Agencies, 466 A.2d 132, 139 (Pa. Super. Ct. 1983) (quoting 4 Corbin, Contracts, § 946 (1951)); see also Gray v. Gray, 448 Pa. Super. 456 (Pa. Super. Ct. 1996) (same)).

"State law determines whether breach of a contract provision is material." See In re Gen. DataComm Indus., Inc., 407 F.3d 616, 627 (3d Cir. 2005) (internal citations omitted).

> To determine materiality, Pennsylvania courts refer to the Restatement (Second) of Contracts § 241 (1981), which sets forth the following factors to guide the inquiry:
>
> > a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
> >
> > b) the extent to which the injured party can be adequately compensated for that part of the benefit of which he will be deprived;
> >
> > c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
> >
> > d) the likelihood that the party failing to perform or offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;

> e) the extent to which the behavior of the party failing to perform or offer to perform comports with standards of good faith and fair dealing.

Similarly, we have held:

> Whether a breach is so substantial as to justify an injured party's regarding the whole transaction as at an end "is a question of degree; and must be answered by weighing the consequences in the actual custom of men in the performance of contracts similar to the one that is involved in the specific case."

Int'l Diamond Imps., Ltd. v. Singularity Clark, L.P., 2012 PA Super 71, 40 A.3d 1261, 1271 (2012) (internal citations omitted).  The University, as an employer, has a legal duty to prevent harassment of its employees.  When the alleged harasser is a co-worker, employer liability attaches "if the employer failed to provide a reasonable avenue for complaint, or, alternatively, if the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action."  Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 754, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998); see also Bonenberger v. Plymouth Twp., 132 F.3d 20, 26 (3d Cir. 1997) ("if the employer knew or should have known of the harassment and failed to take prompt remedial action, it is liable under Title VII.") (citing Andrews v. Philadelphia, 895 F.2d 1469, 1486 (3d Cir. 1990)).  "A remedial action that effectively stops the harassment will be deemed adequate as a matter of law.  On the other hand, it is possible that an action that proves to be ineffective in stopping

the harassment may nevertheless be found reasonably calculated to prevent further harassment and therefore adequate." <u>Knabe v. Boury Corp.</u>, 114 F.3d 407, 411, n. 8 (3d Cir. 1997).

Under these circumstances, the University had no choice but to take appropriate action to suspend and terminate Plaintiff's employment to end and prevent further harassment of its employees, particularly Dr. Levine, following Plaintiff's creation and posting of the harassing YouTube videos.

Assuming Plaintiff materially breached the Agreement, Marywood did not waive any such breach by Plaintiff by continuing to follow its policies to suspend and terminate Plaintiff.   To hold otherwise would subject Marywood to an unreasonable risk.   "When one party commits a material breach of contract, the other party has a choice between two inconsistent rights -- he or she can either elect to allege a total breach, terminate the contract and bring an action, or, instead, elect to keep the contract in force, declare the default only a partial breach, and recover those damages caused by that partial breach. . . ."   <u>Gillard v. Martin</u>, 13 A.3d 482, 487 (Pa. Super 2010) (citations and quotations omitted); <u>see also</u> <u>GMC v. New A.C. Chevrolet</u>, 263 F.3d 296, 315, n.5 (3d Cir. 2001) ("It is hornbook law that when one party to a contract commits a material breach, the non-breacher has the option of . . . terminating the agreement in its entirety.").   "Requiring a plaintiff who sues for material breach to suspend performance in order to succeed on its

claim, however, would subject the plaintiff to its own liability or risk of forfeiture of any damages for immaterial breach in order to litigate its claim." Norfolk Southern Ry. Co. v. Basell USA, Inc., 2008 U.S. Dist. LEXIS 62390, *28-29 (E.D. Pa. Aug. 15, 2008) (citations and quotations omitted).

b. Defendant Did Not Breach the Tenure Agreement

Plaintiff's breach of contract claim can be summarized as follows:  (1) the President was prohibited from notifying him of his suspension and termination; (2) Marywood is prohibited, in all circumstances and no matter how severe the misconduct, from terminating a tenured professor without instituting corrective discipline first; and, (3) the Ad Hoc Committee did not convene to consider suspension and termination separately.[2]

As discussed more extensively herein and as the evidence will demonstrate, the relevant language in Marywood's Progressive Discipline Policy provides discretion to Marywood as to who can notify a tenured professor of suspension and/or termination and whether to implement corrective or punitive discipline. Further, the evidence will demonstrate that the Ad Hoc Committee did consider Plaintiff's suspension, which is a moot point and a red herring since termination

