# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

> **EXHIBIT A**

FREDERICK F. FAGAL, JR.

    *Plaintiff,*

v.

MARYWOOD UNIVERSITY,

    *Defendant.*

CIVIL ACTION

NO. 3:14-cv-02404-ARC

(JUDGE CAPUTO)

## BRIEF SUPPLEMENTING PLAINTIFF'S ORAL OPPOSITION TO DEFENDANT'S MOTION FOR DIRECTED VERDICT

Plaintiff Frederick F. Fagal, Jr., through his undersigned counsel, hereby submits this Brief Supplementing Plaintiff's Oral Opposition to Defendant's Motion for Directed Verdict. Below are several arguments that Plaintiff's counsel should have made in his oral opposition to Defendant's Motion for Directed Verdict. As the Court has not yet issued its findings or judgment, there is no bar to the Court considering these arguments now. Plaintiff has no objection to Defendant making a written response.

### I. Plaintiff was entitled to remedial measures before Marywood moved to dismiss him.

The Progressive Discipline Policy ("PDP") explains how Marywood may move to dismiss a professor who has already been suspended: "If remedial actions(s) taken during the suspension does not sufficiently

resolve the issues that lead to the suspension, the university may move towards dismissal of the faculty member." Joint Ex. 8 at DEF000456. There is no evidence in the record that Marywood attempted remedial actions during Plaintiff's suspension—only evidence to the contrary. See Tr. I at 46:6-7, 59:6-9; Tr. II at 89:9-90:4, 91:15-20.[1] Accordingly, Marywood breached its contract when it moved to terminate Plaintiff and the Court should deny Defendant's Motion for Directed Verdict.

II. **Proof of "immediate harm" is in doubt.**

The PDP states: "Suspension is justified if immediate harm to the faculty member or others is threatened by the person's continuance in the faculty position." Joint Ex. 8 at DEF000455. There are serious credibility problems with Defendant's claims of "immediate harm." See Tr. I at 44:2-8; Tr. II at 10:20-24, 51:13-20, 84:19-25. Had Defendant truly believed that Plaintiff posed an "immediate harm"—even if this harm could be other than physical—we would have expected:

> 1. Defendant to have first made this allegation soon after the January 13, 2012 publication of the video rather than in its attorneys' Answer to the Amended Complaint filed on June 30, 2015;

---

[1] "Tr. I" refers to the transcript of the first day of trial. "Tr. II" refers to the transcript of the second day of trial." "Tr. III" refers to the transcript of the third day of trial.

2

   2. Defendant to have asked Plaintiff to remove the video, which it never did;

   3. Defendant to have suspended Plaintiff immediately rather than ten days after publication; and

   4. Any one of Defendant's scores of employees to file a civil rights claim against Plaintiff, which never occurred.

Given these incongruities, the Court should doubt that Plaintiff's video parody posed an "immediate harm" to anyone at Marywood.

### III. Plaintiff was not required to sign any release to convene an ad hoc faculty committee.

Defendant's counsel argued at trial that: "Dr. Fagal admits he did not timely authorize the release of his personal information to the committee. He had ten days to do so under the progressive discipline policy." Tr. III at 16:15-18.

In response, Plaintiff's counsel stated:

> Then there's the argument that Fred didn't authorize a release of personal information. I don't know how many times I had to write letters saying it's authorized. I mean, are they questioning whether I had the authority, you know, to speak for my client.... We didn't sign it because the release if you look at it, it says you consent to a release of personal information so that a committee could be convened to adjudicate Fred's termination, and it left out suspension. We felt that by signing it, we

>would be agreeing that he wouldn't get a committee for his suspension.

Tr. III at 29:4-15.

Plaintiff is correct and Defendant is wrong about this. First, Defendant's statement that Plaintiff "had ten days to [sign the release] under the progressive discipline policy" is simply untrue. The PDP contains no requirement for signing a release. See Joint Ex. 8. Rather, the PDP unconditionally permits a professor to convene "to convene an ad hoc committee in order to appeal either a decision to suspend the faculty member or a decision to dismiss the faculty member." The PDP further states:

> Having received a written recommendation for either suspension or dismissal from the Vice President for Academic Affairs, the President of the University sends a written communication to the faculty member, stating with reasonable particularity the basis for suspension or dismissal and offering, if requested by the faculty member within 10 days, to convene a tenured faculty ad hoc committee to consider the matter, to render confidential advice, and thereby to effect a remedy if possible.

Joint Ex. 8. There is no question that Plaintiff, by himself and through his attorney, requested in writing that Marywood convene an ad hoc committee to review his suspension and/or recommendation for termination. See Joint

4

Ex. 25 at DEF003296, DEF003297, DEF003370, DEF003381, Pl. Ex. 26 at 2-3, 5; Pl. Ex. 31 at 3; Pl. Ex. 41 at 1-2; Pl. Ex. 55 at 1-2.