---

[2] While Plaintiff contends that one Ad Hoc Committee was required to consider suspension and a separately composed second Ad Hoc Committee was required to consider termination, the Progressive Discipline Policy clearly provides that the composition of the committee considering both issues is discretionary.  The Progressive Discipline Policy states that the committee considering suspension and/or termination "may be similar or different."

was clearly appropriate and that substantive decision is not subject to this Court's review.

      c.  <u>If The Court Finds That Defendant Breached The Agreement, Any Breach was Immaterial.</u>

Assuming, *arguendo* that Defendant deviated from its outlined policies and procedures, any breach of the Tenure Agreement by Defendant on this basis was immaterial, prohibiting the Plaintiff from recovering damages exceeding merely nominal damages, if at all.   <u>Supra</u> at 8-11.   The decision to suspend and to recommend termination would not have been any different had the Vice President of Academic Affairs (and primary victim of Plaintiff's harassment) notified him instead of the President (who was also a victim of Plaintiff's harassment).  Further, the fact that there is no dispute that the Ad Hoc Committee determined that termination was appropriate makes any debate over suspension moot since a decision to permanently terminate employment substantiates a decision to temporarily suspend employment.

Most importantly, when an employee posts public videos depicting colleagues as Nazi's and attacks those colleagues in a personal and embarrassing nature, that employee is subject to immediate termination.  Plaintiff had several opportunities to express remorse to Marywood leadership, was paid for eight months during his suspension and had extensive and deliberative committee review by both the Faculty Grievance Committee and the Ad Hoc Committee, which

upheld his termination.   Simply put, Plaintiff was treated more than fairly by Marywood and would have been suspended and terminated even if his interpretation of the policies are correct.

> d. Plaintiff's Duty to Mitigate Damages.

"First year law students are generally taught that a plaintiff claiming breach of contract himself has a duty to mitigate." VICI Racing, LLC v. T-Mobile USA, Inc., 763 F.3d 273, 298 (3d Cir. 2014) (citing 11 Corbin on Contracts, § 57.11 (1993) ("It is not infrequently said that it is the 'duty' of the injured party to mitigate damages so far as can be done with reasonable effort.").

"Mitigation is an affirmative defense, for which the breaching party bears the burden of proof." Prusky v. ReliaStar Life Ins. Co., 532 F.3d 252, 258-59 (3d Cir. 2008) (citing Koppers Co., Inc. v. Aetna Cas. & Sur. Co., 98 F.3d 1440, 1448 (3d Cir. 1996); Williams v. Masters, Mates & Pilots of Am., 384 Pa. 413, 120 A.2d 896, 901 (Pa. 1956)).   "To prove a failure to mitigate, one must show: '(1) what reasonable actions the plaintiff ought to have taken, (2) that those actions would have reduced the damages, and (3) the amount by which the damages would have been reduced.'" Prusky, 532 F.3d at 258-59 (quoting Koppers Co., 98 F.3d at 1448).

As is explained above, Plaintiff did not mitigate his damages.   He has not found subsequent employment in six years and during that time applied for only

two jobs.  Marywood will prove this was hardly a reasonable or diligent effort to secure employment.  Had he taken such required action, he would have found equivalent employment by the subsequent academic year, 2012 to 2013. Accordingly, Plaintiff is not entitled to recover damages.

    **10.**    **<u>Stipulations Desired</u>**:  None.

    **11.**    **<u>Estimated number of trial days</u>**:  Four days.

    **12.**    **<u>Any Other Matter Pertinent to the Case to Be Tried</u>**:  None.

    **13.**    **<u>Prenumbered Schedule of Exhibits with Brief Identification of Each on Exhibit Form</u>**:  Please see Exhibit A, which is Defendant's Exhibit List and the Joint Exhibit List.  Plaintiff will submit his own Exhibit List containing any exhibits not already included in the Joint Exhibit List.

    **14.**    **<u>Special Verdict Questions</u>**:  None.

    **15.**    **<u>Statement of Settlement Authority</u>**:  Please see document attached as Exhibit B.

    **16.**    **<u>Local Rule 30.10 Certification</u>**:  Please see Exhibit C.

    **17.**    **<u>Requests For Findings of Fact And Conclusions of Law Pursuant To Local Rule 48.2</u>**:

        a.  <u>Findings of Fact:</u>

i.  Plaintiff was offered the opportunity to have an Ad Hoc Committee review his suspension and the termination recommendation.

ii.  Plaintiff did not elect to have an Ad Hoc Committee review his suspension and the termination recommendation because he did not return the authorization necessary for the University to convene an Ad Hoc Committee.

iii.  Dr. Levine did not file a complaint under the Civil Rights policy because he understood the University was taking action to prevent further harassment by Plaintiff of colleagues, including Dr. Levine.