Marywood could have had no doubt whatsoever that Mr. Cohen had the right to speak for Plaintiff, as Marywood's attorney was in frequent contact with Mr. Cohen between February 9, 2012 and April 26, 2012. See Joint Ex. 23; Pl. Ex. 41; Pl. Ex. 55; Pl. Ex. 56; Pl. Ex. 59; Pl. Ex. 88; Pl. Ex. 90. To the extent that Marywood claims that it could not release Munley's charges with the *direct* consent of Plaintiff, it is worth noting that Marywood had no issues whatsoever sharing such information with its own attorney. Marywood's position that only Plaintiff himself could authorize Munley to release her statement of charges to an ad hoc faculty committee—and only by signing the exact release form provided by Marywood—is feeble and formulaic.

As Plaintiff testified at trial, he believed that Defendant's release presented him with a "Hobson's choice that was skipping over procedures that [he] should have received." Tr. I at 95:10-12. Plaintiff believed that he was entitled to a proper suspension (with proof of "immediate harm") followed by an attempt at remedial measures. By signing a release that allowed Marywood to proceed directly to a review of his termination, he felt that he would be waiving Marywood's failures with regard to suspension

5

and remediation. This is reflected in Mr. Cohen's letter to Munley of February 2, 2012. See Pl. Ex. 26 at 2-5.

As Marywood was required to convene ad hoc faculty committees to review Plaintiff's suspension and recommendation for termination when Mr. Cohen requested this on February 2, 2012 but failed to do so, Marywood breached its policies. If Marywood had timely convened an ad hoc faculty committee to review Plaintiff's suspension, the committee could have made a recommendation to "discontinue proceedings" before Munley unilaterally terminated him on April 3, 2012. See Joint Ex. 8; Joint Ex. 31.[3]

### III. Marywood could not charge Plaintiff with violating the "Civil Rights Policy."

On February 8, 2012, Munley charged Plaintiff with violating Marywood's Civil Rights Policy. See Joint Ex. 24 at DEF000208. Marywood's Civil Rights Complaint Procedures ("CRCP") policy states that it "must be followed any time a member of the Marywood University

---

[3] For the first time in this litigation, Defendant suggested at trial that it could not release Munley's statement of charges without "written authorization by the employee" under Section 4.37 of the Faculty Handbook. See Tr. I at 97:2-9; Joint Ex. 3 at DEF3594. It is not clear whether this section, which focused on human resources data, even applies. Further, the section permits disclosure of "personal information" where "required by law." Id. As the PDP (another part of the contract) requires Marywood to convene ad hoc committees upon a faculty member's request, Marywood was "required by law" to do so.

6

community believes s/he has been the victim of...discrimination, harassment, or assault by any member of the University community." Joint Ex. 3 at DEF3579. The CRCP process begins with the making of a "complaint." Id. However, there is no evidence that anyone at Marywood ever filed a civil rights complaint against Plaintiff after his January 13, 2012 email. Plaintiff and Munley testified that they were not aware of any such complaint being filed. See Tr. I at 49:21-24; Tr. II at 96:18-22. Dr. Levine testified that he had never done so. See Tr. II at 30:13-15. Accordingly, Defendant breached its contract with Plaintiff and Defendant's Motion for a Directed Verdict cannot be granted.

## IV.    **CONCLUSION**

For the foregoing reasons and for those offered orally on April 25, 2018, Plaintiff respectfully requests that the Court deny Defendant's Motion for Directed Verdict.

Respectfully,

By: <u>s/ Jonathan Z. Cohen</u>
Jonathan Z. Cohen (PA 205941)
Jonathan Z. Cohen Ltd.
175 Strafford Avenue
Suite 1 # 212
Wayne, PA 19087-3340
(215) 874-0047
(215) 839-8951 (fax)
jzc@jzc-law.com

*Attorney for Plaintiff*

Date: April 27, 2018

## **CERTIFICATE OF SERVICE**

I, Jonathan Z. Cohen, attorney for Plaintiff, certify that the foregoing document will be served on all counsel of record via the ECF system today.

Respectfully,

By: s/ Jonathan Z. Cohen
Jonathan Z. Cohen (PA 205941)
Jonathan Z. Cohen Ltd.
175 Strafford Avenue
Suite 1 # 212
Wayne, PA 19087-3340
(215) 874-0047
(215) 839-8951 (fax)
jzc@jzc-law.com

*Attorney for Plaintiff*

Date: April 27, 2018