iv.  The Ad Hoc Committee considered both Plaintiff's suspension and termination.

v.  The Ad Hoc Committee met separately to consider Plaintiff's suspension.

vi.  Two committees, comprised of different members (all tenured professors, one of whom was hand-selected by the Plaintiff), reviewed both Plaintiff's suspension and termination and upheld Sr. Munley's suspension and termination decisions.

vii. The Faculty Grievance Committee considered the procedural merits of Plaintiff's suspension, including whether suspension was justified under the Progressive Discipline policy.

viii. If Plaintiff had not been suspended after posting and disseminating the YouTube videos, he would have been an ongoing threat to the faculty members that were harassed by the videos.

ix. Plaintiff materially breached the Tenure Agreement by posting the YouTube videos.

x. Plaintiff would have been suspended by Marywood even if the Vice President of Academic Affairs had notified him of the suspension.

xi. Plaintiff would have been recommended for termination by Marywood even if the Vice President of Academic Affairs had recommended his termination.

xii. The Ad Hoc Committee would have affirmed Sr. Munley's decision to suspend Plaintiff even if it had initially convened to separately each to determine suspension and termination

xiii.   The Ad Hoc Committee would have affirmed Sr. Munley's decision to terminate Plaintiff even if at the outset it had convened separately to determine suspension and termination.

xiv.   Plaintiff did not take reasonable action to find subsequent employment after his termination by Marywood.

xv.   Had Plaintiff taken reasonable action, he would have found equivalent employment by the 2012-2013 school year.

b.   <u>Conclusions of Law:</u>

i.   Marywood has discretion to take corrective action under the Progressive Discipline policy for misconduct by tenured faculty.

ii.   The Progressive Discipline policy does not prohibit Marywood from issuing punitive punishment, including termination, for serious misconduct by tenured faculty.

iii.   The Progressive Discipline policy does not prohibit the President of the University from notifying a faculty member of a suspension.

iv.   The Progressive Discipline policy does not prohibit the President of the University from recommending the termination of employment and tenure of a faculty member.

v.   The Progressive Discipline policy does not prohibit the membership of two Ad Hoc Committees convened to review a suspension and termination from being the same.

vi.   The Progressive Discipline policy does not require that an Ad Hoc Committee considering suspension and termination to meet separately.

vii.   Under the Progressive Discipline policy, harassment and hostile work environment can be an immediate threat to the Marywood employees to warrant suspension.

viii.   Suspension of a faculty member is not *only* justified under the Progressive Discipline policy when an immediate threat is present.

ix.   The Progressive Discipline policy did not prohibit Sr. Munley from terminating Plaintiff's employment without an Ad Hoc Committee reviewing her recommendation.

x.   Following Plaintiff's material breach of the Tenure Agreement, Marywood was not obligated to further perform under the Tenure Agreement.

xi.   Following Plaintiff's material breach of the Tenure Agreement, Marywood did not waive any such material breach by Plaintiff

by continuing to follow its own policies and procedures regarding suspension and termination of a faculty member.

xii.   The Civil Rights policy does not prohibit the University from taking action under the policy even if no individual files a complaint.

xiii.   Plaintiff did not properly mitigate his damages, if any.

xiv.   Plaintiff did not suffer any damages as a result of Marywood's breach of the Agreement, if found.

xv.   Plaintiff did not suffer any damages because he was paid through the expiration of his 2011-2012 Letter Agreement.

xvi.   Marywood had a legal duty to take action to stop further harassment to its faculty members caused by Plaintiff's actions.

Respectfully submitted,
**JACKSON LEWIS P.C.**

*/s/ Stephanie Peet*
Stephanie J. Peet (PA ID: 91744)
Donald E. English, Jr. (admitted *pro hac vice*)
Three Parkway
1601 Cherry Street, Suite 1350
Philadelphia, PA 19102-1317
T: (267) 319-7802
F: (215) 399-2249
stephanie.peet@jacksonlewis.com
donald.english@jacksonlewis.com

Dated:  March 30, 2018                              ATTORNEYS FOR DEFENDANT

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

FREDERICK F. FAGAL, JR.,

               Plaintiff,

     v.

MARYWOOD UNIVERSITY,

               Defendant.

**CIVIL ACTION NO.:**

**3:14-cv-02404-ARC**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **Defendant's Pretrial Memorandum** filed through the Court's ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) and paper copies will be mailed to those identified as non-registered participants via U.S. First Class Mail, postage prepaid on this 30th day of March 2018.  Additionally, per the Court's February 1, 2018 Order a Word copy of this filing will be emailed to Chambers via the email dawn_wychock@pamd.uscourts.gov.

*/s/ Stephanie J. Peet*